James L. Martin, ISB No. 4226
jlm@moffatt.com
MOFFATT, THOMAS, BARRETT,
ROCK & FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701-0829
Telephone (208) 345-2000
Facsimile (208) 385-5384

David J. Lender (*pro hac vice*)
david.lender@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone (212) 310-8000
Facsimile (212) 310-8007

Ray Guy (*pro hac vice*)
ray.guy@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone (214) 746-7700
Facsimile (214) 746-7777

*Attorneys for Credit Suisse Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, DEAN FRESONKE, VERN JENNINGS, TERRI FROEHLICH, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas and Ginn Sur Mer, <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT SUISSE AG, a Swiss corporation, CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation, CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type, CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive, <br><br> Defendants. | Case No. 1:10-cv-00001-EJL <br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CREDIT SUISSE AG, CREDIT SUISSE SECURITIES (USA), LLC, CREDIT SUISSE FIRST BOSTON, AND CREDIT SUISSE CAYMAN ISLAND BRANCH'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTORY STATEMENT ..................................................................................... 1

MOTION TO DISMISS STANDARD................................................................................ 3

ARGUMENT AND AUTHORITIES.................................................................................. 4

I.      THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING............... 4

II.     PLAINTIFFS HAVE FAILED TO STATE A RICO CLAIM ........................................ 6

      A.      Credit Suisse's Alleged Misconduct Was Not the Proximate Cause of Plaintiffs' Alleged Harm ..................................................................... 7

      B.      Plaintiffs Have Not Adequately Pled the Predicate Acts of Fraud ....................... 11

      C.      Plaintiffs Fail to Allege Any Violation of Sections 1962(a)-(b)............................ 12

      D.      Plaintiffs Fail to Plead a RICO Enterprise ............................................................ 13

      E.      Plaintiffs' Conspiracy Claims Under Section 1962(d) Should Be Dismissed ......................................................................................... 14

      F.      Plaintiffs' RICO Claim Is Duplicative of Their Other Claims ............................. 15

III.    PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED ......................................... 15

      A.      Plaintiffs Fail to Plead Fraud with the Requisite Particularity ............................. 15

      B.      Plaintiffs' Fraud by Non-Disclosure Claim Fails to Allege a Relationship That Would Give Rise to a Duty to Disclose........................... 19

IV.     PLAINTIFFS' CLAIM OF NEGLIGENT MISREPRESENTATION FAILS FOR THE SAME REASONS AS THE FRAUD CLAIM ......................................................... 20

V.      PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED ................................................................................................................... 21

      A.      There Is No Fiduciary Relationship Between Plaintiffs and Credit Suisse .......... 21

      B.      Plaintiffs Have Not Pled a Breach of Any Supposed Fiduciary Duty .................. 25

      C.      Certain Plaintiffs' Claims Are Barred by the Statutes of Limitations .................. 26

VI.     PLAINTIFFS HAVE NOT ADEQUATELY PLED A TORTIOUS INTERFERENCE CLAIM ............................................................................................. 27

## TABLE OF CONTENTS (cont'd)

A.     Plaintiffs Do Not Allege That the Credit Suisse Defendants Intended to or Did Induce the Breach of Any Contract Between Them and Developers ............27

B.     Plaintiffs Fail to Plead Facts Alleging That Credit Suisse Acted With the Unlawful Purpose of Causing Damage ..................................................................28

C.     Plaintiffs Have Not Satisfied Their Pleading Obligations With Respect to Their Tortious Interference Claim ........................................................................29

VII.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ............29

A.     Plaintiffs Have Not Alleged That Credit Suisse Was Unjustly Enriched at Plaintiffs' Expense .........................................................................................29

B.     Plaintiffs Have an Adequate Remedy at Law ........................................................32

C.     Certain Plaintiffs' Claims Are Barred by the Statutes of Limitations ..................32

VIII.     PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS FAIL BECAUSE (1) NO TORT DUTY EXISTS BETWEEN THE PARTIES, AND (2) THE ECONOMIC LOSS DOCTRINE PROHIBITS RECOVERY ................................33

IX.     PLAINTIFFS' CONSPIRACY CLAIM SHOULD BE DISMISSED ............................34

A.     There Is No Independent Civil Conspiracy Cause of Action ................................34

B.     Plaintiffs Have Failed to Plead the Required Elements for Civil Conspiracy ............................................................................................................35

X.     PLAINTIFFS' CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED ......................................37

A.     Plaintiffs Have No Contractual Relationship with Credit Suisse and Cannot Enforce Any Implied Terms of the Credit Agreements ...........................37

B.     Plaintiffs Have Not Adequately Alleged that Credit Suisse Breached the Covenant ............................................................................................................38

C.     Plaintiffs Have Not Stated a Claim for Tortious Breach Because There Is No Special Relationship Between Plaintiffs and Credit Suisse ............................39

CONCLUSION ..................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Adams v. U.S.*, No. 03-0049-E-BLW, 2008 WL 2357003 (D. Idaho June 6, 2008)................ 18-19

*Allwaste, Inc. v. Hecht,* 65 F.3d 1523 (9th Cir. 1995) ...................................................16

*AMX Int'l, Inc. v. Battelle Energy Alliance, LLC*, No. CV-09-210-E-BLW, 2009 WL 5064561 (D. Idaho Dec. 16, 2009) .................................................... 3-4, 27, 29

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)...........................................8, 10

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................ *passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................4, 12, 25, 29

*Bolden v. KB Home*, 618 F. Supp. 2d 1196 (C.D. Cal. 2008).........................................3

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)..................................13

*Cole v. Higgins*, No. 93-0478-S-EJL, 1995 WL 341091 (D. Idaho Jan. 23, 1995)......................16

*Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) .............................5

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004).......................................11

*Enriquez v. J.P. Morgan Chase Bank, N.A.*, No. 2:08-cv-01422-RCJ-LRL, 2009 WL 160245 (D. Nev. Jan. 22, 2009)........................................................................40

*Fidelity Summer St. Trust v. Toronto Dominion (Texas), Inc.*, No. Civ. A.02-11285-GAO, 2002 WL 1858763 (D. Mass. Aug. 14, 2002) ..................................................................23

*First Citizens Fed. Sav. and Loan Ass'n v. Worthen Bank & Trust Co.*, 919 F.2d 510 (9th Cir. 1990) ...........................................................................................................23

*Gen. Sec. Indem. Co. of Ariz. v. Great N. Ins. Co.*, No. CV 06-0032-S-MHW, 2007 WL 845857 (D. Idaho Mar. 19, 2007)............................................................... 15-16

*Goodwin v. Ex'v. Trustee Servs.*, No. 3:09-CV-306-ECR-PAL, 2010 WL 234786 (D. Nev. Jan. 8, 2010) ....................................................................................................36

*Gowen v. Tiltware, LLC*, No. 2:08-cv-01581-RCJ-RJJ, 2009 WL 1441653 (D. Nev. May 19, 2009) ......................................................................................................21, 26

*Green v. Beazer Homes Corp.*, No. 3:07-1098-CMC, 2007 WL 2688612 (D.S.C. Sept. 10, 2007) ...............................................................................................................6

*Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995)...........................................9

*HEMI Group, LLC v. City of N.Y.*, 130 S. Ct. 983 (2010)........................................ 7-8

*Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH-RJJ, 2009 WL 4893185 (D. Nev. Dec. 16, 2009)........................................................................................38

## TABLE OF AUTHORITIES (cont'd)

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)...................................................... 7-8, 10

*Honolulu Oil Corp. v. Kennedy*, 251 F.2d 424 (9th Cir. 1957) .............................................. 23-24

*Howard v. Am. Online, Inc.*, 208 F.3d 741 (9th Cir. 2000) ............................................................14

*Hudnall v. Panola County*, No. 2:06-CV-0490-RCJ-LRL, 2007 WL 1521446 (D. Nev. May 22, 2007)..........................................................................................................................32

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, Nos. C-05-04726RMW & C-06-00537RMW, 2007 WL 486367 (N.D. Cal. Feb. 12, 2007).......................................14

*In re Jamster Mktg. Litig.*, No. 05-CV-0819 JM(CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009).......................................................................................................................14

*In re Taylor*, No. 08-60242-13, 2008 WL 4723364 (Bankr. D. Mont. Oct. 23, 2008)..................30

*Incorp Servs., Inc. v. Nev. State Corporate Network, Inc.*, No. 2:07-CV-001014-KJD-PAL, 2008 WL 4527834 (D. Nev. Sept. 30, 2008) ..........................................................16

*Kaing v. Pulte Homes, Inc.*, No. 09-5057-SC, 2010 WL 625365 (N.D. Cal. Feb. 18, 2010)..........6

*Laxalt v. McClatchy*, 622 F. Supp. 737 (D. Nev. 1985) ................................................................36

*Leduc v. Micron Tech.*, No. CV-04-531-S-BLW, 2005 WL 2847427 (D. Idaho Oct. 17, 2005) ........................................................................................................................................22

*Lochhead v. Alacano*, 662 F. Supp. 230 (D. Utah 1987)........................................................ 25-26

*Loritz v. 9th Cir.*, 382 F.3d 990 (9th Cir. 2004).............................................................................5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................. 4-5

*Mayor and City Council of Balt. v. Wells Fargo Bank, N.A.*, No. JFM 1:08 CV-00062, 2010 WL 46401 (D. Md. Jan. 6, 2010)................................................................................6

*Menjivar v. Trophy Props. IV DE, LLC*, No. C- 06-03086SI, 2006 WL 2884396 (N.D. Cal. Oct 10, 2006).................................................................................................. 14-15

*Mertens v. Shensky*, No. CV05-147-N-EJL, 2006 WL 173651 (D. Idaho Jan. 23, 2006).............35

*Miletak v. Allstate Ins. Co.*, No. C-06-03778-JW, 2009 WL 1371412 (N.D. Cal. May 15, 2009) ........................................................................................................................................13

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) ......................................11

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001)........................................................................21

*Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406 (D. Nev. 1995) ................................... 18-19

*Nugget Hydroelec., L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992) ........................12

## TABLE OF AUTHORITIES (cont'd)

*Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957 (9th Cir. 1999) ............................................................................................. 8-9

*Orr v. Bank of Am.*, 285 F.3d 764 (9th Cir. 2002) ...................................................... 11

*Paul Steelman Ltd. v. HKS, Inc.*, No. 2:05-cv-01330-BES-RJJ, 2007 WL 295610 (D. Nev. Jan. 26, 2007) ....................................................................................... 34-35

*Quach v. Cross*, No. CV-03-09627, 2004 WL 2860346 (C.D. Cal. June 10, 2004) ..................... 6

*Rae v. Union Bank*, 725 F.2d 478 (9th Cir. 1984) ....................................................... 13

*Resolution Trust Corp. v. BVS Dev.*, 42 F.3d 1206 (9th Cir. 1994) ......................... 21-22

*Rivera v. Philip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005) ...................................... 18

*Robison v. Caster*, 356 F.2d 924 (7th Cir. 1966) ....................................................... 25

*Ronan Tel. Co. v. Alltel Commc'ns,* No. CV 06-99-MDWM, 2007 WL 433278 (D. Mont. Feb. 2, 2007) .................................................................................................... 32

*Royce Int'l Broad. Corp. v. Field*, No. C 99-4169 SI, 2000 WL 236434 (N.D. Cal. Feb. 23, 2000) .......................................................................................................... 15

*Rynearson v. Wells Fargo Home Mortgage.*, No. CV04-654-S-EJL, 2005 WL 1364561 (D. Idaho June 8, 2005) .......................................................................................... 22

*Santacruz v. United Pac. Ins. Co.*, 650 F. Supp. 32 (D. Nev. 1986) ...................... 22, 37

*Schreiber Distrib. Co. v. Serv-Well Furniture Co. Inc.*, 806 F.2d 1393 (9th Cir. 1986) .............. 11

*Sever v. Alaska Pulp Corp.,* 978 F.2d 1529 (9th Cir. 1992) ....................................... 13

*Shaw v. Lehman Bros. Bank, FSB*, No. CV-08-406-S-BLW, 2009 WL 790166 (D. Idaho Mar. 20, 2009) ........................................................................................................ 4

*Silver Valley Partners, LLC v. De Motte*, No. 06-429-N-ELJ, 2007 WL 2802315 (D. Idaho Sept. 24, 2007) ..................................................................................... 16

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ............................................ 5

*State Farm Mut. Auto. Ins. Co. v. Ammann,* 828 F.2d 4 (9th Cir. 1987) ..................... 15

*Statewide Rent-A-Car, Inc. v. Subaru of Am.*, 704 F. Supp. 183 (D. Mont. 1988) ...................... 27

*Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012 (D. Idaho 2005) .................... 16

*Styles v. State Farm Mut. Auto. Ins. Co.*, No. 2:06-CV-1291-RCJ-PAL, 2007 WL 1435005 (D. Nev. May 14, 2007) ............................................................................. 30

*Sun Valley Bronze, Inc. v. Nobilus, LLC*, No. CV 08-345-S-EJL, 2008 WL 5234055 (D. Idaho Dec. 12, 2008) ......................................................................................... 4

## TABLE OF AUTHORITIES (cont'd)

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008)......................................13

*Tingley v. Beazer Homes Corp.*, No. 3:07-cv-176, 2008 WL 1902108 (W.D.N.C. Apr. 25, 2008) .............................................................................................................................5-6

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990)........................................3

*Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-01257-RCJ-PAL, 2009 WL 3754209 (D. Nev. Nov. 5, 2009) ..............................................................................................39

*Truckstop.net v. Sprint Commc'ns Co.*, 537 F. Supp. 2d 1126 (D. Idaho 2008) ..........................34

*U.S. v. Benny*, 786 F.2d 1410 (9th Cir. 1986).............................................................................13

*Velasquez v. HSBC Mortgage Servs.*, No. 2:09-CV-00784-KJD-LRL, 2009 WL 2338852 (D. Nev. July 24, 2009)......................................................... 20, 24, 33-34

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................................5-6

*Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904(RJS), 2009 WL 2356131 (S.D.N.Y. July 27, 2009) .............................................................................................31

*Winchell v. U.S. Dep't of Agric.*, 961 F.2d 1442 (9th Cir. 1992) ........................................... 39-40

*World Wrestling Entm't v. Jakks Pac.,* 530 F. Supp. 2d 486 (S.D.N.Y. 2007) ..........................25

### State Cases

*Aardema v. U.S. Dairy Systems, Inc.*, 215 P.3d 505 (Idaho 2009) ..............................................34

*Amundson v. Wortman*, 777 P.2d 315 (Mont. 1989) ...................................................................19

*Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699 (Nev. 1995)..............................30

*Bank Computer Network Corp. v. Cont'l Ill. Nat'l Bank and Trust Co.*, 442 N.E.2d 586 (Ill. App. 1982) ........................................................................................................25

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382 (Nev. 1998) ....................................................15, 20

*Barrett v. Holland & Hart*, 845 P.2d 714 (Mont. 1993)..............................................................20

*Beco Constr. Co. v. Bannock Paving Co.*, 797 P.2d 863 (Idaho 1990) ........................................18

*BHA Invs., Inc. v. State*, 63 P.3d 474 (Idaho 2003) ..............................................................30, 32

*Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 804 P.2d 900 (Idaho 1991)..................................................................................................24, 33

*C. Haydon Ltd. v. Montana Mining Props., Inc.*, 864 P.2d 1253 (Mont. 1993)...........................16

*Collins v. Union Fed. Savs. & Loan*, 662 P.2d 610 (Nev. 1983)................................................35

## TABLE OF AUTHORITIES (cont'd)

*Country Cove Dev., Inc. v. May*, 150 P.3d 288 (Idaho 2006)........................................................15

*Curtis v. Becker*, 941 P.2d 350 (Idaho App. 1997)......................................................................30

*Duffy v. Butte Teachers Union, No. 332*, 541 P.2d 1199 (Mont. 1975)........................................35

*Edwards v. Cascade County*, 212 P.3d 289 (Mont. 2009)............................................................30

*Farrell v. Whiteman*, 200 P.3d 1153 (Idaho 2009) ......................................................................30

*Gonzales v. City of Bozeman*, 217 P.3d 487 (Mont. 2009)............................................................33

*Gray v. Tri-Way Constr. Servs., Inc.*, 210 P.3d 63 (Idaho 2009)..................................................19

*Grenz v. Medical Management Northwest, Inc.*, 817 P.2d 1151 (Mont. 1991)...........................34

*Groob v. Keybank*, 843 N.E.2d 1170 (Ohio 2006) ......................................................................24

*Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73 (Idaho 2005)..............................................31

*In re Rules of Prof'l Conduct & Ins. Imposed Billing Rules & Procedures*, 2 P.3d 806
     (Mont. 2000) ......................................................................................................................21

*Intermountain Constr., Inc. v. City of Ammon*, 841 P.2d 1082 (Idaho 1992)...............................20

*J.J. Indus., LLC v. Bennett*, 71 P.3d 1264 (Nev. 2003) ...............................................................27

*Ludwig v. Spoklie*, 930 P.2d 56 (Mont. 1996) ....................................................................... 37-38

*Mannos v. Moss*, 155 P.3d 1166 (Idaho 2007) ....................................................................32, 34

*May v. ERA Landmark Real Estate of Bozeman*, 15 P.3d 1179 (Mont. 2000) ............................15

*McPheters v. Maile*, 64 P.3d 317 (Idaho 2003) .........................................................................34

*Nanopierce Techs., Inc. v. Depository Trust and Clearing Corp.*, 168 P.3d 73 (Nev.
     2007) ............................................................................................................................. 35-36

*Olson v. Iacometti*, 533 P.2d 1360 (Nev. 1975)..........................................................................38

*Partout v. Harper*, 183 P.3d 771 (Idaho 2008)..........................................................................38

*Phelps v. Frampton*, 170 P.3d 474 (Mont. 2007) ................................................................. 38-39

*Pope v. Intermountain Gas Co.*, 646 P.2d 988 (Idaho 1982).......................................................36

*Prod. Credit Ass'n of Lancaster v. Croft*, 423 N.W.2d 544 (Wis. App. 1988) ..................... 24-25

*Pulse v. North Am. Land Tit. Co. of Mont.*, 707 P.2d 1105 (Mont. 1985)....................................24

*Randolf V. Peterson, Inc v. J.R. Simplot Co.*, 778 P.2d 879 (Mont. 1989)............................ 27-28

<u>TABLE OF AUTHORITIES (cont'd)</u>

*Simmons v. Jenkins*, 750 P.2d 1067 (Mont. 1988)..................................................................22

*Solle v. W. States Ins. Agency*, 999 P.2d 328 (Mont. 2000).........................................37

*Sowards v. Rathbun*, 8 P.3d 1245 (Idaho 2000) ..................................................16

*Stonewall Surplus Lines Ins. Co. v. Farmers Ins. Co. of Idaho*, 971 P.2d 1142 (Idaho 1998) ..................................................................................................39

*Story v. City of Bozeman*, 791 P.2d 767 (Mont. 1990) ...................................39

*Tolley v. THI Co.*, 92 P.3d 503 (Idaho 2004)................................................37

*Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172 (Nev. 2008).........................................33

*Unionamerica Mortgage & Equity Trust v. McDonald*, 626 P.2d 1272 (Nev. 1981) ............ 30-31

*Witt v. Jones*, 722 P.2d 474 (Idaho 1986) ..................................................18

**<u>Statutes and Rules</u>**

18 U.S.C. § 1341 ...................................................................................................11

18 U.S.C. § 1343 ...................................................................................................11

18 U.S.C. § 1962.......................................................................................... 6, 12-15

Fed. R. Civ. P. 9(b) ............................................................................... *passim*

Fed. R. Civ. P. 11 ...................................................................................................3

Fed. R. Civ. P. 12 ................................................................................4, 5, 36, 40

Mont. Code Ann. § 27-2-203 (2009)...................................................26, 32

Nev. Rev. Stat. § 11.190(3)(d) (2009)................................................26

**<u>Secondary Sources</u>**

Adam R. Waldman, *OTC Derivatives & Systemic Risk: Innovative Finance or the Dance into the Abyss?*, 43 Am. Univ. L. Rev. 1023 (1994) ...........................................3

Daniel P. Cunningham & William P. Rogers, Jr., *Netting is the Law*, 746 Prac. L. Inst. 177 (June 25, 1991)...................................................................................3

Restatement (Second) of Contracts § 302 (1981)....................................38

Restatement (Second) of Torts § 766 (1977) ...................................27

Defendants Credit Suisse AG, Credit Suisse Securities (USA), LLC, "Credit Suisse First Boston" and "Credit Suisse Cayman Island Branch"[1] (collectively, "Credit Suisse"), by and through their undersigned attorneys, submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("Complaint" or "SAC").

## **INTRODUCTORY STATEMENT**

Relying on a vacated Bankruptcy Court Order,[2] incendiary and completely irrelevant allegations, and labels, conclusions, and formulaic recitations of the elements of causes of action, Plaintiffs seek a billion dollar payday.   They purport to represent a class of wealthy resort homeowners against Defendants that had no relationship, contractual or otherwise, with any of the purported class members and bear no factual or legal responsibility for Plaintiffs' alleged losses.   Indeed, despite claiming they were defrauded by Credit Suisse, it is noteworthy that Plaintiffs fail to cite a single specific misrepresentation made by Credit Suisse to any of them in their rambling, repetitive, and internally inconsistent 115-page Complaint.   This is not surprising because Credit Suisse signed no contracts with Plaintiffs, undertook no obligations to them, and never had any relationship with them at all.

The loans at issue in the Complaint were made to developers of luxury resort properties, not to Plaintiffs.   Plaintiffs, owners of homes or home sites at the resorts, purchased their homes from those developers, home builders or other third parties, not from Credit Suisse.   Thus, Credit Suisse stands accused of "predatory lending" by persons to whom Credit Suisse neither lent any money, sold any property, or made any commitments.   Moreover, Credit Suisse is accused of improprieties in connection with appraisals of real estate by persons whose vacation

---

[1]     Credit Suisse First Boston LLC was a Delaware Limited Liability Company and is the former name of Defendant Credit Suisse Securities (USA) LLC.

[2]     Plaintiffs repeatedly cite an Order issued by a bankruptcy court in Montana—which has been vacated and at any rate would have no precedential value in this proceeding.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

homes were never appraised, taken as collateral, or foreclosed on by Credit Suisse or Cushman & Wakefield.   And Credit Suisse has been sued for fraudulent and negligent misrepresentation by Plaintiffs to whom Credit Suisse made *no* representations—fraudulent, negligent, or otherwise.

The Complaint is premised on an alleged "loan to own" business strategy that is simply illogical.   According to the Complaint, Credit Suisse deliberately arranged loans to four developers for more money than the developers could actually repay in the hope of foreclosing on and gaining control of those developers' properties for its lenders.   Plaintiffs claim that Credit Suisse, foreseeing in 2003 and 2004 the unprecedented downturn in the real estate market that would occur several years later (SAC ¶ 129), deliberately syndicated loans into that doomed market, intending that the lenders would suffer staggering losses and be compelled to foreclose on highly distressed collateral.   The supposed rationale for this suicidal business strategy was for lenders to ultimately take possession of the resort properties, worth a fraction of the loan amounts, in what Credit Suisse supposedly knew would be a severely depressed real estate market.   This Court is not required to suspend its common sense in considering and evaluating Plaintiffs' absurd claims.   *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense.").

The Complaint also is based on a demonstrably false notion—that the resort loans made by Credit Suisse to the developers were somehow improper because they did not comply with the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA").[3]   To the

---

[3]        The Complaint includes a number of other baseless allegations, including, by way of example: (i) a claim that Credit Suisse was a Lending Advisor to the developers (SAC ¶ 42), when the Credit Agreements show that not to be true, (ii) a claim that Credit Suisse created its Cayman Island Branch in 2005 for the purpose of making these loans (*id.* ¶ 61), when it was

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 2**

contrary, FIRREA only applies to lending activities by banks or savings and loan associations

that are federally chartered or federally insured.[4]   Here, the Complaint itself alleges that the

loans were made by the Cayman Islands branch of Credit Suisse—not a U.S. bank—and none of

the entities that purchased interests in or funded the loan was a federally regulated bank.   *See*

SAC ¶ 39.   It is significant that Plaintiffs mention FIRREA dozens of times in the Complaint but

do not cite a single provision of the statute as being violated by any of the loans in question.

The lack of any relationship between Plaintiffs and Credit Suisse defeats every one of

Plaintiffs' eight Causes of Action.   For the reasons discussed below, Plaintiffs' claims cannot

withstand scrutiny, and the Complaint should be dismissed.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."   *Iqbal*, 129 S. Ct. at 1949;

*see also AMX Int'l, Inc. v. Battelle Energy Alliance, LLC*, No. CV-09-210-E-BLW, 2009 WL

---

created years before, (iii) a claim that there is some connection between the Iranian bank
sanctions and this case (*id.* ¶ 37), and (iv) several general, grouped allegations that Credit Suisse
made representations to "developers *and homeowners*."   *Id.* ¶ 79 (emphasis added).   Plaintiffs
needed a Rule 11 basis for making these allegations, and Credit Suisse reserves the right to seek
costs and attorneys fees in defending this action to the extent Plaintiffs lacked such a good-faith
basis.   *See* Fed. R. Civ. P. 11(b)-(c); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358,
1362-67 (9th Cir. 1990) (affirming imposition of sanctions on an attorney who filed complaint
for improper purpose and without reasonable inquiry into the facts).

[4]        Adam R. Waldman, *OTC Derivatives & Systemic Risk: Innovative Finance or the Dance
into the Abyss?*, 43 AM. UNIV. L. REV. 1023, 1071 n.333 (1994) ("FIRREA would not apply to
an unchartered or non-federally insured bank or savings institution."); *see also Bolden v. KB
Home*, 618 F. Supp. 2d 1196, 1203-04 (C.D. Cal. 2008) ("FIRREA is clearly delimited to the
regulation of 'federally related transaction[s].' … The language of the statute unambiguously
states that the concern of the drafters was to protect 'Federal financial and public policy
interests' by requiring appraisals in 'connection with federally related transactions. . . .'")
(internal citations omitted); *id.* at 1204 n.4 ("A 'federally related transaction' is defined as one
that (1) 'a federal financial institutions regulatory agency or the Resolution Trust Corporation
engages in, contracts for, or regulates' and (2) requires the services of an appraiser.")
(internal citations omitted); Daniel P. Cunningham & William P. Rogers, Jr., *Netting is the Law*,
746 PRAC. L. INST. 177, 179-80 n.1 (June 25, 1991) ("FIRREA would not apply in the case of a
bank or savings institution that is neither Federally chartered nor Federally insured.").

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 3**

5064561, at *1 (D. Idaho Dec. 16, 2009); *Sun Valley Bronze, Inc. v. Nobilus, LLC*, No. CV 08-

345-S-EJL, 2008 WL 5234055, at *2 (D. Idaho Dec. 12, 2008) (Lodge, J.).   "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 129 S. Ct. at

1949.   Unless Plaintiffs' well-pleaded allegations have "nudged [their] claims across the line

from conceivable to plausible," the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   In addition, allegations that are merely

"labels[,] conclusions, [or] formulaic recitation[s] of the elements of a cause of action" should

*not* be accepted as true.   *Twombly*, 550 U.S. at 555; s*ee also Shaw v. Lehman Bros. Bank, FSB*,

No. CV-08-406-S-BLW, 2009 WL 790166, at *1 (D. Idaho Mar. 20, 2009).

## <u>ARGUMENT AND AUTHORITIES</u>

## I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING

Plaintiffs lack standing to bring this action as their Complaint alleges neither an injury in

fact nor the requisite causal connection between such an injury and Credit Suisse's purported

wrongdoing.   Plaintiffs bear the burden to establish standing, which is "not [a] mere pleading

requirement[,] but rather an indispensable part of the plaintiff's case, [and] each element must be

supported in the same way as any other matter on which the plaintiff bears the burden of proof."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).   To establish standing, Plaintiffs must

demonstrate first, "an injury in fact – an invasion of a legally protected interest which is (a)

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; second,

"a causal connection between the injury and the conduct complained of"; and third, that such

injury is likely to be redressed by a favorable decision.   *Id.* at 560-61.   Where, as here, the

plaintiff is not directly the object of the allegedly wrongful action, standing "is ordinarily

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 4**

substantially more difficult to establish."   *Id.* at 562 (internal quotations and citations omitted).

Without standing, this Court lacks subject matter jurisdiction and must dismiss the Complaint.

The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) first and

foremost because Plaintiffs have suffered no concrete and particularized injury in fact.   The

Complaint lacks any direct allegation of property sales for less than the purchase price, and

contains no specific allegations of any actual, pecuniary harm.   Perceived but unrealized

diminutions in market value have consistently been deemed insufficient to satisfy the injury in

fact element of standing.   *See Tingley v. Beazer Homes Corp.*, No. 3:07-cv-176, 2008 WL

1902108, at *4 n.3 (W.D.N.C. Apr. 25, 2008) ("If Plaintiffs chose [sic] to remain in their home

until more favorable economic conditions arrive, then they will have realized no loss at all.").

Second, even were Plaintiffs to satisfy the injury in fact element, they have not

established, and cannot establish, the requisite causal connection between such an injury and any

actions of Credit Suisse.   In order to establish standing, "the injury has to be fairly traceable to

the challenged action of the defendant, and not the result of the independent action of some third

party not before the Court."   *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted);

*see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (plaintiff must establish

that "the asserted injury was the consequence of the defendant's action.").   Further, this causal

connection "cannot be too speculative, or rely on conjecture" about the behavior of other parties.

*Loritz v. 9th Cir.*, 382 F.3d 990, 992 (9th Cir. 2004) (quoting *Ecological Rights Found. v. Pac.

Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000)).   The requisite causation is absent where the

injury could have been caused by other factors.   *See E. Ky. Welfare Rights Org.*, 426 U.S. at 44

(citing *Warth v. Seldin*, 422 U.S. 490, 506 (1975) (finding the injury complained of was the

result of the economics of the local housing market rather than respondent's allegedly illegal

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 5**

acts)).   These Plaintiffs are not the first to attempt to manufacture a causal connection between allegedly predatory loans to other borrowers and a subsequent decline in property values; courts consistently dismiss such claims as being too tenuous and speculative."[5]   This is especially so where there is no contractual relationship between the parties.   As the court stated in *Tingley*:

> [T]he persons who were deceived by the wrongful acts of the Defendants were not the Plaintiffs or proposed class members, but rather the purchasers whose loan applications were falsified, as well as those prospective assignees of the mortgage notes themselves.   Conspicuously absent from the Plaintiffs' allegations is any assertion that the Defendants practiced such deception with regard to the loans of the Plaintiffs or any class members.   In fact, Plaintiffs do not allege that they or any class member had any contract or dealings of any kind with either Defendant. . . .

2008 WL 1902108, at *4.   Thus, Plaintiffs do not have standing to assert their claims.

## II.   PLAINTIFFS HAVE FAILED TO STATE A RICO CLAIM

The RICO Act has been called "the litigation equivalent of a thermonuclear device." *Quach v. Cross*, No. CV-03-09627, 2004 WL 2860346, at *4 (C.D. Cal. June 10, 2004) (internal quotation omitted).   Therefore, before Plaintiffs are allowed to proceed with a RICO claim, they must first meet certain pleading requirements, requiring more than a mere recitation of the statute, including, *inter alia*, alleging that Defendants' conduct was the proximate cause of their claimed damages and satisfying Rule 9(b).   Here, Plaintiffs assert claims under 18 U.S.C. § 1962(c), which forbids participating in an enterprise's affairs through a pattern of racketeering activity, as well as under 18 U.S.C. §§ 1962(a)-(b), which make it unlawful for a person to reinvest income derived from a pattern of racketeering in a RICO enterprise or to acquire a RICO enterprise through a pattern of racketeering.   However, as discussed below, Plaintiffs' RICO

---

[5]   *See, e.g.*, *Kaing v. Pulte Homes, Inc.*, No. 09-5057-SC, 2010 WL 625365, at *5-6 (N.D. Cal. Feb. 18, 2010); *Mayor and City Council of Balt. v. Wells Fargo Bank, N.A.*, No. JFM 1:08 CV-00062, 2010 WL 46401, at *2-4 (D. Md. Jan. 6, 2010); *Tingley*, 2008 WL 1902108, at *4; *Green v. Beazer Homes Corp.*, No. 3:07-1098-CMC, 2007 WL 2688612, at *3 (D.S.C. Sept. 10, 2007).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 6**

claim woefully fails to meet the necessary requirements for pleading such a cause of action and should be dismissed.

> A.    Credit Suisse's Alleged Misconduct Was Not the Proximate Cause of Plaintiffs' Alleged Harm

Under Supreme Court law, a plaintiff must establish proximate cause to recover under RICO—that is, the plaintiff must plead a direct relationship between the alleged misconduct and the alleged harm.  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).   Even if all the other requirements for pleading a RICO claim are met, which they are not, "[a] link that is 'too remote,' 'purely contingent' or 'indirect' is insufficient."   *HEMI Group, LLC v. City of N.Y.*, 130 S. Ct. 983, 985 (2010) (citing *Holmes*, 503 U.S. at 271).

In *Holmes*, the SIPC, a corporation required to reimburse customers of broker-dealers that are unable to meet their financial obligations, claimed that Holmes conspired with others to manipulate stock prices.   When the market detected the fraud, the resulting decline in stock prices caused two broker-dealers to suffer financial difficulties, requiring the SIPC to pay $13 million to cover their customers' claims.   The Court dismissed the SIPC's RICO claim because the "link [wa]s too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers.   That is, the conspirators have allegedly injured these customers only insofar as the stock manipulation first injured the broker-dealers and left them without the wherewithal to pay customers' claims."   *Holmes*, 503 U.S. at 271.

The Supreme Court further explained that "[a]llowing suits by those injured only indirectly would open the doors to 'massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits.'"   *Id.* at 274 (internal quotation omitted).   The Court identified three core problems with allowing

indirectly harmed plaintiffs to sue under RICO.   First, it would be difficult to ascertain the amount of plaintiffs' damages attributable to defendant's alleged misconduct as opposed to other factors.   The Court explained that the customers' inability to collect their monies could have been caused by a variety of factors unrelated to the alleged stock manipulation, including the broker-dealers' poor business practices or their failure to anticipate changes in the financial markets.   *Id.* at 273.   Second, a court would need to adopt complicated rules to apportion the possible recoveries (in *Holmes*, between the broker-dealers and the customers) to avoid the risk of multiple recoveries.   *Id.*   Third, the more directly impacted party, the broker-dealers, could be counted on to bring suit and vindicate the law if the allegations contained in the complaint were true.   *Id.*   The Ninth Circuit analyzes the same three issues set forth in *Holmes* when determining whether an injury is too remote to allow recovery under RICO.   *See Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999).

Since *Holmes*, the Supreme Court and Ninth Circuit have repeatedly dismissed RICO claims where the claimed misconduct was not the proximate cause of the claimed injury.   *See, e.g.*, *HEMI Group*, 130 S. Ct. at 990 (dismissing RICO claim where harm caused to City was customers' failure to pay taxes, not defendants' failure to file Jenkins Act reports of cigarette sales in the State); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (dismissing RICO claim that competitor failed to charge sales tax and submitted fraudulent tax returns in order to reduce prices and gain competitive advantage because direct victim of conduct was the State of New York and the cause of the harm was a set of actions (lowering of prices) that was distinct from the alleged RICO violation (defrauding the State)); *Or. Laborers*, 185 F.3d at 963 (dismissing RICO claim brought by health plans against tobacco companies because claimed

damage was based on injury to smokers and thus there was no direct link between the claimed

harm and tobacco companies' alleged misconduct); *Hamid v. Price Waterhouse*, 51 F.3d 1411,

1420 (9th Cir. 1995) (holding depositors of failed bank lacked standing to bring RICO claim;

only bank or its receiver may sue for recovery).[6]

Here, Plaintiffs' alleged injury is even more remote than the harm complained of by the

plaintiff in *Holmes*, where the Court found the SIPC's injury too remote even though it lost

millions of dollars as a result of improper stock manipulation by Holmes.   Plaintiffs claim that

Credit Suisse defrauded certain land developers by lending them excessive amounts based on

inflated appraisals conducted by Cushman & Wakefield.   The Complaint alleges that the

developers were unable to pay the debt service and complete the promised amenities and that,

when the developers defaulted on the loans, Credit Suisse and/or its agents took over the

properties, resulting in losses in value to Plaintiffs' homes.   As in the cases discussed above, the

harm claimed here—the reduction in value of Plaintiffs' homes because of missing resort

amenities—was not proximately caused by Credit Suisse's facilitation of loans based on alleged

fraudulently obtained appraisals.   Instead, the alleged harm to Plaintiffs was caused by

numerous factors, including the worst financial crisis since the 1930s, the collapse in real estate

values, the enormous loss of wealth by potential purchasers, and ultimately by the developers

defaulting on their loans and/or on their obligations to complete the amenities desired by the

homeowners.

Each of the three factors identified in *Holmes* and relied upon by courts in the Ninth

Circuit is present here and clearly results in Plaintiffs' claims being too remote to support

---

[6]     *Hamid* also held that "[c]reditors of bankrupt companies generally do not have standing under RICO" because such claims are derivative of the harm to the company.   51 F.3d at 1420. Plaintiffs' purported class includes creditors who do not have standing to bring a RICO claim. SAC ¶ 25.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 9**

recovery under RICO.   First, it will be impossible to ascertain the amount (if any) of Plaintiffs' alleged damages attributable to the loans as opposed to other factors.   As noted above, a number of factors other than supposed predatory lending, such as the depressed real estate market, the turbulent state of the national economy, and the collapse of the credit markets, have resulted in significant reductions in property values and loss of personal wealth throughout the United States.   These factors are even more pronounced than those identified in *Holmes*.

Second, the Court would have to adopt complicated rules apportioning damages to avoid the risk of multiple recoveries.   Even more so than in *Holmes*, where the Supreme Court was concerned about apportioning potential recoveries just between the broker-dealers and their customers, the Court here would be faced with an exceedingly difficult task, as arguably the resort developers, the developers' investors, as well as the contractors and home builders slated to build the homes, among others, could seek to become plaintiffs if a claim this remote were allowed to proceed.   Properly apportioning damages between and among all of these potential plaintiffs while attempting to avoid duplicative recoveries would be speculative, time-consuming, and perhaps an impossible task.   Further, as noted in *Holmes*, an additional concern arises here because the four developments at issue are involved in various stages of bankruptcy proceedings.   Allowing a suit by indirectly (if at all) injured victims, such as Plaintiffs here, "could be an attempt to circumvent the relative priority [their] claims would have in the directly injured victim[s'] liquidation proceedings."   *Holmes*, 503 U.S. at 259.

Third, if the allegations in the Complaint are true, the homeowners could have been expected to bring claims against the developers, with whom they actually had a direct relationship.   But "[t]here is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."   *Anza*, 547 U.S. at 460.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 10**

Thus, under established law, as set forth above, there can be no question that any injuries suffered by Plaintiffs were not proximately caused by Credit Suisse's alleged conduct. Accordingly, the RICO claim should be dismissed.

B.    Plaintiffs Have Not Adequately Pled the Predicate Acts of Fraud

A plaintiff asserting mail and wire fraud as predicate acts under RICO must meet the particularity requirements of Rule 9(b).   *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).   These requirements have an even greater urgency in civil RICO cases, where Defendants are not afforded the "check" of prosecutorial discretion that exists in criminal cases.   *See Schreiber Distrib. Co. v. Serv-Well Furniture Co. Inc.*, 806 F.2d 1393, 1402 (9th Cir. 1986) (Kennedy, J., concurring).   To plead mail or wire fraud, Plaintiffs must allege (1) a scheme or artifice to defraud or to obtain money or property by means of false pretenses, representations, or promises; (2) a use of the mails or interstate wires for the purpose of executing the scheme; and (3) a specific intent to defraud, either by devising, participating in or abetting the scheme.   *See* 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); *Orr v. Bank of Am.*, 285 F.3d 764, 782 (9th Cir. 2002).   Plaintiffs also must set forth particular facts sufficient to establish an underlying fraud, including: (1) the date, time and place of the alleged fraud and other details of the alleged fraud; (2) who made a representation to whom; and (3) the content of the misrepresentation.   *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004); *accord Moore*, 885 F.2d at 541 ("Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

In their Complaint, Plaintiffs have not even attempted to meet these requirements. While Plaintiffs identify a list of employees who allegedly participated in the fraudulent acts (*see* SAC ¶ 237), they fail to provide any specifics regarding any alleged fraudulent communication.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 11**

For example, Plaintiffs state only that the alleged mail and wire fraud took place "[d]uring 2004 and continuing to at least 2008" or "on dates presently unknown to the Plaintiff class" or "on dates and times presently unknown to Plaintiffs."  *Id.* ¶ 217.   Similarly, Plaintiffs fail to state who received the alleged communications, in almost all cases fail to specify who within Credit Suisse or Cushman & Wakefield made the alleged communications, and in almost all cases fail to state any details regarding the contents of the communications.   *See, e.g.*, *id.* ¶¶ 104, 147, 164, 183.   Accordingly, the RICO claim fails to meet Rule 9(b) and should be dismissed.

C.     Plaintiffs Fail to Allege Any Violation of Sections 1962(a)-(b)

In order to plead a claim under Sections 1962(a)-(b), Plaintiffs must allege specific damages resulting from the reinvestment of the RICO proceeds into the enterprise or resulting from the acquisition of the RICO enterprise through a pattern of racketeering.   Nowhere in their Complaint do Plaintiffs make this required showing, other than with a formulaic recitation of the statute itself, which is plainly insufficient.   *See Nugget Hydroelec., L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437-38 (9th Cir. 1992) (dismissing Section 1962(a) claim where allegations were "general, conclusory, and vague").

Plaintiffs' conclusory statement that "Defendants as persons within the meaning of 18 U.S.C. § 1961(3), received income in the hundreds of millions of dollars derived, directly or indirectly, from a pattern of racketeering activity which was used to acquire an interest in said enterprise in violation of 18 U.S.C. § 1962(a)" (SAC ¶ 259), fails to allege the requisite damages from the reinvestment of those funds.   Likewise, Plaintiffs' vague allegation that "Defendants, as persons within the meaning of 18 U.S.C. §1961(3), through a pattern of racketeering activity, acquired and/or maintained directly or indirectly, control of said enterprise in violation of 18 U.S.C. § 1962(b)" (SAC ¶ 260), is a mere recitation of the statute and clearly insufficient under *Twombly*.   At most, Plaintiffs allege that they were damaged by the predicate acts themselves,

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 12**

which is insufficient to assert a cognizable claim under Sections 1962(a)-(b).  *See Sybersound*

*Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008) (dismissing RICO claim under

Section 1962(a) where plaintiff did not allege an investment injury separate and distinct from

injury flowing from predicate act); *Miletak v. Allstate Ins. Co.*, No. C-06-03778-JW, 2009 WL

1371412, at *6 (N.D. Cal. May 15, 2009) (dismissing RICO claims under Sections 1962(a)-(b)

because claimed injury was attributable to predicate acts of mail fraud).   Accordingly, Plaintiffs'

claims under these sub-sections of the RICO Act should be dismissed.

  D. <u>Plaintiffs Fail to Plead a RICO Enterprise</u>

  Plaintiffs have identified the members of the RICO "enterprise" as "the Credit Suisse

Defendants and Cushman & Wakefield" (SAC ¶ 205; *see also id.* ¶¶ 206-08)—in other words, all

of the current Defendants.[7]   As such, Plaintiffs have alleged that the RICO "person" (*i.e.*, the

RICO defendant) and the RICO "enterprise" are the same entity.

  Both the Supreme Court and the Ninth Circuit have held that Section 1962(c)

contemplates two separate and distinct entities: a person and an enterprise.   *See Cedric Kushner*

*Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (holding that for RICO claims brought under

Section 1962(c), plaintiffs must allege a "person" as well as a separate "entity" that is not merely

the person referred to by a different name) (citation omitted); *see also Sever v. Alaska Pulp*

*Corp.*, 978 F.2d 1529, 1533 (9th Cir. 1992); *U.S. v. Benny*, 786 F.2d 1410, 1415-16 (9th Cir.

1986) (holding that a RICO enterprise cannot also be a defendant); *Rae v. Union Bank*, 725 F.2d

478, 481 (9th Cir. 1984).   Because the Complaint fails to allege any separation between the

---

[7] The name chosen by Plaintiffs for the supposed enterprise is the same as their name for <u>one</u> of the Defendants—"Credit Suisse Cayman Island Branch" (SAC ¶ 205) or "the Credit Suisse Cayman Islands Branch enterprise" (*id.* ¶¶ 206, 210)—although they also repeatedly name "Credit Suisse Cayman Islands Branch" as *one* of the *members* of the enterprise.   *Id.* ¶¶ 206, 208.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 13**

"Defendant"/"Person" Cayman Islands branch and the "Enterprise" Cayman Islands branch,

Plaintiffs' Section 1962(c) claim should be dismissed.

In addition, a RICO plaintiff must allege an actual agreement between the defendants that

is either (i) itself a violation of RICO, or (ii) a conspiracy to violate one of Section 1962's

substantive provisions.   *See Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Plaintiffs' allegations are vague at best, and fail to allege any facts that would imply an actual

agreement between Cushman & Wakefield and Credit Suisse.   Such conclusory assertions are

insufficient to plead a plausible RICO enterprise.   *See Iqbal*, 129 S. Ct. at 1950-51.

Lastly, it is well settled that "plaintiffs cannot satisfy the requirement that they plead an

enterprise merely by pleading that . . . the business of the enterprise is co-extensive with the

ordinary business of the defendant."   *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices

Litig.*, Nos. C-05-04726RMW & C-06-00537RMW, 2007 WL 486367, at *3-4 (N.D. Cal. Feb.

12, 2007); *see also In re Jamster Mktg. Litig.*, No. 05-CV-0819 JM(CAB), 2009 WL 1456632, at

*5 (S.D. Cal. May 22, 2009) (holding there is no enterprise where "the allegations allege conduct

consistent with ordinary business conduct and ordinary business purpose").   Here, Plaintiffs'

alleged "conspiracy" conduct—*i.e.* making loans, conducting appraisals in connection with those

loans, collecting fees associated with this loan activity, and foreclosing on properties where those

loans are in default—is completely co-extensive with Defendants' ordinary and legal business.

Accordingly, Plaintiffs' RICO claims should be dismissed.

E.    Plaintiffs' Conspiracy Claims Under Section 1962(d) Should Be Dismissed

Section 1962(d) forbids participation in a conspiracy to violate Section 1962(c).   Such a

conspiracy simply cannot exist if a violation of Section 1962(c) is not possible and has not

occurred because there is no separation between the RICO "Person" and the RICO "Enterprise,"

or because, as noted above, Plaintiffs' claims are too remote.   *See Menjivar v. Trophy Props. IV*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 14**

*DE, LLC*, No. C- 06-03086SI, 2006 WL 2884396, at *13 (N.D. Cal. Oct 10, 2006) (holding that

a claim under Section 1962(d) requires adequate pleading of a claim under Section 1962(c)).

Therefore, Plaintiffs' Section 1962(d) claim should be dismissed as well.

 F. <u>Plaintiffs' RICO Claim Is Duplicative of Their Other Claims</u>

 Because Plaintiffs' RICO claims essentially are contract or common law claims masked

as RICO offenses, they should be dismissed.   *Royce Int'l Broad. Corp. v. Field*, No. C 99-4169

SI, 2000 WL 236434, at *6 (N.D. Cal. Feb. 23, 2000) ("To the extent that Plaintiffs' allegations

of mail and wire fraud are little more than allegations of state breach of contract claim, a RICO

claim is not cognizable.").[8]

## III. PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED

 A. <u>Plaintiffs Fail to Plead Fraud with the Requisite Particularity</u>

 To establish a state law cause of action for fraud, Plaintiffs must show (i) that Defendants

made a statement of fact; (ii) its falsity; (iii) its materiality; (iv) the speaker's knowledge of its

falsity; (v) the speaker's intent to induce reliance; (vi) the hearer's ignorance of the falsity of the

statement; (vii) reliance by the hearer; (viii) the hearer's right to rely; and (ix) consequent and

proximate injury.   *See Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998); *accord

Country Cove Dev., Inc. v. May*, 150 P.3d 288, 293 (Idaho 2006); *May v. ERA Landmark Real

Estate of Bozeman*, 15 P.3d 1179, 1182 (Mont. 2000); Affidavit of Ronald Hugh Small ("Small

Aff.") ¶ 13 (stating Bahamas law).[9]   Fraud may only be established by silence where the

---

[8] Plaintiffs' RICO claims also are likely time-barred under the four-year statute of
limitations, given that the complained about loans, including the use of Cushman & Wakefield
appraisals, began more than four years ago.   A RICO claim generally accrues when a plaintiff
discovers or should have discovered its injuries.   *See State Farm Mut. Auto. Ins. Co. v. Ammann,*
828 F.2d 4, 4 (9th Cir. 1987).

[9] Idaho determines choice of law using the "most significant contacts" test from the
Restatement (Second) of Conflicts, which is meant to result in application of the law of the state
with the closest relation to the claim at issue.   *See Gen. Sec. Indem. Co. of Ariz. v. Great N. Ins.*

defendant had a duty to speak.   *Sowards v. Rathbun*, 8 P.3d 1245, 1250 (Idaho 2000); Small Aff. ¶ 15.

Rule 9(b) requires a degree of specificity for fraud allegations that is entirely missing from the Complaint.   To satisfy the particularity requirement, Plaintiffs must plead with specificity "averments as to the time, the place, the identity of the parties involved, and the nature of the fraud or mistake."   *Incorp Servs., Inc. v. Nev. State Corporate Network, Inc.*, No. 2:07-CV-001014-KJD-PAL, 2008 WL 4527834, at *2 (D. Nev. Sept. 30, 2008) (citing *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1530 (9th Cir. 1995) (applying California law)); *see also Silver Valley Partners, LLC v. De Motte*, No. 06-429-N-ELJ, 2007 WL 2802315, at *4 (D. Idaho Sept. 24, 2007) (Lodge, J.) (dismissing fraud claims against certain defendants because complaint was "lacking in particularity as to the identity and role of the actors involved in each of the allegations"); *Cole v. Higgins*, No. 93-0478-S-EJL, 1995 WL 341091, at *7 (D. Idaho Jan. 23, 1995) (dismissing fraud complaint where plaintiffs failed to allege time, place, and specific content of any allegedly fraudulent representations), *aff'd*, 82 F.3d 422 (9th Cir. 1996); *C. Haydon Ltd. v. Montana Mining Props., Inc.*, 864 P.2d 1253, 1256 (Mont. 1993) (affirming dismissal of fraud claim for failure "to allege the time and place of the representation, or to whom it was made."); Small Aff. ¶¶ 8, 10, 14.

---

*Co.*, No. CV 06-0032-S-MHW, 2007 WL 845857, at *1 (D. Idaho Mar. 19, 2007).   For contract claims, the Restatement directs a court to consider "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties."   *Id.* at *2.   For tort claims, the relevant factors are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any between the parties is centered."   *Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1022 (D. Idaho 2005).   Under these analyses, the situs of each property is the appropriate law to apply here.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 16**

In a typical fraud claim, the requirement of particularity affords the defendant a realistic opportunity to prepare to defend itself against the allegations.   In this case, however, the requirement is of critical importance because of Plaintiffs' repeated blurring of the distinction between the developers/borrowers—with whom Credit Suisse actually had business dealings and other communications—and the Plaintiffs, with whom Credit Suisse had <u>no</u> relationship and to whom Credit Suisse made <u>no</u> representations and had <u>no</u> communications, fraudulent or otherwise.[10]   Plaintiffs claim that "numerous" misrepresentations were made, but the Complaint is strikingly devoid of specific facts identifying *any* representations to Plaintiffs, let alone any *mis*representations, who made the purported representations in regard to which transactions, or when, where, and to whom they were allegedly made.   These deficiencies are especially glaring given that a fraud claim requires that a representation be made *to the plaintiff*, yet the Complaint fails to identify a single specific misrepresentation made by Credit Suisse to a single homeowner.

In the one portion of their Complaint in which Plaintiffs attempt any degree of specificity—a "meeting held in Henderson, Nevada on Tuesday October 12, 2004 and Wednesday October 13, 2004"—their pleading is still deficient in that Plaintiffs fail to name a single participant in the meeting or the content of the alleged representation, both of which are

---

[10]        At certain places in the Complaint, Plaintiffs acknowledge that any representations by Credit Suisse would have been made to developers.   *See, e.g.*, SAC ¶ 53 ("Credit Suisse 'marketed' its new loan products to developers . . .").   At others, however, they generally allege that they, and other homeowners, were among the recipients.   *See, e.g., id.* ¶ 77 ("To further its scheme to defraud, Credit Suisse promised and represented to each developer, *Plaintiffs and members of the Plaintiff Class* . . .") (emphasis added); *id.* ¶ 75 ("Credit Suisse issued billions of dollars of loans to equity holders, developers, land and/or home buyers while fraudulently misrepresenting *to them* that such loans . . .") (emphasis added).   Still a third formulation of their fraud claim is that any representations were made to Credit Suisse's borrowers—the developers—but that Plaintiffs are somehow entitled to rely on them.   *See, e.g., id.* ¶ 267 ("Defendants . . . committed common law fraud by intentionally supplying materially false information to developers *and third party beneficiary Plaintiffs and Class Members* . . .") (emphasis added).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 17**

required to articulate a claim for fraud.   The Complaint also fails to state that any Plaintiff attended the meeting, either in person or telephonically.

Instead of providing the requisite specificity, Plaintiffs resort to amorphous allegations such as that "false promises and representations [were] made by Defendants to the developers of the subject resort land developments *and to Plaintiff[s] and members of the Plaintiff class . . . .*" SAC ¶ 76 (emphasis added).   Plaintiffs' motivation for obfuscation is obvious; if the alleged misrepresentations were not made *to the Plaintiffs*, they will not support Plaintiffs' fraud claim. *See Beco Constr. Co. v. Bannock Paving Co.*, 797 P.2d 863, 868 (Idaho 1990) (affirming summary judgment dismissing plaintiff's fraud claims because "the representation that Bannock Paving was a small business (element no. 1) was not directed to [plaintiff] Beco . . . .   All of Bannock Paving's representations were made to M-K or the SBA, but not to Beco.").[11]   Because Plaintiffs have not adequately pled the first and most basic element of a fraud claim—that Defendants made a representation *to them*—the claim should be dismissed.

In addition, Plaintiffs' fraud allegations fail to adequately plead reliance.   Plaintiffs do not even allege that any representations made by Defendants to the developers were thereafter communicated to them—and, obviously, they could not have relied on representations that they did not receive.   *See Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1414 (D. Nev. 1995) ("[r]eliance on alleged misrepresentations presumes that a plaintiff has actually read or heard those alleged misrepresentations"); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir. 2005) (applying Nevada law); *Adams v. U.S.*, No. 03-0049-E-BLW, 2008 WL 2357003, at *1-2

---

[11]      *See also Witt v. Jones*, 722 P.2d 474, 477-78 (Idaho 1986) (affirming dismissal on summary judgment of claim by one beneficiary of a life insurance policy against another beneficiary; plaintiff "failed to allege any facts that would support the existence of fraud or deceit on the part of defendant" where plaintiff admitted that she had had no contact with the defendant); Small Aff. ¶ 13.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 18**

(D. Idaho June 6, 2008) (denying motion to amend to add fraud claim because complaint failed to "assert that [defendant]'s fraudulent statements were passed along to plaintiffs, that [defendant] expected plaintiffs to rely on the fraudulent statements, and that plaintiffs did in fact rely on the fraud to their injury.").   Indeed, it is difficult to imagine that a builder would ever mention FIRREA in a sales pitch, let alone tell the prospective buyer of a luxury resort home that Credit Suisse had represented to the developer that its appraisal of the resort complied with FIRREA—and even more difficult to imagine that a home buyer would rely on such a statement if it were made.   In sum, Plaintiffs' rote claim of reliance is insufficient to satisfy Rule 9(b).[12]

> B.   Plaintiffs' Fraud by Non-Disclosure Claim Fails to Allege a Relationship That Would Give Rise to a Duty to Disclose

The allegation of fraud by nondisclosure should be dismissed because, as discussed *infra*, there was no relationship between Plaintiffs and Defendants, and thus no fiduciary duty or special relationship between Plaintiffs and Defendants that would give rise to a legal obligation to disclose material facts.   *See Monsanto*, 891 F. Supp. at 1416 n.3 (holding that fraud by nondisclosure could not be established where there was no special relationship between the two parties and that a "straight-forward commercial transaction" did not give rise to a duty to disclose); *Amundson v. Wortman*, 777 P.2d 315, 317 (Mont. 1989) (holding that no duty to disclose existed absent a fiduciary or confidential relationship or "a pattern of repeated concealments."); *see, e.g.*, *Gray v. Tri-Way Constr. Servs., Inc.*, 210 P.3d 63, 71 (Idaho 2009) (a duty to disclose is imposed when a fiduciary duty exists between the parties, including "when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends."); Small Aff. ¶ 15.

---

[12]   Plaintiffs' formulaic recitation of the remaining elements also does not satisfy the heightened pleading standard required to allege fraud.   SAC ¶ 267-72.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 19**

## IV.    PLAINTIFFS' CLAIM OF NEGLIGENT MISREPRESENTATION FAILS FOR THE SAME REASONS AS THE FRAUD CLAIM

Idaho courts do not recognize negligent misrepresentation as a cause of action in cases such as this one.   In jurisdictions that recognize it,[13] the negligent misrepresentation cause of action is essentially the same as the fraud count,[14] except that it does not require plaintiffs to allege or prove intent to misrepresent on the part of the speaker.   As with the fraud claim, each of these elements must be pled with particularity.   *Velasquez v. HSBC Mortgage Servs.*, No. 2:09-CV-00784-KJD-LRL, 2009 WL 2338852, at *8 (D. Nev. July 24, 2009) ("It is well established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirement."); Small Aff. ¶¶ 8, 10, 18.

Plaintiffs claim that Credit Suisse is liable "for committing negligent misrepresentations by supplying materially false information to Plaintiffs in connection with the financial transactions it entered into with the Plaintiffs."   SAC ¶ 274.[15]   For the same reasons discussed above in connection with the fraud claim, the negligent misrepresentation claim should be

---

[13]    *Intermountain Constr., Inc. v. City of Ammon*, 841 P.2d 1082, 1084 (Idaho 1992) ("Except in the narrow confines of a professional relationship between an accountant and client . . . [the Idaho Supreme Court] has rejected the tort of negligent misrepresentation.").

[14]    To state a claim for negligent misrepresentation, Plaintiffs must establish that: (i) defendant made a representation as to a past or existing material fact, (ii) the representation was untrue, (iii) regardless of its actual belief, defendant made the representation without any reasonable ground for believing it to be true, (iv) the representation was made with the intent to induce plaintiffs to rely on it, (v) plaintiffs were unaware of the falsity of the representation, acted in reliance upon the truth of the representation, and were justified in relying on the representation, and (vi) plaintiffs, as a result of their reliance, sustained damage.   *See Barrett v. Holland & Hart*, 845 P.2d 714, 717-18 (Mont. 1993); *Barmettler*, 956 P.2d at 1387; Small Aff. ¶¶ 16-17.

[15]    This allegation illustrates Plaintiffs' flippant approach to pleading multi-billion-dollar claims, which consist of writing down the elements of a cause of action and inserting Credit Suisse's name wherever "defendant" appears.   Credit Suisse *did not enter into any "financial transactions"* with these Plaintiffs, and Plaintiffs allege none.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 20**

dismissed because Plaintiffs have failed to adequately plead a misrepresentation, reliance thereon, or any of the other elements with the requisite specificity.

## V.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

### A.   There Is No Fiduciary Relationship Between Plaintiffs and Credit Suisse

A complaint alleging breach of fiduciary duty must plead facts—not bare legal conclusions—supporting both the *existence* of a fiduciary duty and a *breach* of that duty.  *See, e.g.*, *Gowen v. Tiltware, LLC*, No. 2:08-cv-01581-RCJ-RJJ, 2009 WL 1441653, at *8 (D. Nev. May 19, 2009) (dismissing claim for breach of fiduciary duty where plaintiff did not specify the nature of the duty owed to her by defendants).   Where, as here, there has never been any relationship, let alone a fiduciary relationship, between the parties, a breach of fiduciary duty claim cannot survive a motion to dismiss.   *See, e.g.*, *Navellier v. Sletten*, 262 F.3d 923, 934-37 (9th Cir. 2001) (applying California law) (affirming dismissal of claims for breach of fiduciary duty where defendants had not assumed any fiduciary duties towards plaintiffs); Small Aff. ¶¶ 21-22.

In the absence of any direct relationship—fiduciary or otherwise—with Credit Suisse, Plaintiffs invent the notion of a "tri-partite" relationship of confidence and trust among themselves, Credit Suisse and the developers of the various resort communities.   SAC ¶¶ 24, 288.   Such a three-headed fiduciary relationship apparently is without legal precedent,[16] and efforts to claim a derivative fiduciary duty have repeatedly failed.   *See Resolution Trust Corp. v.*

---

[16]   Credit Suisse was unable to locate a single case in any of the affected jurisdictions recognizing the concept of a "tri-partite" fiduciary relationship, with the possible exception of when an attorney is appointed by an insurer to represent an insured.   But in that relationship, unlike here, both of the constituent relationships (attorney-client and insurer-insured) are generally recognized as fiduciary as a matter of law.   *See In re Rules of Prof'l Conduct & Ins. Imposed Billing Rules & Procedures*, 2 P.3d 806, 814 (Mont. 2000) (noting that an attorney has fiduciary duties to both the insurer and the insured, but holding that the insured is the attorney's sole client).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 21**

*BVS Dev.*, 42 F.3d 1206, 1213-15 (9th Cir. 1994) (applying California law) (holding that defendant who loaned money to a developer did not assume fiduciary duties to plaintiffs who had a financial interest in the land being developed); *Santacruz v. United Pac. Ins. Co.*, 650 F. Supp. 32, 34 (D. Nev. 1986) (dismissing third party claimant's complaint against insurance company because insurance company owed fiduciary duty to the insured but not to third party claimants); *Simmons v. Jenkins*, 750 P.2d 1067, 1070 (Mont. 1988) (affirming dismissal of breach of fiduciary duty claim, and noting that "where [a] bank has been held to a fiduciary duty because of its advisory role the duty benefited the party being advised and not some third party"); Small Aff. ¶ 24.

Even were it theoretically possible for Plaintiffs to exploit the relationship between Credit Suisse and the developers, it would do nothing to save this claim because the lender-borrower relationship between Credit Suisse and the developers is, as a matter of fact and law, a contractual one rather than a fiduciary relationship.   The Credit Agreements between Credit Suisse and the developers clearly state that each Agent "shall act solely as an agent of the Lenders and does not assume . . . any obligation towards or relationship of trust with or for the Borrower" and "shall not be subject to any *fiduciary or other implied duties*."   Credit Agreements at §§ 8.1, 8.3 (Declaration of David J. Lender ("Lender Decl."), Exs. 1-4) (emphasis added).[17]   In addition, the Ginn and Tamarack Engagement Letters, which were explicitly

---

[17]      The Court may consider the exhibits attached thereto because they are referenced in the Complaint.   *See Leduc v. Micron Tech.*, No. CV-04-531-S-BLW, 2005 WL 2847427, at *3 (D. Idaho Oct. 17, 2005) (stating that "when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading") (internal citations omitted); *Rynearson v. Wells Fargo Home Mortgage.*, No. CV04-654-S-EJL, 2005 WL 1364561, at *2 (D. Idaho June 8, 2005) (Lodge, J.) (considering, as part of motion to dismiss fraud and breach of contract claims, the contract alleged to have been breached, which was not attached to the complaint but was included in support of the motion to dismiss).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 22**

incorporated into their respective Credit Agreements,[18] contain even more overt language

barring breach of fiduciary duty claims:

> You acknowledge and agree that (a) *no fiduciary, advisory or agency relationship between you and Credit Suisse is intended to be or has been created* in respect of any of the transactions contemplated by this Engagement Letter, irrespective of whether Credit Suisse has advised or is advising you on other matters, (b) *Credit Suisse, on the one hand, and you, on the other hand, have an arms-length business relationship that does not directly or indirectly give rise to, nor do you rely on, any fiduciary duty on the part of Credit Suisse,* (c) you are capable of evaluating and understanding, and you understand and accept, the terms, risks and conditions of the transactions contemplated by this Engagement Letter, (d) you have been advised that Credit Suisse is engaged in a broad range of transactions that may involve interests that differ from your interests and that Credit Suisse has no obligation to disclose such interests and transactions to you by virtue of any fiduciary, advisory or agency relationship, and (e) *you waive, to the fullest extent permitted by law, any claims you may have against Credit Suisse for breach of fiduciary duty or alleged breach of fiduciary duty and agree that Credit Suisse shall have no liability (whether direct or indirect) to you in respect of such a fiduciary duty claim or to any person asserting a fiduciary duty claim on behalf of or in right of you, including your stockholders, employees or creditors.*

Ginn and Tamarack Engagement Letters at 4 (Lender Decl., Exs. 7-8) (emphasis added); *see also*

LLV and Yellowstone Engagement Letters at 4 (Lender Decl., Exs. 5-6) ("This Engagement

Letter . . . is not intended to create a fiduciary relationship between the parties hereto.").   Thus,

no fiduciary relationship was contemplated, much less formed, between the developers and

Credit Suisse.[19]   Indeed, the law is clear that an arm's length, lender-borrower relationship is not

---

[18]     Ginn and Tamarack Credit Agreements at § 9.21A (Lender Decl., Exs. 3-4) ("This Agreement *and any separate letter agreements with respect to fees payable to the Administrative Agent* constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.") (emphasis added).

[19]     *See Fidelity Summer St. Trust v. Toronto Dominion (Texas), Inc.*, No. Civ. A.02-11285-GAO, 2002 WL 1858763, at *3 (D. Mass. Aug. 14, 2002) (stating that a party to a contract disclaiming the existence of a fiduciary relationship could not "viably argue that [defendant] owed, much less breached, any fiduciary duties . . . as a consequence of its role under the [contract]"); *cf. First Citizens Fed. Sav. and Loan Ass'n v. Worthen Bank & Trust Co.*, 919 F.2d 510, 513-14 (9th Cir. 1990) (applying Arizona law) ("In the context of loan participation agreements among sophisticated lending institutions, we are of the opinion that fiduciary relationships should not be inferred absent unequivocal contractual language [establishing such a relationship]"); *Honolulu Oil Corp. v. Kennedy*, 251 F.2d 424, 431 (9th Cir. 1957) (applying

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 23**

fiduciary in nature.   *See Velasquez,* 2009 WL 2338852, at *7-8 (applying Nevada law)

(dismissing claim for breach of fiduciary duty because "an arms-length lender-borrower

relationship i[s] not fiduciary in nature, absent exceptional circumstances") (internal citations

omitted); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 804 P.2d 900,

905 (Idaho 1991) (denying plaintiffs' motion to amend their complaint to include claim for

breach of fiduciary duty because under Idaho law "the relationship in a lender-borrower situation

is a debtor-creditor relationship, and not a fiduciary relationship"); *Pulse v. North Am. Land Tit.

Co. of Mont.*, 707 P.2d 1105, 1110 (Mont. 1985) (noting that a fiduciary relationship does not

exist between a bank and its customer in the absence of special factual circumstances, such as a

longstanding and exclusive relationship); Small Aff. ¶ 23.

Plaintiffs alternatively try to manufacture a fiduciary relationship where there is none by

claiming that Credit Suisse must have been a fiduciary of the developers—and, apparently, of

Plaintiffs by extension—because Credit Suisse required developers to submit certain financial

documentation in connection with their loans.   SAC ¶ 76.   But the lender-borrower relationship

is not transformed into a fiduciary one solely because banks obtain financial information from

prospective borrowers, as they do for virtually every kind and size of loan.   *See Groob v.

Keybank*, 843 N.E.2d 1170, 1175-76 (Ohio 2006) (holding that a bank does not assume a

fiduciary duty "whenever it receives confidential information from a prospective customer" and

noting that such a rule would result in "nearly every transaction with a bank [giving] rise to a

fiduciary duty").[20]

---

California law) (holding that no fiduciary relationship was created by an agreement where "[i]t
was the plain intention of the instrument and each of the parties to create none").

[20]    *See also Prod. Credit Ass'n of Lancaster v. Croft*, 423 N.W.2d 544, 546-47 (Wis. App.
1988) (affirming dismissal of claim for breach of fiduciary duty and noting that lenders often
require borrowers to maintain collateral or obtain lender approval of certain transactions, but that
such arrangements "should not give rise to the creation of a fiduciary duty so long as the lender's

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 24**

In short, Plaintiffs have given the Court no justification for bootstrapping Credit Suisse's contractual relationships with developers into fiduciary relationships with homeowners.   The breach of fiduciary duty claim should be dismissed.

### B.      Plaintiffs Have Not Pled a Breach of Any Supposed Fiduciary Duty

Even if a fiduciary relationship existed, Plaintiffs have failed to allege how Credit Suisse breached it.   Once again, Plaintiffs fall back on a naked assertion—here, that Credit Suisse breached its fiduciary duties by "making oral and written statements . . . known . . . to be false" (SAC ¶ 289)—but fail to give any concrete examples of such false statements, let alone allege that Credit Suisse knew such non-existent statements to be false.   The complete lack of specific allegations of fraud—including the absence of any information about when, where, or to whom allegedly fraudulent statements were made—falls well short of even the ordinary pleading requirements laid out in *Twombly* and *Iqbal*.   Further, since Plaintiffs allege that Credit Suisse breached its fiduciary duties by committing fraud (*see* SAC ¶¶ 287-89), Rule 9(b)'s elevated pleading standard applies to this claim.   *See World Wrestling Entm't v. Jakks Pac.,* 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) (noting that "elements of a breach of fiduciary duty based in fraud must be plead [sic] with particularity" and that "the Court is not required to credit mere legal conclusions that are dressed up as factual allegations that a defendant was in a fiduciary relationship with a plaintiff") (internal citation omitted).[21]

---

restraints are reasonably necessary to protect its interest in the collateral and are made in good faith") (internal citations omitted); *Bank Computer Network Corp. v. Cont'l Ill. Nat'l Bank and Trust Co.*, 442 N.E.2d 586, 594 (Ill. App. 1982) (affirming dismissal on summary judgment of a claim for breach of fiduciary duty because giving a lender "confidential information and plac[ing] trust and confidence in [that] lender does not satisfy the requirements for the creation of a fiduciary duty").

[21]      *See also, e.g.*, *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966) (affirming dismissal of claim for breach of fiduciary duty based on fraud because it failed to plead fraud with sufficient particularity); *Lochhead v. Alacano*, 662 F. Supp. 230, 233-34 (D. Utah 1987)

Moreover, Plaintiffs have failed to allege a proximate connection between their ill-defined damages and Credit Suisse's alleged breach of fiduciary duties.   Plaintiffs merely claim that the decline in their property values—a loss suffered in common with virtually every kind of real estate in this country—was caused by Credit Suisse's allegedly fraudulent practices. Because such bare allegations are totally unsupported by specific facts, Plaintiffs' claim for breach of fiduciary duty should be dismissed.   *Gowen*, 2009 WL 1441653, at *7.

     C.     <u>Certain Plaintiffs' Claims Are Barred by the Statutes of Limitations</u>

On top of the fatal substantive flaws in Plaintiffs' breach of fiduciary duty claim, certain Plaintiffs' claims also are barred as a matter of law by the governing statutes of limitations, which is two years in Montana and three years in Nevada.   *See* MONT. CODE ANN. § 27-2-203 (2009); NEV. REV. STAT. § 11.190(3)(d) (2009).   Plaintiffs claim that Credit Suisse breached its alleged fiduciary duties *before* the loans were made.   *See* SAC ¶ 289 ("Defendants breached their fiduciary duties . . . while knowing that each resort's developer would *never have undertaken* any lending relationship with the Defendants had they truthfully represented the aforementioned facts") (emphasis added).   The LLV and Yellowstone Credit Agreements establish that the loans were made (and the alleged breaches necessarily took place) more than three years before Plaintiffs filed the Complaint.   LLV and Yellowstone Credit Agreements (Lender Decl., Exs. 1-2).   Accordingly, the breach of fiduciary duty claims for the Yellowstone and LLV Plaintiffs are time-barred.

---

(dismissing claim for breach of fiduciary duty and noting that a breach of fiduciary duty claim grounded in fraud must be plead with particularity); Small Aff. ¶¶ 8, 10, 22.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 26**

## VI.   PLAINTIFFS HAVE NOT ADEQUATELY PLED A TORTIOUS INTERFERENCE CLAIM

Plaintiffs' Fifth Cause of Action is entitled "Tortious Interference with Plaintiffs [sic] Existing Rights, Amenities and Privileges at Each Resort."   No such cause of action exists in any of the relevant jurisdictions.   Even if the Court assumes that Plaintiffs intended to plead a claim for tortious interference with contractual relations, the claim still would fail.[22]

### A.   Plaintiffs Do Not Allege That the Credit Suisse Defendants Intended to or Did Induce the Breach of Any Contract Between Them and Developers

The tortious interference cause of action attempts to protect parties from what is considered a type of unfair competition from parties outside the contract, *see* RESTATEMENT (SECOND) OF TORTS § 766 (1977)—in essence, displacing one party from a favorable contractual relationship in order to substitute oneself in such party's place.   Accordingly, it is not sufficient to allege—as Plaintiffs do—that Defendants "intentionally and without justification or privilege, interfered with Plaintiffs' contractual rights by committing the aforesaid unlawful, fraudulent and illegal acts and omissions."   SAC ¶ 292.   *See Statewide Rent-A-Car, Inc. v. Subaru of Am.*, 704 F. Supp. 183, 186 (D. Mont. 1988) (granting summary judgment because plaintiffs failed to establish "that the refusal of performance was induced by the unlawful and malicious acts of the defendant."); *J.J. Indus.*, 71 P.3d at 1269 ("the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff.").   While Plaintiffs do allege in passing that Defendants had "knowledge of the contractual rights of Plaintiffs" (SAC ¶ 292), they do <u>not</u> allege that Credit Suisse intended to, or did, induce any breach of contractual

---

[22]      The elements of tortious interference with contract are similar in the relevant jurisdictions.   In Idaho they are identified as: (i) the existence of a contract; (ii) knowledge of the contract by the defendant; (iii) intentional interference causing a breach of the contract; and (iv) injury to the plaintiff resulting from the breach.   *AMX Int'l, Inc.*, 2009 WL 5064561, at *2; *accord J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003); *Randolf V. Peterson, Inc v. J.R. Simplot Co.*, 778 P.2d 879, 884 (Mont. 1989).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 27**

obligations owed to Plaintiffs by the developers.   Indeed, they cannot logically make such a claim, since Credit Suisse would have had no incentive to diminish the value of the resort properties which it allegedly intended to ultimately own by hindering the construction or maintenance of ski lifts, golf courses, lakes or other resort amenities.   Because Plaintiffs do not allege that Credit Suisse intended to, or did, induce the developers to breach any contracts with Plaintiffs, this claim must fail.[23]

       B.       **Plaintiffs Fail to Plead Facts Alleging That Credit Suisse Acted With the Unlawful Purpose of Causing Damage**

To the extent Plaintiffs' claims are governed by Montana law, their tortious interference claim must be dismissed because they have not alleged that Defendants acted with anything but a lawful purpose.   A claim for intentional interference with a contract under Montana law requires that Plaintiffs sufficiently allege that Defendants' acts "were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor."   *Randolf V. Peterson, Inc.*, 778 P.2d at 884.   Moreover, engaging in a "reasonable and legitimate business transaction" fails to raise any genuine issues of fact that suggest that a defendant acted improperly.   *Id.*   Here, Credit Suisse was entitled to loan money, to secure its loans with deeds of trust or other instruments, to sell interests in the loans, and to enforce unpaid obligations by moving against the real estate collateral.   Plaintiffs' repeated allegations that Defendants engaged in a "scheme" that consisted of obtaining and enforcing contractual rights fall short of alleging an improper purpose in doing so.   Therefore, under Montana law, Plaintiffs' claim of tortious interference should be dismissed.

---

[23]      Plaintiffs also allege that "Defendants interfered with the negotiations of the Lake Las Vegas Equity Owners with respect to the sale of a parcel of land" near a golf course.   SAC ¶ 126.   This allegation fails to identify the existence of a sales contract, provides no specificity as to who supposedly interfered with this contract, and contains no claim that the land sale did not proceed because of the alleged false misstatement.   *See infra* Section VI.C.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 28**

C.     Plaintiffs Have Not Satisfied Their Pleading Obligations With Respect to Their Tortious Interference Claim

As with Plaintiffs' Complaint as a whole, their Fifth Cause of Action does not satisfy the

Supreme Court's requirements—as set out in *Twombly* and *Iqbal*—for a pleading that survives a

motion to dismiss.   This Court recently found defective, and dismissed, tortious interference

allegations similar to these in *AMX International*.   2009 WL 5064561, at *2.   In that case, this

Court concluded that Plaintiff AMX had adequately alleged the existence of contracts with its

employees and the defendant's knowledge of those contracts.   However, as to the third and

fourth elements of the tortious interference cause of action, AMX's allegations were more

general:

> The Complaint then alleges that Battelle "has repeatedly, intentionally interfered
> with AMX's contracts with AMX's employees," which has resulted in repeated
> breaches of AMX's contract with its employees and has caused damage to AMX.
> . . . AMX's allegations addressing the third and fourth elements contain legal
> conclusions without sufficient facts from which to draw a reasonable inference
> that Battelle is liable.   The Complaint must, at a minimum, articulate what action
> Battelle took that interfered with AMX's contracts, and what damage AMX
> suffered as a result of the breach.   . . .   Because AMX has failed to state
> sufficient facts to support its claim for relief under the heightened *Twombly-Iqbal*
> standard, the Court will dismiss [the Complaint]. . . .

*Id.*  Here, the Plaintiffs' allegations likewise consist of legal conclusions and are even more

general than AMX's pleadings and thus should be dismissed.[24]

## VII.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

A.     Plaintiffs Have Not Alleged That Credit Suisse Was Unjustly Enriched at Plaintiffs' Expense

Unjust enrichment is an equitable doctrine intended to permit a plaintiff to recover a

benefit that was unjustly retained by a defendant.   To state a claim for unjust enrichment, a

---

[24]     *See, e.g.,* SAC ¶ 292 ("Defendants intentionally and without justification or privilege,
interfered with Plaintiffs' contractual rights by committing the aforesaid unlawful, fraudulent and
illegal acts and omissions.").

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 29**

plaintiff must show, first, that a benefit was conferred upon the defendant *by the plaintiff*;

second, that the defendant appreciated the benefit; and third, that the defendant accepted the

benefit in circumstances under which it would be inequitable for the defendant to retain the

benefit without payment of the value thereof. *See BHA Invs., Inc. v. State*, 63 P.3d 474, 481

(Idaho 2003); *In re Taylor*, No. 08-60242-13, 2008 WL 4723364, at *11 (Bankr. D. Mont. Oct.

23, 2008) (dismissing unjust enrichment claim where claimants did not demonstrate that a

benefit was unjustly retained by the debtor); *Styles v. State Farm Mut. Auto. Ins. Co.*, No. 2:06-

CV-1291-RCJ-PAL, 2007 WL 1435005, at *2-3 (D. Nev. May 14, 2007) (dismissing unjust

enrichment claim where the relationship between the parties was governed by an express

contract); Small Aff. ¶ 29.   In the jurisdictions at issue, the unjust enrichment cause of action is

ordinarily used to compensate a plaintiff in those narrow circumstances where the plaintiff

conferred a benefit upon the defendant by mistake or pursuant to an unenforceable contract, or

where a defendant benefits from wrongful use of a plaintiff's property or services.  *See, e.g.*,

*Farrell v. Whiteman*, 200 P.3d 1153, 1161 (Idaho 2009) (affirming an award to plaintiff based on

unjust enrichment where plaintiff had worked for defendant without a proper license, and the

contract between them was thus illegal and unenforceable); *Edwards v. Cascade County*, 212

P.3d 289, 295 (Mont. 2009) (finding that plaintiff had to return money that defendant had paid to

him by mistake because retaining the money would unjustly enrich plaintiff); *Asphalt Prods.*

*Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (holding that defendant was

unjustly enriched by use of plaintiffs' tractor and had to compensate plaintiff for reasonable

rental value of the tractor).[25]   Even accepting Plaintiffs' many conclusory allegations as true

---

[25]     *See also Curtis v. Becker*, 941 P.2d 350, 354-55 (Idaho App. 1997) (noting that "doctrine of unjust enrichment sounds in quasi-contract or implied-in-law contract," and finding that plaintiff could not recover for unjust enrichment because he had "unclean hands"); *Unionamerica Mortgage & Equity Trust v. McDonald*, 626 P.2d 1272, 1273-74 (Nev. 1981)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 30**

(which, as stated previously, this court need not do under binding Supreme Court precedent), they do not remotely resemble the types of cases (as cited above) in which an unjust enrichment remedy was awarded or upheld.

Plaintiffs' solitary factual allegation regarding this cause of action is that Defendants were unjustly enriched by "receiving compensation, payment or fees for their services in connection [with the allegedly fraudulent loans]."   SAC ¶ 299.   But these fees were paid by the developers, not the Plaintiffs.   The Complaint contains no factual allegation that *Plaintiffs* conferred any benefit on Credit Suisse or that loan fees were paid to Credit Suisse at Plaintiffs' expense, as is required to support a claim of unjust enrichment.   *See, e.g.*, *Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73, 91-93 (Idaho 2005) (affirming dismissal of an unjust enrichment claim where there was no legal relationship between the parties and the allegedly unjust benefit conferred on defendants was not conferred *by plaintiffs*); *see also Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904(RJS), 2009 WL 2356131, at *11 (S.D.N.Y. July 27, 2009) (dismissing a claim for unjust enrichment where plaintiffs offered only conclusory allegations that defendants had been unjustly enriched at their expense, and did not establish a sufficient link between plaintiffs' losses and defendants' profits); Small Aff. ¶ 30.   Merely reciting the elements of the cause of action, as Plaintiffs have done here,[26] is insufficient to survive a motion to dismiss.   *Iqbal*, 129 S. Ct. at 1949.

---

(stating that "'restitution' and 'unjust enrichment' are the modern counterparts of the doctrine of quasi-contract" and reversing a judgment in plaintiff's favor because there was no wrongful benefit to defendant).

[26]    *See, e.g.,* SAC ¶ 300 ("[t]he wrongful benefit and enrichment of each Defendant was at the expense of the Plaintiffs").

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 31**

B.     Plaintiffs Have an Adequate Remedy at Law

Furthermore, a plaintiff cannot proceed with an unjust enrichment claim when he has an

adequate remedy at law.   *See, e.g.*, *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007)

(affirming dismissal of unjust enrichment claim where plaintiff had "the ability to pursue other

legal remedies, including a claim for fraud").   Here, the very heart of Plaintiffs' unjust

enrichment claim is their underlying allegations of fraud (*see* SAC ¶ 299), rendering their unjust

enrichment claim merely duplicative.   Indeed, the unjust enrichment claim should be dismissed

regardless of whether Plaintiffs have adequately pleaded fraud.   If Plaintiffs have sufficiently

alleged that Credit Suisse committed fraud, then their fraud claim by definition would provide an

adequate remedy and the unjust enrichment claim should be dismissed.   If, on the other hand (as

Credit Suisse contends herein), Plaintiffs have *not* sufficiently alleged their fraud claim, then

there is no factual basis for their unjust enrichment claim and it must be dismissed as well.   *See*

*Ronan Tel. Co. v. Alltel Commc'ns,* No. CV 06-99-MDWM, 2007 WL 433278, at *4 (D. Mont.

Feb. 2, 2007) (dismissing a claim for unjust enrichment because, *inter alia*, there was "no

evidence of misconduct or fault by Defendants"); *BHA Invs., Inc.*, 63 P.3d at 481 (noting that an

unjust enrichment claim can be disposed of where the court finds that the acts giving rise to the

claim are not wrongful).

C.     Certain Plaintiffs' Claims Are Barred by the Statutes of Limitations

The statute of limitations for an unjust enrichment claim in Nevada is four years.   *See*

*Hudnall v. Panola County*, No. 2:06-CV-0490-RCJ-LRL, 2007 WL 1521446, at *4 (D. Nev.

May 22, 2007).   In Montana, the statute of limitations for actions based in fraud is two years.

MONT. CODE ANN. § 27-2-203 (2009).   Since the alleged unjust enrichment occurred upon the

receipt by Credit Suisse of fees in connection with the Credit Agreements, the LLV and

Yellowstone Plaintiffs' claims necessarily accrued more than four and two years ago,

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 32**

respectively.   LLV and Yellowstone Credit Agreements (Lender Decl., Exs. 1-2).   Accordingly,

those Plaintiffs' claims are time-barred and should be dismissed.

## VIII.   PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS FAIL BECAUSE (1) NO TORT DUTY EXISTS BETWEEN THE PARTIES, AND (2) THE ECONOMIC LOSS DOCTRINE PROHIBITS RECOVERY

To successfully plead a claim of negligence, Plaintiffs must show that (i) a duty is owed

by Defendants to Plaintiffs; (ii) Defendants breached that duty; (iii) Defendants' breach was the

actual and proximate cause of Plaintiffs' injury; and (iv) Plaintiffs were injured.   *See Gonzales*

*v. City of Bozeman*, 217 P.3d 487, 491 (Mont. 2009); *Turner v. Mandalay Sports Entm't, LLC*,

180 P.3d 1172, 1175 (Nev. 2008); Small Aff. ¶ 31.   As a matter of law, Defendants owed no

duty to Plaintiffs, with whom they had no relationship.   Even if Plaintiffs could claim a

derivative duty owed to them based on Credit Suisse's banking relationship with developers,[27]

Plaintiffs' claim still would fail since it is established law that the lender-borrower relationship

does not create an affirmative duty for the purpose of sustaining a negligence action.   *See*

*Velasquez*, 2009 WL 2338852 at *5 (dismissing borrower's negligence claim against bank

because "a financial institution does not owe a duty of care to a borrower when the lender's

involvement in the loan transaction does not exceed the scope of its conventional role as a lender

of money."); *Black Canyon Racquetball Club,* 804 P.2d at 904-06 (holding lender/borrower

relationship does not establish a legal duty for purposes of pleading a negligence claim); Small

Aff. ¶ 32.

In addition, unless an exception applies, the economic loss rule prohibits recovery of

purely economic losses in a negligence action because there is no duty to prevent economic loss

---

[27]     As discussed above, such a claim would be specious since the Credit Agreements
expressly disclaim any duties owed by Credit Suisse to the borrowers.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 33**

to another.[28]   *Truckstop.net*, 537 F. Supp. at 1139; *Velasquez*, 2009 WL 2338852, at *5

(dismissing borrower's negligence claim against bank as barred by the economic loss doctrine).

Purely economic loss is defined as "pecuniary loss . . . through loss of the value or use of the

thing sold, or the cost of repairing it."   *Aardema v. U.S. Dairy Systems, Inc.*, 215 P.3d 505, 510

(Idaho 2009).   The damages claimed by Plaintiffs fall squarely within the definition of economic

loss.   In their own words, Plaintiffs claim to have incurred "substantial economic

damages . . . [due to] the depreciation and diminution in value of their land. . . ."   SAC ¶ 177.

Likewise, Plaintiffs' alleged damages in the form of diminished "amenities" (*id.* ¶¶ 135, 157) are

nothing more than claims of reduced value and, as such, constitute economic loss.   Therefore,

any recovery based on negligence is barred by the economic loss rule.

## IX.   PLAINTIFFS' CONSPIRACY CLAIM SHOULD BE DISMISSED

### A.   There Is No Independent Civil Conspiracy Cause of Action

If the tort claims against Credit Suisse are dismissed, as they should be, the conspiracy

claim must be dismissed as well.   It is well-settled law that "[c]ivil conspiracy is not, by itself, a

claim for relief.   The essence of a cause of action for civil conspiracy is the wrong committed as

the objective of the conspiracy, not the conspiracy itself."   *McPheters v. Maile*, 64 P.3d 317,

321 (Idaho 2003); *see also Mannos,* 155 P.3d at 1174; *Grenz v. Medical Management Northwest,*

*Inc.*, 817 P.2d 1151, 1154 (Mont. 1991) ("it is not really the conspiracy which gives rise to a

right of action, but the torts which may be committed in furtherance thereof"); *Paul Steelman*

*Ltd. v. HKS, Inc.*, No. 2:05-cv-01330-BES-RJJ, 2007 WL 295610, at *3 (D. Nev. Jan. 26, 2007)

---

[28]       The two potential exceptions to the economic loss rule—the existence of a special
relationship between the parties and unique circumstances requiring a reallocation of the risk—
do not apply here.   In *Truckstop.net v. Sprint Commc'ns Co.*, 537 F. Supp. 2d 1126, 1139 (D.
Idaho 2008), *reconsideration denied*, NO. CIV.04-0561-S-BLW, CIV.05-0138-S-BLW, 2008
WL 504029 (D. Idaho Feb 20, 2008), the court held that the special relationship exception to the
economic loss rule applied only to "an extremely limited group" and Idaho courts have never
applied the unique circumstances exception.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 34**

("Civil conspiracy is not an independent cause of action – it must arise from some underlying wrong.").[29]   Thus, Plaintiffs' conspiracy claim cannot stand alone and should be dismissed.

B.   Plaintiffs Have Failed to Plead the Required Elements for Civil Conspiracy

Even if the Court declined to dismiss certain of Plaintiffs' tort claims, Plaintiffs' conspiracy claim still should be dismissed because it fails to adequately allege the necessary elements under the applicable laws.   Specifically, to prove a civil conspiracy under Montana law, a plaintiff must plead facts showing "(i) two or more persons, and for this purpose, a corporation is a person; (ii) an object to be accomplished; (iii) a meeting of the minds on the object or course of action; (iv) one or more unlawful overt acts; and (v) damages as the proximate result thereof."   *Duffy v. Butte Teachers Union, No. 332*, 541 P.2d 1199, 1202 (Mont. 1975).   Under Nevada law, a civil conspiracy claim requires "two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, which results in damage."   *Collins v. Union Fed. Savs. & Loan*, 662 P.2d 610, 622 (Nev. 1983); *Paul Steelman Ltd.*, 2007 WL 295610, at *3; *cf.* Small Aff. ¶¶ 25-26 (stating elements under Bahamas law).   Plaintiffs have failed to plead facts sufficient to avoid dismissal under these standards.

First, Plaintiffs have failed to identify the purported co-conspirators.   The Credit Suisse entities cannot have conspired with each other, since it is impossible for a parent company and its subsidiaries to conspire, as they have no separate legal existence for purposes of a conspiracy cause of action.   *See Nanopierce Techs., Inc. v. Depository Trust and Clearing Corp.*, 168 P.3d

---

[29]     Indeed, this very Court has previously held that "there is no tort of civil conspiracy in Idaho."   *Mertens v. Shensky*, No. CV05-147-N-EJL, 2006 WL 173651, *4 (D. Idaho Jan. 23, 2006) (Lodge, J.).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 35**

73, 85 (Nev. 2007) (citing *Laxalt v. McClatchy*, 622 F. Supp. 737, 745-46 (D. Nev. 1985) (granting defendant's motion to dismiss as to the civil conspiracy claim)).[30]

If Plaintiffs intended to allege a conspiracy between Credit Suisse and Cushman & Wakefield, their conclusory allegations lack specific facts as to a "concerted action" or "meeting of the minds."   Once again, Plaintiffs fall back on the sort of labels and conclusions—that Defendants "combined and conspired with each other" and "agreed to participate in combination" one with another (SAC ¶¶ 309-10)—that the Supreme Court in *Iqbal* and *Twombly* rejected as insufficient to withstand motion to dismiss scrutiny.   Plaintiffs have not alleged the time, circumstances, or content of such an agreement.   Plaintiffs thus fail to state a claim under Rule 12(b)(6), and also founder on Rule 9(b)'s requirement that conspiracy to commit fraud be pled with particularity.   *See Goodwin v. Ex'v. Trustee Servs.*, No. 3:09-CV-306-ECR-PAL, 2010 WL 234786, at *6-7 (D. Nev. Jan. 8, 2010); Small Aff. ¶¶ 8, 10, 27.

Plaintiffs also have failed to allege any unlawful overt acts or an intent to accomplish an unlawful objective.   They allege, for example, that Defendants agreed to a civil conspiracy to "effect the fraudulent consummation of the . . . loans and credit agreements . . ." and agreed to keep the "total net value" appraisal methodology hidden from Plaintiffs.   SAC ¶ 310. However, Plaintiffs offer no explanation for why the appraisals, available to each of the developers and the lenders, should have been provided to the homeowners; and they offer no support for the claim that the loans were "fraudulent," and cite no section of FIRREA, or any other statute or regulation, that was allegedly violated by the loans or appraisals.   Finally, Plaintiffs have failed to sufficiently allege that the supposed damages incurred were a proximate

---

[30]    To the extent that civil conspiracy is actionable under Idaho law, Idaho finds the plurality of actors required for conspiracy to be absent between divisions of a corporation.   *See Pope v. Intermountain Gas Co*., 646 P.2d 988, 994-95 (Idaho 1982) (citations omitted).

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 36**

result of the conspiracy, as distinguished from decreases in property values occasioned by the

downturn in the real estate market and the worst recession in recent memory.

## X.     PLAINTIFFS' CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED[31]

### A.     Plaintiffs Have No Contractual Relationship with Credit Suisse and Cannot Enforce Any Implied Terms of the Credit Agreements

The covenant of good faith and fair dealing is an implied term of a contract that can only

be enforced, if at all,[32] by a party with the authority to enforce the express terms of that contract.

*See Santacruz*, 650 F. Supp. at 33; *Tolley v. THI Co.*, 92 P.3d 503, 511 (Idaho 2004); *Solle v. W.*

*States Ins. Agency*, 999 P.2d 328, 331 (Mont. 2000) .   Thus, a plaintiff who is not a party to the

allegedly breached contract cannot prevail on such a claim unless it is an intended beneficiary of

the contract.   *See Santacruz*, 650 F. Supp. at 33 (dismissing claim; Nevada does not "recognize

an implied covenant of good faith and fair dealing which runs . . . to third party claimants");

*Ludwig v. Spoklie*, 930 P.2d 56, 58-59 (Mont. 1996) (dismissing claim).

Here, the only contracts mentioned in the Complaint to which Credit Suisse is a party are

between Credit Suisse and the developers.   *See* SAC ¶ 294.   Thus, Plaintiffs can only state a

viable claim for breach of the covenant if they can demonstrate that the contracting parties

specifically intended to confer a benefit upon them.   The prevailing test used to determine

whether a third party is an *intended* beneficiary with enforcement rights, as opposed to an

*incidental* beneficiary (or no beneficiary at all) with no enforcement rights, is laid out in the

Restatement (Second) of Contracts, which states:

---

[31]      While "Breach of Covenant of Good Faith and Fair Dealing" was specifically referenced in the caption to the original complaint and as a heading within the complaint itself (the "Ninth Cause of Action"), these were omitted from the First and Second Amended Complaints. However, since the allegations remained in the Amended Complaints, Credit Suisse is addressing the claim in an abundance of caution.

[32]      Bahamian law does not recognize this cause of action.   Small Aff. ¶ 33.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 37**

> [A] beneficiary of a promise is an intended beneficiary if recognition of a right to
> performance in the beneficiary is appropriate to effectuate the intention of the
> parties *and* either (a) the performance of the promise will satisfy an obligation of
> the promisee to pay money to the beneficiary; or (b) the circumstances indicate
> that the promisee *intends* to give the beneficiary the benefit of the promised
> performance.

RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981) (emphasis added); *see also Partout v. Harper*, 183 P.3d 771, 775-76 (Idaho 2008) (affirming summary judgment against plaintiff who claimed to be intended beneficiary of contract, because plaintiff failed to show that intent to benefit him was apparent on the face of the contract); *Ludwig*, 930 P.2d at 58-59; *Olson v. Iacometti*, 533 P.2d 1360, 1363-64 (Nev. 1975).

Here, Plaintiffs fail to cite any language in the Credit Agreements between Credit Suisse and the developers evincing an intent to benefit Plaintiffs.   Instead, Plaintiffs offer only legal conclusions, claiming that "property owners of Lake Las Vegas were intended third-party beneficiaries of the proposed lending facilities" (SAC ¶ 110) and that "developers' loan agreements and contracts with Defendants . . . inured to the benefit of . . . the Plaintiffs and the members of the Plaintiff Class, who were and continue to be third-party beneficiaries thereof." *Id.* ¶ 294.   These legal conclusions are insufficient to meet Plaintiffs' burden on a motion to dismiss.  *See Iqbal*, 129 S. Ct. at 1949.

### B.   Plaintiffs Have Not Adequately Alleged that Credit Suisse Breached the Covenant

Even if Plaintiffs were the intended beneficiaries of Credit Suisse's contracts with the developers (which they are not), Plaintiffs also have failed to allege "concrete facts showing *how* [Defendants] violated [the] implied covenant[.]"   *Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH-RJJ, 2009 WL 4893185, at *9 (D. Nev. Dec. 16, 2009) (emphasis added) (dismissing claim); *Phelps v. Frampton*, 170 P.3d 474, 485 (Mont. 2007) (stating that "it is insufficient to [allege] that [defendant] acted in bad faith" and noting that "claimant must also

[allege] that as a result of [defendant's] action, the claimant was deprived of a benefit or a justified expectation under the contract").   Absent such allegations, Plaintiffs' breach of covenant claim cannot stand.

> C.     Plaintiffs Have Not Stated a Claim for Tortious Breach Because There Is No Special Relationship Between Plaintiffs and Credit Suisse

Plaintiffs do not state whether their claim is for contractual or tortious breach of the covenant, but since they ask for punitive damages, it appears that the claim is for tortious breach. In order to maintain a claim for tortious breach of the covenant, Plaintiffs must plead sufficiently all of the elements of a contractual breach as discussed above, and must also adequately plead the existence of a special relationship between the parties.   *See Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-01257-RCJ-PAL, 2009 WL 3754209, at *3 (D. Nev. Nov. 5, 2009); *Story v. City of Bozeman*, 791 P.2d 767, 775-76 (Mont. 1990).   Plaintiffs have not stated a claim for contractual breach of the covenant for the reasons already stated, nor have they alleged actual facts supporting the existence of a special relationship between the parties.   Indeed, Plaintiffs have not alleged facts to support the existence of *any* relationship with Credit Suisse, much less a relationship above and beyond an arms-length commercial relationship or a relationship with a non-profit motivation (the latter of which is required in Montana).   As discussed in Section V, *supra*, there is no fiduciary relationship between Plaintiffs and Credit Suisse, and thus there can be no special relationship supporting a claim for tortious breach of the covenant.   The absence of a special relationship requires dismissal of the tortious breach claim.   *See, e.g.*, *Stonewall Surplus Lines Ins. Co. v. Farmers Ins. Co. of Idaho*, 971 P.2d 1142, 1149 (Idaho 1998) (affirming denial of leave to amend to add claim for tortious breach of the covenant, because claim was invalid under Idaho law given the absence of a special relationship between the parties); *Winchell v. U.S. Dep't of Agric.*, 961 F.2d 1442, 1443-44 (9th Cir. 1992) (applying

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 39**

Montana law); *Enriquez v. J.P. Morgan Chase Bank, N.A.*, No. 2:08-cv-01422-RCJ-LRL, 2009

WL 160245, at *7 (D. Nev. Jan. 22, 2009).

## **CONCLUSION**

For the foregoing reasons, the Credit Suisse Defendants respectfully request that the

Complaint be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) & (6).

DATED this 29th day of March, 2010

| | |
|---|---|
| Moffatt, Thomas, Barrett,<br>Rock & Fields, Chartered | Weil, Gotshal & Manges LLP |
| */s/ James L. Martin*<br>James L. Martin | */s/ David J. Lender*<br>David J. Lender<br>Ray Guy |
| Attorney for Credit Suisse | Attorneys for Credit Suisse |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 29th day of March, 2010, I filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CREDIT SUISSE AG, CREDIT SUISSE SECURITIES (USA), LLC, CREDIT SUISSE FIRST BOSTON, AND CREDIT SUISSE CAYMAN ISLAND BRANCH'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Robert C. Huntley Jr.**
rhuntley@huntleylaw.com

**James C. Sabalos**
jimsabalos@hotmail.com

**Philip H. Stillman**
pstillman@stillmanassociates.com

**Chris Flood**
chris@floodandflood.com

**Rebecca H. Benavides**
rbenavides@perkinscoie.com

**Panteha Abdollahi**
pantehaabdollahi@paulhastings.com

**Michael J. Flynn**
mike@mjfesq.com

**John Flood**
john@floodandflood.com

**Peter Chase Neumann**
petercneumann@sbcglobal.net

**Richard C. Boardman**
rboardman@perkinscoie.com

**Donald L. Morrow**
donaldmorrow@paulhastings.com

**Barry G. Sher**
barrysher@paulhastings.com

_/s/_____

Tyler J. Anderson