# Exhibit 3
# (Part 4 of 6)

# SECTION 4.
# REPRESENTATIONS AND WARRANTIES

In order to induce the Lenders to enter into this Agreement and to make the Loans and to induce the other Lenders to purchase participations therein, the Borrower represents and warrants to each Lender, on the date of this Agreement and on the Effective Date, that the following statements are true and correct.

## 4.1    Organization and Qualification.

The Borrower and its Subsidiaries are duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization.  The Borrower is duly qualified and is authorized to do business and in good standing as a foreign corporation in each state or jurisdiction listed on Schedule 4.1 hereto and in all other states and jurisdictions in which the failure of the Borrower to be so qualified could reasonably be expected to have a Material Adverse Effect.  The Subsidiaries are duly qualified and authorized to do business and in good standing as foreign corporations in each state and jurisdictions in which failure of the Subsidiaries to be so qualified could reasonably be expected to have a Material Adverse Effect.

## 4.2    Power and Authority.

The Borrower and the other Loan Parties are duly authorized and empowered to enter into, execute, deliver and perform this Agreement and each of the other Loan Documents to which each is a party.  The execution, delivery and performance of this Agreement and each of the other Loan Documents have been duly authorized by all necessary action.

## 4.3    Legally Enforceable Agreement.

This Agreement is, and each of the other Loan Documents when delivered under this Agreement will be, a legal, valid and binding obligation of the Borrower and its Subsidiaries signatories thereto, enforceable against each of them in accordance with the respective terms of such Loan Documents, except as the enforceability thereof may be limited by bankruptcy, insolvency or other similar laws of general application affecting the enforcement of creditors' rights or general equitable principals, whether applied in law or equity.

## 4.4    No Conflict.

After giving effect to the Transactions and the execution, delivery and performance by each of the applicable Loan Parties and the Non-Recourse Guarantor of the Transaction Documents, the issuance, delivery and payment of the Notes and the consummation of the Transactions do not and will not (i) violate any provision of any law or any governmental rule or regulation applicable to any Loan Party or the Non-Recourse Guarantor, or violate or contravene the organizational certificate or any other organizational documents of any Loan Party or any order, judgment or decree of any court or other Governmental Authority binding on any Loan Party or the Non-Recourse Guarantor, (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any indenture, agreement, contract or instrument to which any Loan Party or the Non-Recourse Guarantor is a party or by which any of them or any of their property may be bound, except to the extent such conflict, breach or default could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect, (iii) result in or require the creation or imposition of any Lien upon any of the properties or assets of any Loan Party or the Non-Recourse Guarantor (other than any Liens created under any of the Loan Documents in favor of the Collateral Agent), (iv) require any approval of stockholders, partners or

67

members or any approval or consent of any Person under any organizational certificate or other indenture, agreement, contract or instrument to which any Loan Party or the Non-Recourse Guarantor is a party or by which any of them or any of their property may be bound, except for such approvals or consents obtained on or before the Effective Date, or (v) give rise to any preemptive rights, rights of first refusal or other similar rights on behalf of any Person under any Applicable Law or any provision of the organizational documents of any Loan Party or any Material Contract to which any Loan Party or the Non-Recourse Guarantor is a party or by which any Loan Party or the Non-Recourse Guarantor is bound.

### 4.5    Capital Structure.

As of the Effective Date, the Borrower has no Subsidiaries other than those listed on Schedule 3.1O hereto. Borrower has not made, or obligated itself to make, any Restricted Payment except as expressly permitted by this Agreement. The Borrower has not issued any options to purchase, or any rights or warrants to subscribe for, or any commitments or agreements to issue or sell, or any of its Capital Stock or obligations convertible into, or any powers of attorney relating to, shares of the Capital Stock of the Borrower, except as set forth in Schedule 4.5 hereto. There are no outstanding agreements or instruments binding upon the holders of the Borrower's Capital Stock relating to the ownership of its Capital Stock. No Lender is an Affiliate of the Borrower.

### 4.6    Special Purpose Entity.

The Borrower is in compliance with the special purpose entity requirements of Section 5.16.

### 4.7    Corporate Names.

During the 5-year period preceding the date of this Agreement and as of the Effective Date, neither the Borrower nor any Subsidiary has been known as or used any corporate, fictitious or trade names except those listed on Schedule 4.7 hereto. Except as set forth on Schedule 4.7, neither the Borrower nor any Subsidiary has been the surviving corporation of a merger or consolidation or acquired all or substantially all of the assets of any Person.

### 4.8    Business Locations; Agent for Process.

As of the date hereof, the chief executive office and other places of business of the Borrower and each Subsidiary are as listed on Schedule 4.8 hereto. During the 5-year period preceding the date of this Agreement, neither the Borrower nor any Subsidiary has had an office, place of business or agent for service of process other than as listed on Schedule 4.8. Except as shown on Schedule 4.8 on the date hereof, no inventory of the Borrower or any Subsidiary is stored with a bailee, warehouseman or similar Person, nor is any inventory consigned to any Person.

### 4.9    Title to Properties.

**A.**    The Borrower and its Subsidiaries have good and marketable title to and fee simple ownership of or valid and subsisting leasehold interests in all of its Real Property Assets (including, without limitation, the Real Property Collateral), and good title to all of the personal property relating to the Project or used in connection with the ownership, maintenance, development or marketing of the Project (except to the extent disposed of in the Ordinary Course of Business in compliance with this Agreement), including all property reflected in the financial statements referred to in Section 4.14 or delivered pursuant to Section 5.3, in each case free and clear of all Liens except for Liens permitted by this Agreement. The Borrower has paid or discharged, and has caused each Subsidiaries to pay and discharge, all lawful claims which, if unpaid, could reasonably be expected to become a Lien against any

properties of the Borrower that is not permitted by this Agreement, except to the extent such claim is being Properly Contested. The Liens granted to the Collateral Agent pursuant to the Collateral Documents are First Priority Liens, subject only to those Liens which are expressly permitted by the terms of this Agreement.

**B.**    There are no exceptions or adverse matters affecting the Real Property Collateral that would be disclosed by a survey of the Real Property Collateral except for those matters that would not, individually or in the aggregate, have a Material Adverse Effect. A true, accurate and complete depiction of the Project is set forth on the map attached hereto as Exhibit X, which Project comprises approximately 3,613 acres, and which map identifies the portions of the Project comprising the Real Property Collateral as of the Effective Date.

**C.**    None of the Borrower nor any of its Subsidiaries has received any notice of any special assessment or proceeding affecting the Project, change in the tax rate or the assessed valuation of Project or any other changes affecting the taxes, assessments or other charges with respect to the Project which could reasonably be expected to have a Material Adverse Effect. There are no special assessment districts, or plans for the same, or for any other scheme that would involve the imposition of taxes other than those disclosed on Schedule 4.9C relating to the Project. There are no zoning or other land-use regulation proceedings or change or proposed change in any applicable laws, regulations or the Entitlements which could reasonably be expected to have a Material Adverse Effect.

## 4.10    Priority of Liens; UCC-1 Financing Statements.

As of the Effective Date, all of the security interests and Liens in the Collateral granted under the Collateral Documents to secure the Obligations to Secured Parties (i) will constitute perfected security interests under the UCC, and (ii) will be superior and prior to the rights of all Persons now existing or hereafter arising, except for Permitted Encumbrances.

## 4.11    No Subordination.

There is no agreement, indenture, contract or instrument to which the Borrower or any of its Subsidiaries is subject or by which the Borrower or its Subsidiaries may be bound that requires the subordination in right of payment of any of Borrower's obligations under this Agreement to any other obligations of Borrower.

## 4.12    Permits; Franchises.

The Borrower possesses all permits, memberships, franchises, contracts and licenses required or necessary to enable Borrower to continue with the development of the Project (i) as contemplated by the Master Plans, (ii) in compliance with Applicable Laws in all material respects, and (iii) as and when necessary to achieve the Project Projections.

## 4.13    Indebtedness.

The Borrower and its Subsidiaries have no Indebtedness outstanding except for Indebtedness permitted pursuant to Section 6.1.

## 4.14    Financial Condition; Projections.

**A.    Financial Statements.**    The Borrower has heretofore delivered to the Lenders, at the Lenders' request, audited consolidated balance sheets and related statements of income, stockholders'

69

equity and cash flows of the Borrower and its Subsidiaries for the year ending December 31, 2005, together with all supporting documentation for the foregoing reasonably requested by the Administrative Agent, which financial statements shall not be materially inconsistent with the financial statements or forecasts previously provided to the Administrative Agent.  All such statements and all financial statements delivered pursuant to Section 5.3 were prepared in conformity with GAAP and fairly present, in all material respects, the financial position (on a consolidated basis) of the entities described in such financial statements as at the respective dates thereof and the results of operations and cash flows (on a consolidated basis) of the entities described therein for each of the periods then ended, subject, in the case of any such unaudited financial statements, to changes resulting from audit and normal year-end adjustments and the absence of footnote disclosure required in accordance with GAAP.  Except with respect to the LID Bonds, neither the Borrower nor any of its Subsidiaries have any Contingent Obligation, contingent liability or liability for Taxes, long-term lease or unusual forward or long-term commitment that is not reflected in the financial statements referred to in the preceding clauses of this Section, the most recent financial statements delivered pursuant to Section 5.3 or the notes thereto and which in any such case is material in relation to the business, operations, properties, assets, condition (financial or otherwise) or prospects of the Borrower and its Subsidiaries taken as a whole.

**B.**     **Project Projections**.  On and as of the Effective Date, Project Projections of the Borrower and its Subsidiaries for the period from the Effective Date through the Fiscal Year ending December 31, 2011 previously delivered to the Lenders are based on good faith estimates and assumptions made by the management of the Borrower at the time the Project Projections were prepared.

## 4.15   Disclosure.

The representations and warranties of the Borrower and its Subsidiaries contained in the Transaction Documents and the information contained in the other documents, certificates and written statements furnished to any of the Agents or the Lenders by or on behalf of the Borrower or any of its Subsidiaries for use in connection with the transactions contemplated by this Agreement or any other Transaction Document, when taken together, do not contain any untrue statement of a material fact or omit to state a material fact (known to the Borrower or the applicable Subsidiaries, in the case of any document not furnished by it) necessary in order to make the statements contained herein or therein taken as a whole not misleading in light of the circumstances in which the same were made.  Any projections and financial information prepared on a Projected Basis and contained in such materials are based upon good faith estimates and assumptions believed by the Borrower to be reasonable at the time made, it being recognized by the Agents and the Lenders that such projections as to future events are not be viewed as facts and that actual results during the period or periods covered by any such projections may differ from the projected results and that the differences may be material.  There is no fact known to the Borrower that has had, or could reasonably be expected to result in, a Material Adverse Effect and that has not been disclosed herein or in such other documents, certificates and statements furnished to the Lenders for use in connection with the transactions contemplated hereby.

## 4.16   Solvent Financial Condition.

The Borrower and each of its Subsidiaries is now Solvent and, after giving effect to the Loans to be made hereunder and the consummation of the Transactions, the Borrower and each of its Subsidiaries will be Solvent.

## 4.17   Surety Obligations.

Except as set forth on Schedule 4.17 hereto, on the date hereof, the Borrower and its Subsidiaries are not obligated as surety or indemnitor under any surety or similar bond or other contract issued or

**CREDIT AGREEMENT**

entered into any agreement to assure payment, performance or completion of performance of any undertaking or obligation of any Person.

**4.18   Taxes**.

The FEIN of the Borrower is as shown on Schedule 4.18 hereto.  The Borrower and each of its Subsidiaries has filed all federal, state and other material Tax returns and other reports it is required by law to file and has paid, or made provision for the payment of, all Taxes upon it, its income and properties as and when such Taxes are due and payable, except to the extent being Properly Contested.  The provision for Taxes on the books of the Borrower and each of its Subsidiaries are adequate for all years not closed by applicable statutes, and for its current Fiscal Year.  The Borrower is not aware of any proposed material Tax assessment against any Loan Party.

**4.19   Brokers**.

Except as otherwise disclosed in writing to the Agents, there are no claims against the Borrower or amounts owing or to be owed by the Borrower for brokerage commissions, finder's fees or investment banking fees in connection with the Transactions, and the Borrower hereby indemnifies the Agents and the Lenders against, and agrees that it will hold the Agents and the Lenders harmless from, any claim, demand or liability for any such commission or broker's or finder's fees alleged to have been incurred in connection herewith or therewith and any expenses (including reasonable fees, expenses and disbursements of counsel) arising in connection with any such claim, demand or liability.

**4.20   Intellectual Property**.

Except as set forth on Schedule 4.20 hereto, the Borrower and each of its Subsidiaries owns or has the lawful right to use all Intellectual Property necessary for the present and planned future conduct of its business without, to Borrower's Knowledge, any conflict with the rights of others in any material respect; there is no objection to, or pending (or, to the Borrower's Knowledge, threatened) claim with respect to, the Borrower's or any of its Subsidiaries' right to use any such Intellectual Property and to Borrower's Knowledge, no grounds exist for challenge or objection thereto; and, except as may be disclosed on Schedule 4.20 hereto, as of the Effective Date none of the Borrower nor any of its Subsidiaries pay any royalty or other compensation to any Person for the right to use any Intellectual Property (other than with respect to off-the-shelf or prepackaged software).  All such patents, trademarks, service marks, tradenames, copyrights, licenses and other similar rights are listed on Schedule 4.20 hereto, to the extent they are registered under any Applicable Law, application for registration have been made under any Applicable Law or are otherwise material to the Borrower' business.

**4.21   Governmental Authorization**.

The Borrower and each of its Subsidiaries has, and is in good standing with respect to, all Governmental Authorization necessary to continue to conduct its business as heretofore or proposed to be conducted by it and to own or lease and operate its properties as now owned or leased by it, except where the failure to have, or be in good standing with respect to, such Governmental Authorization could not reasonably be expected to have a Material Adverse Effect.

**4.22   Compliance with Laws**.

The Borrower, each of its Subsidiaries, the Project (including Borrower's development activities thereon), and the Master Plans are in compliance in all material respects with, the provisions of all Applicable Laws, and there have been no citations, notices or orders of noncompliance issued to the

**CREDIT AGREEMENT**

Borrower or any of the Subsidiaries under any such law, rule or regulation which could reasonably be expected to have a Material Adverse Effect, except as set forth on <u>Schedule 4.22</u>. Except as set forth on <u>Schedule 4.22</u>, the Borrower and its Subsidiaries are in material compliance with all Environmental Laws applicable to it and properties owned by it.

**4.23** **<u>Ground Leases</u>**.

With respect to each Ground Lease:

**A.** Each Ground Lease is in full force and effect and has not been Modified, amended, supplemented or extended in any manner whatsoever, (ii) there are no defaults under any Ground Lease by the Borrower or landlord thereunder, and the Borrower has not received notice of, nor to Borrower's Knowledge has any event occurred which, but for the passage of time, or notice, or both would constitute a default under such Ground Lease, (iii) all rents, additional rents and other sums due and payable under each Ground Lease have been paid in full, and (iv) neither Borrower nor the landlord under each Ground Lease has commenced any action or given or received any notice for the purpose of terminating such Ground Lease.

**B.** Each Ground Lease or a memorandum thereof (including any material amendment) have been duly recorded, the Ground Leases permits the interest of the lessee thereunder to be encumbered by the Mortgage, and there has not been any change in the terms of any Ground Lease (as it may have been amended) since the recordation of the Ground Lease or the most recent memorandum or amendment thereof;

**C.** Except the Permitted Encumbrances, the Borrower's interest in the Ground Leases are not subject to any Liens superior to, or of equal priority with, the applicable Mortgage;

**D.** The Borrower's interest in the Ground Lease is mortgageable to the Collateral Agent with the consent of the lessor thereunder (and such consent has been obtained as of the Effective Date) and the Borrower is permitted to grant the Mortgage encumbering the Borrower's leasehold estate under the Ground Lease with the consent of the lessor thereunder (and such consent has been obtained as of the Effective Date) and further in the event of foreclosure of the Collateral Agent's security interest granted pursuant to the Mortgage, Collateral Agent shall have the right to further assign its interest under the Ground Lease without the need to obtain the consent of the lessor thereunder, except that under the Ground Lease with the State of Idaho, the State of Idaho has the right to approve the Administrative Agent as an operator of the Ski Hill, and any subsequent assignee;

**E.** The Ground Lease requires the lessor thereunder to use best efforts to contemporaneously give notice of any default by the Borrower to Collateral Agent and the Ground Lease further provides that notice of termination given under the Ground Lease is not effective against the Collateral Agent unless a copy of the notice has been delivered to Lender in the manner described in the applicable Ground Lease;

**F.** Collateral Agent is permitted a reasonable opportunity (including, where necessary, sufficient time to gain possession of the interest of the Borrower under the Ground Lease) to cure any default under the Ground Lease, which is curable after the receipt of notice of any default before the lessor thereunder may terminate such Ground Lease as to the Collateral Agent's interest therein; and

**G.** The Ground Lease requires the lessor to enter into a new lease with a leasehold mortgagee upon termination of the applicable Ground Lease for any reason, other than the expiration of the term of the lease.

4.24   **Litigation**.

Except as set forth on Schedule 4.24 hereto, there are no actions, suits, proceedings or investigations pending or, to the Borrower's Knowledge, threatened on the date hereof against or affecting the Borrower or any of its Subsidiaries, or the business, operations, properties, prospects, profits or condition of the Borrower or any of its Subsidiaries, (i) which relate to any of the Loan Documents or any of the transactions contemplated thereby or (ii) which could reasonably be expected to have a Material Adverse Effect. To the Borrower's Knowledge, neither the Borrower nor any of its Subsidiaries is in default on the date hereof with respect to any order, writ, injunction, judgment, decree or rule of any court, Governmental Authority or arbitration board or tribunal.

4.25   **No Defaults**.

No event has occurred and no condition exists which would, upon or after the execution and delivery of this Agreement or the Borrower's performance hereunder, constitute a Default or an Event of Default. Neither the Borrower nor any of its Subsidiaries is in default, and no event has occurred and no condition exists which constitutes or which with the passage of time or the giving of notice or both would constitute a default, under any Material Contract or in the payment of any Indebtedness of the Borrower or a Subsidiary to any Person, except for any event (or series of events) which would not be reasonably expected to result in a Material Adverse Effect.

4.26   **Leases**.

Schedule 4.26 hereto is a complete listing of each Capital Lease and Operating Lease of the Borrower and its Subsidiaries on the date hereof that constitutes a Material Contract. The Borrower and each of its Subsidiaries is in compliance, in all material respects, with all of the terms of each of its respective Capital Leases and Operating Leases and, as of the Effective Date, there is no basis upon which the lessors under any such leases could terminate same prior to the scheduled maturity or stated termination date thereof or declare the Borrower or any of its Subsidiaries in default thereunder.

4.27   **Employee Benefit Plans**.

**A.**     Except as disclosed on Schedule 4.27 hereto, neither the Borrower nor any of its ERISA Affiliates maintains, contributes or participates in or may incur any liability under any Pension Plan as of the date hereof. The Borrower and each ERISA Affiliate are in compliance in all material respects with all applicable provisions and requirements of ERISA and the Internal Revenue Code with respect to each Pension Plan and Borrower Pension Plan, and have performed all their obligations under each Pension Plan and Borrower Pension Plan, except those where failure to perform such obligations could not reasonably be expected to result in material liability to the Borrower. With respect to each Pension Plan and Borrower Pension Plan, no material liability to the PBGC (other than required premium payments), the Internal Revenue Service, any such Pension Plan or Borrower Pension Plan or any trust established under Title IV of ERISA has been, or is expected by the Borrower or any ERISA Affiliate to be, incurred by the Borrower or any ERISA Affiliate.

**B.**     No ERISA Event has occurred or could reasonably be expected to occur which has resulted or is reasonably likely to result in any material liability to the Borrower. No fact or situation that could reasonably be expected to have a Material Adverse Effect exists with respect to any Pension Plan or Borrower Pension Plan.

**C.**     Except as could not reasonably be expected to result in material liability to the Borrower, no Borrower nor any of its Subsidiaries maintains or contributes to any employee welfare benefit plan (as

73

defined in Section 3(1) of ERISA that provides health or welfare benefits (through the purchase of insurance or otherwise) for any retired or former employees of the Borrower or any of its Subsidiaries other than as required under Section 4980B of the Internal Revenue Code or Part 6 of Subtitle B of Title I of ERISA.

**D.**     Except as could not reasonably be expected to result in material liability to the Borrower, no Pension Plan has any "unfunded benefit liability" as defined in Section 4001(a)(18) of ERISA (but excluding from the definition of "current value" of "assets" of such Pension Plan, accrued but unpaid contributions).

**E.**     Except as could not reasonably be expected to result in material liability to the Borrower, the Borrower and each ERISA Affiliate has complied with the requirements of Section 515 of ERISA with respect to each Multiemployer Plan and is not in "default" (as defined in Section 4219(c)(5) of ERISA) with respect to payments to a Multiemployer Plan. Neither the Borrower nor any of its ERISA Affiliates has incurred or could reasonably be expected to incur any withdrawal liability in connection with a Multiemployer Plan.

### 4.28    Labor Relations.

Except as described on <u>Schedule 4.28</u> hereto, neither the Borrower nor any of its Subsidiaries is a party to any collective bargaining agreement on the date hereof. On the date hereof, there are no material grievances, disputes or controversies with any union or any other organization of the Borrower and its Subsidiaries.

### 4.29    Not a Regulated Entity.

No Loan Party is (i) an "investment company" or a "person directly or indirectly controlled by or acting on behalf of an investment company" within the meaning of the Investment Company Act of 1940; (ii) a "holding company," or a "subsidiary company" of a "holding company," or an "affiliate" of a "holding company" or of a "subsidiary company" of a "holding company," within the meaning of the Public Utility Holding Company Act of 2005; or (iii) subject to regulation under the Federal Power Act, the Interstate Commerce Act, any public utilities code or any other Applicable Law regarding its authority to incur Indebtedness.

### 4.30    Margin Stock.

Neither the Borrower nor any of its Subsidiaries is engaged, principally or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying any Margin Stock.

### 4.31    No Material Adverse Change.

Since December 31, 2005, no event or change has occurred that has caused or evidences or could reasonably be expected to cause, either individually or in the aggregate, a Material Adverse Effect.

### 4.32    Environmental Matters.

Except as disclosed on <u>Schedule 4.32</u> hereto:

(i)      The Borrower and each of its Subsidiaries (including, without limitation, all operations and conditions at or in the Real Property Assets) are in compliance with all applicable Environmental Laws (which compliance includes, but is not limited to, the possession by the

74

**CREDIT AGREEMENT**

Borrower and each of its Subsidiaries of all permits and other Governmental Authorizations required under applicable Environmental Laws, and compliance with the terms and conditions thereof), except where failure to be in compliance could not reasonably be expected to have a Material Adverse Effect. Neither the Borrower nor any of its Subsidiaries has received any written communication, whether from a Governmental Authority, citizens group, employee or otherwise, alleging that the Borrower, or any of its Subsidiaries, or any tenant or occupant of the Project is not in such compliance, and to the Borrower's Knowledge there are no past or present actions, activities, circumstances, conditions, events or incidents that could reasonably be expected to prevent or interfere with such compliance in the future, except where failure to be in compliance in the future could not reasonably be expected to have a Material Adverse Effect.

(ii)      There is no Environmental Claim pending or, to the Borrower's Knowledge, threatened against the Borrower or any of its Subsidiaries or, to the Borrower's Knowledge, against any Person whose liability for any Environmental Claim the Borrower or any of its Subsidiaries has retained or assumed either contractually or by operation of law, in each such case which, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(iii)      There are no past or present actions, activities, circumstances, conditions, events or incidents, including, without limitation, the Release or presence of any Hazardous Material, which could reasonably be expected to form the basis of any Environmental Claim against the Borrower or any of its Subsidiaries, or to the Borrower's Knowledge, against any Person whose liability for any Environmental Claim the Borrower or any of its Subsidiaries has retained or assumed either contractually or by operation of law, in each such case which could reasonably be expected to have a Material Adverse Effect.

(iv)      The Borrower and its Subsidiaries have not, and to the Borrower's Knowledge, no other Person has placed, stored, deposited, discharged, buried, dumped or disposed of Hazardous Materials on, beneath or adjacent to any property currently or formerly owned, operated or leased by the Borrower or any of its Subsidiaries, in each case, which, individually or in the aggregate, which could reasonably be expected to have a Material Adverse Effect.

(v)      No Lien in favor of any Person relating to or in connection with any Environmental Claim has been filed or has been attached to any Real Property Asset.

(vi)      Without in any way limiting the generality of the foregoing, except as would not have a Material Adverse Effect, none of the Real Property Assets contain any: underground storage tanks; asbestos; polychlorinated biphenyls ("**PCBs**"); underground injection wells; radioactive materials; or septic tanks or waste disposal pits in which process wastewater or any Hazardous Materials have been discharged or disposed.

## 4.33   Material Contracts.

**A.**      There are no contracts, agreements, leases, commitments or documents affecting any portion of the Collateral which have a value greater than (or contemplate the payment of sums which exceed) $5,000,000 (a "**Material Contract**"), excluding any Qualified Sales Agreements for the purchase of any Residential Units or Unimproved Lots, except as set forth on Schedule 4.33 hereto.

**B.**      As of the Effective Date, Schedule 4.33 sets forth a true, correct and complete list of all Material Contracts. The Borrower has heretofore furnished to the Administrative Agent a true, correct

and complete copy of each Material Contract and all Modifications thereto. The Material Contracts have not been amended, modified, supplemented or clarified except as set forth on <u>Schedule 4.33</u> (as may be updated from time to time).

      **C.**    Each Material Contract is in full force and effect and constitutes a legal, valid and binding obligation of the Borrower or its relevant Subsidiaries, as the case may be, and, to the Borrower's Knowledge, each other party thereto.

      **D.**    Neither Borrower nor any of its Subsidiaries is in material default or breach beyond the expiration of any applicable notice or cure period under any such Material Contract. Except as set forth on <u>Schedule 4.33</u> (as may be updated from time to time), the Borrower has no knowledge that any other party is in material default or breach of any such Material Contract, or the existence of any conditions which, with the giving of notice or the passage of time, or both, could constitute such a material default or breach. None of the rights and privileges under the Material Contracts inuring to any Borrower or any of its Subsidiaries has lapsed, which could reasonably be expected to have a Material Adverse Effect or jeopardize the Borrower's ability to develop the Project or sell portions of the Project as contemplated by the Project Projections, and no Governmental Authority nor any other party has any right as of the Effective Date to terminate any of the Material Contracts.

      **E.**    As of the Effective Date, the Borrower and its Subsidiaries have paid all fees, made all dedications, posted all bonds and other security, completed all improvements and otherwise performed, in all material respects, all obligations required to be performed by the applicable Borrower and its Subsidiaries prior to the Effective Date under the Material Contracts in accordance therewith.

      **F.**    Except as set forth on <u>Schedule 4.33</u>, all of the Material Contracts to which a Loan Party is a party are assignable to the Lenders by their terms (or any successor-in-interest to the applicable Loan Party) as contemplated by the Security Agreement.

## 4.34   <u>Utilities</u>.

      Borrower is not aware of any facts or circumstances which could reasonably be expected to materially adversely affect Borrower's ability to obtain all water, sewer, gas, electric, telephone and drainage facilities and all other utilities required by law or for the use, development and operation of the Project as and when necessary to permit Borrower to achieve the Project Projections.

## 4.35   <u>Licenses</u>.

      The Borrower has obtained (or caused to be obtained) all material licenses, permits, approvals, easements and rights of way (and all such items are currently in full force and effect) required from any governmental or regulatory authority having jurisdiction over the Project, or from private parties, necessary for the intended use, development and operation of the Project (i) as contemplated by the Master Plan, (ii) in compliance with Applicable Laws in all material respects, (iii) as and when necessary to achieve the Project Projections by their respective deadlines, and (iv) to ensure free and unimpeded vehicular and pedestrian ingress to and egress from the Project as necessary for the then current stage of the development of the Project. Borrower expects to be able to obtain all licenses, permits, approvals, easements and rights of way as and when necessary to develop the Project as contemplated by the Project Projections and is not aware of any moratoria, potential actions, challenges, proceedings by any third party or Governmental Authority which could reasonably be expected to have a Material Adverse Effect on Borrower's ability to obtain all such licenses, permits, approvals, easements and rights of way.

## 4.36   <u>Entitlements</u>.

CREDIT AGREEMENT

**A.**     The Project is currently entitled and permitted for the uses contemplated by the Project Projections, including the development of the Hotel, Ski Hill and Golf Course and the development and sale of the Residential Units and Unimproved Lots.

**B.**     All of the Entitlements identified on Schedule 4.36 have been obtained and are in full force and effect.  The Entitlements permit the development and sale of no less than 2043 Residential Units and Unimproved Lots, of which approximately 1700 are remaining as of the Effective Date.  All the Entitlements are vested in the Borrower, and the consummation of this transaction shall not affect the same.  There is no uncured material default or breach of any Entitlement.  The Borrower is not aware of any defects or potential actions, challenges, proceedings by any third party or Governmental Authority which could reasonably be expected to have a Material Adverse Effect on any Entitlement.  The Borrower has not received notice of any changes to any of the Entitlements which could reasonably be expected to have a Material Adverse Effect or jeopardize the Borrower's ability to development the Project or sell the remaining Residential Units and Unimproved Lots as contemplated by the Project Projections.  All of the material documents relating to the Entitlements are identified on Schedule 4.36 annexed hereto and made a part hereof (collectively, the "**Entitlement Documents**"), and there are no other material documents relating to the Entitlements needed to develop the Project in accordance with the Project Projections other than those set forth on Schedule 4.36.

**4.37   Loan Documents**.

**A.     Delivery of Loan Documents**.  The Borrower has delivered to the Agents complete and correct copies of each Loan Document and of all exhibits and schedules thereto.

**B.     Representations and Warranties**.  Except to the extent otherwise set forth herein or in the schedules hereto, each of the representations and warranties of any Loan Party, and the Non-Recourse Guarantor made in any other Loan Document, except to the extent qualified in the schedules to such Loan Documents, was true and correct in all material respects as of the Effective Date (or as of any earlier date to which such representation and warranty specifically relates).

**C.     Governmental** Authorizations.   All Governmental Authorizations and all other authorizations, approvals and consents of any other Person required by the Loan Documents or to consummate the Transactions have been obtained and are in full force and effect.

**D.     Conditions and Consummation**.  On the Effective Date, (i) all of the conditions to the effectiveness of the Transactions set forth in the Loan Documents have been duly satisfied or, with the consent of the Requisite Lenders, waived, and (ii) each of the Transactions has been consummated in all material respects in accordance with the Loan Documents and all Applicable Laws.

**4.38   Insurance Coverage**.

Schedule 4.38 sets forth a true and complete list of all property, casualty, public liability, business interruption, workmen's compensation and other insurance policies currently carried by any of Borrower and its Subsidiaries.  Such policies are in full force and effect, constitute all insurance required to be maintained under, and comply with all requirements of, Section 5.6 hereof and all premiums have been paid with respect thereto through the date hereof to the extent due and payable.

**4.39   Master Declarations**.

Schedule 4.39 sets forth a true and complete list of all master, general and supplemental declarations affecting the Project (the "**Master Declarations**").  The Master Declarations are in full force

**CREDIT AGREEMENT**

and effect. There is no uncured material default or breach of any Master Declaration. The Borrower is not aware of any defects or potential actions, challenges, proceedings by any third party or Governmental Authority which could reasonably be expected to have a material adverse effect on any Master Declaration. The Master Declarations provide sufficient easements, covenants and restrictions to permit the shared use of the Project as contemplated by the Master Plans and the Project Projections.

## SECTION 5.
## AFFIRMATIVE COVENANTS

The Borrower covenants and agrees that, until payment in full of all of the Loans and other Obligations, the Borrower shall and shall cause each of its Subsidiaries to:

### 5.1    Visits and Inspections.

Permit representatives of the Administrative Agent and the Consultant, from time to time, as often as may be reasonably requested, but only during normal business hours and (except when a Default or Event of Default exists) upon reasonable prior written notice to the Borrower, to visit and inspect the properties of the Borrower, conduct appraisals of the Borrower's properties, inspect, audit and make extracts from the Borrower's books and records, and discuss with its officers, its employees and its independent accountants, the Borrower's business, financial condition, business prospects and results of operations. The Administrative Agent and the Consultant shall also be entitled to contact any Governmental Authority with respect to the Project and the status of the Entitlements with reasonable advance notice to the Borrower. The Borrower shall be entitled to participate with the Administrative Agent and the Consultant in any meeting with Governmental Authorities or Borrower's independent accountants concerning the Project. Representatives of the Borrower (including the Borrower's accountants) shall be authorized to accompany the Administrative Agent (or representative thereof) and the Consultant on any visit or inspection of the Real Property Collateral, but such authorization shall in no manner be deemed to be a requirement or condition of the Administrative Agent's visits or inspections, and to the extent any of the Borrower's representatives accompany the Administrative Agent and the Consultant on any visit or audit, such Persons shall in no manner hinder or delay the audits or inspections of the Administrative Agent and the Consultant. Representatives of each Lender shall be authorized to accompany the Administrative Agent on each such visit and inspection and to participate with the Administrative Agent therein, but at their own expense, unless a Default or Event of Default exists. Neither the Administrative Agent nor any Lender shall have any duty to make any such inspection and shall not incur any liability by reason of its failure to conduct or delay in conducting any such inspection.

### 5.2    Notices.

Notify the Administrative Agent and Lenders in writing, promptly after the Borrower's obtaining knowledge or receiving copies of the following:

(i)    the institution of, or written threat of, any action, suit, proceeding, governmental or quasi-governmental investigation or arbitration against or affecting the Borrower or its Subsidiaries and not previously disclosed, which action, suit, proceeding, governmental investigation or arbitration (a) exposes, or in the case of multiple actions, suits, proceedings, governmental investigations or arbitrations arising out of the same general allegations or circumstances expose, such Persons, in the Borrower's reasonable judgment, to liability in an amount aggregating $2,500,000 or more and is or are not covered by insurance, or (b) seeks injunctive or other relief which, if obtained, could reasonably be expected to have a Material Adverse Effect, providing such other information as may be reasonably available to enable Administrative Agent and its counsel to evaluate such matters. The Borrower, upon request of

78

CREDIT AGREEMENT

the Administrative Agent, shall promptly give written notice of the status of any action, suit, proceeding, governmental investigation or arbitration.

(ii)      any labor dispute to which any of the Borrower or its Subsidiaries may become a party, any strikes or walkouts relating to any of its property or facilities, and the expiration of any labor contract to which it is a party or by which it is bound, in each case, which could reasonably be expected to have a Material Adverse Effect;

(iii)      any default by any of the Borrower or its Subsidiaries under, or termination of, any Material Contract or any note, indenture, loan agreement, mortgage, lease, deed, guaranty or other similar agreement relating to any Indebtedness of such Person exceeding $1,000,000;

(iv)      termination, suspension or revocation of any Entitlements (or any threat of same) which could reasonably be expected to have a Material Adverse Effect;

(v)      the existence of any (a) Default, (b) Event of Default or (c) event or change that has caused or could be reasonably expected to cause, either in any case or in the aggregate, a Material Adverse Effect;

(vi)      the occurrence of or forthcoming occurrence of any ERISA Event or the receipt by the Borrower or any ERISA Affiliate of notice from a Multiemployer Plan sponsor concerning an ERISA Event;

(vii)      any judgment against any of the Borrower or its Subsidiaries in an amount exceeding $1,000,000;

(viii)      any violation or asserted violation by any of the Borrower or its Subsidiaries of any Applicable Law (including ERISA, OSHA, FLSA, or any Environmental Laws), the adverse resolution of which could reasonably be expected to have a Material Adverse Effect or result in liability of the Borrower or Subsidiaries in an amount in excess of $1,000,000;

(ix)      any Release on any property owned or occupied by any of the Borrower or its Subsidiaries if such Release could reasonably be expected to require remedial action to correct the presence of Hazardous Materials in, around, or under the Real Property Collateral;

(x)      the discharge of the Borrower's independent accountants or any withdrawal or resignation by such independent accountants from their acting in such capacity;

(xi)      the opening of any new office or place of business of Borrower or its Subsidiaries;

(xii)      copies of all environmental audits and reports, whether prepared by personnel of the Borrower or any of its Subsidiaries or by independent consultants, with respect to environmental matters affecting any property owned or operated by the Borrower or its Subsidiaries or which relate to any Environmental Liabilities of the Borrower or its Subsidiaries, to the extent reflecting any matters which, in any such case, individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect;

(xiii)      copies of any Tax assessments; and

CREDIT AGREEMENT

(xiv)     such other information and data with respect to the Borrower or any of its Subsidiaries as from time to time may be reasonably requested by the Administrative Agent or any Lender.

## 5.3     Financial Statements and Other Reports.

The Borrower will maintain, and cause each of its Subsidiaries to maintain, proper books and records including a system of accounting established and administered in accordance with sound business practices to permit preparation of financial statements in conformity with GAAP. The Borrower will deliver to the Administrative Agent for distribution to each Lender:

(i)     Monthly Financials: as soon as available and in any event within thirty (30) days after the end of each Fiscal Month end (other than the last Fiscal Month of any Fiscal Year) commencing with the Fiscal Month ending June 14, 2006, the consolidated balance sheets of the Borrower and its Subsidiaries as of the end of such Fiscal Month and in each case the related consolidated statement of income and consolidated statement of cash flows for such Fiscal Month and for the period from the beginning of the then current Fiscal Year to the end of such Fiscal Month, setting forth, in the case of the statement of income only, in comparative form, the corresponding figures for the corresponding periods of the previous fiscal year and certified by the chief financial officer of the Borrower that they fairly present, in all material respects, the financial condition as of the dates indicated and the results of operations and cash flows for the periods indicated, subject to changes resulting from audit and normal year end adjustments;

(ii)     Quarterly Financials: as soon as available and in any event within forty-five (45) days after the end of each Fiscal Quarter (other than the fourth Fiscal Quarter of any Fiscal Year) commencing with the Fiscal Quarter ending June 14, 2006, (a) the consolidated balance sheet of the Borrower and its Subsidiaries, as of the end of such Fiscal Quarter and the related consolidated statement of income and consolidated statement of cash flows for such Fiscal Quarter and for the period from the beginning of the then current Fiscal Year to the end of such Fiscal Quarter, setting forth, in the case of the statement of income only, in comparative form the corresponding figures for the corresponding periods of the previous fiscal year and the corresponding figures from the consolidated plan and financial forecast for the current Fiscal Year delivered pursuant to Section 5.1(xvii), all prepared in accordance with GAAP (except that such statement of income shall also be prepared on a cash basis and in the format attached as Exhibit XVI hereof, which statement shall include narrative explanations of deviations between actual numbers and projected results) and in reasonable detail and certified by the chief financial officer of the Borrower that they fairly present, in all material respects, the financial condition as at the dates indicated and the results of operations and cash flows for the periods indicated, subject to changes resulting from audit and normal year-end adjustments; (b) a narrative report describing the operations of the Borrower and its Subsidiaries, if any, in each case, taken as a whole, in the form prepared for presentation to senior management for such Fiscal Quarter and for the period from the beginning of the then current Fiscal Year to the end of such Fiscal Quarter; and (c) a progress report from the Consultant setting forth in detail satisfactory to Administrative Agent the progress of construction at the Project, including, without limitation, compliance with the Project Projections (provided, however that if the Consultant fails to provide such progress report and such failure is not due to any action or failure to act on the part of the Borrower, then the Borrower shall not be considered in breach of its obligations under this Section 5.3(ii));

(iii)     Year-End Financials: as soon as available and in any event within ninety (90) days after the end of each Fiscal Year, (a) the consolidated balance sheets of the Borrower

80

and its Subsidiaries, as at the end of such Fiscal Year and the related consolidated statement of income and consolidated statement of cash flows for such Fiscal Year, setting forth, in the case of the statement of income only, in comparative form the corresponding figures for the previous fiscal year and the corresponding figures from the consolidated plan and financial forecast delivered pursuant to Section 5.3(xvii) for the Fiscal Year covered by such financial statements, all prepared in accordance with GAAP (except that such statement of income shall also be prepared on a cash basis and in the format attached as Exhibit XVI hereof, which statement shall include narrative explanations of deviations between actual numbers and projected results) and in reasonable detail and certified by the chief financial officer of the Borrower that they fairly present, in all material respects, the financial condition of the entities covered thereby as at the dates indicated and the results of their operations and their cash flows for the periods indicated; (b) a narrative report describing the operations of the Borrower and its Subsidiaries, in each case, taken as a whole, in the form prepared for presentation to senior management for such Fiscal Year; and (c) in the case of such consolidated financial statements of the Borrower and its Subsidiaries, a report thereon of independent certified public accountants selected by the Borrower and reasonably satisfactory to the Administrative Agent, which report shall be unqualified as to going concern and scope of audit and contains no other material qualification or exception, and shall state that such consolidated financial statements fairly present, in all material respects, the consolidated financial position of the Borrower and its Subsidiaries as at the dates indicated and the results of their operations and their cash flows for the periods indicated in conformity with GAAP applied on a basis consistent with prior years (except as otherwise disclosed in such financial statements) and that the audit by such accountants in connection with such consolidated financial statements has been made in accordance with generally accepted auditing standards;

(iv)     Officer's Certificates; Compliance Certificates:  together with each delivery of financial statements of the Borrower and its Subsidiaries pursuant to subdivisions (ii) and (iii) above, (a) an Officer's Certificate of the Borrower stating that the signer has reviewed the terms of this Agreement and has made, or caused to be made under his or her supervision, a review in reasonable detail of the transactions and condition of the Borrower and its Subsidiaries during the accounting period covered by such financial statements and that such review has not disclosed the existence during or at the end of such accounting period, and that the signer did not have knowledge of the existence as at the date of such Officer's Certificate, of any condition or event that constitutes a Default or Event of Default, or, if any such condition or event existed or exists, specifying the nature and period of existence thereof and what action the Borrower has taken, is taking and proposes to take with respect thereto; and (b) a Compliance Certificate demonstrating, in reasonable detail, compliance during and at the end of the applicable accounting periods with the restrictions contained in Section 6.6.

(v)     Reconciliation Statements:  if, as a result of any change in accounting principles and policies from those used in the preparation of the audited financial statements referred to in Section 4.14, the consolidated financial statements delivered pursuant to subdivisions (i), (ii), (iii) or (xvii) of this Section 5.3 will differ in any material respect from the consolidated financial statements that would have been delivered pursuant to such subdivisions had no such change in accounting principles and policies been made, then together with each delivery of financial statements pursuant to subdivision (i), (ii), (iii) or (xvii) of this Section 5.3 following such change, a written statement of the chief accounting officer or chief financial officer of the Borrower setting forth the differences which would have resulted if such financial statements had been prepared without giving effect to such change, if reasonably requested by the Administrative Agent;

(vi)      Accountants' Certification:   together with each delivery of annual consolidated financial statements of the Borrower and its Subsidiaries pursuant to subdivision (iii) above, a written statement by the independent certified public accountants giving the report thereon (a) stating that their audit has included a reading of the terms of this Agreement and the other Loan Documents as they relate to the covenants set forth in Section 6.6 and accounting matters, and (b) stating whether, in connection with their audit examination, any condition or event, insofar as such condition or event relates to the covenants set forth in Section 6.6 or accounting matters, that constitutes a Default or Event of Default has come to their attention and, if such a condition or event has come to their attention, specifying the nature and period of existence thereof; provided that such accountants shall not be liable by reason of any failure to obtain knowledge of any such Default or Event of Default that would not be disclosed in the course of their audit examination and provided further that if, in accordance with standard practice of Borrower's independent certified public accountants, the foregoing statement is not available, Borrower shall deliver to Administrative Agent a statement which conforms to this requirement only to the extent available under such practice;

(vii)     Accountants' Reports:   promptly upon receipt thereof (unless restricted by applicable professional standards), copies of all reports submitted to the Borrower by a reputable independent certified public accountants in connection with each annual, interim or special audit of the financial statements of the Borrower and its Subsidiaries made by such accountants, including, without limitation, any comment letter submitted by such accountants to management in connection with their annual audit;

(viii)    Future Approvals:   promptly upon receipt thereof and upon request of Administrative Agent, copies of any written Entitlements, approvals or consents obtained by the Borrower or any of its Subsidiaries after the Effective Date in connection with the development of the Project;

(ix)      Casualty:   promptly upon the occurrence of any casualty involving any Real Property Asset of the Borrower or any of its Subsidiaries involving a loss that could reasonably be expected to exceed $250,000, written notice with sufficient detail describing the casualty and the extent to which any losses resulting from such casualty will be covered by insurance;

(x)       Appraisal Updates:   together with each delivery of financial statements of the Borrower and its Subsidiaries pursuant to subdivisions (ii) and (iii) above, a Qualified Appraisal Update that provides an Appraised Value of the remaining portion of the Real Property Collateral effective as of the last day of the preceding Fiscal Quarter;

(xi)      Budget and Schedule Updates:   together with each delivery of financial statements pursuant to subdivisions (ii) and (iii) above, (A) an update to the Approved Project Budget providing a reasonably detailed line item accounting of what amounts on the Approved Project Budget have been incurred and actually paid effective as of the last day of the preceding Fiscal Quarter, provided that in the event of any amendment, modification or adjustment to the Approved Project Budget in the aggregate or any material amendment, modification or adjustment to any line item in the Approved Project Budget (other than an adjustment for application of contingency or savings among line items), the Borrower shall deliver, together with such update, a Compliance Certificate prepared on a Projected Basis for the applicable Fiscal Year and an explanation of assumptions on which such forecasts are based, and any such amendment modification or adjustment shall be subject to the reasonable approval of the Administrative Agent, and (B) an update to the Project Projections, provided, however that any material amendment, modification or adjustment to the Project Projections shall be subject to the

82

reasonable approval of the Administrative Agent and the Administrative Agent shall have the right to consult with the Consultant with respect thereto.

(xii)    Events of Default, etc.:  promptly upon any Responsible Officer of the Borrower obtaining knowledge (a) of any condition or event that constitutes a Default or an Event of Default (it being understood and agreed that the Borrower shall deliver the Officer's Certificate required hereunder within 3 days after the date on which, to Borrower's Knowledge, such condition or event has occurred), (b) that any Person has given any written notice to the Borrower or any of its Subsidiaries or taken any other action that could reasonably be expected to have a Material Adverse Effect on the Borrower or any of its Subsidiaries with respect to a claimed default or event or condition of the type referred to in Section 7.6, or (c) of the occurrence of any event or change that has caused or evidences or could be reasonably expected to cause, either in any case or in the aggregate, a Material Adverse Effect, an Officer's Certificate specifying the nature and period of existence of such condition, event or change, or specifying the written notice given or action taken by any such Person and the nature of such claimed Default, Event of Default, default, event or condition, and what action the Borrower (or applicable Subsidiary) has taken, is taking and proposes to take with respect thereto;

(xiii)    Litigation or Other Proceedings:  (a) promptly upon any Responsible Officer of the Borrower obtaining knowledge of (X) the institution of, or written threat of, any action, suit, proceeding (whether administrative, judicial or otherwise), Environmental Claim, governmental investigation or arbitration against or affecting the Borrower or any of its Subsidiaries or any property of the Borrower or any of its Subsidiaries (collectively, "**Proceedings**") not previously disclosed in writing by the Borrower to the Lenders or (Y) any material development in any Proceeding that, in any case:

(a)    could reasonably be expected to have a Material Adverse Effect; or

(b)    seeks to enjoin or otherwise prevent the consummation of, or to recover any damages or obtain relief as a result of, the transactions contemplated hereby;

(xiv)    written notice thereof together with such other information as may be reasonably available to the Borrower and as the Borrower and their counsel shall reasonably determine would not jeopardize the attorney-client privilege with respect to such Proceeding, to enable the Lenders and their counsel to evaluate such matters; and (b) within forty-five (45) days after the end of each Fiscal Quarter of the Borrower, a schedule of all Proceedings involving an alleged liability of, or claims against or affecting, the Borrower or any of its Subsidiaries equal to or greater than $1,000,000 and promptly after request by the Administrative Agent such other information as may be reasonably requested by the Administrative Agent to enable the Administrative Agent and its counsel to evaluate any of such Proceedings; provided, however, that the Borrower and their counsel may withhold information if in their reasonable determination, disclosure of such information would jeopardize the attorney-client privilege with respect to such Proceeding;

(xv)    ERISA Events:  promptly upon the Borrower becoming aware of the occurrence of any ERISA Event that could reasonably be expected to have a Material Adverse Effect, a written notice specifying the nature thereof, what action the Borrower or any ERISA Affiliate has taken, is taking or proposes to take with respect thereto and, when known, any action taken or threatened by the Internal Revenue Service, the Department of Labor or the PBGC with respect thereto;

(xvi)     ERISA Notices: with reasonable promptness, copies of (a) all written notices received by the Borrower or any ERISA Affiliate from a Multiemployer Plan sponsor concerning an ERISA Event; and (b) such other documents or governmental reports or filings relating to any Pension Plan or Borrower Pension Plan as the Administrative Agent shall reasonably request;

(xvii)     Financial Plans: as soon as is practicable and in any event no later than ninety (90) days after the end of each Fiscal Year, a quarterly consolidated plan and financial forecast for the next succeeding Fiscal Year, including without limitation (a) forecasted consolidated statement of cash flows of the Borrower and its Subsidiaries for such Fiscal Year in a form reasonably acceptable to the Administrative Agent, together with a Compliance Certificate prepared on a Projected Basis for such Fiscal Year and an explanation of the assumptions on which such forecasts are based and (b) such other information and projections as the Administrative Agent may reasonably request;

(xviii)     Press Releases: promptly upon their becoming available, copies of all press releases and other statements made available generally to the public concerning material developments at the Project or in the business of the Borrower or its Subsidiaries;

(xix)     Insurance: as soon as is practicable and in any event by the last day of each Fiscal Year, an insurance certificate in form and substance satisfactory to the Administrative Agent outlining all material insurance coverage maintained as of the date of such certificate by the Borrower and its Subsidiaries accompanied by a certificate from a Responsible Officer that the coverage described on such certificate is planned to be maintained by the Borrower and its Subsidiaries in the immediately succeeding Fiscal Year;

(xx)     Environmental Audits and Reports: promptly following receipt thereof, copies of all environmental audits and reports, whether prepared by personnel of the Borrower or any of its Subsidiaries or by independent consultants, with respect to environmental matters at any Real Property Asset presently owned or operated by the Borrower or its Subsidiaries or which relate to any Environmental Liabilities of the Borrower or its Subsidiaries, to the extent reflecting any matters which, in any such case, individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect;

(xxi)     Material Contracts: promptly after (a) any Material Contract is terminated or expires or is renewed or is, amended or otherwise Modified in any manner, or (b) any notice or other communication is delivered by any party to any Material Contract pursuant thereto or in respect thereof relating to (x) any financial matter or other matter having adverse financial consequences to the Borrower or its Subsidiaries in excess of $2,500,000 or (y) any other non-financial matter which could reasonably be expected to have a Material Adverse Effect, notice and a copy thereof and, in the case of any such renewal, amendment, other Modification or new Material Contract, a description in reasonable detail of the material terms thereof; and

(xxii)     Other Information: with reasonable promptness, such other information and data with respect to the Borrower or any of the Borrower's Subsidiaries as from time to time may be reasonably requested by the Administrative Agent or any Lenders, and such other documentation, information and certifications described in Section 3.1V as from time to time requested by the Administrative Agent or any Lender.

## 5.4     Corporate Existence.

84

The Borrower will, and will cause each of its Subsidiaries to, at all times preserve and keep in full force and effect its organizational existence and all rights and franchises material to the business of the Borrower and its Subsidiaries (on a consolidated basis) or the Loan Parties, taken as a whole. In the event the Borrower or any of its Subsidiaries fails to maintain its good standing in any jurisdiction in which such entity must be qualified to do business or maintain its existence as required hereunder and such failure will not affect such entity's organizational existence in such jurisdiction, the Borrower shall have a period of five (5) Business Days after the Borrower's obtaining knowledge of such failure to cure the same. The Borrower shall not materially Modify, amend or alter any of the organizational documents of the Borrower or any of its Subsidiaries without the prior written consent of the Administrative Agent and otherwise in compliance with the provisions of the Loan Documents.

## 5.5    Payment of Taxes and Claims; Tax Consolidation.

The Borrower will, and will cause each of its Subsidiaries to, pay all taxes, assessments and other governmental charges imposed upon it or any of its properties or assets or in respect of any of its income, businesses or franchises before any material penalty accrues thereon, and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums that have become due and payable which, if unpaid, might become a Lien (other than a Permitted Encumbrance) upon any of its properties or assets; provided that no such tax, charge or claim need be paid if being contested in good faith by appropriate proceedings promptly instituted and diligently conducted and if such reserve or other appropriate provision, if any, as shall be required in conformity with GAAP shall have been made therefore.

## 5.6    Maintenance of Properties; Insurance.

The Borrower will, and will cause each of its Subsidiaries to, maintain or cause to be maintained in good repair, working order and condition, ordinary wear and tear excepted, all material properties used in the business of the Borrower and its Subsidiaries and from time to time will make or cause to be made all appropriate repairs, renewals and replacements thereof as necessary (i) for the development of the Project as contemplated by the Master Plan, (ii) to ensure the Project is in compliance with Applicable Laws in all material respects, and (iii) as and when necessary to achieve the Project Projections by their respective deadlines. The Borrower will maintain or cause to be maintained, with financially sound and reputable insurers, insurance with respect to its properties and business and the properties and businesses of its Subsidiaries against loss or damage of the kinds and with respect to liability customarily carried or maintained under similar circumstances by corporations of established reputation engaged in similar businesses. Each such policy of casualty insurance covering damage to or loss of property shall name the Collateral Agent for the benefit of the Secured Parties as additional insured, mortgagee and as the loss payee thereunder for all losses, subject to application of proceeds as required by Section 2.6B(ii)(c), and all such policies of insurance shall provide for at least thirty (30) days' prior written notice to the Collateral Agent of any Modification or cancellation of such policy (ten (10) days' prior written notice in the case of nonpayment or nonrenewal).

## 5.7    Lender Meeting.

The Borrower will, upon the request of the Administrative Agent, participate in a meeting of the Administrative Agent and the Lenders at least once during each Fiscal Year (and will participate in such other meetings at such other times as the Borrower and the Administrative Agent may agree) to be held telephonically or, at Borrower's election, at the Borrower's corporate offices (or such other location as may be agreed to by the Borrower and the Administrative Agent) at such time as may be agreed to by the Borrower and the Administrative Agent.

NY\1130626.12 mk - tamarack credit agreement

**5.8**   **Compliance with Laws, etc**.

The Borrower shall, and shall cause each of its Subsidiaries to, comply with the requirements of all Applicable Laws, noncompliance with which, individually or in the aggregate with other non-compliances, could reasonably be expected to cause a Material Adverse Effect.

**5.9**   **Environmental Disclosure and Inspection**.

**A.**   The Borrower shall, and shall cause each of its Subsidiaries to, exercise all due diligence in order to comply and cause (i) all tenants or subtenants under any leases or occupancy agreements affecting the Real Property Assets, (ii) all contractors, engineers, architects and similar vendors and contractors, and (iii) all other Persons on or occupying the Real Property Assets, to comply with all Environmental Laws, except for any such noncompliance which could not reasonably be expected to cause a Material Adverse Effect.

**B.**   The Borrower agrees that the Administrative Agent may, from time to time, retain, at the Borrower' expense, an independent professional consultant reasonably acceptable to the Borrower to review any report relating to Hazardous Materials prepared by or for the Borrower and to conduct their own investigation (the scope of which investigation shall be reasonable based upon the circumstances) of any Real Property Asset currently owned, leased, operated or used by the Borrower or any of its Subsidiaries, if (x) a Default or an Event of Default shall have occurred and be continuing, or (y) the Administrative Agent reasonably believes (1) that an occurrence relating to such Real Property Asset is likely to give rise to an Environmental Liability or (2) that a violation of an Environmental Law on or around such Real Property Asset has occurred or is likely to occur, which could, in either such case, reasonably be expected to result in a Material Adverse Effect. The Borrower shall use its reasonable efforts to obtain for the Administrative Agent and its agents, employees, consultants and contractors the right, upon reasonable notice to the Borrower, to enter into or on to the Real Property Assets currently owned, leased, operated or used by the Borrower or any of its Subsidiaries to perform such tests on such property as are reasonably necessary to conduct such a review and/or investigation.   Any such investigation of any Real Property Asset shall be conducted, unless otherwise agreed to by the Borrower and the Administrative Agent, during normal business hours and, shall be conducted so as not to unreasonably interfere with the ongoing operations at any such Real Property Asset or to cause any damage or loss to any property at such Real Property Asset. The Borrower and the Administrative Agent hereby acknowledge and agree that any report of any investigation conducted at the request of the Administrative Agent pursuant to this Section 5.9B will be obtained and shall be used by the Administrative Agent and the Lenders for the purposes of the Lenders' internal credit decisions, to monitor and police the Loans and to protect the Lenders' security interests, if any, created by the Loan Documents, and the Administrative Agent and the Lenders hereby acknowledge and agree any such report will be kept confidential by them to the extent permitted by law except as provided in the following sentence. The Administrative Agent agrees to deliver a copy of any such report to the Borrower with the understanding that the Borrower acknowledge and agree that (i) it will indemnify and hold harmless the Administrative Agent and each Lender from any costs, losses or liabilities relating to the Borrower's use of or reliance on such report, (ii) neither Agent nor any Lender makes any representation or warranty with respect to such report, and (iii) by delivering such report to the Borrower, neither the Administrative Agent nor any Lender is requiring or recommending the implementation of any suggestions or recommendations contained in such report.

**C.**   The Borrower shall promptly notify the Administrative Agent of (i) any proposed acquisition of stock, assets, or property by the Borrower or any of its Subsidiaries that could reasonably be expected to expose the Borrower or any of its Subsidiaries to, or result in, Environmental Liability that could reasonably be expected to have a Material Adverse Effect and (ii) any proposed action to be taken

86