Donald L. Morrow, admitted *Pro Hac Vice*
donaldmorrow@paulhastings.com
Panteha Abdollahi, admitted *Pro Hac Vice*
pantehaabdollahi@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
695 Town Center Drive, 17th Floor
Costa Mesa, CA 92626
Tele: 714.668.6200/Fax: 714.979.1921

Barry G. Sher, admitted *Pro Hac Vice*
barrysher@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Tele: 212.318.6085/Fax: 212.230.5185

Richard C. Boardman, Bar No. 2922
RBoardman@perkinscoie.com
Christine M. Salmi, Bar No. 5626
CSalmi@perkinscoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, ID 83702-5391
Tele: 208.343.3434/Fax: 208.343.3232

Attorneys for Defendant Cushman & Wakefield, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, DEAN FRESONKE, VERN JENNINGS, TERRI FROEHLICH, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas and Ginn Sur Mer,<br><br>                    Plaintiffs,<br><br>         v.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive,<br><br>                    Defendants. | Case No. CV 10-001-S-EJL (REB)<br><br><br>**CUSHMAN & WAKEFIELD, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## TABLE OF CONTENTS

Page(s)

I.  PRELIMINARY STATEMENT ................................................................................1

II. PLAINTIFFS IGNORE THAT IT IS THEIR BURDEN TO ESTABLISH
    ARTICLE III STANDING ..................................................................................3

III. PLAINTIFFS IGNORE THE IMPACT OF RULE 9(B) ON THEIR CLAIMS ..............6

    A.  Plaintiffs Distort the Rule 9(b) Standard ................................................7

    B.  Plaintiffs Improperly Conflate Credit Suisse and C&W .......................8

    C.  Plaintiffs Cannot Avoid Dismissal By Mischaracterizing the Complaint..............9

IV. PLAINTIFFS DO NOT IDENTIFY HOW THEY PLEAD THE REQUISITE
    ELEMENTS OF A RICO CLAIM ......................................................................10

    A.  Plaintiffs Cannot Plead Proximate Cause ............................................11

    B.  Plaintiffs Do Not Plead that C&W "Participated" in a RICO Enterprise.............14

V.  PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW ....................15

    A.  Plaintiffs Cannot Plead a Fraud Claim .................................................15

    B.  Plaintiffs Cannot Plead a Negligent Misrepresentation Claim.............18

    C.  Plaintiffs Cannot Plead a Tortious Interference Claim.........................18

    D.  Plaintiffs Cannot Plead a Negligence Claim ........................................19

    E.  Plaintiffs Have Abandoned Their Remaining State Law Claims .........20

VI. CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. Wright,*
  468 U.S. 737 (1984) ..................................................................................................... 3

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ........................................................................................ 11, 12, 14

*Baumer v. Pachl,*
  8 F.3d 1341 (9th Cir. 1993) ....................................................................................... 14

*Brown v. Interbay Funding, LLC,*
  417 F. Supp. 2d 573 (D. Del. 2006) ......................................................................... 16

*Calloway v. City of Reno,*
  993 P.2d 1259 (Nev. 2000) ........................................................................................ 20

*Canyon County v. Syngenta Seeds, Inc.,*
  519 F.3d 969 (9th Cir. 2008) ......................................................................... 12, 13, 14

*Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Florida, Inc.,*
  832 So. 2d 810 (Fla.Dist. Ct. App. 2002) ................................................................. 19

*City of Alameda v. FG Managing Member, Inc.,*
  C 04-04010 WHA, 2004 WL 2403848 (N.D. Cal. Oct. 26, 2004) ............................. 4

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.,*
  621 F. Supp. 2d 513 (N.D. Ohio 2009) .................................................................. 5, 6

*Crawford v. Signet Bank,*
  179 F.3d 926 (D.C. Cir. 1999) ................................................................................... 16

*Deutsch v. Flannery,*
  823 F.2d 1361 (9th Cir. 1987) ................................................................................ 8, 9

*Dodaro v. Standard Pac. Homes,*
  EDCV 09-01666 VAP (OPx), 2010 WL 1330889 (Apr. 1, 2010) .............................. 5

*Forro Precision, Inc. v. IBM Corp.,*
  745 F.2d 1283 (9th Cir. 1984) ................................................................................... 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
  528 U.S. 167 (2000) ..................................................................................................... 3

## TABLE OF AUTHORITIES
### (continued)

Page

*Goodwin v. Exec. Tr. Servs.*,
  680 F. Supp. 2d 1244 (D. Nev. 2010)................................................................9

*Green v. Beazer Homes Corp.*,
  3:07-1098-CMC, 2007 WL 2688612 (D.S.C. Sept. 10, 2007)............................5, 6

*Guerard v. CNA Fin. Corp.*,
  4:09-CV-01801 SBA, 2009 WL 3152055 (N.D. Cal. Sept. 23, 2009)...................17

*Hanig v. Yorktown Cent. School Dist.*,
  384 F. Supp. 2d 710 (S.D.N.Y. 2005) ...........................................................10, 20

*Hemi Group, LLC v. City of New York*,
  130 S. Ct. 983 (2010).......................................................................11, 12, 13, 14

*Hice v. Lott*,
  223 P.3d 139 (Colo. App. 2009)........................................................................16

*Hillcrest Pac. Corp. v. Yamamura*,
  727 So. 2d 1053 (Fla. Dist. Ct. App. 1999)........................................................17

*Hoffman v. Stamper*,
  867 A.2d 276 (Md. 2005) ..................................................................................17

*Holmes v. Secs. Investor Prot. Corp.*,
  503 U.S. 258 (1992) ............................................................................11, 12, 13

*In re Colonial Ltd. P'ship Litig.*,
  854 F. Supp. 64 (D. Conn. 1994)........................................................................17

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) .........................................................15, 17

*Johnson v. K.B. Home*,
  CV 09-00972-PHX-FJM, 2010 WL 1268144 (D. Ariz. Mar. 30, 2010)............4, 13

*Kaing v. Pulte Homes, Inc.*,
  09-5057 SC, 2010 WL 625365 (N.D. Cal. Feb. 18, 2010).....................................5

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .............................................................................7

# TABLE OF AUTHORITIES
## (continued)

Page

*Kelly v. Beazer Homes U.S.A., Inc.*,
  EDCV 09-01674 VAP (DTBx), 2010 U.S. Dist. LEXIS 44807 (C.D. Cal. Mar. 31,
  2010) .......................................................................................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .............................................................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................................3, 6

*Lumalu v. M.D.C. Holdings, Inc.*,
  EDCV 09-01669 VAP (OPx), 2010 U.S. Dist LEXIS 44797 (C.D. Cal. Mar. 31,
  2010).......................................................................................................................................5

*Martinez v. D.R. Horton, Inc.*,
  EDCV 09-01672 VAP (DTBx), 2010 U.S. Dist. LEXIS 44812 (C.D. Cal. Mar. 31,
  2010).......................................................................................................................................5

*Maya v. Centex Corp.*,
  EDCV 09-01671 VAP (OPx), 2010 U.S. Dist LEXIS 44829 (C.D. Cal. Mar. 31,
  2010).......................................................................................................................................5

*Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A.*,
  677 F.Supp 2d 847 (D. Md. 2010).........................................................................................5

*Mendoza v. Zirkle Fruit Co.*,
  301 F.3d 1163 (9th Cir. 2002) .............................................................................................13

*Nation v. State*,
  158 P.3d 953 (Idaho 2007) .............................................................................................19, 20

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................................................7, 8

*Nielson v. Shea Homes, Inc.*,
  EDCV 09-01673 VAP (DTBx), 2010 U.S. Dist. LEXIS 44685 (C.D. Cal. Mar. 31,
  2010).......................................................................................................................................5

*Oneto v. The Ryland Group, Inc.*,
  EDCV 09-01670 VAP (DTBx), 2010 U.S. Dist. LEXIS 44792 (C.D. Cal. Mar. 31,
  2010).......................................................................................................................................5

*Phillips v. Better Homes Depot, Inc.*,
  02-CV-1168 ERK, 2003 WL 25867736 (E.D.N.Y. Nov. 12, 2003) ......................................17

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993) ......................................................................................... 14

*Rubio v. Capital One Bank (USA),*
  572 F. Supp. 2d 1157 (C.D. Cal. 2008) ........................................................ 15, 17

*Sage v. Blagg Appraisal Co.,*
  209 P.3d 169 (Ariz. Ct. App. 2009) ................................................................. 17

*Semegen v. Weidner,*
  780 F.2d 727 (9th Cir. 1985) ............................................................................. 7

*Sfc Valve Corp. v. Wright Mach. Corp.,*
  883 F. Supp. 710 (S.D. Fla. 1995) ................................................................... 20

*Silver Valley Partners, LLC v. De Motte,*
  06-429-N-EJL, 2007 WL 2802315 (D. Idaho Sept. 24, 2007) ........................... 8, 9

*Steckman v. Hart Brewing, Inc.,*
  143 F.3d 1293 (9th Cir. 1998) .......................................................................... 16

*Stephens v. Lennar Corp.,*
  EDCV 09-01668 (DTBx), 2010 WL 1331085 (C.D. Cal. Mar. 31, 2010) ............... 5

*Swartz v. KPMG,*
  476 F.3d 756 (9th Cir. 2007) .............................................................................. 9

*Thompson v. Illinois Dep't of Prof'l Reg.,*
  300 F.3d 750 (7th Cir. 2002) ............................................................................ 16

*Tingley v. Beazer Homes Corp.,*
  3:07 CV176, 2008 WL 190218 (W.D.N.C. Apr. 25, 2008) ............................... 5, 6

*United States v. Oreto,*
  37 F.3d 739 (1st Cir. 1994) .............................................................................. 14

*Univ. of Md. v. Peat, Marwick, Main & Co.,*
  996 F.2d 1534 (3rd Cir. 1993) .......................................................................... 14

*U.S ex rel. Mason v. State Farm Mut. Auto Ins. Co.,*
  CV07-297-S-EJL, 2008 WL 2857372 (D. Idaho July 23, 2008) ........................... 8

## TABLE OF AUTHORITIES
### (continued)

Page

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
454 U.S. 464 (1982) ................................................................................................ 3

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .............................................................................. 7

*Virgilio v. Ryland Group, Inc.*,
6:08-CV-815-ORL-31GJK, 2010 WL 503023 (M.D. Fla. Feb. 8, 2010) ........................ 19, 20

*Walling v. Beverly Enters*,
476 F.2d 393 (9th Cir. 1973) ................................................................................ 7

*Walsh v. Nevada Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) .......................................................................... 10, 20

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) ............................................................................ 14


RULES

Fed. R. Civ. P. § 8 ................................................................................................. 7

Fed. R. Civ. P. § 9(b) .................................................................................... passim


STATUTES

18 U.S.C. § 1962(a) ............................................................................................. 10

18 U.S.C. § 1962(b) ............................................................................................ 10

18 U.S.C. § 1962(c) ............................................................................................. 10

18 U.S.C. § 1962(d) ............................................................................................ 10


OTHER AUTHORITIES

*Prosser and Keaton on the Law of Torts*, 1984 ed. ................................................ 13

I.    **PRELIMINARY STATEMENT**

Plaintiffs' opposition ("Opposition") serves only to confirm that plaintiffs have no claim against C&W and had no business bringing C&W into this case in the first place.

This is nowhere more obvious than with respect to plaintiffs' RICO claim. Rather than attempting to make an argument in support of a claim against C&W, plaintiffs simply copied, word for word, the first 27 pages of their opposition to *Credit Suisse's* motion, and pasted those pages into the C&W brief. Plaintiffs thus totally ignore the fundamental deficiencies in their RICO claim that are specific to C&W. These include the failure to allege a causal connection between the preparation of Resort-wide appraisals – the only conduct C&W is alleged to have engaged in – and the loss in value of individual properties or the loss of Resort amenities. Plaintiffs must plead *facts specific to C&W* demonstrating proximate causation, and those facts are totally absent from both the Complaint and the Opposition.

The failure of the Complaint to allege a causal connection between C&W's conduct and plaintiffs' damages also demonstrates plaintiffs' lack of standing to sue C&W – a deficiency that is fatal to each of plaintiffs' claims. The burden is on plaintiffs to establish standing. Yet they hardly address it in the Opposition, discussing it only in a footnote. But no attempt to bury this issue can hide the absence of a causal connection and the numerous intervening actors and forces that break any such link. These include the developers' distributions to themselves of large portions of the proceeds of the loans arranged by Credit Suisse, the developers' failure to build out Resort amenities as planned, and the dramatic downturn in the U.S. real estate and credit markets that drove down property values across the country. Numerous federal courts have dismissed on standing grounds similar claims of predatory lending practices by homeowners against their direct lenders. Here, plaintiffs seek to sue C&W – the appraiser for the lender to the master developer – a party three or four steps removed from plaintiffs. As a matter of law, plaintiffs lack standing for such claims.

The Opposition also gives little discussion to the failure of the Complaint to meet the heightened pleading standards of Rule 9(b), which applies to all of plaintiffs' claims. Plaintiffs nowhere identify a single C&W person who engaged in wrongdoing, made any misrepresentation to any plaintiff, or interacted with any plaintiff whatsoever. Instead, the Opposition continues the practice of simply lumping C&W in with allegations about others, and when the Opposition does cite the Complaint for allegations about C&W, frequently the cited paragraphs contain no support for the proposition attributed to them. The best example of this is the Opposition's insistence that the Complaint contains an allegation that the plaintiffs relied on C&W's appraisals of the Resorts. (Opp. 34, 35.) Plaintiffs cite literally dozens of different paragraphs of the Complaint that supposedly support this proposition, but not one of them says any such thing. To the contrary, the Complaint never even alleges that any plaintiff *read* – let alone relied on – any of the appraisals. Rule 9(b) exists for just this situation – to protect defendants from baseless allegations of fraud that have no facts to back them up.

Plaintiffs also fail to address the fundamental absence of deception in the appraisals. The basic misrepresentation alleged is that the Total Net Value appraisals "grossly misrepresented the market value of the subject resorts." (Opp. 33.) But plaintiffs acknowledge that the appraisals stated that Total Net Value "*is not the Market Value of the property*" and that "*the As Is market value would be lower than the Total Net Value.*" Plaintiffs try to avoid the effect of those disclosures by arguing that they were in "technical terms" that no "lay person" would understand, and that C&W should not be dismissed *even though it had "the foresight to disclose" these facts.* (Opp. 37.) This shows the emptiness of plaintiffs' claims most starkly – they continue to cry fraud even though the very thing they claim was omitted was in fact disclosed. C&W has no business in this action and its motion to dismiss should be granted.

## II.   PLAINTIFFS IGNORE THAT IT IS THEIR BURDEN TO ESTABLISH ARTICLE III STANDING

Plaintiffs bear the burden of establishing Article III standing to pursue each of their claims

against C&W. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81

(2000). As relevant to C&W's motion, the standing inquiry involves two prongs: (1) "injury in

fact" and (2) a causal connection between plaintiffs' injury and C&W's conduct. *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs give cursory treatment to the first

prong of the test in note 3 of the Opposition, and simply ignore the second prong. Ignoring it,

however, does not make it go away. "Those who do not possess Art. III standing may not litigate

as suitors in the courts of the United States." *Valley Forge Christian College v. Americans United

for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982).

To satisfy Article III, plaintiffs must demonstrate an injury that is "fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third party

not before the Court." *Lujan*, 504 U.S. at 560-61 (internal quotations omitted). "[T]he line of

causation between the [alleged] illegal conduct and injury" must not be "too attenuated." *Allen v.

Wright*, 468 U.S. 737, 752 (1984). As established in C&W's Motion to Dismiss ("Motion"), there

is no linkage between plaintiffs' purported injuries and C&W's alleged conduct.

C&W performed appraisals for the lender of the master developer at each Resort. C&W is

thus at least three steps removed from plaintiffs' alleged injury. Credit Suisse and each Resort

developer determined how much the developer would borrow and how the proceeds of the loan

would be applied. (SAC ¶¶ 121, 151, 164, 183.) Each Resort developer had the obligation to pay

back the loan and build out the Resort amenities. The Complaint alleges that the developers

ultimately did not pay back the loans or complete construction of the amenities. (SAC ¶¶ 133,

157, 165.) C&W is not alleged to have played any role in these decisions. And layered on top of

these independent steps is a crashing economy that devastated the real estate market.

Plaintiffs' conclusory contention that this case "presents a straightforward and uncomplicated link between the predicate acts of mail and wire fraud and the harm suffered by the Plaintiffs – the loss of all promised common areas" (Opp. 18) simply ignores all of these intervening causes and defies logic. This may explain why plaintiffs offer no *facts* to buttress this purported link. Plaintiffs do not explain how the appraisals prepared by C&W somehow caused the Resort developers to borrow money, divert some of the borrowed funds to their own personal uses, fail to pay back the loans, and then put their projects into bankruptcy. Just saying there was a causal link does not make it so. *City of Alameda v. FG Managing Member, Inc.*, C 04-04010 WHA, 2004 WL 2403848, at *4 (N.D. Cal. Oct. 26, 2004) ("[B]are, conclusory statements do not meet the requirements of Article III.").

In addition to failing to cite any *facts* to support their purported "straightforward" causal link, plaintiffs also cite no applicable law. Plaintiffs do quote two paragraphs from a 20-page partial and later vacated order issued by the United States Bankruptcy Court for the District of Montana in the Yellowstone bankruptcy. (Opp. 21.) But that order said nothing about a direct causal link between C&W's preparation of appraisals and plaintiffs' loss of amenities. Moreover, C&W was not a party to the adversary proceeding, and the Montana bankruptcy court's analysis was limited to the discrete issue of an equitable subordination claim against Credit Suisse, *not* the legality of the TNV appraisals.

The only case plaintiffs cite in support of their "clear and straightforward link" argument, *Johnson* (Opp. 22), is not on point. In *Johnson*, plaintiff homeowners were suing their home developer and their mortgagor and its affiliate appraisal company for conspiring to sell homes to plaintiffs at exaggerated prices. *Johnson v. K.B. Home*, CV-09-00972-PHX-FJM, 2010 WL 1268144, at *1 (D. Ariz. Mar. 30, 2010). The appraisals were of plaintiffs' own homes, and

plaintiffs paid for the cost of the appraisals themselves. *Id.* at *1-2. By contrast, here C&W prepared appraisals of the entire Resorts (not plaintiffs' individual homes) and prepared those appraisals for Credit Suisse, the arranger of the loans to the developers of the Resorts.

District court after district court that has analyzed Article III causation in an analogous lending context has concluded that a homeowner plaintiff has no standing to pursue claims against its lender – let alone an appraiser retained by the lender to the master developer – for alleged predatory lending practices directed towards *third parties. See Tingley v. Beazer Homes Corp.*, 3:07 CV176, 2008 WL 1902108, at *4 (W.D.N.C. Apr. 25, 2008); *Green v. Beazer Homes Corp.*, 3:07-1098-CMC, 2007 WL 2688612, at *3 (D.S.C. Sept. 10, 2007); *Kaing v. Pulte Homes, Inc.*, 09-5057 SC, 2010 WL 625365, at * 6 (N.D. Cal. Feb. 18, 2010); *Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A.*, 677 F. Supp. 2d 847, 849-50 (D. Md. 2010); *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp. 2d 513, 534 (N.D. Ohio 2009).

The holdings in several other cases issued since the filing of C&W's Motion are in accord.[1]  For example, in *Dodaro*, plaintiff brought a class action on behalf of all homebuyers who purchased and financed homes from defendant developer and its affiliated lender and who paid at least a 20 percent down payment.  Plaintiff alleged that defendants conspired to sell homes to "unqualified buyers" who paid less than 20 percent down and who posed an "abnormally high risk of foreclosure."  Many of those unqualified buyers defaulted on their mortgages and lost their

---

[1] *Dodaro v. Standard Pac. Homes*, EDCV 09-01666 VAP (OPx), 2010 WL 1330889, at * 9 (C.D. Cal. Apr. 1, 2010); *Stephens v. Lennar Corp.*, EDCV 09-01668 VAP (DTBx), 2010 WL 1331085, at * 9-10 (C.D. Cal. Mar. 31, 2010); *Kelly v. Beazer Homes U.S.A., Inc.*, EDCV 09-01674 VAP (DTBx), 2010 U.S. Dist. LEXIS 44807, at * 25 (C.D. Cal. Mar. 31, 2010); *Lumalu v. M.D.C. Holdings, Inc.*, EDCV 09-01669 VAP (OPx), 2010 U.S. Dist LEXIS 44797, at * 27 (C.D. Cal. Mar. 31, 2010); *Martinez v. D.R. Horton, Inc.*, EDCV 09-01672 VAP (DTBx), 2010 U.S. Dist. LEXIS 44812, at * 25-26 (C.D. Cal. Mar. 31, 2010); *Maya v. Centex Corp.*, EDCV 09-01671 VAP (OPx), 2010 U.S. Dist LEXIS 44829, at * 25-26 (C.D. Cal. Mar. 31, 2010); *Nielson v. Shea Homes, Inc.*, EDCV 09-01673 VAP (DTBx), 2010 U.S. Dist. LEXIS 44685, at * 25 (C.D. Cal. Mar. 31, 2010); *Oneto v. The Ryland Group, Inc.*, EDCV 09-01670 VAP (DTBx), 2010 U.S. Dist. LEXIS 44792, at * 26 (C.D. Cal Mar. 31, 2010).

homes to foreclosure, and the value of the class members' homes thus declined because of all the

foreclosures in their neighborhoods. *Dodaro*, 2010 WL 1330889, at \*1-2.  The court dismissed

plaintiff's case for failure to show causation under Article III:

> [A]ny loss in value Plaintiff has suffered has resulted not just from the actions of
> Defendants, but also from the independent actions of others, *e.g.* homeowners in
> Plaintiff's neighborhood who defaulted on their mortgages and third-party
> mortgage companies that foreclosed on houses in Plaintiff's neighborhood.
> Plaintiff's theory is premised upon a chain of causation that is affected by general
> economic factors.  These general factors can have unpredictable effects, such as
> collapse of financial institutions, changes in the credit market, and rising
> unemployment, which by themselves or in combination affect the housing market.
> *In other words, any injuries suffered by Plaintiff necessarily depend upon a causal
> chain that includes numerous independent forces and individual decisions of 'some
> third parties not before the court.'*

*Id.* at \*9 (emphasis added) (citing *Lujan*, 504 U.S. at 560-61).  The link here is even more

attenuated – in *Dodaro*, plaintiffs were suing their own developer and lender, whereas plaintiffs

here are suing the appraiser to the lender to the master developer who developed the project in

which plaintiffs ultimately bought property.  This is simply too many links in the chain.

Standing is a constitutional mandate.  Plaintiffs' failure to address, let alone establish,

standing is dispositive of all their claims.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994).  Nor can amendment cure plaintiffs' lack of standing.  As such, dismissal should

be with prejudice, as it was in *Tingley*, *Green*, *Mayor and City Council of Baltimore*, *City of

Cleveland*, *Kaing*, *Dodaro*, *Stephens*, *Kelly*, *Lumalu*, *Martinez*, *Maya*, *Nielson*, and *Oneto*.

## III.   PLAINTIFFS IGNORE THE IMPACT OF RULE 9(B) ON THEIR CLAIMS

Plaintiffs do not dispute that Rule 9(b) applies to each of their claims.  Instead, plaintiffs

distort the applicable standard under Rule 9(b) and attempt to argue that allegations against Credit

Suisse also apply to C&W simply because plaintiffs allege a "conspiracy."

### A.   Plaintiffs Distort the Rule 9(b) Standard

Rule 9(b) requires plaintiffs to identify "'the who, what, when, where, and how of the

misconduct charged.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Such particulars include "the times, dates, places, benefits received, and other details of the

alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  *See also*

*Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009).  This is not just to provide

"notice" to defendants; it is to "protect those whose reputation would be harmed as a result of

being subject to fraud charges," and to "prohibit plaintiffs from unilaterally imposing upon the

court, the parties and society enormous social and economic costs absent some factual basis."

*Kearns*, 567 F.3d at 1125.  *See also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)

(Rule 9(b) "protects potential defendants – *especially professionals whose reputations in their*

*field of expertise are most sensitive to slander* – from the harm that comes from being charged

with the commission of fraudulent acts.")  (Internal citations omitted; emphasis added).

        Recognizing that the Complaint does not satisfy these heightened pleading standards as

to C&W, plaintiffs instead attempt to collapse Rule 9(b) into Rule 8, asserting that Rule 9(b) sets

forth a "notice" standard that requires only "the identification of the circumstances constituting

the fraud so that the defendant can prepare an adequate answer from the allegations."  (Opp. 28.)

Yet the cases plaintiffs cite for a "notice only" standard (Opp. 28-29) do not support it.  *See*

*Neubronner*, 6 F.3d at 672  (concluding plaintiff failed to satisfy Rule 9(b) because he did "*not*

allege specifically *what* information [defendant] obtained, *when* and from *whom* he obtained it,

and *how* he used it for his own advantage.") (emphasis added); *Semegen*, 780 F.2d at 731

(upholding dismissal of fraud claims against some defendants because there was an "absence

of specification of any times, dates, places or other details of [their] alleged fraudulent

involvement" and such absence is "contrary to the fundamental purposes of Rule 9(b).");

*Walling v. Beverly Enters*, 476 F.2d 393, 397 (9th Cir. 1973) (noting that "*in connection with an*

*averment of intent, knowledge, or condition of mind*" a plaintiff need only identify the

circumstances constituting fraud so that defendant may prepare an answer, but finding in general
that plaintiffs satisfied Rule 9(b) because they "stated the time, place, and nature of the alleged
fraudulent activities.") (emphasis added).

Plaintiffs also try to "relax" the standard by arguing that "the details of the time and place
of the fraudulent conduct perpetrated by the Defendants are primarily within their knowledge and
are readily obtainable by them." (Opp. 29.) That is a common tactic, one that courts are rightfully
suspicious of, and is used only where the facts at issue are truly internal to the defendant. *See U.S.
ex rel. Mason v. State Farm Mut. Auto. Ins. Co.,* CV07-297-S-EJL, 2008 WL 2857372, at *13 (D.
Idaho July 23, 2008). But "this exception does not nullify Rule 9(b)." *Neubronner,* 6. F.3d at
672. Here, plaintiffs do not even allege facts that any plaintiff who has been defrauded would
know – who spoke to them, what was said, why it was false, and how it was relied upon by the
plaintiffs to their detriment. And what facts are plaintiffs referring to that render them unable to
plead their claims properly? The TNV appraisals were prepared long ago and C&W's role as an
appraiser has been known for years. Plaintiffs quoted from the appraisals and referenced them
extensively in their Complaint. Lawsuits and bankruptcies have been filed in relation to the four
Resorts, and there are hundreds of pages of pleadings and documents produced in connection with
those cases regarding the loans and appraisals. The notion that somehow C&W is in possession of
facts unavailable to plaintiffs is a red herring designed to excuse plaintiffs' failure to allege their
claims with the requisite particularity.

**B.      Plaintiffs Improperly Conflate Credit Suisse and C&W**

Plaintiffs argue that since they allege C&W is a *co-conspirator* of Credit Suisse, that
is sufficient to meet their obligations under Rule 9(b). (Opp. 29-30.) Plaintiffs are wrong as a
matter of law. Plaintiffs cite two cases: *Silver Valley* and *Deutsch.* Neither stands for this
proposition. In *Silver Valley,* Judge Lodge *granted* defendants' motion to dismiss a fraud claim,

concluding the complaint was "significantly lacking in any particularity as to the identity and role of the actors involved in each of the allegations; such as allegations as to who made what statements, to whom were the statements made, [and] how/why were the statements false or fraudulent." *Silver Valley Partners, LLC v. De Motte*, 06-429-N-EJL, 2007 WL 2802315, at \*4 (D. Idaho Sept. 24, 2007). The citation to *Deutsch* is equally perplexing. While *Deutsch* was a multi-defendant case, no conspiracy was alleged and the court simply concluded plaintiffs' amended allegations were sufficient. *Deutsch v. Flannery*, 823 F.2d 1361, 1362 (9th Cir. 1987).

When multiple defendants are alleged to have engaged in a course of conduct, Rule 9(b) requires particularized allegations as to each defendant. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG*, 476 F.3d 756, 764-65 (9th Cir. 2007). *See also Goodwin v. Exec. Tr. Servs.*, 680 F. Supp. 2d 1244, 1254 (D. Nev. 2010) ("A claim for conspiracy to commit fraud must be plead with the same particularity as the fraud itself ... [thus] [a]llegations of conspiracy must be accompanied by 'the who, what, when, where and how of the misconduct charged.'"). Plaintiffs lump Credit Suisse and C&W together for purposes of pleading and hope their allegations against Credit Suisse support their claims against C&W. That is insufficient under the law and requires dismissal of the claims against C&W.

### C.    Plaintiffs Cannot Avoid Dismissal By Mischaracterizing the Complaint

Plaintiffs finally begin to address C&W at page 31 of the Opposition, asserting that they have sufficiently pled fraud against C&W. But plaintiffs' citations to the Complaint are inaccurate – the paragraph citations referenced frequently contain no support for the propositions attributed to them. In other words, the Complaint does *not* state what plaintiffs contend it says.

For example, plaintiffs assert that the "validity and accuracy of the appraisals were

material to the Plaintiffs' decision to purchase real estate within the resorts and otherwise making financing decisions with their properties." (Opp. 34.) Plaintiffs cite 27 paragraphs of the Complaint that supposedly support this proposition. Yet, not one of these paragraphs discusses the "validity" of the appraisals. Not one discusses the "accuracy" of the appraisals. Not one discusses how the appraisals influenced plaintiffs' decisions regarding their purchase of property, let alone how the appraisals were "material" to plaintiffs' decisions to buy real estate at the Resorts. Only one paragraph of the 27 (SAC ¶ 180) even contains a reference to the language of an "appraisal" at all. And that paragraph simply alleges C&W performed an appraisal of Yellowstone Club on July 1, 2005, and then quotes from the appraisal regarding Yellowstone's target market of ultra-wealthy individuals. (SAC ¶ 180.) Only four of the 27 paragraphs (SAC ¶¶ 76, 78, 80, 81) even refer to "appraisal method" or "appraisal methodology," but none of those paragraphs discusses the validity, accuracy or materiality of the appraisals.

The Opposition also asserts that "[p]laintiffs have alleged that they reasonably relied on the validity of the appraisals," citing 10 paragraphs of the Complaint. (Opp. 36.) That statement is simply wrong. None of the 10 paragraphs cited supports the proposition in the least. (*See* discussion below at pp. 16-17.)

## IV.   PLAINTIFFS DO NOT IDENTIFY HOW THEY PLEAD THE REQUISITE ELEMENTS OF A RICO CLAIM

As an initial matter, because the Opposition focuses exclusively on plaintiffs' 18 U.S.C. § 1962(c) and (d) claims, plaintiffs have abandoned their § 1962(a) and (b) claims. *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). *See also Hanig v. Yorktown Cent. School Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("because plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.").

Moreover, the RICO argument in the Opposition is simply copied, word for word, from

plaintiffs' Credit Suisse opposition – the footer on many pages even retains the "Opposition to Credit Suisse" label. Although plaintiffs concede that they were required to allege facts establishing (1) proximate cause as to C&W and (2) that C&W conducted the affairs of the alleged "enterprise," the Complaint does not come close to doing so.

## A.     **Plaintiffs Cannot Plead Proximate Cause**

The fundamental deficiency in plaintiffs' RICO claim is their failure to plead proximate cause. Plaintiffs must show some "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Hemi Group, LLC  v. City of New York*, 130 S. Ct. 983, 989 (2010).

Plaintiffs correctly identify the three Supreme Court cases that establish RICO's proximate cause requirement: *Holmes*, *Anza*, and *Hemi*. Plaintiffs even correctly recite the holdings of these cases, each of which found that plaintiff's injury was too remote from defendant's conduct to allow a RICO claim to proceed. Plaintiffs then simply announce at page 18 of the Opposition that unlike *Holmes*, *Anza* and *Hemi*, "the case at bar presents a straightforward and uncomplicated link between the predicate acts of mail and wire fraud and the harm suffered by the Plaintiffs – the loss of all promised common area amenities." But simply announcing that does not make it so. To the contrary, the facts here, particularly as they relate to C&W, are even more attenuated than the fact patterns of the three Supreme Court cases.

In *Holmes*, defendants' stock manipulation scheme caused a broker-dealer to fail, and the SIPC, an investor protection group, had to honor the broker-dealer's obligations to its customers. *Holmes*, 503 U.S. at 261. The SIPC sued defendants, arguing that but for their stock manipulation, the broker-dealer would have survived and the SIPC would not have had to step in and cover the customer losses. *Id.* But the Court held that defendants' conduct was too attenuated

from SIPC's damages to have proximately caused them. *Id.* at 274.

*Anza* involved a RICO claim brought by a plaintiff supply company against its competitor. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). Plaintiff alleged that defendant was failing to pay sales taxes to the state, thereby allowing it to offer lower prices than plaintiff. The Supreme Court rejected plaintiff's RICO claim for failure of proximate causation, finding that the "direct victim" of the conduct was the state, not plaintiff. *Id.* at 458. The court reasoned that the cause of plaintiff's harm was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.*

*Hemi*, decided in 2010, rejected a RICO claim brought by the City of New York against an out-of-state cigarette retailer who did not submit the required purchaser information to the state. Plaintiff argued that defendant's conduct deprived the City of the ability to track down purchasers for failure to pay taxes. The Court found the "conduct directly responsible for the City's harm was the customers' failure to pay their taxes," not the retailer's failure to file the required reports. *Hemi*, 130 S. Ct. at 990. The retailer thus was not the proximate cause of the City's harm. *Id.*[2]

These cases are directly on point. Plaintiffs' claimed injury is the reduction in value of their individual properties and the failure of the developers to complete (or continue to operate) Resort amenities. But C&W's appraisals did not proximately cause those injuries. C&W issued appraisals to Credit Suisse, which in turn arranged loans to the developers, which in turn diverted portions of the borrowed funds to themselves; the developers either sold an individual homesite or home to a plaintiff or sold land to other developers who built the condominiums or homes that

---

[2] *See also Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 980 (9th Cir. 2008) (rejecting RICO claim brought by county against four companies for alleged conspiracy to hire undocumented immigrants, which allegedly forced the county to pay for increased social services: "County cannot, as a matter of law, show an adequate causal nexus between the four defendant companies' employment of undocumented workers and the financial harm the County claims to have suffered.").

plaintiffs purchased; and the alleged losses in value and amenities occurred in the midst of a crash in the real estate market. Under binding Supreme Court and Ninth Circuit precedent, C&W's appraisals are far too attenuated from plaintiffs' alleged injury to be its proximate cause.

Plaintiffs attempt to confuse the application of these binding precedents by relying on common law principles of proximate cause derived from the 1984 edition of *Prosser and Keaton on the Law of Torts*. (Opp. 15.) But reference to common law principles in an outdated treatise is unnecessary in light of the explicit and binding Supreme Court and Ninth Circuit authorities that require dismissal. Plaintiffs also seek to argue for a watered down "foreseeability" test for proximate cause, but this exact argument has been rejected by the Supreme Court, most recently in *Hemi*: "The dissent would have RICO's proximate cause requirement turn on foreseeability, rather than on the existence of a sufficiently 'direct relationship' between the fraud and the harm. . . . Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi*, 130 S. Ct. at 991.

The only cases plaintiffs cite in support of their position are *Johnson* and *Mendoza*. As discussed above in Section II, *Johnson* involved a direct relationship between a homeowner and his or her home appraiser, which is nothing like the situation here. *Mendoza* is similarly inapposite. *Mendoza* involved a RICO claim by legally documented agricultural laborers who sued their fruit grower employers for engaging in a scheme to depress plaintiffs' wages by hiring undocumented immigrants at below market wages. *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1166 (9th Cir. 2002). Plaintiffs had a direct relationship with the defendants and were the direct victim of the illegal hiring scheme. *Id.* at 1170-71.

In a last ditch effort to bypass the implications of *Holmes*, *Anza*, *Hemi*, *Canyon County* and their progeny, plaintiffs contend that the determination of proximate cause must be left to the jury, implying that this Court cannot decide this issue at the pleading stage. (Opp. 25.) This is flat-out

wrong. *Hemi*, *Anza* and *Canyon County* all arose from motions to dismiss, and all three resulted in dismissal at the pleading stage. As noted by the Ninth Circuit, "[i]t is [ ] evident that courts need not allow RICO plaintiffs leeway to continue on with their case in an attempt to prove an entirely remote causal link." *Canyon County*, 519 F.3d at 982 n.12.

### B.   Plaintiffs Do Not Plead that C&W "Participated" in a RICO Enterprise

There is another critical deficiency with respect to C&W's § 1962(c) claim: plaintiffs do not plead particularized facts showing that C&W "participated" in the alleged RICO enterprise. The Opposition compounds this deficiency by including a RICO section that is simply a copy of the one submitted in response to Credit's Suisse's motion to dismiss.

Plaintiffs concede (Opp. 11) that *Reves* sets forth the relevant standard for liability under § 1962(c): "one is not liable under that provision unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). This means that the defendant must have "some part in directing the enterprise's affairs." *Id.* at 179. Liability extends only to those that "occupy a position in the 'chain of command' . . . through which the affairs of the enterprise are conducted." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (*quoting United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994)).

Plaintiffs give lip-service to the *Reves* standard, but then contend it is satisfied because they have alleged "Cushman participated in the pattern of racketeering by presenting alleged 'appraisals.'" (Opp. 11-12.) But plaintiffs miss the point: mere participation by virtue of performing a task for which an entity is hired is *not* enough to impose liability under § 1962(c). There must be "some degree of direction" of the enterprise. *See Walter*, 538 F.3d at 1248-49; *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539-40 (3rd Cir. 1993); *Baumer v. Pachl*, 8 F.3d 1341, 1344-45 (9th Cir. 1993). The Complaint alleges no "degree of direction" on C&W's part whatsoever. The RICO claims must therefore be dismissed.

## V.    PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### A.    Plaintiffs Cannot Plead a Fraud Claim

It is axiomatic that to state a fraud claim, there must be some kind of misrepresentation or omission. Here, there is none, and plaintiffs cannot allege any.

Plaintiffs claim the appraisals "misrepresented the market value of the subject resorts." (Opp. 33-34.) This claim is itself a misrepresentation. The appraisals on their face plainly state they are *not* concluding to market value: "*This is not the Market Value* of the property as the standard valuation deductions for the time value of money and profit are not reflected." (Moran Decl., Exh. A, Transmittal Letter, p. 2 (emphasis added), *see also* p. 84 (Lake Las Vegas); Exh. B, pp. 80, 63, 77 (Yellowstone Club); Exh. C, Transmittal Letter, p. 2, *see also* pp. 69, 90, 92 (Tamarack); Exh. D, Transmittal letter, p. 3, *see also* p. 40) (Ginn sur Mer)). If the appraisals explicitly state that they are not concluding to market value, then how could they "grossly inflate" market value? They cannot, and plaintiffs' contention to the contrary ignores what the appraisals actually say.

Plaintiffs argue that these statements are "technical terms that no lay person would understand." (Opp. 37.) "This is not market value" cannot be considered a "technical term" under any circumstances, but particularly when the alleged misrepresentation is that C&W grossly misrepresented market value. The Court can, and should, decide as a matter of law that this language is not misleading. *See, e.g., Rubio v. Capital One Bank (USA)*, 572 F. Supp. 2d 1157, 1167-68 (C.D. Cal. 2008) (granting dismissal of claims with prejudice because "[a]s a matter of law, Defendant's use of the term 'fixed' [in the credit card agreement] was consistent with TILA and was not misleading, either independently or when viewed in the context of the remainder of Defendant's solicitation."); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1093 (C.D. Cal. 2008) (finding as a matter of law plaintiffs had not alleged facts

showing the alleged misrepresentations to be false or misleading).[3]

Nor is plaintiffs' contention that the appraisals were "inflated" supported by the allegations of the Complaint.  Plaintiffs do not claim the appraisals misstated the total net value; their purported grievance is that the appraisals concluded to total net value rather than market value.  But, as noted above, C&W defined "total net value" and specifically said it was *not* the same as market value.  There is nothing that renders a conclusion to total net value rather than market value fraudulent as a matter of law.

Plaintiffs further argue in the Opposition that the appraisals violated state law (as allegedly articulated in USPAP) because they did not opine to market value.  (Opp. 34.)  In other words, plaintiffs argue that any appraisal that does not opine to market value violates USPAP.  Yet plaintiffs offer no legal support for this proposition.  Plaintiffs do not cite to any provision of USPAP at all, and certainly to no provision that was violated.  Indeed, USPAP is mentioned just *once* in the Complaint, and even then, no violation is alleged.[4]  (SAC ¶ 58.)

Plaintiffs address reasonable reliance in one sentence of the Opposition, asserting that "plaintiffs have alleged that they reasonably relied on the validity of the C&W appraisals," citing ten paragraphs from the complaint that supposedly support this proposition.  (Opp. 36.)  But, *not a single one* of these cited paragraphs even remotely alleges that any plaintiff read or relied upon

---

[3] Plaintiffs' case citations (Opp. 37) are not to the contrary.  Rather, each stands for the noncontroversial (and irrelevant here) proposition that when evaluating a claim for negligent preparation of an appraisal (*i.e.* a claim for professional negligence), expert testimony assists with determining the appropriate standard of care.  *See Hice v. Lott*, 223 P.3d 139, 149 (Colo. App. 2009); *Crawford v. Signet Bank*, 179 F.3d 926, 929 (D.C. Cir. 1999); *Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573, 579 (D. Del. 2006).

[4] While the Complaint and the Opposition claim that the appraisal for Tamarack states it is in compliance with FIRREA (SAC ¶ 148; Opp. 34), in fact the appraisal never mentions FIRREA at all.  (Moran Decl. Exh. C.)  "[W]hen a written instrument contradicts allegations in a complaint to which it is attached, the *exhibit trumps the allegations.*"  *Thompson v. Illinois Dept of Prof'l Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) (emphasis in original; internal quotations omitted); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (affirming dismissal of fraud claim on a 12(b)(6) motion, because the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

an appraisal prepared by C&W to make his/her decision to purchase property at the Resorts. Indeed only one of the paragraphs (¶ 53) even makes passing reference to C&W.[5]

Nor could any reliance, even if plaintiffs had pled it, have been justifiable. The appraisals explicitly state they are not giving an opinion as to market value, rendering any reliance on them for a market value assessment unreasonable as a matter of law. *See Rubio*, 572 F. Supp. 2d at 1167-68; *In re Impac Mortgage Holdings*, 554 F. Supp. 2d at 1093. Plaintiffs cite a series of cases for the proposition that "reasonable reliance is always a question of fact." (Opp. 40.) But, in the appraisal cases plaintiffs cite, the appraisals were of the specific property plaintiffs purchased, the plaintiffs actually pled facts establishing that they relied on those appraisals, and contract or regulatory provisions required plaintiffs to obtain the appraisal. Stated differently, in those cases there was an actual link between plaintiffs and the appraisals, and plaintiffs used the appraisals in their purchasing decisions, rendering reliance at least plausible. *See Hoffman v. Stamper*, 867 A.2d 276, 293-94 (Md. 2005); *Sage v. Blagg Appraisal Co.*, 209 P.3d 169, 172 (Ariz. Ct. App. 2009); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 93 (D. Conn. 1994); *Phillips v. Better Homes Depot, Inc.*, 02-CV01168 ERK, 2003 WL 25867736, at *8 (E.D.N.Y. Nov. 12, 2003). None of those factors is present here. Courts can and do find a lack of justifiable reliance as a matter of law where, as here, plaintiff's allegations do not support such reliance. *See, e.g., Guerard v. CNA Fin. Corp.*, 4:09-CV-10801-SBA, 2009 WL 3152055, at *5 (N.D. Cal. Sept. 23, 2009); *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1058 (Fla. Dist. Ct. App. 1999).

---

[5] Plaintiffs make two other arguments to support the reliance element. Plaintiffs claim Credit Suisse showed them the appraisals to induce them to purchase real estate. (Opp. 41.) There is no citation to the Complaint for this assertion, however, no doubt because it was not alleged in the Complaint. Nor does this involve alleged conduct by C&W. Plaintiffs also claim that reliance has already been determined by this Court, citing the language in the order denying C&W's motion to seal. (Opp. 41.) But, that language relates to the question of whether the appraisals should be sealed, and has nothing to do with whether plaintiffs ever alleged that they read or relied on the appraisals in conjunction with their purchase of individual properties at the Resorts.

Plaintiffs make much of FIRREA in the Opposition, but impliedly acknowledge that FIRREA does not apply to loans arranged by Credit Suisse's Cayman Islands branch. (Opp. 42; SAC ¶ 60.) Plaintiffs assert that the Cayman Islands branch was "created by Credit Suisse and Cushman & Wakefield," citing ¶¶ 60-64 and 200 of the Complaint. (Opp. 8-9.) Yet none of those paragraphs even mentions C&W. To the contrary, the complaint alleges that "Credit Suisse created a 'separate' banking entity in the Cayman Islands." (SAC ¶¶ 60, 200.)

### B.    Plaintiffs Cannot Plead a Negligent Misrepresentation Claim

Plaintiffs assert their negligent misrepresentation claim can stand because courts "have found that a real estate appraiser, who values a particular property for a lender, may be liable to the homeowner for negligently preparing the appraisal, even if the appraiser is not in privity with the homeowner." (Opp. 46.) Whether or not this general proposition is correct is irrelevant. The point here is that C&W *did not prepare appraisals of plaintiffs' homes at all, and did not prepare the appraisals in connection with a loan to the plaintiffs.* Indeed, plaintiffs have not cited (nor have defendants located) a negligent misrepresentation case by a homeowner against an appraisal company that prepared appraisals of a *master development* for a lender who loaned money to a *developer* rather than the purchaser of the home.

### C.    Plaintiffs Cannot Plead a Tortious Interference Claim

Plaintiffs' Opposition is a mere recitation of the elements for the cause of action, with a conclusory statement following each element stating "we plead this." (Opp. 48-49.) Plaintiffs still do not identify what *specific* contracts purportedly were interfered with, other than to assert "contracts existed" that "took the form of covenants running with the land" and "other specific representations made by the developers to the Plaintiffs." (Opp. 48.) What exactly do the contracts provide? Who were the parties to them? Plaintiffs do not say. Plaintiffs also do not describe *how* any breach by the developers of any purported contractual promises to plaintiffs was

the result of conduct by C&W. In other words, how did C&W's preparation of appraisals for the

developers' lender interfere with the developers developing Resort amenities? No such link is

pled, and without it, there is no cause of action. *See, e.g., Chicago Title Ins. Co. v. Alday-*

*Donalson Title Co. of Florida, Inc.*, 832 So. 2d 810, 813-14 (Fla. Dist. Ct. App. 2002); *Forro*

*Precision, Inc. v. IBM Corp.*, 745 F.2d 1283, 1286 (9th Cir. 1984).

### D. **Plaintiffs Cannot Plead a Negligence Claim**

C&W raised the point in its Motion that plaintiffs' negligence claim is deficient because

C&W owed no duty to plaintiffs. (Mtn. 36-37.)[6] Plaintiffs respond that a duty of care exists

between C&W and plaintiffs because (1) a statutory duty arises from state laws adopting USPAP

and (2) "plaintiffs were in the foreseeable zone of risk of C&W's alleged reckless endeavor."

(Opp. 49.) Plaintiffs are wrong on both counts.

The statutory duty of care argument is premised on the notion that any appraisal that does

not conclude to market value violates USPAP. Yet plaintiffs cite no legal authority to support this

proposition. And with respect to plaintiffs' "zone of risk" contention, plaintiffs cite a string of

cases (none of which is in the appraisal context) for the general tort proposition that duty can be

evaluated taking into consideration the foreseeable zone of risk. But plaintiffs fail to explain why

they fall into the "foreseeable zone of risk" for appraisals prepared by C&W for Credit Suisse of

property plaintiffs do not own. To the contrary, courts have rejected a duty under the "foreseeable

zone of risk" theory when (a) defendants never met plaintiffs, and defendants' activities were

directed towards an entire master development community as opposed to plaintiffs' singular lots,

or (b) when there is a distant connection between the defendants' actions and plaintiffs' injury.

*See Virgilio*, 2010 WL 503023, at *6 (dismissing claim by plaintiff home purchaser against

---

[6] The existence of a duty for purposes of a negligence claim is a question of law. *Virgilio v. Ryland Group, Inc.*, 6:08-CV-815-ORL-31GJK, 2010 WL 503023, at *4 (M.D. Fla. Feb. 8, 2010); *Nation v. State*, 158 P.3d 953, 965 (Idaho 2007).

promotional entities that marketed the development in which the home was located for failing

"zone of foreseeable risk" analysis); *Nation*, 158 P.3d at 967 (concluding no duty existed between

plaintiffs and defendant because there was "little foreseeability of harm to plaintiffs" and there

was a "distant connection between the [ ] defendants' actions and the injury").[7]

**E.**    **Plaintiffs Have Abandoned Their Remaining State Law Claims**

In their Motion, C&W outlined specific reasons why the following causes of action, as

alleged in plaintiffs' Complaint, were deficient as a matter of law: (1) breach of fiduciary duty;

(2) unjust enrichment; and (3) common law conspiracy.  Plaintiffs acknowledge that civil

conspiracy is not a separate cause of action (Opp. 29) and do not address their breach of

fiduciary duty and unjust enrichment claims as to C&W at all, thereby abandoning them.

Accordingly, these claims must be dismissed. *Walsh*, 471 F.3d at 1037. *See also Hanig*, 384 F.

Supp. 2d at 723 ("because plaintiff did not address defendant's motion to dismiss with regard to

this claim, it is deemed abandoned and is hereby dismissed.").

**VI.    CONCLUSION**

Plaintiffs' Opposition highlights the conclusion one reaches after reading the Complaint:

C&W is a mere afterthought in this action.  Plaintiffs identify no connection between themselves

and C&W, no facts supporting their fraud claims, and no deception in the appraisals they attack.

As a matter of law, plaintiffs have no standing to pursue their claims against C&W, and C&W

has committed no fraud.  None of this can be cured by re-pleading.  As such, the Complaint

should be dismissed with prejudice as to C&W.

---

[7] Certain of the jurisdictions at issue (Florida, Idaho and Nevada) apply the economic loss rule to
bar any negligence recovery for plaintiffs for non-bodily harm or property damage.  In such
jurisdictions, the "foreseeable zone of risk" negligence theory has been deemed inconsistent with
the economic loss rule. *Sfc Valve Corp. v. Wright Mach. Corp.*, 883 F. Supp. 710, 717 (S.D. Fla.
1995); *Calloway v. City of Reno*, 993 P.2d 1259, 1270 (Nev. 2000) (superseded on other grounds)
(there is no "foreseeability exception to the economic loss rule").

DATED:  June 24, 2010

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**

By: */s/ Donald L. Morrow*
     Donald L. Morrow
     Barry G. Sher

**PERKINS COIE LLP**

By: */s/ Richard C. Boardman*
     Richard C. Boardman

Attorneys for Defendant
Cushman & Wakefield, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 24th day of June, 2010, I filed the foregoing Cushman & Wakefield Inc.'s Reply Brief in Support of Motion to Dismiss Second Amended Complaint electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Michael James Flynn | mike@mjfesq.com |
| Chris Flood | chris@floodandflood.com |
| James C. Sabalos | jimsabalos@hotmail.com |
| John Flood | john@floodandflood.com |
| Phillip H. Stillman | pstillman@stillmanassociates.com |
| Robert Huntley | rhuntley@huntleylaw.com |
| Randall A. Peterman | rap@moffatt.com |
| David Wilson Dummer | david.dummer@weil.com |
| David Jason Lender | david.lender@weil.com |
| Jason Ira Lichter | jason.lichter@weil.com |
| Thomas Ray Guy | ray.guy@weil.com |
| Richard C. Boardman | rboardman@perkinscoie.com |
| James L. Martin | jlm@moffatt.com |
| Christopher J. Conant | cconant@conantlawyers.com |

And, I hereby certify that I have mailed by United States Postal Service the foregoing document(s) to the following non-CM/ECF participant(s):

[None]

/s/ Donald L. Morrow
Donald L. Morrow