James L. Martin, ISB No. 4226
jlm@moffatt.com
MOFFATT, THOMAS, BARRETT,
ROCK & FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701-0829
Telephone (208) 345-2000
Facsimile (208) 385-5384

David J. Lender (*pro hac vice*)
david.lender@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone (212) 310-8000
Facsimile (212) 310-8007

Ray Guy (*pro hac vice*)
ray.guy@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone (214) 746-7700
Facsimile (214) 746-7777

*Attorneys for Credit Suisse Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, DEAN FRESONKE, VERN JENNINGS, TERRI FROEHLICH, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas and Ginn Sur Mer,<br><br>    Plaintiffs,<br>  v.<br><br>CREDIT SUISSE AG, a Swiss corporation, CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation, CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type, CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive,<br><br>    Defendants. | Case No. 1:10-cv-00001-EJL-REB<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS CREDIT SUISSE AG, CREDIT SUISSE SECURITIES (USA), LLC, CREDIT SUISSE FIRST BOSTON, AND CREDIT SUISSE CAYMAN ISLAND BRANCH'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTORY STATEMENT ................................................................................................ 1

ARGUMENT AND AUTHORITIES ............................................................................................ 3

I.      THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING ............... 3

II.     PLAINTIFFS FAIL TO STATE A RICO CLAIM ............................................................ 4

III.    PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS
        SHOULD BE DISMISSED ................................................................................................ 10

IV.     PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE
        DISMISSED ....................................................................................................................... 14

V.      PLAINTIFFS HAVE NOT ADEQUATELY PLED A TORTIOUS
        INTERFERENCE CLAIM ................................................................................................. 16

VI.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ............. 17

VII.    PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE DISMISSED ............................ 18

VIII.   PLAINTIFFS' CONSPIRACY CLAIM SHOULD BE DISMISSED .............................. 19

CONCLUSION ............................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Adams v. United States,* 622 F. Supp. 2d 996 (D. Idaho 2009) ....................................................12

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)........................................................... 5-6, 8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................................10

*Beck v. Prupis*, 529 U.S. 494 (2000)............................................................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 14-15

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)....................................................8

*Chavez v. Bank of Am.*, No. CV-F-09-2133 OWW/SKO, 2010 WL 1854087 (E.D. Cal.
    May 6, 2010)............................................................................................................................3

*Deutsch v. Flannery*, 823 F.2d 1361 (9th Cir. 1987)....................................................................20

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005).................................................................................9

*Goldstein v. Bank of Am., N.A.*, No. 1:09-cv-329, 2010 WL 1252641 (W.D.N.C. Jan. 19,
    2010), *aff'd*, 2010 WL 1252629 (W.D.N.C. Mar. 24, 2010)................................. 12, 14-15

*Gowen v. Tiltware, LLC*, No. 2:08-cv-01581-RCJ-RJJ, 2009 WL 1441653 (D. Nev. May
    19, 2009) ...............................................................................................................................15

*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010) ...........................................4-5, 7-8

*Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258 (1992) ...............................................4-5, 7-8

*I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC,
    2005 WL 1661959 (N.D. Cal. July 15, 2005)......................................................................3

*In re Oakwood Homes Corp.*, 340 B.R. 510 (Bankr. D. Del. 1995).............................................19

*Johnson v. KB Home*, No. CV-09-00972-PHX-FJM, 2010 WL 1268144 (D. Ariz. March
    30, 2010) ..............................................................................................................................5-6

*Kaing v. Pulte Homes, Inc.*, No. 09-5057-SC, 2010 WL 625365 (N.D. Cal. Feb. 18, 2010)..........3

*Madden v. Cowen & Co.*, 576 F.3d 957 (9th Cir. 2009)...............................................................12

*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002).........................................................6

*Menjivar v. Trophy Props. IV DE, LLC*, No. C- 06-03086SI, 2006 WL 2884396 (N.D.
    Cal. Oct. 10, 2006)................................................................................................................9

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ......................................................................11

*Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768 (9th Cir. 2002) .................................5

## TABLE OF AUTHORITIES (cont'd)

### Federal Cases (cont'd)

*Ozuna v. Home Capital Funding*, No. 08-CV-2367-IEG (AJB), 2009 WL 4544131 (S.D. Cal. Dec. 1, 2009) .............................................................................................15

*Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206 (9th Cir. 1994) .....................19

*Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194 (9th Cir. 1998)..................................18

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985).........................................................11

*Shaw v. Lehman Bros. Bank, FSB*, No. CV-08-406-S-BLW, 2009 WL 790166 (D. Idaho Mar. 20, 2009)..................................................................................... 14-15

*Silver Valley Partners, LLC v. De Motte*, No. 06-429-N-ELJ, 2007 WL 2802315 (D. Idaho Sept. 24, 2007) ................................................................................................20

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976).................................................3

*United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986) ....................................................8

*United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, No. CV07-297-S-EJL, 2008 WL 2857372 (D. Idaho July 23, 2008) .......................................................11

*Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989 (9th Cir. 2006)................10

*Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904(RJS), 2009 WL 2356131 (S.D.N.Y. July 27, 2009) ....................................................................................17

*Witt v. Condos. at the Boulders Ass'n*, No. 04-cv-02000-MSK-MEH, 2007 WL 840509 (D. Colo. Mar. 19, 2007)....................................................................................15

### State Cases

*Armetta v. Cleveland Realty Investors*, 359 So.2d 540 (Fla. Dist. Ct. App. 1978) ................13, 19

*Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73 (Idaho 2005)..............................17

*J.J. Indus., LLC v. Bennett*, 71 P.3d 1264 (Nev. 2003) ................................................16

*Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154 (Nev. 1997)....................13

*Mattingly v. First Bank of Lincoln*, 947 P.2d 66 (Mont. 1997) ....................................13

### Statutes and Rules

18 U.S.C. § 1962............................................................................................... 8-10

Fed. R. Civ. P. 9.............................................................................................9, 11, 20

Fed. R. Civ. P. 12 .........................................................................................3, 18, 20

The Credit Suisse Defendants, by and through their attorneys, submit this reply memorandum of law in further support of their Motion to Dismiss ("Motion" or "CS Mem.").

## INTRODUCTORY STATEMENT

Plaintiffs' Opposition Brief ("Opposition" or "Opp.") does not cure the Complaint's critical failings.   Indeed, in many cases, the Opposition does not even address the clear deficiencies that are discussed, in detail, in Credit Suisse's Motion.   For instance, Credit Suisse noted that Plaintiffs had nowhere alleged, in their entire 115-page Complaint, a single specific misrepresentation made to any Plaintiff.   CS Mem. at 1.   Plaintiffs' Opposition does not identify a single such misrepresentation either; instead, Plaintiffs urge the Court to accept generalities and the sort of group allegations that permeate their Complaint—for example, a vague reference to an undefined "promise" allegedly made by Credit Suisse to "both developers and homeowners."   Opp. at 6.   Credit Suisse's Motion also noted that, while the Complaint repeatedly referred to FIRREA, it did not identify a single specific provision of FIRREA that Credit Suisse allegedly violated.   CS Mem. at 3.   The Opposition fails to supply any such citation; instead, Plaintiffs now have resorted to claimed violations of a different statute, USPAP, again without citing any specific USPAP standards allegedly violated by Cushman & Wakefield as the author of the appraisals, let alone by Credit Suisse as the recipient.   Further, the Opposition does not cure the inherent implausibility of Plaintiffs' basic theory: that Credit Suisse acted deliberately to reduce the value of resorts that Credit Suisse intended to acquire and own through foreclosure.

While failing to address, let alone cure, the deficiencies in the Complaint, Plaintiffs urge that this action should nonetheless proceed based on a *vacated* May 13, 2009 ruling of the United States Bankruptcy Court for the District of Montana (the "Vacated Order")—which, they say, "establishes the *bona fides* of Plaintiffs' claims."   Opp. at 4 (emphasis in original).   But

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT**

Plaintiffs repeatedly overstate and misrepresent the contents of the Vacated Order.   For

example, Plaintiffs begin and end their Opposition with the false claim that the Vacated Order

includes a finding that Credit Suisse violated FIRREA.   *Id.* at 4, 50.   The Montana Bankruptcy

Court did no such thing.[1]   Plaintiffs also claim that "the Montana Bankruptcy Court [f]ound[]

that Credit Suisse intended that the developments fail in order to obtain those high end

developments at a substantial discount."   *Id.* at 14.   Again, the Vacated Order contains no such

finding; the theory of a pre-funding scheme to lend excessive amounts of money with the

intention that the borrowers default, in order to lose hundreds of millions of dollars and

ultimately foreclose upon resorts worth a fraction of the outstanding loan amounts, originated

with these Plaintiffs or their lawyers—not the Bankruptcy Court.[2]

        The Opposition did not and cannot cure the deficiencies in each of Plaintiffs' eight[3]

causes of action, most of which fail for one or both of two fundamental reasons: first, Credit

Suisse neither owed nor violated any obligations to Plaintiffs; and second, Credit Suisse is not

responsible for the developers' failures to satisfy any obligations that *they* may have owed to

Plaintiffs to provide ski lifts or golf courses.   Accordingly, Credit Suisse's Motion should be

granted.

---

[1]   The only mention of FIRREA was a paraphrase of the testimony of Jeff Barcy, who testified that Credit Suisse in making the loans was not concerned with FIRREA compliance "because Credit Suisse was seeking to sell its syndicated loans 'to non bank institutions.'"   Vacated Order at 7.   In this respect, the Vacated Order correctly stated the applicable law that FIRREA does not apply to a loan arranged by a non-U.S. bank with non-bank participating lenders.

[2]   Indeed, in one quotation to the Vacated Order—which elevated the priority of unsecured creditors by equitably subordinating the secured lenders' claims—Plaintiffs altered the Order to create the impression that they were among the beneficiaries of the Bankruptcy Court's ruling, when they clearly were not: "Credit Suisse lined its pockets on the backs of the unsecured creditors [including the homeowners]."   Opp. at 21 (bracketed insertion by Plaintiffs).

[3]   Plaintiffs included no response in their Opposition regarding their claim for breach of the covenant of good faith and fair dealing and thus, apparently, have dropped it.

## ARGUMENT AND AUTHORITIES

**I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING**

As explained in Credit Suisse's Motion, Plaintiffs lack standing to bring this action because the Complaint alleges neither an injury in fact nor the requisite causal connection between such an injury and Credit Suisse's purported wrongdoing.   Without standing, this Court lacks subject matter jurisdiction and must dismiss the Complaint pursuant to Rule 12(b)(1).

Plaintiffs' entire response on standing is relegated to a footnote, but even this response completely ignores the causal connection prong of the standing inquiry.   As such, Plaintiffs effectively have conceded that they lack any response on this point, mandating dismissal.[4]   It is not surprising that Plaintiffs failed to refute Credit Suisse's showing as to lack of causation. Where, as here, the purported injury could have been caused by factors extraneous to those alleged, such as the turbulent state of the economy, the requisite causation is absent.   *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976) (explaining that "unadorned speculation [as to causation] will not suffice to invoke the federal judicial power"); *see also* CS Mem. at 6 n.5 (citing analogous cases dismissing complaints for lack of standing).

As for the injury in fact requirement, Plaintiffs acknowledge that the court in *Kaing v. Pulte Homes, Inc.*, No. 09-5057-SC, 2010 WL 625365, at *5-6 (N.D. Cal. Feb. 18, 2010) required a showing of a "realized" decrease in value, and implicitly admit that they have not satisfied this requirement (*see* Opp. at 4 n.2), but then assert (without any citation to their Complaint) that "Plaintiffs clearly allege other cognizable damages in addition to diminution in

---

[4]  *See Chavez v. Bank of Am.*, No. CV-F-09-2133 OWW/SKO, 2010 WL 1854087, at *14 (E.D. Cal. May 6, 2010) (holding plaintiffs did "not respond to [a particular] aspect of the motion to dismiss . . . and thereby concede that the [c]omplaint does not allege facts" supporting that element of the claim); *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 WL 1661959, at *14 (N.D. Cal. July 15, 2005) (dismissing claim where "I-Enterprise fails to address this portion of defendants' motion in its opposition and, thus, effectively concedes that it is not pursuing a negligent misrepresentation claim").

property values." *Id.*   Nowhere in their Complaint or Opposition do Plaintiffs explain how the alleged loss of amenities is cognizable other than by a reduction in property value. Consequently, Plaintiffs fail to meet this prong of the test as well.   As a result of each of these fundamental deficiencies in jurisdiction, Plaintiffs lack standing to bring this action.

## II.   PLAINTIFFS FAIL TO STATE A RICO CLAIM

A.   <u>Plaintiffs' Claims Are Too Remote to Recover Under RICO</u>

1.   *Plaintiffs have failed to plead proximate cause.*

Plaintiffs claim that they have adequately pled proximate cause because the alleged "loan to own" scheme "led directly and without detour, to the harm (loss of contractually promised amenities)."   Opp. at 25.   However, Plaintiffs' alleged injury—loss of amenities—was not caused by Credit Suisse's facilitation of loans based on allegedly fraudulently obtained appraisals.   Instead, their alleged harm occurred only because the borrower-resort developers defaulted on their loans and failed to construct or maintain the allegedly promised amenities. Had the developers been able to satisfy their obligations to the homeowners, the alleged promised amenities would have been built and maintained.   Thus, the link between the alleged harm and the accused conduct is "too remote, purely contingent or indirect."   *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 985 (2010) (quotations omitted).

The fact that Plaintiffs were allegedly harmed by the loans, or are the "only persons who could recover for the claims" of lost amenities (Opp. at 25), is irrelevant.   In *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258 (1992), only the SIPC was forced to pay $13 million to cover customers' claims.   Yet the Court still dismissed the RICO claim because the "conspirators have allegedly injured the[] customers only insofar as the stock manipulation first injured the broker-dealers and left them without the wherewithal to pay customers' claims."   *Id.* at 271.   Plaintiffs' own characterization of the remoteness problem in *Holmes* shows the infirmity of the RICO

claim here.   Plaintiffs describe the "harm befalling the customers" in *Holmes* as being "caused by the failure of the broker-dealers, not the loss of money from the stock manipulation scheme." Opp. at 17.   But the same is true here—any harm befalling the homeowners was caused, if at all, by the developers' failure to repay their loans and build and/or maintain certain alleged promised amenities, not by the use of allegedly fraudulent appraisals to facilitate the loans.

Similarly, in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 454 (2006), and in *Hemi*, 130 S. Ct. at 984, the only person claiming the specific alleged injury was the plaintiff.   In *Anza*, only the plaintiff was alleged to have lost business because of the defendants' failure to pay taxes and undercutting of plaintiff's prices.   In *Hemi*, only the City was alleged to have lost tax revenues.   Yet in each case, the Court found that the plaintiff failed to allege proximate cause. The fact that the alleged misconduct may have been the "but for" cause of the plaintiff's alleged harm was not enough for pleading a RICO offense.   *See id.* at 990 ("We explained that, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'") (quoting *Holmes*, 503 U.S. at 268).   The Ninth Circuit in *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 773 (9th Cir. 2002) succinctly explained this difference in characterizing *Holmes*: "While Holmes's acts caused the stock broker's bankruptcy, only the bankruptcy caused the losses suffered by the customers and hence by the SIPC.   Thus, Holmes's acts may have been the 'but for' cause of the SIPC's losses, but they were not the proximate cause because there was no direct relationship between Holmes's alleged conduct and SIPC's asserted injury."

Plaintiffs seek to analogize this case to *Johnson v. KB Home*, No. CV-09-00972-PHX-FJM, 2010 WL 1268144 (D. Ariz. March 30, 2010), claiming that the district court found proximate cause based on "Defendants' arrangement to inflate appraisals."   Opp. at 22.

However, the *Johnson* court never ruled directly on the issue of proximate cause, noting that the defendants "mention[ed] the RICO proximate causation requirement only in passing" (*id.* at *6), and did not address proximate cause in their reply "aside from reasserting that reliance at some level is required to state a RICO claim based on mail fraud."   *Id.*   Further, *Johnson* is distinguishable from the instant case because the appraisals at issue there were of the plaintiffs' homes and the claim was that the plaintiffs overpaid for their homes due to the inflated appraisals that they had commissioned and paid for.   *Id.* at *1.   Thus, in *Johnson* (unlike here), there was a direct link between the overpayments and the inflated appraisals.[5]

> 2. *Each of the three factors set forth in Holmes and Anza clearly shows that Plaintiffs' claims are too remote.*

Each of the three factors identified by the Supreme Court further shows that Plaintiffs' claims are too remote.   <u>First</u>, it will be difficult to ascertain the amount (if any) of Plaintiffs' damages attributable to Credit Suisse's alleged misconduct as opposed to numerous other potential causes.   Plaintiffs do not dispute that the depressed real estate market, turbulent state of the economy, and collapse of the credit markets have resulted in significant reductions in property values.   Separating the impact of these factors from the loans will be impossible.   That Plaintiffs may be able to pay an expert to offer an opinion on damages does not remedy this issue.   *See Anza*, 547 U.S. at 458 (holding RICO claims too remote where the defendant "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud.").

<u>Second</u>, if a claim this remote is allowed to proceed, apportioning damages between and

---

[5]  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1170 (9th Cir. 2002), another case relied upon by Plaintiffs, also is distinguishable.   In that case, decided before *Anza* and *Hemi*, the plaintiffs claimed that they lost wages due to the defendants' hiring of illegal immigrants at low wage levels and specifically alleged that the defendants' purpose in hiring illegal workers was to depress the plaintiffs' wages.   *Id.* at 1166.   Here, Plaintiffs do not allege that Credit Suisse undertook the alleged loan to own scheme in order to deprive them of their resort amenities. Instead, they allege that the scheme was to foreclose on the loans and obtain the properties at a discounted price, the result of which caused the amenities not to be built or maintained.

among all of the other potential plaintiffs (*e.g.*, developers, investors, contractors, home builders) while attempting to avoid duplicative recoveries would be speculative, time-consuming, and perhaps an impossible task.   Plaintiffs also failed to respond to the concern raised in *Holmes*, 503 U.S. at 259, about allowing suits involving entities in different stages of bankruptcy, such as the developments at issue here, because it "could be an attempt to circumvent the relative priority [Plaintiffs'] claims would have in the directly injured victim[s]' liquidation proceedings."

Third, more directly impacted parties could be expected to bring suit and vindicate the law if the allegations in the Complaint were true.   Plaintiffs misstate this factor when they argue that developers have "no incentive to sue the Defendants for the harms suffered by Plaintiffs." Opp. at 23.   This factor is not about whether others will sue for the specific harms alleged by the Plaintiffs.   No one other than the SIPC paid $13 million in *Holmes*.   No one other than the City lost tax revenues in *Hemi*.   Instead, this factor is about whether other more directly impacted victims can be expected to vindicate the laws regarding the alleged fraudulent conduct.   *See Holmes*, 503 U.S. at 269-70 (stating that the court should consider whether there are more direct victims of the alleged wrongful conduct who "can generally be counted on to vindicate the law as private attorneys general").

Similarly, Plaintiffs' rank speculation that developers would not want to sue Credit Suisse for fear of counterclaims on their loan defaults also misstates this factor.   As the Court explained in *Hemi*, this consideration is about "whether better situated plaintiffs would have an incentive to sue," not whether they would sue.   130 S. Ct. at 990.   The Court concluded that the State was "better situated than the City to seek recovery from Hemi," even though it did "not opine on whether the State could bring a RICO action for any lost tax revenue."   *Id.*

> 3.    *Plaintiffs are incorrect in asserting that RICO proximate cause is necessarily a jury issue.*

Relying on two shipping damages cases, Plaintiffs claim incorrectly that the issue of proximate cause for RICO is "generally . . . an issue for the jury."   Opp. at 25.   Both *Anza* and *Hemi* were decided on motions to dismiss (*see Anza*, 547 U.S. at 453; *Hemi*, 130 S. Ct. at 986), and *Holmes* was decided on summary judgment.   *See Holmes*, 503 U.S. at 263.

B.    <u>Plaintiffs Have Not Pled a Cognizable RICO Enterprise</u>

Plaintiffs failed to address Defendants' argument that both the Supreme Court and the Ninth Circuit require a plaintiff to plead a RICO enterprise that is a separate and distinct entity from each of the defendants and/or RICO "persons" (*see, e.g.*, *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001); *United States v. Benny*, 786 F.2d 1410, 1415-16 (9th Cir. 1986)), and that Plaintiffs' Complaint fails to do so.   *See* CS Mem. at 13-14.   To the contrary, in their brief, Plaintiffs identify the Credit Suisse Cayman Branch (which is a named defendant) or all of the Defendants as the enterprise.   Thus, Plaintiffs concede that they have not adequately pled a cognizable RICO enterprise, and their RICO claim should be dismissed.

C.    <u>Plaintiffs Concede That Section 1962(a) and (b) Claims Should Be Dismissed</u>

Plaintiffs failed to provide any response to Credit Suisse's argument that the Complaint fails to adequately allege any violation of sections 1962(a) and (b).   *See* CS Mem. at 12. Accordingly, Plaintiffs' claims under these subsections should be dismissed.   *See supra* p.3 n.4.

D.    <u>Plaintiffs' Claim Under Section 1962(d) Should Be Dismissed</u>

Plaintiffs also fail to directly address Credit Suisse's argument with respect to Section 1962(d) of the RICO statute.   Plaintiffs are correct that they must supply "proof of an agreement the objective of which is a *substantive violation of RICO*" (Opp. at 29 (emphasis added)), and that a conspiracy claim may survive only where "a substantive violation is properly pleaded"

*Id.*   Thus, a conspiracy claim under section 1962(d) cannot survive without a properly pled

violation under section 1962(c).   *Menjivar v. Trophy Props. IV DE, LLC*, No. C-06-03086SI,

2006 WL 2884396, at *13 (N.D. Cal. Oct. 10, 2006).   Here, Plaintiffs have not pled a

cognizable RICO enterprise and their 1962(c) claim is too remote.   Accordingly, Plaintiffs'

claims under section 1962(d) should be dismissed.

   E.   Plaintiffs Do Not Plead Damage to a Business or Property Interest

   Recognizing that RICO requires a harm to a specific business or property interest (*see*

Opp. at 13), Plaintiffs claim that they have alleged a property interest in the development of

amenities and that their injury is the "failure to develop the bargained-for amenities."   *Id.* at 14.

To the extent Plaintiffs' claim is that their injury is the loss of use or enjoyment of the alleged

promised golf courses and ski lifts, such injuries would be personal and not cognizable under

RICO, even under *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (cited at Opp. at 14).   To the

extent Plaintiffs claim instead that their injury is a diminution in the value of their homes because

of the alleged missing promised amenities, this creates remoteness issues for the reasons set forth

above.   Either way, the RICO claim should be dismissed.

   F.   Plaintiffs Have Not Met the Particularity Requirement of Rule 9(b)

   Plaintiffs assert that they have adequately pled three specific acts of wire fraud by

providing information on "person, place, date and content" as required by Rule 9(b).   Opp. at 9

n.4.   This is false.   The three cited allegations are limited to the Yellowstone loan.   Thus,

Plaintiffs offer not a single specific allegation aimed at the other three developments.   Two of

the three Complaint paragraphs referenced by Plaintiffs (¶¶ 217(c) and (d)) fail to provide any

information on "content" or "place" whatsoever, and offer no information on the alleged

"person" who made the communication aside from vaguely mentioning "Credit Suisse."

Moreover, none of the three paragraphs identifies any misrepresentations that allegedly took

place during those communications.   Paragraphs 217(c) and (d) simply allege that "Credit

Suisse" "solicit[ed]" Yellowstone and "transmitted loan forms by wire in furtherance of the

scheme to defraud."   Paragraph 225 simply alleges that Jeff Barcy "cold call[ed]" the

Yellowstone developer and represented that Credit Suisse "possessed the expertise, knowledge

and experience to implement" the loan program.   Nothing in these communications is tied to the

alleged fraudulent appraisals that form the basis of the Complaint.   Plaintiffs have likewise

failed to plead their Section 1962(d) claims with the requisite specificity.   *See generally Wasco*

*Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991-92 (9th Cir. 2006) (finding that Rule

9(b) applies to pleading a conspiracy to commit fraud as well as fraud claims).

In addition, violations of FIRREA or USPAP are not predicate acts.   Therefore, any

alleged harm caused to Plaintiffs based on alleged violations of these statutes do not permit them

to recover under RICO.   *See Beck v. Prupis*, 529 U.S. 494, 507 (2000) ("a person may not bring

suit under [RICO] for injuries caused by an overt act that is not an act of racketeering or

otherwise unlawful under the statute.").

*        *        *

For all of the foregoing reasons, Plaintiffs' RICO claims should be dismissed.

## III.   PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS SHOULD BE DISMISSED

In its Motion, Credit Suisse exposed that Plaintiffs failed to identify a single

misrepresentation made to any of them in their entire 115-page, twice-amended Complaint.

None is identified in their Opposition.   Instead, Plaintiffs point to the same general group

allegations that permeate the Complaint of supposed promises made to "both developers *and*

*homeowners*," *see* Opp. at 6 (citing Compl. ¶ 77), and recite formulaic elements of the causes of

action, as condemned by the Court in *Iqbal*.   Such pleadings cannot survive a motion to dismiss.

A.    Plaintiffs Are Required to Plead All the Elements of Fraud with Particularity and Are Not Entitled to a Lenient Pleading Standard

Attempting to excuse their pleading insufficiencies, Plaintiffs argue that they are required neither to plead fraud with particularity nor to plead all the elements of the cause of action. However, the cases Plaintiffs cite explicitly contradict their position.   For example, in *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (cited at Opp. at 28), the Ninth Circuit held that a complaint alleging fraud "must specify such facts as the times, dates, places, benefits received and other details of the fraudulent activity."   *Id.*   The court further held that the relaxed pleading standard exception "does not nullify Rule 9(b)" and dismissed a fraud claim because the plaintiff "[did] not state the content of any allegedly false and misleading statements, nor precisely when or where he obtained the false information."   *Id.* at 672; *see also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (cited at Opp. at 28) (requiring specificity as to "time, place, and specific content of the false representation").

Further, as this Court has held, a lenient application of Rule 9(b) is allowed only "in a *limited* class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession."   *United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, No. CV07-297-S-EJL, 2008 WL 2857372, at *13 (D. Idaho July 23, 2008) (emphasis added).   This case does not fit within that "limited class," since these Plaintiffs should be expected to know whether Credit Suisse made any misrepresentations *to them*.   To the extent that they intend to rely on the allegedly infirm appraisals, the named Plaintiffs know whether, in their negotiations to purchase their luxury vacation homes, they asked about—or were told about —the appraisals of unsold lots and common areas supporting the developers' financing.   That Plaintiffs have not specifically alleged such an implausible set of facts does not mean that the facts are beyond Plaintiffs' control, but instead that they do not exist.   Plaintiffs have simply failed to satisfy the

Rule 9(b) standard and, accordingly, their fraud claim should be dismissed.

   B. <u>Plaintiffs Have Failed to Plead Third-Party Fraud</u>

  Plaintiffs' cursory references to third-party fraud do not obviate the requirements of Rule 9(b).[6]  Indeed, in *Goldstein v. Bank of America, N.A.*, No. 1:09-cv-329, 2010 WL 1252641, at *7 (W.D.N.C. Jan. 19, 2010), *aff'd*, 2010 WL 1252629 (W.D.N.C. Mar. 24, 2010), the court dismissed a third-party fraud claim brought against a lender by owners of residential lots whose developer failed to complete roads and other infrastructure.   In *Goldstein*, unlike here, the plaintiffs actually borrowed their purchase money from the defendant bank, and alleged damages resulting from inflated appraisals of their properties.   Even in that instance, the court dismissed the complaint, noting that "plaintiffs fail[ed] to allege that any employee of [the defendant] made any specific representation to any particular plaintiff concerning the value or any other attribute of any particular lot in the [] development."  *Id.*   Here, Plaintiffs have not only failed to identify a specific misrepresentation made by Credit Suisse to a single homeowner, they likewise have failed to allege any specific misrepresentation made by Credit Suisse to a developer that was thereafter communicated to a homeowner.   The third-party fraud allegations must be dismissed.

         *        *        *

  For similar reasons, and the reasons set forth in Credit Suisse's Motion, Plaintiffs' negligent misrepresentation claim, which relies on appraisals prepared for developers and prospective lenders, should be dismissed.

---

[6] The cases cited by Plaintiffs are either distinguishable or do not support the propositions for which they were cited.  *See Madden v. Cowen & Co.*, 576 F.3d 957, 968-69 (9th Cir. 2009) (explicitly *refraining* from determining whether person who makes statement to party who then repeats it to third party is liable to that third party) (cited at Opp. at 30); *Adams v. United States,* 622 F. Supp. 2d 996, 1003 (D. Idaho 2009) (considering whether defendant's representative adopted statement made by another by quietly standing in front of room while the other individual spoke) (cited at Opp. at 30).

C.   Plaintiffs' Constructive Fraud Claim Should Be Dismissed Because They
     Have Failed to Allege Facts Giving Rise to a Duty to Disclose

To salvage their fraud claim (and their breach of fiduciary duty claim, addressed *infra*),

Plaintiffs assert that Credit Suisse had a special relationship with Plaintiffs so that Credit Suisse

became liable for the promises made by the developers.   *See* Opp. at 35-36.   But as Credit

Suisse established in its Motion (*see* CS Mem. at 19, 21-25), neither Credit Suisse's borrower-

lender relationship with developers nor the developers' relationship with homebuyers is

fiduciary, or "special," in character.   The cases cited by Plaintiffs for the notion that Credit

Suisse became "one and the same as the developers" actually contradict their position.   For

example, *Armetta v. Cleveland Realty Investors*, 359 So.2d 540, 543 (Fla. Dist. Ct. App. 1978)

(cited in Opp. at 36), held that the lender was *not* liable to the third-party condominium

purchasers and dismissed the claim.   Although the court did discuss two cases in which a lender

"assumed complete control of the developer-borrower's building operations" and thus became

"liable to third parties," the *Armetta* court reached the opposite conclusion, holding that

"provisions contained in a loan agreement solely for the protection of the lender do not create a

duty on the part of the lender to others."   *Id.* at 542-43.   The same is true here.

Likewise, the cases cited by Plaintiffs for the notion that the existence of a special

relationship can be a fact issue (Opp. at 35) involve lenders who actually lent money *to the*

*plaintiffs*.   *See Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1160 (Nev. 1997)

(existence of a special relationship depended on whether bank was "the lender as well as the

seller"); *Mattingly v. First Bank of Lincoln*, 947 P.2d 66, 72-73 (Mont. 1997) (plaintiff

contracted to borrow money from the defendant bank).   Credit Suisse did not lend money to

Plaintiffs; Credit Suisse had no relationship whatsoever—whether "special" or ordinary—with

them.   Accordingly, as a matter of law, the fraud claims should be dismissed.

## IV.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

Plaintiffs' Complaint failed to adequately allege the existence of *any* relationship—much less a fiduciary relationship—between Plaintiffs and Credit Suisse.   For this reason alone, their breach of fiduciary duty claim must be dismissed.   *See* CS Mem. at 21.   The arguments set forth in Plaintiffs' Opposition do nothing to salvage this claim.

Plaintiffs argue that Credit Suisse "undertook a fiduciary duty to [them] by . . . representing to [them] that it would act in their best interests[.]"   Opp. at 38.   This allegation is nothing more than a restatement of the test for determining whether a fiduciary relationship exists.   Such conclusory allegations are not entitled to any presumption of truth and cannot withstand a motion to dismiss.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Shaw v. Lehman Bros. Bank, FSB*, No. CV-08-406-S-BLW, 2009 WL 790166, at *1 (D. Idaho Mar. 20, 2009).   In fact, Plaintiffs fail to allege any actual instance where any person at Credit Suisse made such a representation to any one of the eight named plaintiffs.   *See* CS Mem. at 17-18.

Plaintiffs have abandoned their attempt to satisfy their pleading requirement by alleging a "three-headed" fiduciary relationship.   As Credit Suisse pointed out in its opening brief, this concept is not legally cognizable and in any event was expressly foreclosed by contractual disclaimers.   *See id.* at 21-23.   Instead, Plaintiffs now concoct and substitute a brand new argument:   that Credit Suisse assumed the role of the developers and thus became the agent, and fiduciary, of Plaintiffs.   This argument has no basis in fact or in law.

As an initial matter, Plaintiffs allege no facts to support the existence of a fiduciary relationship between themselves and the developers, and courts have held that no such relationship exists absent special circumstances.   *See Goldstein*, 2010 WL 1252641, at *10 (dismissing claim for breach of fiduciary duty because "[a]ssuming that plaintiffs are attempting

to allege that [defendant] crossed the line between lender and developer, no fiduciary relationship at law exists between the developer and purchaser of property.").   Even if the developers owed fiduciary duties to Plaintiffs, there is no factual or legal basis to impose those duties on Credit Suisse.   *See, e.g.*, *Witt v. Condos. at the Boulders Ass'n*, No. 04-cv-02000-MSK-MEH, 2007 WL 840509, at *6 (D. Colo. Mar. 19, 2007) (granting summary judgment because there was no legal support for plaintiff's argument that "where a person owes a fiduciary duty to another, all agents of that person owe a similar fiduciary duty to the other").   As they do in countless other places, Plaintiffs substitute conclusory statements—for example, that Credit Suisse "so dominated the developers so as [*sic*] become one and the same as the developers" (Opp. at 39)—for factual allegations, a strategy that cannot withstand a motion to dismiss.   *See Twombly*, 550 U.S. at 555; *Ozuna v. Home Capital Funding*, No. 08-CV-2367-IEG (AJB), 2009 WL 4544131, at *9 (S.D. Cal. Dec. 1, 2009) (plaintiffs' allegations that a loan servicer "step[ped] into the shoes of the Originating Lender, and that Defendants are all agents, employees, and fiduciaries of each other" were legal conclusions, which "the Court need not accept [] as true."); *Shaw*, 2009 WL 790166, at *1.   Plaintiffs cite no case to support the proposition that a fiduciary relationship can be "inherited" in this manner in *any* situation, much less by the mere act of foreclosing on collateral pursuant to contractual rights.

 An additional dispositive shortcoming in Plaintiffs' Complaint is their failure to plead the nature of the fiduciary duty allegedly owed to them or the specifics of the fraudulent conduct by which Credit Suisse allegedly breached that duty.   *See Gowen v. Tiltware, LLC*, No. 2:08-cv-01581-RCJ-RJJ, 2009 WL 1441653, at *8 (D. Nev. May 19, 2009) (dismissing fiduciary duty claim where plaintiff did not specify the nature of the duty owed to her by defendants).   Finally, Plaintiffs have not alleged any facts that, if true, would demonstrate that a breach of fiduciary

duty by Credit Suisse was the proximate cause of their damages.   Plaintiffs merely state the legal conclusion that the "breach . . . was the direct and proximate cause of the Plaintiffs' damages," and cite only the Vacated Order as support.   *See* Opp. at 39-40.[7]

## V.   PLAINTIFFS HAVE NOT ADEQUATELY PLED A TORTIOUS INTERFERENCE CLAIM

Plaintiffs have failed to state a claim for tortious interference with contracts between the Plaintiffs and developers.[8]   Plaintiffs' Opposition cites random paragraphs of the Complaint that are not only largely unrelated to the propositions for which they are cited, but are comprised of wholly conclusory allegations rather than facts that would support a tortious interference claim. Plaintiffs must allege that Credit Suisse induced the developers to breach their alleged contracts with Plaintiffs in order to state a tortious interference claim; a general allegation of "intent to interfere" does not suffice.   *See* CS Mem. at 27; *see also J.J. Indus.*, *LLC v. Bennett*, 71 P.3d 1264, 1268 (Nev. 2003).   Yet the paragraphs of the Complaint cited by Plaintiffs (*see* Opp. at 40-41) do not even allege the *existence* of specific contracts between Plaintiffs and developers, let alone that Credit Suisse knew about the alleged covenants and obligations running from the developers to Plaintiffs and induced developers to breach them.   Plaintiffs likewise have not alleged a motive for Credit Suisse to have done so, which is understandable.   Even if Plaintiffs' "loan to own" allegations rang true, Credit Suisse logically would not want to diminish the value of land that it intended to ultimately own by causing the loss of amenities.

---

[7]  With respect to the statute of limitations in Montana, whether the limitations period is two or three years, Plaintiffs' fiduciary duty claims have not been timely asserted for the reasons set forth in Credit Suisse's Motion.   *See* CS Mem. at 26.   Plaintiffs' talismanic reference to the discovery rule should be rejected since Plaintiffs had all the information they needed to file this action more than three years prior to the date of the Complaint.

[8]  Plaintiffs also failed to state a claim with regard to the parcel of land near the planned golf course at Lake Las Vegas, as the Complaint sets forth *no* facts regarding this specific property or the existence of a contract with which Credit Suisse allegedly interfered.   *See* CS Mem. at 28-29.

Plaintiffs also failed to articulate the proximate cause element of their claim.   They simply state that they "have suffered significant damage" (Opp. at 41), rather than enunciating how the damage they allegedly suffered was the result of Credit Suisse's alleged tortious interference.   Plaintiffs' alleged damages are attributable to the developers' failure to build or maintain amenities.   Nothing prevented a developer from using the loan proceeds to maintain the golf courses or ski lifts if it chose to do so.[9]

## VI.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

Plaintiffs allege that Credit Suisse was unjustly enriched by obtaining "enormous fees" from *other parties* (Opp. at 42), which cannot support a claim of unjust enrichment.   *See, e.g.*, *Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73, 91-93 (Idaho 2005) (affirming dismissal of unjust enrichment claim where there was no legal relationship between the parties and the allegedly unjust benefit was not conferred by plaintiffs); *see also Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904(RJS), 2009 WL 2356131, at *11 (S.D.N.Y. July 27, 2009) (dismissing unjust enrichment claim where plaintiffs offered only conclusory allegations that defendants had been unjustly enriched at their expense, and did not establish a sufficient link between plaintiffs' losses and defendants' profits).

In their Opposition, Plaintiffs have come up with a new argument, not pled in their Complaint, that Credit Suisse was unjustly enriched by virtue of being relieved of the "costly burden of fulfilling the promises and property covenants made by the developers. . . ."   Opp. at 42.   Plaintiffs cite no cases that support extending a claim for unjust enrichment this far, nor was Credit Suisse able to locate one.   Plaintiffs' argument that they can plead unjust enrichment "in

---

[9]   Whether Montana imposes an independent "unlawful purpose" element to this claim or, as Plaintiffs suggest, the "unlawful purpose is the "purpose of causing damage or loss to the plaintiff," Opp. at 40 n.18, the claim should be dismissed against the Montana plaintiffs for the additional reason that they failed to allege that Credit Suisse was engaged in anything other than a legitimate business transaction.   *See* CS Mem. at 28.

the alternative" is equally bereft of support; indeed, it would turn virtually every breach of

contract case based on a failure to perform into an unjust enrichment claim.  *See* Opp. at 42.[10]

In any event, any such new allegations must be set aside for purposes of Rule 12(b)(6) analysis.

*See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations

contained in [plaintiffs' opposition to defendants' motion to dismiss] are irrelevant for Rule

12(b)(6) purposes").

## VII.   PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE DISMISSED

Plaintiffs' negligence claims fail because Credit Suisse owed no duty to the Plaintiff

homeowners.   Plaintiffs offer two arguments in support of such a duty:   a duty supposedly

imposed by USPAP, and a common-law duty based on Plaintiffs being within the "foreseeable

zone of risk of [Credit Suisse's] reckless behavior."   Neither argument salvages their claims.

The argument based on USPAP fails for several reasons.   First, Plaintiffs have not

alleged any specific requirements of USPAP, or how they were violated.   Second, Plaintiffs

have not articulated how the unspecified requirements of USPAP, which they claim "impose[] a

duty on real estate appraisers" (Opp. at 45), apply to Credit Suisse, which did not conduct the

appraisals or author the appraisal reports.   Third, Plaintiffs offer no support for their claim that

Congress in enacting FIRREA, or states in adopting USPAP, intended to create civil remedies

for homeowners whose homes and lots *were not the subject of the appraisals in question.*

Similarly, Plaintiffs have not cited a single authority for the remarkable claim that resort

homeowners were within a "zone of risk" of appraisals engaged by someone other than

---

[10]  In the cases Plaintiffs cited for this proposition, the unjust enrichment claim is pled in the
alternative to the breach of contract claim.   By contrast, the unjust enrichment claim here is
entirely dependent upon the success of the fraud claim.   Thus, if the fraud claim were to
succeed, then Plaintiffs would have an adequate remedy at law.   If, on the other hand, the fraud
claim were to fail (as it should), then Plaintiffs' unjust enrichment claim must fail as well.   *See*
CS Mem. at 32 (citing cases).

Plaintiffs, authored by someone other than Credit Suisse, and covering real estate that the

Plaintiffs do not own.   Rather, Plaintiffs' own cases (*see* Opp. at 46) reinforce the proposition

that, even had Credit Suisse lent money directly to Plaintiffs, which it did not, it would not have

owed Plaintiffs a duty of care.   For example, in *Armetta*, 359 So.2d at 543, the court affirmed

the dismissal and rejected the notion of "broadly holding a lender liable to third party purchasers

of dwelling units constructed and sold by the developer-borrower," stating that "[e]ven when a

lender is in privity with a purchaser," mortgage provisions "do not give rise to a duty by the

lender to the purchaser mortgagor. . . ."   And in *Resolution Trust Corp. v. BVS Dev., Inc.*, 42

F.3d 1206, 1214 (9th Cir. 1994), the Ninth Circuit held that "even if the loan agreement did not

contain an express disclaimer of any oversight duties . . . a construction lender loaning money to

a developer ordinarily owes no duty to subordinated sellers."[11]   Thus, Credit Suisse owed

Plaintiffs no duty of care and Plaintiffs' negligence claims should be dismissed.

## VIII.   PLAINTIFFS' CONSPIRACY CLAIM SHOULD BE DISMISSED

By conceding that civil conspiracy is not an independent cause of action (*see* Opp. at 48),

Plaintiffs admit that, if the Court dismisses the underlying causes of action, the conspiracy claim

also must be dismissed.   In addition, Plaintiffs have not disputed that the various Credit Suisse

Defendants could not have conspired with each other, and instead confine their allegations of a

potential conspiracy to one between Credit Suisse and Cushman & Wakefield.   Plaintiffs'

factual support for such a conspiracy, however, is woefully insufficient.

Plaintiffs' contention that "Rule 9(b)'s particularity requirements are not required" (*id.*)

---

[11]  *In re Oakwood Homes Corp.*, 340 B.R. 510, 519 (Bankr. D. Del. 1995) also is inapposite.
There, the bankruptcy court examined whether any duty existed between the debtor and CSFB
who, unlike Credit Suisse in the instant case, was the debtor's securities underwriter for years,
held warrants to purchase 20% of the stock in the debtor's company, and "formalized its
advisory role pursuant to a letter agreement and became the [d]ebtors' exclusive restructuring
and financial advisor."   *Id.* at 517.

misstates the law, as conspiracy claims sounding in fraud must be pled in accordance with Rule

9(b).   *See* CS Mem. at 36.   Indeed, the two cases Plaintiffs cite for this erroneous proposition—

neither of which involved civil conspiracy claims—both applied Rule 9(b).   *See Deutsch v.*

*Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987); *Silver Valley Partners, LLC v. De Motte*, No. 06-

429-N-ELJ, 2007 WL 2802315, at *4 (D. Idaho Sept. 24, 2007).   In any event, Credit Suisse

agrees that, in an alleged fraud involving multiple defendants, Rule 9(b) requires a plaintiff "at a

minimum, to identify the role of each defendant in the alleged fraudulent scheme."   Opp. at 48-

49 (citing *Silver Valley Partners*, 2007 WL 2802315, at *4).[12]   The Complaint, however, fails to

do even that, as it lacks specific facts regarding the existence of the alleged agreement between

Credit Suisse and Cushman & Wakefield, the individuals involved, or the content of the alleged

agreement.   Thus, even assuming that Credit Suisse engaged in an illogical "loan to own"

scheme, Plaintiffs' generalized allegations fail to give the requisite notice of an actual agreement

between the Defendants necessary to sustain their Complaint.

## CONCLUSION

For the foregoing reasons, and for those set forth in the Motion, Credit Suisse respectfully

requests that the Complaint be dismissed with prejudice pursuant to Rules 12(b)(1) & (6).

DATED this 24th day of June, 2010

Moffatt, Thomas, Barrett, Rock & Fields, Chartered          Weil, Gotshal & Manges LLP

/s/ James L. Martin                                         /s/ David J. Lender
James L. Martin                                             David J. Lender
                                                            Ray Guy
*Attorney for Credit Suisse*
                                                            *Attorneys for Credit Suisse*

---

[12] Here, again, Plaintiffs ignore the actual holding of the case, which found that the complaint
failed to comply with Rule 9(b) because, *inter alia*, it merely contained "generalized allegations"
of false representations without any stated factual basis, and significantly lacked "any
particularity as to the identity and role of the actors" including "who made what statements, to
whom were the statements made, [and] how/why were the statements false or fraudulent."
*Silver Valley Partners*, 2007 WL 2802315, at *4.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of June, 2010, I filed the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS CREDIT SUISSE AG, CREDIT SUISSE SECURITIES (USA), LLC, CREDIT SUISSE FIRST BOSTON, AND CREDIT SUISSE CAYMAN ISLAND BRANCH'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Robert C. Huntley Jr.**
rhuntley@huntleylaw.com

**Michael J. Flynn**
mike@mjfesq.com

**James C. Sabalos**
jimsabalos@hotmail.com

**John Flood**
john@floodandflood.com

**Philip H. Stillman**
pstillman@stillmanassociates.com

**Peter Chase Neumann**
petercneumann@sbcglobal.net

**Chris Flood**
chris@floodandflood.com

**Richard C. Boardman**
rboardman@perkinscoie.com

**Rebecca H. Benavides**
rbenavides@perkinscoie.com

**Donald L. Morrow**
donaldmorrow@paulhastings.com

**Panteha Abdollahi**
pantehaabdollahi@paulhastings.com

**Barry G. Sher**
barrysher@paulhastings.com


_/s/ James L. Martin_
James L. Martin