Robert C. Huntley, ISB # 894
815 Washington Street, P.O. Box 2188
Boise, ID 83701
Phone: (208) 388-1230
(Fax): (208) 388-0234
rhuntley@huntleylaw.com

Michael J. Flynn, MA Bar # 172780
P.O. Box 690
Rancho Santa Fe, CA 92067
Tel. (858) 775-7624
Fax:  (858) 759 0711
mike@mjfesq.com

James C. Sabalos, Tex. Bar No. 17499100
3900Essex Lane, Suite 730
Houston, Texas 77027
Tel:   (949) 355-6084
jimsabalos@hotmail.com

John Flood, Texas Bar No.07155910
802 N. Carancahua, Ste 900
Corpus Christi, TX 78470
Tel: (361) 654-8877
Fax: (361) 654-8879
John@floodandflood.com

Philip H. Stillman, CA #152861
508 Meadowmist Court, Ste B
Olivenhain,  CA 92024
Tel.  (888) 235-4279
Fax. (888) 235-4279
pstillman@stillmanassociates.com

Chris Flood, Texas Bar # 07155700
914 Preston, Suite 800
Houston, Texas 77002
Tel: (713) 223-8877
Fax: (713) 223-8879
chris@floodandflood.com

Christopher J. Conant CO 40269
Conant Law LLC
950 Seventeenth St. Ste. 1700
Denver, CO 80202
Tel: (303) 298-1800
Fax: (303) 298-1804
cconant@conantlawyers.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| L.J. GIBSON, et al.,<br><br>    Plaintiffs,<br>v.<br><br>CREDIT SUISSE AG, a Swiss corporation, et al.,<br><br>    Defendants. | Case No.  1:10-cv-00001-EJL-REB<br><br>**Plaintiffs' Objections to Report And Recommendation (Document 106)**<br>**And**<br>**Suggested Alternative Recommendations** |

COME NOW the Plaintiffs and enter their objections to the Report and Recommendation of the Magistrate (Document No. 106) and provide their suggested Alternative Recommendations and Rationale therefore.

**Objection No. 1: Dismissal of RICO Claim.**

Plaintiffs **object to the recommendation** at page 26 reading in part as follows:

> With all this in mind, in the context of RICO, Defendants' Loan-to-Own *directly* harmed the resort's developers who defaulted on the loans, whereas it was the inability of the injured developers to pay the debt service and complete the

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 1**

promised amenities that *directly* caused Plaintiffs' injuries. The asserted RICO violations vis-à-vis Plaintiffs' claimed injuries are therefore too attenuated . . . (citation omitted). Unable to show a direct relationship between their injuries and the Defendants' conduct, Plaintiffs cannot demonstrate sufficient proximate causation to state a RICO claim. As a consequence, it is recommended that Plaintiffs' 18 U.S.C. §§ 1962(c) and (d) claims be dismissed.

### Plaintiffs' Recommended Alternative

Plaintiffs respectfully request a ruling that the facts plead in the Complaint clearly establish that the alleged RICO activities of the Defendants were the direct and proximate cause of the losses and damages being claimed by the Plaintiff class members pursuant to the guidelines of the United States Supreme Court as articulated in the three controlling decisions from the U.S. Supreme Court, i.e., *Holmes v. Securities Investor Prot. Corp.,* 503 U.S. 258 (1992); *Anza v. Ideal Supply Corp.,* 547 U.S. 451 (2006); and *Hemi Group, LLC v. City of New York, New York,* 130 S.Ct. 983 (2010), and that those losses and damages were distinct from the losses and damages suffered by the developers of the four resorts and were directly caused by the Loan-to-Own scheme set up by the Defendants.

### Rationale[1]

In finding a lack of RICO causation, the Report and Recommendation states at page 21 that the loss of Plaintiffs' amenities was caused by the inaction of the developers, rather than by the actions of the Defendants. The Plaintiffs' complaint, however, states that the inaction of the developers was an intended result of the scheme to defraud. The Plaintiffs' actual money and property interests were targeted for effective condemnation, and it worked.

---

[1] Plaintiffs incorporate herein their arguments made at pages 12 through 27 of each of their Briefs in Opposition to Defendants' Motions to Dismiss (Document Nos. 91 and 92).

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 2**

Plaintiffs' complaint states facts that show that unlawful conduct by Credit Suisse and Cushman & Wakefield was the cause -- directly and actually -- of valuable rights that each Plaintiff would not have lost in the absence of the unlawful conduct.[2] Plaintiffs' Second Amended Complaint (hereinafter "SAC") pleads factual content that not only allows a reasonable inference that Defendants' unlawful scheme caused Plaintiffs to lose valuable property rights, it explicitly explains the causal connection.

Perhaps the clearest and most direct statement of how the unlawful Loan-to-Own scheme directly caused Plaintiffs' direct damages comes from Judge Kirscher. In his May 12, 2009 order he stated that the developments were "doomed to failure once they received their loans from Credit Suisse."[3] Though the breadth of destruction from each resort's failure is great, its proximity from the cause is not. What is doomed when a development fails? The destruction is not to the land itself. Rather, what fails are the services that added the value to the land and gave the "development" viability, the "uses" and "rights" that defined the development. Those uses, rights, and amenities were purchased by the Plaintiffs, but then lost as contemplated by the scheme.[4] There is a direct, inescapable, logical, market-recognized, nexus between Credit Suisse's scheme to overload developer debt with FIRREA violative appraisals and the damages

---

[2] Second Amended Complaint (Document 18), pp. 2, 12, 16, 18 - 19, 26, 27, 30 (successor developer), 33 - 34, 36, 39, 46, 53, 54, 61, 62, and 69 - 73.

[3] May 12, 2009 Partial & Interim Order, Document 289 in Case No. 08-61560-11; *In re Yellowstone Mountain Club, LLC*, in the United States Bankruptcy Court for the District of Montana (Document 91-1 herein).

[4] In addition, in their Second Amended Complaint, plaintiffs allege that in its new role as *de facto* or co-developer, Credit Suisse has stepped into the developers' shoes and willfully denied plaintiffs the property and contract rights they purchased. Second Amended Complaint (Document 18), pp. 30, 40, 49, 51, 55, 60, 66 - 68, and 77.

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 3**

suffered by plaintiff class. It is both common sense and established by irrefutable data that the homeowners in the resorts at issue experienced catastrophic loss of equity because no rational buyer exists in the market place who will buy in partially developed resorts that have turned into either ghost towns as in Lake Las Vegas or resorts without promised amenities as in Tamarack. This Court need look no further for the on-going, current RICO scheme of Credit Suisse to obtain these resorts in the bankruptcy process at a fraction of their original Credit Suisse appraised value than to examine the dockets in the bankruptcy proceedings involved in each and every resort.

In that context, also instructive is the August 16, 2010 statement from Judge Kirscher (of which this Court has taken judicial notice) that "[The Yellowstone Club principal] and Credit Suisse have done a lot of finger pointing in this case, but in the end, their conduct prompted the Debtors' bankruptcies." See Docket No. 101-1, p. 132 (emphasis added). Judge Kirscher could not have been more clear that it was the conduct of Credit Suisse that directly caused the harm to the Plaintiffs. The above arguments regarding why there is a direct causal connection between the Defendants' RICO conduct and Plaintiffs' harm is supported by the applicable Supreme Court precedent.

In the leading Supreme Court cases on RICO proximate cause, the question whether proximate cause exists is answered by determining whether there is "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). As the Report and Recommendation puts it, the alleged injury cannot be "derivative of an injury" to another. Report and Recommendation at p. 15 (discussing *Holmes*). As explained in the Report and Recommendation, the Supreme Court's

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 4**

most recent analysis of RICO proximate cause is found in *Hemi Group, LLC v. City of New York*, 130 S.Ct. 983 (2010). Report and Recommendation at pp. 19-21. In *Hemi*, the Supreme Court refused to find RICO proximate cause where the City of New York as the Plaintiff alleged lost tax revenue as a result of taxpayers not submitting cigarette taxes on cigarette purchases from an out of state vendor, Hemi. According to the City, Hemi contributed to the City's injury because Hemi fraudulently failed to provide the State with Jenkins Act reports which in turn made it challenging for the City to track down the taxpayers who were not paying their cigarette taxes to the City. See Report and Recommendation at p. 20. As noted in the Report and Recommendation, the Supreme Court found in *Hemi* that the City's injury was merely derivative of Hemi's fraud on the State, not on the City. *Id*. According to the Supreme Court, it was the RICO fraud of Hemi on a third party, the State, that incidentally caused a "fourth party", the taxpayers, to harm to the City. *Id*.

The Report and Recommendation thoroughly and accurately analyzes the relevant Supreme Court precedent. Plaintiffs, however, respectfully suggest that the application of this precedent to the facts alleged in the SAC and of which this Court has taken judicial notice, requires a different result. The Report and Recommendation's application suggests that RICO proximate cause exists only for the most directly injured victim of a RICO enterprise. *Id*. at 24 ("the more direct victims of Defendants' alleged infringement actions, the developers, could pursue their own claims.") (emphasis added). That is, the analysis in the Report and Recommendation suggests that an otherwise directly injured plaintiff forfeits his or her RICO claim if there is another RICO plaintiff who can articulate a greater degree of relatedness between his or her injury and the defendant's RICO conduct.

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 5**

The Supreme Court precedent, however, holds that RICO proximate cause exists so long as there is "**some** direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, at 268. Therefore proximate cause in this regard does not evaporate for one plaintiff simply because he or she is one of several victims of a RICO enterprise all of whom are directly injured yet one particular plaintiff can articulate a greater degree of relatedness to the RICO conduct than the other. Thus, contrary to what the Report and Recommendation suggests, *Holmes*, *Anza*, and *Hemi* do not limit RICO causes of action to only one plaintiff when several plaintiffs suffer different but direct injury from the RICO conduct.[5]

On the facts within the SAC and which have been taken judicial notice of, Plaintiffs have alleged an injury directly related to the RICO conduct. As Judge Kirscher found, the Credit Suisse loan made to the Yellowstone Club doomed the Club to failure from the moment of its origination because Credit Suisse knew from the historical sales figures that all the Club could do with its cash flow was barely pay the Credit Suisse loan. Docket No. 101-1, pp. 25-28, 31-35, 40, 130, 132.

As already recognized in the Report and Recommendation, Plaintiffs have alleged multiple forms of injury stemming from the Defendants' RICO violations. These injuries are in the form of destruction of their contractual membership rights in the resorts including but not

---

[5] The Report and Recommendation's application of *Holmes*, *Hemi* and *Anza* logically leads to a comparative directness trap for RICO victims. Imagine several classes of plaintiffs all suffer a direct but different type of injury arising from a defendant's RICO conduct. Assume the plaintiffs were to bring separate RICO actions against the defendant. In each separate lawsuit, the defendant could successfully defend a particular plaintiff's RICO claims by articulating how that particular plaintiff suffered a theoretically less direct injury than other victims. If the defendant were to successfully argue this in all cases, then that defendant would absolve itself of all RICO liability even though there are in fact several direct RICO victims.

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 6**

limited to, use of developed amenities such as ski facilities, golf facilities, water features, common areas, destruction and deterioration of their neighborhoods, and monetary damages through their inability to refinance or sell their properties. More importantly, however, these injuries directly arise from Defendants' RICO conduct.

The appraisals upon which the Credit Suisse loans were based inflated the values of each of plaintiffs' lots and then combined the cumulative value of those inflated lot values with inflated values for other components of the resorts to arrive at the fraudulent Total Net Value worth of the resorts. Based on these inflated values, Credit Suisse advanced unsustainable loan amounts that were based **directly on the inflated values attributable to Plaintiffs' lots** and which were secured by the plaintiffs' property and contractual rights in the resorts, thereby sucking all the equity out of plaintiffs' interest in the resorts. As found by Judge Kirscher, the inevitable result of these unsustainable loans was that they were doomed from the moment of origination.

The Report and Recommendation stresses that this did not constitute a direct injury to Plaintiffs because there was an intermediate step between the defrauding loans and Plaintiffs' injuries; namely, that the developers had to first default on the loans before Plaintiffs suffered their injury.

Although this developer default theory has surface appeal, it overlooks the true state of the loans. The Plaintiffs' harm was not dependent upon the developers first defaulting. As Judge Kirscher found, the resorts were doomed from the moment the loans were originated because the debt service for the loans was unsustainable and left insufficient cash flow for the resorts to pay their ordinary operating and capital expenditure costs. Docket No. 101-1, pp. 25-

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 7**

28, 40-41, 130, 132; Docket No. 90-1, pp. 16, 18; SAC at ¶¶ 56. Thus, Plaintiffs' injury was not dependent upon the developers first defaulting, because whether the developers defaulted or not, the debt service requirements of the loans **removed all necessary cash flow from the resorts to ensure Plaintiffs of their contractual and property rights to necessary maintenance and build-out of the resorts.** In this regard, Plaintiffs' property and contractual rights in the resorts were directly targeted for destruction by Credit Suisse once it originated its loans. Accordingly, Plaintiffs' injuries flow directly from the Defendants' RICO conduct. That the developers might have their own direct injury that is distinct in form from that of the Plaintiffs, does not eliminate the fact that there is a "direct relation between the injury asserted [by the Plaintiffs] and the injurious conduct alleged." *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). This is all that RICO requires.

Moreover, the Plaintiffs' injury is not "derivative" of the injury to the developers but is an injury that flows directly to them as a result of the Defendants' RICO conduct. By way of illustration, in *Hemi* the City of New York's RICO injury (lost tax revenue) was caused directly by the taxpayers (fourth parties) who failed to remit their cigarette taxes to the City. The City's injury was therefore directly caused by "fourth parties" who were not engaged in the RICO conduct. Instead, the RICO conduct was perpetrated by the defendant Hemi who was defrauding the State, not the City. Thus, any injury to the City of New York caused by the taxpayers was merely derivative of the injury caused to the State by Hemi. In other words, no straight line could be drawn in *Hemi* between the defendant's RICO conduct and the City of New York's injury.

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 8**

By contrast, the Plaintiffs' injury here was caused not by a fourth party who did not engage in RICO conduct. Rather, Plaintiffs' injury was caused by the same parties who engaged in the RICO conduct. Moreover, the injury from the Defendants' RICO conduct is directly traceable to the Plaintiffs because as alleged and as found by Judge Kirscher, the Defendants' RICO conduct doomed the Plaintiffs' property and contractual rights in the resorts from the moment Credit Suisse originated its loans and such damnation was guaranteed regardless of whether the developers defaulted on the loans or not. And as discussed above, that the developers might also have suffered a direct RICO injury does not exclude the Plaintiffs from also suffering from a direct RICO injury.

Finally, in the Loan Guaranty Agreement between Credit Suisse and the Developers, Credit Suisse effectively removed the Developers from the position of being the parties directly injured and removed the Developers from the ability to bring a RICO action for the damages wrought upon the Class Members by providing in that Loan Guaranty Agreement that the Developers' Promissory Note was "**non-recourse**" only if the Developer did **NOT** commit or engage in certain acts or omissions, one such prohibition being the bringing of a suit against Credit Suisse. Credit Suisse should not now be permitted to claim a right to be insulated from a RICO action by such a device. Thus, Credit Suisse effectively removed the Developers as potential RICO claimants, thereby insulating itself from RICO liability if the Report and Recommendation's comparative directness theory.

Credit Suisse, through the magistrate's recommendation, if accepted by this Court, will have provided a clear path for racketeers on Wall Street to further engage in similar schemes by making their illegal schemes include non-recourse language in their credit agreements. This

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 9**

could never have been intended by the Supreme Court in its rulings.  Surely, the Court in *Hemi* was not intending to help Wall Street crooks engage in RICO activity and avoid the consequences contemplated by Congress when it enacted RICO.  The recommendation suggested by the Magistrate has the unintended consequence of enabling that which was intended by Credit Suisse i.e., insulate itself from RICO to a far broader range of direct victims than the developers.

Respectfully submitted this 6th day of March, 2011.

/s/  Michael J. Flynn  
Michael J. Flynn

/s/  Philip H. Stillman  
Philip H. Stillman

/s/  James C. Sabalos  
James C. Sabalos

/s/  John Flood  
John Flood

/s/ Chris Flood  
Chris Flood

/s/  Robert C. Huntley  
Robert C. Huntley

/s/ Christopher Conant  
Christopher Conant

*Attorneys for Plaintiffs and members of proposed Plaintiff Class*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system which sent a Notice of Electronic Filing to the following persons:

Randall A. Peterman  
David J. Lender  
Thomas R. Guy  
Richard C. Boardman  
Donald L. Morrow  
Barry G. Sher

David W. Dummer  
Jason I. Lichter  
James L. Martin  
Rebecca H. Benavides  
Panteha Abdollahi

/s/  Robert C. Huntley  
Robert C. Huntley

**Plaintiffs' Objections to Report And Recommendation (Document 106) - 10**