UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH; AMY KOENIG, DEAN FRESONKE, VERN JENNINGS, TERRI FROEHLICH, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas and Ginn Sur Mer, | Case No.: 1:10 CV 001-EJL-REB **ORDER ON REPORT AND RECOMMENDATION** |
| Plaintiffs, | |
| vs. | |
| CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive, | |
| Defendants. | |

On February 17, 2012, United States Magistrate Judge Ronald E. Bush issued a

Report and Recommendation ("Report"), recommending the Defendants' Motions to

Dismiss be granted in part and denied in part and that the Motion to Intervene be denied.

(Dkt. 198.)[1] Any party may challenge a magistrate judge's proposed recommendation by

filing written objections within ten days after being served with a copy of the Report and

Recommendation. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de

---

[1] The Report also contains an Order ruling on Plaintiffs' Motion for Leave to Amend Third Cause of Action which is discussed herein. (Dkt. 130.)

**ORDER ON REPORT AND RECOMMENDATION - 1**

novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate judge. *Id.*; *see also* Fed. R. Civ. P. 72(b).

Neither Plaintiffs nor the proposed intervenors have filed any objections to the Report.[2] Defendants, Credit Suisse and Cushman & Wakefield, each filed objections to the Report.[3] (Dkt. 199, 200.) The parties have filed their responsive briefs and the matters are now ripe for the Court's review. (Dkt. 208, 209.) Having considered the parties' contentions and conducted a de novo review of the record, the Court finds as follows.

## Discussion

On March 31, 2011, this Court adopted in part and rejected in part, Magistrate Judge Bush's February 17, 2011 Report and Recommendation concerning the Defendants' first round of Motions to Dismiss as to the Second Amended Complaint ("SAC"). (Dkt. 126.) In doing so, the Court allowed Plaintiffs an opportunity to file a Third Amended Complaint ("TAC") as well as granting the Defendants leave to file the instant Motions to Dismiss. (Dkt. 126 at 29-30.) Plaintiffs timely filed their TAC and the Defendants filed their Motions to Dismiss. (Dkt. 131, 134, 136.) On January 12, 2012, Magistrate Judge Bush held a hearing

---

[2] There were no objections filed as to the denial of the Motion to Intervene. (Dkt. 159.) Moreover, this Court is in agreement with the Magistrate Judge's conclusions on the Motion to Intervene and, for the reasons stated in the Report, will deny the Motion.

[3] As used in this Order, "Credit Suisse" refers collectively to the Defendants: Credit Suisse AG, Credit Suisse Securities (USA), LLC, Credit Suisse First Boston, and Credit Suisse Cayman Island Branch. Defendant Cushman & Wakefield, Inc. is referred to as "Cushman & Wakefield."

**ORDER ON REPORT AND RECOMMENDATION - 2**

on the Motions and took the matters under advisement. (Dkt. 192.) After investing a great deal of time and effort into the case, Magistrate Judge Bush then issued the Report, the objections to which this Court now takes up. (Dkt. 198.)

**1.    Applicable Standards**

    **A.    Rule 9(b)**

Cushman & Wakefield make a general objection that the Magistrate Judge failed to apply Rule 9(b)'s fraud requirements to Plaintiffs' claims. (Dkt. 200.) Had Rule 9(b) been applied, they argue, all of the claims against it would be dismissed. Plaintiffs counter arguing the Report properly applied both Rule 8 and Rule 9(b) to the claims. (Dkt. 208 at 2–6.)

In the prior Order discussing the Negligence Claim, this Court concluded that Plaintiffs' claims generally "sounded in fraud." (Dkt. 126 at 21-22.) There, the Court determined the SAC failed to satisfy Rule 9(b)'s particularity requirement as to the Negligence Claim and, upon that basis, granted the Motions to Dismiss without prejudice as to that claim. (Dkt. 126 at 22.) Plaintiffs were specifically granted leave to amend those claims dismissed without prejudice. (Dkt. 126 at 29.) Thereafter, Plaintiffs filed their TAC which is challenged in the instant Motions to Dismiss and is the subject of review in the Report and this Order. (Dkt. 131.) This Court again finds Rule 9(b)'s heightened pleading standards apply to Plaintiffs' claims that sound in fraud.

"Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud....'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Where fraud is not an essential element of a

**ORDER ON REPORT AND RECOMMENDATION - 3**

claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Id.* (citation omitted). "To the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)." *Id.* "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id.*[4]

Cushman & Wakefield argue the allegations in the TAC repeat the same allegations this Court previously determined to be insufficient in the SAC. (Dkt. 200 at 4-5.) In particular, Cushman & Wakefield note the TAC never explains how their appraisals were false and deceptive or massively inflated; false or misleading; or in violation of FIRREA or USPAP. (Dkt. 200 at 5.)[5] Furthermore, Cushman & Wakefield argue the TAC lacks particularized allegations of an unlawful agreement or understanding, i.e. a conspiracy,

---

[4] The Ninth Circuit in *Kearns* went on to define the perimeter of Rule 9(b) stating:

> Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. A party alleging fraud must "set forth more than the neutral facts necessary to identify the transaction.
>
> Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns*, 567 F.3d at 1124-25 (citations and quotation marks omitted).

[5] FIRREA stands for the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 3331, *et. seq.* and USPAP stands for the Uniform Standards of Professional Appraisal Practice.

**ORDER ON REPORT AND RECOMMENDATION - 4**

between it and Credit Suisse. (Dkt. 200 at 9.)

This Court finds the Magistrate Judge applied both Rules 8 and 9(b) to the claims in this case. The Report recognized this Court's application of Rule 9(b) to the prior Order. (Dkt. 198 at 39.) Additionally, the Report examined the revised allegations contained in the TAC with particularity as to the Negligence Claim (Dkt. 198 at 40-43) as well as the other claims; i.e. Fraud (Dkt. 198 at 19-24, 26), Breach of Fiduciary Duty (Dkt. 198 at 33), and Tortious Interference (Dkt. 198 at 35-36). In addressing the Consumer Protection Act Claim, the Report acknowledged that "fraud claims must be plead with a certain level of specificity and particularity." (Dkt. 198 at 45.) Moreover, this Court has independently reviewed the claims in the TAC and applied Rule 9(b)'s pleading requirement as necessary in reaching its ruling in this Order.

As to Cushman & Wakefield's specific objections, i.e. that the claims in the TAC merely recycle those found to be insufficient in the SAC, the lack of any allegation that the appraisals were false, deceptive, massively inflated, or misleading; no showing of any violation of FIRREA or USPAP; and that the TAC lacks particularized allegations of a conspiracy with Credit Suisse; the Court will address these arguments as to the particular claims below.

### B.    *Iqbal* **and** *Twombly*

Credit Suisse objects to the Report's denial of its Motion as to the claims of negligence, tortious interference, breach of fiduciary duty and conspiracy, arguing undue deference was given to the allegations in the TAC contrary to the *Twombly* and *Iqbal*

**ORDER ON REPORT AND RECOMMENDATION - 5**

standard. (Dkt. 199 at 3.) The Report clearly and correctly laid out the Rule 8 pleading standard found in *Twombly* and *Iqbal*. (Dkt. 198 at 13-15.) This Court finds the Report also properly applied that standard to the Motions to Dismiss in this case. The applicable principles require that the court accept as true all factual allegations of the complaint and that the complaint state a plausible claim for relief. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The Court finds the Magistrate Judge adhered to these principles in the Report and the objection is denied.

**2.     Breach of Fiduciary Duty Claim**

Cushman & Wakefield object to the Report's conclusion to the Breach of Fiduciary Duty claim on the grounds that: 1) the Magistrate Judge improperly revived the claim previously dismissed, 2) no facts have been plead establishing a relationship of trust and confidence between it and Plaintiffs, and 3) the TAC fails to allege any conspiracy between Cushman & Wakefield and Credit Suisse. (Dkt. 200.) Credit Suisse argues the Report improperly applied the pleading standards to Plaintiffs' TAC and that the TAC fails to allege facts giving rise to a fiduciary duty owed by it to Plaintiffs. (Dkt. 199 at 6.)

**A.     Granting Leave to Amend the Complaint**

The day after filing their TAC, Plaintiffs filed a Motion to Amend Third Cause of Action to include a claim for breach of fiduciary duty against Cushman & Wakefield based on newly-discovered facts. (Dkt. 130.) That claim had been dismissed with prejudice as to Cushman & Wakefield in this Court's prior Order on the first Report and Recommendation. (Dkt. 126.) In this Report, Magistrate Judge Bush considered the Motion to Amend and

**ORDER ON REPORT AND RECOMMENDATION - 6**

issued an Order granting the same in the Report. (Dkt. 198 at 10-13.) Cushman & Wakefield object, challenging Judge Bush's authority to reverse or revisit this Court's Order dismissing the claim and any basis for allowing Plaintiffs to "resurrect" their claim. (Dkt. 200 at 13.)

In recommending dismissal of the claim, the prior Report noted only that Plaintiffs had not responded or argued against dismissal of the claim in their briefing or oral argument. (Dkt. 106 at 44 n. 30.) It was upon that basis that this Court ordered the claim be dismissed with prejudice. (Dkt. 126.) In that Order, Plaintiffs were granted leave to amend their complaint as to other claims that were dismissed without prejudice; the Breach of Fiduciary Duty Claim was not among those claims subject to amendment. (Dkt. 126 at 29.) This is the background upon which Plaintiffs filed their Motion for Leave to Amend the TAC to include the breach of fiduciary duty claim against both Defendants. (Dkt. 130.) The Magistrate Judge took up the Motion and issued an Order granting the same. (Dkt. 198 at 10.) In so ordering, Judge Bush recognized that this case remains in an early procedural stage and that the prior dismissal of the claim was not on the merits but rather by acquiescence based upon the record as it existed at the time. (Dkt. 198 at 10-13.) Cushman & Wakefield argue Plaintiffs should have requested reconsideration of this Court and cite error by the Magistrate Judge in ordering otherwise. (Dkt. 200 at 13.)

Motions to Amend to add a new claim are generally considered non-dispositive motions and, appropriately, can be resolved by an order of the Magistrate Judge. *See* Fed. Rule Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Rice v. Comtek Mfg. of Oregon, Inc.*, 766 F.Supp. 1550, 1550 (D.Or. 1990) ("Motions for leave to amend a complaint are treated as nondispositive motions under § 636(b)(1)(A)."); *Lewis v. Beaufort Court*, 2010 WL 5672334,

**ORDER ON REPORT AND RECOMMENDATION - 7**

*4 n. 4 (D.S.C. Nov. 30, 2010) (citing cases). Here, however, Plaintiffs' Motion to Amend was asking to include a claim previously dismissed; not to add a new claim. Thus, Cushman & Wakefield is correct that the appropriate request would have been to ask this Court to reconsider its prior dismissal of the claim. In such case, the Magistrate Judge would have instead issued a recommendation on the Motion instead of an order. That being the case, this Court will deem the Motion to Amend as one for reconsideration and deem the Magistrate Judge's Order on the Motion to be a recommendation.[6]

It is upon this framework that this Court has now reviewed the Motion to Amend. In doing so, the Court has taken time to carefully review the parties submissions and the arguments regarding the previously dismissed claim; including the transcript from the hearing before the Magistrate Judge. (Dkt. 130, 144, 154, 194.) Having done so, the Court will grant Plaintiffs' Motion and allow it to include in the TAC its Breach of Fiduciary Duty Claim against Cushman & Wakefield. The basis for this ruling are consistent with those made by the Magistrate Judge.

Rule 54(b) allows the Court to revise at any time any prior order or decision that adjudicates fewer than all of the parties or claims to an action. *See United States v. Asarco Inc.*, 471 F.Supp.2d 1063, 1067 (D. Idaho 2005). Although a great deal of filings have been made in this case to date, the fact remains it is still in a very early preliminary stage. Further,

---

[6] Doing so, the Court finds, does not prejudice either side as they both raised the same arguments they would have concerning the newly discovered materials and other arguments in regards to allowing the claim to be filed in responding to the Motion to Amend.

**ORDER ON REPORT AND RECOMMENDATION - 8**

the claim was dismissed only upon Plaintiffs' failure to oppose the dismissal. Moreover, Plaintiffs point to newly-discovered facts that warrant allowing them the opportunity to at least plead their claim. Given these circumstances, the Court finds it appropriate to allow Plaintiffs to plead their Breach of Fiduciary Duty Claim. Thus, the Court will grant the Motion.

### B.      Merits of the Claim

As with the prior decision, the present Report again concluded that, at least at this stage of the litigation, the TAC's allegations are sufficient to give rise to a Breach of Fiduciary Duty Claim. (Dkt. 198 at 30-31.) Though questioning whether the claim would survive summary judgment, the Report recommends denying the Motion to Dismiss; concluding the TAC contains sufficient allegations of a civil conspiracy between the Defendants "relative to Credit Suisse's alleged breach of fiduciary duty." (Dkt. 198 at 32) (quoting Dkt. 131 at ¶ 190.) Both Defendants object to the Report's conclusions regarding the Breach of Fiduciary Duty Claim.

Cushman & Wakefield argues the Breach of Fiduciary Duty Claim should be dismissed because there are no facts plead upon which to establish that any relationship of trust and confidence existed between it and the Plaintiffs; thus no fiduciary duty existed. (Dkt. 200 at 14-15.) Likewise, Credit Suisse argues the TAC fails to allege facts giving rise to any fiduciary duty it owed to Plaintiffs. (Dkt. 199 at 6.) In particular, Credit Suisse challenges the allegation that it, as the lender to the developers, somehow became a fiduciary

**ORDER ON REPORT AND RECOMMENDATION - 9**

to the Plaintiffs as homeowners who were not parties to the developers' loans and with whom Credit Suisse claims it had no relationship, let alone the ability to influence the Plaintiffs' investment decisions. (Dkt. 199 at 7.) Such a conclusion, Credit Suisse asserts, would improperly turn the traditionally adversarial commercial lender-borrower relationship into a fiduciary one. In addition, both Defendants object to the Report's conclusion that the TAC alleges facts evidencing a conspiracy between Cushman & Wakefield and Credit Suisse. (Dkt. 199 at 14, Dkt. 200 at 14-16.)

"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 699 (Idaho 2009) (citation and marks omitted); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880-881 (9th Cir. 2007) (applying Nevada law). "Fiduciary relationships are commonly characterized by one party placing property or authority in the hands of another, or being authorized to act on behalf of the other." *High Valley Concrete, L.L.C. v. Sargent*, 234 P.3d 747, 752 (Idaho 2010) (quoting *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 296 (Idaho 2006)). "A fiduciary relationship does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence." *Jones v. Runt, Leroy, Coffin & Matthews, Chtd.*, 873 P.2d 861, 868 (Idaho 1994) (quoting *Stearns v. Williams*, 240 P.2d 833, 840-41 (Idaho 1952)). Thus, in determining whether a fiduciary relationship exists courts must examine the

**ORDER ON REPORT AND RECOMMENDATION - 10**

actual relationship of the parties.

The TAC's allegations supporting this claim are found in Paragraphs 173-190 which this Court has independently reviewed. (Dkt. 131.) Much of these paragraphs are focused on the alleged Loan to Own scheme whereby it is alleged the Defendants "instituted a relationship of trust and confidence with the developers of Plaintiffs" allowing them to acquire "intimate knowledge of the legal duties and obligations flowing from [the] developers to Plaintiffs." (Dkt. 131 at ¶ 174.) The TAC goes on to allege the Defendants "assumed the equivalent of a co-developer status with regard to their resorts" and in "such a role, Defendants became a fiduciary to Plaintiffs, as well as Plaintiffs' agent for purposes of completing and maintaining the amenities which the developers had promised to the Plaintiffs" as the Defendants knew or had reason to know the Plaintiffs "had placed a special trust in them...." (Dkt. 131 at ¶ 175-76, 179.) In addition, the TAC alleges Credit Suisse promised and represented to the Plaintiffs that it and "its representatives and agents, including Cushman & Wakefield, had extensive expertise in lending and that its lending practices would be in accordance with state and federal law" upon which Plaintiffs "were justified in placing peculiar, unique and specific confidence and trust in Credit Suisse...." (Dkt. 131 at ¶ 183.) In Paragraph 190, the TAC attempts to draw in Cushman & Wakefield by alleging it is a co-conspirator in the illicit appraisal methodologies used in the Loan to Own scheme. (Dkt. 190 at ¶ 183.) The Court finds these allegations are insufficient to state a claim for Breach of Fiduciary Duty.

In reaching this conclusion, the Court has considered the Idaho Supreme Court cases

**ORDER ON REPORT AND RECOMMENDATION - 11**

concluding the general rule is that the bank-lender/borrower relationship as one of debtor-creditor, not a fiduciary. *See Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 852 (Idaho 1991) (discussing *Black Canyon Racquetball Club v. First Nat. Bank*, 804 P.2d 900 (Idaho 1991) (concluding no fiduciary duty exists between a bank and its customer)); *see also High Valley*, 234 P.3d at 752 (finding fiduciary relationships do not exist when the parties are dealing at arm's length); *Bliss Valley Foods*, 824 P.2d at 853 (same). Although it is possible for circumstances to exist where a fiduciary relationship may exist even in such an arms-length/lender-borrower relationship, those cases involve "limited circumstances" such as where there is "an agreement creating a duty, or if the lender exercises complete control over the disbursement of funds." *See e.g. Madrid v. Roth*, 10 P.3d 751, 754 (Idaho Ct. App. 2000) (quoting *Wooden v. First Security Bank of Idaho, N.A.*, 822 P.2d 995, 997 (Idaho 1991). Such limited circumstances are not present based on the allegations making up the claim here.

The Breach of Fiduciary Duty Claim alleged in the TAC sounds in fraud thereby necessitating that it satisfy Rule 9(b)'s heightened pleading standard. Again, "Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud....'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Id.* (citation omitted). "To the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)." *Id.* "Fraud can be averred by

**ORDER ON REPORT AND RECOMMENDATION - 12**

specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id*. The TAC's allegations on this claim provide no particulars concerning the circumstances of the alleged fraud let alone who, what, when, where, and how. *See Kearns*, 567 F.3d at 1124-25.

The Breach of Fiduciary Duty Claim alleged in the TAC is based on the alleged scheme and conspiracy of Defendants that invoked Plaintiffs' reliance upon the Defendants' experience as lenders and the allegations that a special relationship of trust was created because the Defendants knew of the promises the developers made to the Plaintiffs to provide resort amenities. The TAC further alleges the Defendants exerted some level of control or authority over the developers. (Dkt. 131 at ¶ 175.) This purported scheme and conspiracy giving rise to the fiduciary duty sound in fraud, thus invoking Rule 9(b)'s heightened pleading standard. The Court finds these allegations contain no particulars of alleged facts making up any fiduciary duty so as to satisfy Rule 9(b). Just the opposite, there are no particulars provided in terms of Defendants' actions taken towards the developers or Plaintiffs that give rise to any fiduciary duty. All that is alleged are generalized conclusions without any particular factual circumstances upon which the Defendants would have notice of the fraudulent misconduct alleged. *See Kearns*, 567 F.3d at 11-24-25.

Further, even if Rule 9(b) does not apply here, the Court still concludes the TAC fails to allege facts giving rise to any fiduciary duty owed by Defendants to Plaintiffs. There is no allegation of any agreement whereby the Defendants assumed a fiduciary duty to Plaintiffs or any allegation the Defendants exercised complete control over the disbursement of funds

**ORDER ON REPORT AND RECOMMENDATION - 13**

so as to have assumed such a duty. *See Madrid*, 10 P.3d at 754. Instead, the allegations describe only a standard debtor-creditor or an arms-length relationship, which is not a fiduciary one. *See Bliss*, 824 P.2d at 52. Further, the allegation that the Defendants somehow became co-developers and thereby obligated to promises that were made to Plaintiffs by others are simply too generalized to withstand the Motions to Dismiss.

As to Cushman & Wakefield, the TAC contains no facts of any relationship between Cushman & Wakefield and Plaintiffs let alone demonstrate how its preparation of appraisals for Credit Suisse gave rise to fiduciary duties it owed to Plaintiffs. (Dkt. 200 at 14-15.) Plaintiffs maintain the TAC alleges facts giving rise to the existence of a conspiracy between the Defendants – that Cushman & Wakefield knew its appraisals were being used by Credit Suisse as part of the illegal scheme to defraud Plaintiffs. (Dkt. 208 at 6) (citing Dkt. 131 at ¶ 73-76.) Even if Cushman & Wakefield knew of the scheme, were a part of the scheme, and knew its appraisals were being used in furtherance of the scheme, there is still nothing alleged that creates a fiduciary duty between Cushman & Wakefield and the Plaintiffs. Cushman & Wakefield were not working for or on behalf of Plaintiffs. That Plaintiffs may have relied on the appraisals may give rise to a fraud claim but it does not evidence the existence of a fiduciary relationship. The same is true as to the allegations against Credit Suisse.

The allegations in the TAC supporting the Breach of Fiduciary Duty Claim as to Credit Suisse are that it assumed a "co-developer status" such that it became an agent of Plaintiffs who had placed in Credit Suisse a special trust and the existence of a conspiracy

**ORDER ON REPORT AND RECOMMENDATION - 14**

between the Defendants. Plaintiffs go on to allege that Credit Suisse "instituted and employed contractual covenants, controls, limitations and other legal means of authority over the developers." (Dkt. 131 at ¶ 175.) These allegations against Credit Suisse, however, do not give rise to the existence of a fiduciary duty owed to Plaintiffs. Instead, the allegations only go to show, at best, that Credit Suisse acted as a lender to the developers in an arms-length lender-borrower relationship. Further, Credit Suisse's alleged involvement with the developers shows only its relationship with the developers, not the existence of any assumed fiduciary duty to Plaintiffs. To conclude otherwise would turn on its head the general rule in the lender-borrower relationship as being a non-fiduciary one. *See Bliss*, 824 P.2d at 852. There is nothing in the TAC that gives rise to the "limited circumstances" which would take this relationship outside of the standard non-fiduciary lender-borrower relationship to one where a fiduciary duty is found to exist. *See Madrid*, 10 P.3d at 754.

Even taking the Plaintiffs' facts as true, the circumstances alleged simply do not give rise to a fiduciary duty between Defendants and Plaintiffs. The TAC alleges the existence of a conspiracy. Essentially, the allegations of the TAC on whole are that both Defendants were knowing participants in the Loan to Own scheme whereby the illicit appraisals would be used to control and mislead the developers and Plaintiffs in regards to their investing in the resort properties. Again, these allegations may support a claim for fraud but do not state a claim for breach of fiduciary duty. Even if a conspiracy existed, that fact does not create a fiduciary duty between the Defendants and Plaintiffs. That the Defendants may have conspired to execute the alleged scheme to defraud does not turn a non-fiduciary relationship into a fiduciary duty one; at most it may allege a claim for fraud.

**ORDER ON REPORT AND RECOMMENDATION - 15**

Based on the foregoing, the Court finds the TAC's allegations regarding the Breach of Fiduciary Duty Claim as to Cushman & Wakefield to be lacking as to the source of a fiduciary duty owed by Cushman & Wakefield to Plaintiffs. At best, the TAC alleges Cushman & Wakefield acted in conjunction, and possibly conspired, with Credit Suisse to execute the Loan to Own scheme. Although the TAC contains more allegations of a conspiracy between Credit Suisse and Cushman & Wakefield than were found in the SAC, the existence of such a conspiracy in and of itself does not give rise to a fiduciary duty owed to the Plaintiff by either Defendant. Where no fiduciary duty exists absent a conspiracy, the allegation that Defendants conspired does not create such a duty. Furthermore, the allegations that Credit Suisse became a "co-developer" thereby creating a fiduciary relationship with Plaintiffs is too generalized upon which to find a fiduciary relationship existed. Because the claim sounds in fraud it must satisfy Rule 9(b). The generalized allegations in the TAC fail to present the particular circumstances giving rise to the alleged fraud let alone any fiduciary duty. For the reasons stated above, the Court finds the TAC lacks sufficient particularity necessary to state a claim for Breach of Fiduciary Duty as either Defendant. The Motions to Dismiss are granted as to this claim.[7]

**3.      Tortious Interference Claim**

---

[7] Credit Suisse argues the Conspiracy Claim should be dismissed along with the Breach of Fiduciary Duty Claim. (Dkt. 199 at 14-15.) This argument is true in as much as the Conspiracy Claim is tied to the Breach of Fiduciary Duty Claim. However, to the extent the Conspiracy Claim may be linked to the other surviving claims, the Conspiracy Claim may be viable and, therefore, the Motion to Dismiss is denied.

**ORDER ON REPORT AND RECOMMENDATION - 16**

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability...." *Wesco Autobody Supply, Inc. v. Ernest*, 243 .3d 1069, 1083 (Idaho 2010) (quoting Restatement (Second) of Torts § 766 (1979)). "Tortious interference with contract has four elements: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach." *Id.* (citation and quotations omitted.)

The Court previously dismissed this claim against Cushman & Wakefield. (Dkt. 126.) In the current Report, the claim survives as the Magistrate Judge concluded the TAC has raised sufficient allegations to withstand the Motion to Dismiss. (Dkt. 198 at 36.) Cushman & Wakefield object arguing the TAC relies on the same functional allegations as were determined to be insufficient before and, further, the Report failed to apply Rule 9(b). Credit Suisse likewise cites error in upholding this claim against it arguing Plaintiffs have failed to attach any contract that supposedly required the developers to construct and maintain the allegedly promised resort amenities. (Dkt. 199 at 9.) Absent such a contract, Credit Suisse argues, this claim cannot survive as there was no contract it could have interfered with.

The allegations for this claim are made in Paragraphs 192-199 of the TAC. (Dkt. 131.) There, Plaintiffs allege they held contracts with the developers which provided for the construction and maintenance of the "rights, amenities and privileges running with the lands" as alleged therein which were known to Defendants by virtue of having obtained the details

**ORDER ON REPORT AND RECOMMENDATION - 17**

of those contracts. (Dkt. 131 at ¶ 8, 77, 193.) Further, the TAC alleges the Defendants' knew of these contractual rights because the appraisals done by Defendants included the value of the "bundle of property rights that include their interests in the amenities and entitlements" of each resort as promised in the contracts. (Dkt. 131 at 77.) Defendants interfered with those contractual rights, Plaintiffs allege, "by committing the unlawful, deceptive and illegal acts and omissions" alleged therein. (Dkt. 131 at ¶ 194.) The Court finds these allegations are sufficient to withstand both Defendants' Motions to Dismiss.

The allegations, if true, make up the elements of a tortious interference claim as they state the existence of a contract, known to both Defendants, intentionally interfered with by Defendants' actions in the Loan to Own scheme, and, as a result, injury to Plaintiffs. For the reasons stated in the Court's prior Order as well as in the Report, the Court finds the Motion to Dismiss this claim should be denied. At this stage, the TAC has alleged a claim for tortious interference with contractual relations against Credit Suisse. (Dkt. 126, 198 at 35.) Surviving summary judgment, however, will be a much greater challenge for this claim. The Motions to Dismiss are denied on this claim.

## 4.    Negligence Claim

The "essential elements" of a negligence claim require a plaintiff to establish: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quoting *Hansen v. City of Pocatello*, 184 P.3d 206, 208 (Idaho 2008)).

**ORDER ON REPORT AND RECOMMENDATION - 18**

This Court previously dismissed the Negligence Claim against Cushman & Wakefield concluding the SAC had not adequately plead the source of the duty. (Dkt. 126 at 22.) Plaintiffs argue the TAC has now corrected this shortcoming by alleging the Defendants were required to comply with FIRREA and USPAP and their failure to do so constitutes a failure to exercise reasonable care, thus giving rise to a duty. (Dkt. 208 at 7.) Cushman & Wakefield's preparation of the appraisals, Plaintiffs argue, violated those statutorily based duties. Further, Plaintiffs argue the decision regarding the application of these statutes to this case, at best, is properly left to be decided on the anticipated motions for summary judgment. (Dkt. 208 at 8.) Cushman & Wakefield counter that the TAC still fails to allege the Negligence Claim with particularity to satisfy Rule 9(b) as it does not identify a specific provision of either FIRREA or USPAP that was violated. (Dkt. 200 at 16-17.) Moreover, Cushman & Wakefield argue it owes no duty to Plaintiffs and the Court should decide as a matter of law that FIRREA and USPAP were not violated in this case. Similarly, Credit Suisse argues the Negligence Claim should be dismissed as Plaintiffs have failed to identify the source of any duty it owed to Plaintiffs let alone satisfied Rule 9(b)'s particularity requirement for pleading. (Dkt. 199 at 11.)

The current Report concludes that the revised allegations in the TAC "succeed in discussing the statutory bases for Defendants' alleged duties...." (Dkt. 198 at 42-43.) As such, the Report recommends denying the Motions to Dismiss and leaving the issues raised as to this claim for summary judgment. In so deciding, the Report cites to Paragraphs 6, 78, 79, 98, 99, 102, and 104 of the TAC wherein the Plaintiffs' allegations on this claim are made.

**ORDER ON REPORT AND RECOMMENDATION - 19**

(Dkt. 198 at 40-43.) This Court agrees that those Paragraphs allege the source giving rise to the duty are based on alleged violations of FIRREA and USPAP.

Though Defendants want more specificity, the Court agrees with the Report that at this stage the allegations contain sufficiently particularized circumstances giving rise to the fraud claimed. The TAC contends that the Defendants' appraisals deviated from the standards and regulations of FIRREA and USPAP by utilizing the "unlawful appraisal methodologies," entitled TNV and TNP, which "failed to properly discount to present value and over a period of time the projected revenues to be generated from each MPC" resulting in "a much higher value conclusion than would have occurred under a legitimate 'as-is' market value conclusion." (Dkt. 131 at ¶ 79(c), 98.)[8] This is sufficient for purposes of these Motions to Dismiss where the question is whether the TAC has satisfied Rule 8 and Rule 9(b)'s requirements to state a claim. The Court finds it has done so. The Motions to Dismiss are denied as to this claim.

## 5.    Fraud and Negligent Misrepresentation Claims

Credit Suisse objects to the Report's conclusion that Plaintiff Gibson's Fraud and Negligent Misrepresentation Claims should not be dismissed arguing she cannot plead the requisite element of reliance. (Dkt. 199 at 4.) These claims should be dismissed as to Plaintiff Gibson, Credit Suisse contends, because she purchased her Tamarack residence before Credit Suisse issued the Tamarack loan or Cushman & Wakefield's appraisal; thus, she could not have relied upon any fraud surrounding the loan. (Dkt. 199 at 3.) Plaintiffs respond asserting

---

[8] TNV stands for "Total Net Value" and TNP stands for "Total Net Proceeds" as used in relation to the appraisal methodology. (Dkt. 131 at 4 n. 1.)

**ORDER ON REPORT AND RECOMMENDATION - 20**

Plaintiff Gibson's reliance is found in her not selling the property at a time when she could have made a large profit based on Credit Suisse's fraudulent disclosure and nondisclousure in its June 1, 2006 press release regarding its loan to Tamarack. (Dkt. 209 at 2.)

In considering the Fraud and Negligent Misrepresentation Claims, the Report distinguished between those individual Plaintiffs who were able to allege the element of reliance given when their property was purchased in relation to the loans issued by Credit Suisse. (Dkt. 198 at 16-28.) The Report concluded that those Plaintiffs who purchased their properties before the loans could not have relied upon the misrepresentations made in those loans. As to Plaintiff Gibson in particular, the Report quotes Paragraph 26 of the TAC where in it states she purchased her Tamarack property on September 9, 2005; prior to the June 1, 2006 loan being issued. (Dkt. 198 at 20.) Credit Suisse objects arguing her claims should be dismissed because Plaintiff Gibson purchased her Tamarack property before the loan was made; thus, she could not have relied upon the loan in making her purchase.

However, Paragraph 26 of the TAC, as quoted in the Report, alleges Plaintiff Gibson

[L]earned from real estate agents at Tamarack that a major bank was proposing a long-term loan for Tamarack that would help promote further construction and development at the MPC. Instead of selling her lot which would have returned her investment and provided a profit of $400,000, Gibson instead kept her lot and developed it after a June 1, 2006 press release that the international bank, Credit Suisse, had provided a $250,000,000 loan.

(Dkt. 131 at ¶ 26.)Thus, Plaintiff Gibson's alleged reliance is based upon her having retained her property because of the Credit Suisse loan. The Court finds the allegations to be sufficient at this stage to allege a claim of fraud and/or negligent misrepresentation.

**ORDER ON REPORT AND RECOMMENDATION - 21**

Paragraph 26 contains particularized factual circumstances of the fraud alleged by Plaintiffs and Plaintiff Gibson's reliance thereupon to her detriment. Accordingly, the objection is denied on this point.

## ORDER

Having conducted a *de novo* review of the Report and Recommendation, this Court finds that Magistrate Judge Bush's Report and Recommendation is well founded in law and consistent with this Court's own view of the evidence in the record. Acting on the recommendation of Magistrate Judge Bush, and this Court being fully advised in the premises, **IT IS HEREBY ORDERED** that the Report and Recommendation entered on February 17, 2012, (Dkt. 198), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED** in part and **DENIED** in part as detailed herein.

**NOW THEREFORE IT IS HEREBY ORDERED** as follows:

1)      Plaintiffs' Motion to Amend (Dkt. 130) is **GRANTED**.

2)      Motion to Intervene (Dkt. 159) is **DENIED**.

3)      Defendant Credit Suisse's Motion to Dismiss (Dkt. 134) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a)      Plaintiffs' Fraud Claim is **DISMISSED** with prejudice as alleged on behalf of a united class and, individually, as to Plaintiffs Jennings, Pushkin, LaFleur, Griffen, Land, and Dominguez. The Fraud Claim is **NOT DISMISSED** as to Plaintiffs Gibson, Blixseth, and Koenig.

   b)      Plaintiffs' Negligent Misrepresentation Claim is **DISMISSED** with prejudice as alleged on behalf of a united class and, individually, as to Plaintiffs Jennings, Pushkin, LaFleur, Griffen, Land, and Dominguez. The Negligent Misrepresentation Claim is **NOT DISMISSED** as to Plaintiffs Gibson, Blixseth, and Koenig.

**ORDER ON REPORT AND RECOMMENDATION - 22**

    c)       Plaintiffs' Tortious Interference and Negligence claims are **NOT DISMISSED**.

    d)       Plaintiffs' Breach of Fiduciary Duty, Unjust Enrichment, and Consumer Protection Act Claims are **DISMISSED** with prejudice.

4)       Defendant Cushman & Wakefield's Motion to Dismiss (Dkt. 136) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a)       Plaintiffs' Fraud Claim is **DISMISSED** with prejudice as alleged on behalf of a united class and, individually, as to Plaintiffs Jennings, Mushkin, LaFleur, Griffen, Land, and Dominguez. The Fraud Claim is **NOT DISMISSED** as to Plaintiffs Gibson, Blixseth, and Koenig.

    b)       Plaintiffs' Negligent Misrepresentation Claim is **DISMISSED** with prejudice as alleged on behalf of a united class and, individually, as to Plaintiffs Jennings, Mushkin, LaFleur, Griffen, Land, and Dominguez. The Negligent Misrepresentation Claim is **NOT DISMISSED** as to Plaintiffs Gibson, Blixseth, and Koenig.

    c)       Plaintiffs' claims for Tortious Interference and Negligence as well as the Class Allegations are **NOT DISMISSED**.

    d)       Plaintiffs' Breach of Fiduciary Duty and Consumer Protection Act Claims are **DISMISSED** with prejudice.

DATED:  March 30, 2012

_____
Honorable Edward J. Lodge
U. S. District Judge

**ORDER ON REPORT AND RECOMMENDATION - 23**