# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, VERN JENNINGS, MARK MUSHKIN, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, JUDY LAND, and CHARLES DOMINGUEZ, each individually, and on behalf of others similarly situated<br><br>    Plaintiffs,<br><br>    vs.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive,<br><br>    Defendants. | Case No.: CV 10-1-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**CUSHMAN & WAKEFIELD'S MOTION FOR SANCTIONS**<br><br>**(Docket No. 246)**<br><br>**CREDIT SUISSE'S MOTION FOR ORDER TO SHOW CAUSE**<br><br>**(Docket No. 253)**<br><br>**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES RE: MOTIONS BY DEFENDANTS**<br><br>**(Docket No. 302)** |

Currently pending before the Court are the following related motions:  (1) Cushman & Wakefield's Motion for Sanctions (Docket No. 246); (2) Credit Suisse's Motion for Order to Show Cause (Docket No. 253); and (3) Plaintiffs' Motion for Award of Attorneys' Fees Re: Motions by Defendants (Docket No. 302).  Having carefully considered the record (including the parties' supplemental briefing at Docket Nos. 315, 321, and 322), participated in oral argument on January 5, 2012, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**MEMORANDUM DECISION AND ORDER - 1**

# I. BACKGROUND

1.      Plaintiffs initiated this action on January 3, 2010 and, on January 25, 2010 and January 28, 2010, filed their First and Second Amended Complaints respectively.  *See* Compl., First Am. Compl., and Second Am. Compl. (Docket Nos. 1, 12, & 18).

2.      On March 29, 2010, Defendants Cushman & Wakefield, Inc. ("C & W") and Credit Suisse AG, Credit Suisse Securities (USA), LLC, Credit Suisse First Boston, and Credit Suisse Cayman Island Branch (collectively "Credit Suisse") moved to dismiss Plaintiffs' Second Amended Complaint.  *See* C& W & Credit Suisse Mots. to Dismiss (Docket Nos. 48 & 51).

3.      On May 11, 2010, this Court stayed discovery until Defendants' motions to dismiss were resolved.  *See* 5/11/10 MDO, pp. 7-8 (Docket No. 73).

4.      On February 17, 2011, the undersigned issued a Report and Recommendation relating to Defendants' motions to dismiss.  *See* 2/17/11 Rpt. & Recomm. (Docket No. 106).

5.      On March 25, 2011, while the parties' respective objections to the undersigned's Report and Recommendation were pending before United States District Judge Edward J. Lodge, Plaintiffs filed a motion for an order authorizing the emergency/expedited issuance of two subpoenas duces tecum, including one for Michael Miller.  *See* Mot. for Order (Docket No. 118). Plaintiffs represented to the Court that Mr. Miller had been employed by C & W for 17 years, including the time period of the appraisals that are one of the central pieces of Plaintiffs' liability theories in this case.  Plaintiffs' March 25, 2011 motion stated that Mr. Miller's testimony "is highly critical and central to the issues in this case and must be immediately preserved for the benefit of the class members in their prosecution of this case."  *See id*. at p. 2.

**MEMORANDUM DECISION AND ORDER - 2**

6.      In support of Plaintiffs' March 25, 2011 motion, Plaintiffs' counsel, Robert C.

Huntley, submitted his affidavit, identifying Mr. Miller as a "key 'whistle blower-type' witness,"

while making the following, related representations:

- Mr. Miller "was willing to come forward with testimony which incriminates both [C & W] and Credit Suisse of knowingly and intentionally developing and utilizing the misleading, and likely illegal, Total Net Value (TNV) and Total Net Proceeds (TNP) appraisal methodologies for the loans to be made to approximately twenty-two (22) developments in the United States (including Lake Las Vegas, Yellowstone Club, Tamarack, and Ginn Sur Mer, located in the Bahamas)."

- Mr. Miller "was and is of the opinion that the appraisal methodologies were unique, unaccepted in the industry, and were violative of both FIRREA and USPAP."

- Mr. Miller provided testimony in person to Mr. Huntley and Christopher Conant, another of Plaintiffs' multiple attorneys, in a four-hour-long meeting in Denver, Colorado on March 19, 2011.  "Mr. Miller dictated his affidavit" and Mr. Conant "transcribed [Mr. Miller's] testimony into his laptop as both men viewed the monitor and edited his testimony.  A copy of [Mr. Miller's] transcribed testimony is attached hereto as Appendix A."

- "Mr. Miller did not sign the affidavit at that time because he was concerned that his doing so might result in subjecting himself to retaliation or litigation against him by C & W.  Therefore, he is unwilling to sign his affidavit, but will respond to a subpoena for a deposition."

*See* Huntley Aff. at ¶ 1-5 (Docket No. 118, Att. 2).  As referenced above, Mr. Huntley attached to

his own affidavit the unsigned March 19, 2011 "Declaration of Michael L. Miller, MAI" as

Appendix A to his affidavit.  *See id*. at ¶ 4.  In essence, then, Plaintiffs requested that the May 11,

2010 discovery stay be lifted to accommodate Mr. Miller's testimony.  *See id*. at ¶ 6.

7.      On March 31, 2011, Judge Lodge adopted in part and rejected in part the

undersigned's February 17, 2011 Report and Recommendation.  *See* 3/31/11 Order (Docket No.

**MEMORANDUM DECISION AND ORDER - 3**

126).  As to those claims that Judge Lodge dismissed without prejudice, the Court afforded

Plaintiffs an opportunity to amend their complaint by April 21, 2011.  *See id*. at pp. 29-30.

        8.      On April 4, 2011, the undersigned denied Plaintiffs' March 25, 2011 motion.  *See*

4/4/11 Order, pp. 2-3 (Docket No. 128) ("Plaintiffs offer no compelling reason supporting the

need to immediately proceed with Mr. Miller's deposition . . . – there is no urgency . . ., when

recognizing the action remains stubbornly positioned at the motion to dismiss stage and, thus, is

not particularly dependent upon any discovery, let alone the requested discovery.  Further, there

is no indication that Mr. Miller's deposition . . . will not be available once the boundaries of the

parties' claims and defenses are understood after the pleadings are once-and-for-all filed and the

stay is lifted.").

        9.      On April 21, 2011, Plaintiffs filed their Third Amended Complaint.  *See* Third

Am. Compl. (Docket No. 129 & 131).  Plaintiffs' Second Amended Complaint made no mention

of Mr. Miller; however, Plaintiffs' Third Amended Complaint repeatedly referenced Mr. Miller's

alleged involvement in matters contributing to Plaintiffs' claims against Defendants.  *Compare*

Second Am. Compl. (Docket No. 18) *with* Third Am. Compl. at ¶¶ 60-74, 91-93, & 190 (Docket

No. 129 & 131).

        10.     Also on April 21, 2011, Plaintiffs sought to amend their pleadings to resuscitate a

breach of fiduciary duty claim against C & W, despite Judge Lodge's April 4, 2011 dismissal of

that claim, with prejudice.  *See* Mot. for Leave to Am. Third Cause of Action (Docket No. 130).

In support of their attempt to do so (and consistent with Plaintiffs' March 25, 2011 motion and

Plaintiffs' Third Amended Complaint), Plaintiffs stated that "it is appropriate to revive that claim

at this early stage in the case on the basis of the evidence which has come forward from former

**MEMORANDUM DECISION AND ORDER - 4**

[C & W] employee, Michael Miller." *See id.* at p. 2; *see also* Mem. in Supp. of Mot. to Am., p. 2 (Docket No. 130, Att. 1) ("Very clearly, unknown to Plaintiffs until this past March of 2011, were the details of [C & W's] knowing and intentional participation . . . with Credit Suisse to plan, agree to implement, and implement the appraisal and lending scheme perpetrated against the Plaintiffs and others.").

11.     Apparently unbeknownst to either Credit Suisse or C & W (and unbeknownst to this Court), on or around May 4, 2011, Mr. Miller faxed to Mr. Huntley a copy of an undated "Affidavit of Michael L. Miller, MAI." *See* Ex. 2 to Morrow Decl. in Supp. of C& W's Mot. for Recons. (Docket No. 227, Att. 2).[1] This affidavit was signed before a notary public licensed in Missouri.  Defendants contend that the *signed* affidavit is substantively different from Mr. Miller's *unsigned* March 19, 2011 declaration.  *See id.* and *compare with* Appx. A to Huntley Aff. (Docket No. 118, Att. 2); *see also* Ex. 4 to Morrow Decl. in Supp. of C & W's Mot. for Recons. (Docket No. 227, Att. 2) (containing red-lined comparison of Mr. Miller's signed, May 2011 affidavit with Mr. Miller's unsigned March 19, 2011 declaration).

12.     Also unbeknownst to either Credit Suisse or C & W, Mr. Miller soon thereafter delivered a second signed "Affidavit of Michael L. Miller, MAI" to his boss Doug Haney, who is also an expert retained by Plaintiffs.  *See* Exs. 1 & 3 to Morrow Decl. in Supp. of C & W's Mot. for Recons. (Docket No. 227, Att. 2).  Mr. Haney then forwarded this second signed version to

---

[1]  Between the time that (1) Mr. Huntley filed Mr. Miller's unsigned March 19, 2011 declaration, and (2) Mr. Miller faxed his undated affidavit to Mr. Huntley on or around May 4, 2011, Mr. Miller testified that Plaintiffs' attorneys – including Mr. Huntley, James C. Sabalos, and Michael J. Flynn – were calling often (a few times a week), urging Mr. Miller to sign the unsigned March 19, 2011 declaration as quickly as possible.  *See* 5/31/12 Miller Dep. at 249:13-250:9, attached as Ex. A to Abdollahi Decl. in Supp. of C & W's Mot. for Recons. (Docket No. 245).

**MEMORANDUM DECISION AND ORDER - 5**

Plaintiffs' counsel.  *See id.*  This subsequent affidavit was signed before a notary public licensed

in Texas and is dated May 9, 2011; however, it appears to be identical in content to the earlier

affidavit faxed to Mr. Huntley on May 4, 2011.  For the purposes of this Memorandum Decision

and Order, the Court considers Mr. Miller's two signed affidavits to be one and the same.[2]

> 13.     On May 5, 2011, Defendants C & W and Credit Suisse moved to dismiss

Plaintiffs' Third Amended Complaint.  *See* C & W & Credit Suisse Mots. to Dismiss (Docket

Nos. 134-139).

> 14.     On May 25, 2011, Plaintiffs, in response to C & W's emergency motion to strike

Plaintiffs' May 13, 2011 motion for partial summary judgment (Docket Nos. 140 & 145), relied

upon Mr. Miller's unsigned March 19, 2011 declaration in these particulars:

- "For example, during the Montana Bankruptcy proceedings in *In re Yellowstone Mountain Club*, Credit Suisse and [C & W] were well aware of the complaints, concerns and objections to the lending and appraisal scheme raised by Michael Miller, a senior appraiser with [C & W].  Miller raised his concerns and objections regarding the "Total Net Value" appraisal method to his superiors in New York . . . .  Miller also raised the same objection directly with several members of the Credit Suisse team in Los Angeles who participated in the creation of the scheme described in the [Third Amended Complaint]."

- Identifying Mr. Miller as "the person who directly links Credit Suisse and [C & W] to both the planning and implementation of the scheme."

- "The current motions before this Court are therefore not merely procedurally improper, but a concerted effort to prevent any court from learning what else Miller will tell this Court (and there is more), and a determined effort to make sure no court ever concludes that the Defendants violated the laws of the United States ("FIRREA") and the laws of the states of Idaho, Montana, Nevada, and Florida ("USPAP"), which they did."

---

[2]  Although both of the signed documents are labeled as "affidavits," neither contains a notary public's jurat.  Rather, both use an acknowledgment form.  However, both contain penultimate language at the end of the document that is in sufficient form to meet the requirements of a declaration under 18 U.S.C. § 1746.

**MEMORANDUM DECISION AND ORDER - 6**

- "In connection with the illegal lending and appraisal scheme in Idaho and at Yellowstone, Cushman & Wakefield's appraiser, Dean Paauw, told Miller: '. . .*[I'm] not in jail yet and still continuing to write these appraisals . . .*'"

*See* Pls.' Opp. to Emergency Mot. to Strike, pp. 7-8 (Docket No. 148) (citing Third Am. Compl.

at ¶¶ 57-59 & 70 (Docket Nos. 129 & 131) (emphasis in original)).

15.     On May 31, 2011, Plaintiffs opposed Defendants' renewed motions to dismiss.

*See* Pls.' Opp. to Mots. to Dismiss (Docket Nos. 152-153).  In doing so, Plaintiffs relied, in part,

on the allegations raised in their Third Amended Complaint relating to the testimony given in

Mr. Miller's unsigned March 19, 2011 declaration.  *See e.g.*, Pls.' Opp. to Credit Suisse Mot. to

Dismiss, pp. 24-26 (Docket No. 152); Pls.' Opp. to C & W Mot. to Dismiss, pp. 8, 10-12, 21-24

(Docket No. 153).

16.     During the January 12, 2012 oral argument on Plaintiffs' April 21, 2011 motion to

amend and Defendants' renewed motions to dismiss, Plaintiffs' counsel, Messrs. Huntley and

Sabalos, made the following arguments vis à vis Mr. Miller and his unsigned March 19, 2011

declaration:

- "The issue presented by this motion is whether the – with the advent of the new information we have through the whistle blower and other new allegations in that Third Amended Complaint, this Court should reinstate the Plaintiffs' cause of action against [C & W] for a breach of fiduciary duty . . . ."

- "The Third Amended Complaint adds information provided by the whistle blower, Michael Miller.  And I won't – I mention only a couple of highlights here. . . . ."

- "At paragraph 57 [of the Third Amended Complaint], and I want to talk just a little bit about what wasn't here.  What wasn't here before in the last proceeding. We knew nothing about Mr. Miller.  We knew nothing about the conversations that took place and the meetings and agreements.  This is all unique.  And one of the problems with conspiracy we had last time with [C & W] was, in fact, we didn't know about Miller and we didn't have all the details."

**MEMORANDUM DECISION AND ORDER - 7**

- In response to the Court's question concerning whether Plaintiffs' breach of fiduciary duty claim against C & W "has become more plausible than it was at the time that Plaintiffs [originally] conceded the claim . . . .," Plaintiffs' counsel responded: "That and the whistle blower.  And also the affidavit of Mike Haney, and the affidavits of Miller that they can be considered in connection with this motion."

- "Paragraph 61.  Miller begins to raise red flags regarding these new inflated appraisals.  Miller is the senior vice-president or senior executive in charge of the developments for [C & W] out of Houston, and he's got many people that work for him.  He now is raising red flags. [C & W] is raising red flags because they are their employees, they're authorized agents."

- "Paragraph 62, all the things we didn't know before when Judge Lodge and Your Honor had us before this Court, Miller, only five months or so after he had previously appraised Lake Las Vegas, pursuant to USPAP and FIRREA, through the discounted market value that I just told you about, learns of what is going on, wants to know why . . . ."

- At 65 through 69 under the conspiracy, which we didn't know about before, even [C & W] changes its TNV to total net proceeds, thinking geez, this could be alleged to be misleading."

- "And I just want to – I'll just represent, you know, Judge, I know you know conspiracy.  I'm not going to sit here and tell you, but we represent that if it were conspiracy alone, not just the other materials we have, conspiracy alone we would have enough to hold [C & W] in here, if the Court lets us come back because we didn't know about Miller.  We didn't know about Dean Paauw saying I'm still doing these appraisals, not yet in jail, telling that to his executive, senior executive, Mr. Miller, who's reported to us, who's coming to this court sooner or later."

See 1/12/12 Tr. at 10, 14, 22-23, 70-73, 78 (Docket No. 194).

17.     On February 17, 2012, the undersigned issued a (1) Memorandum Decision and Order relating to Plaintiffs' April 21, 2011 motion to amend, and (2) Report and Recommendation relating to Defendants' renewed motions to dismiss.  See 2/17/12 MDO & Rpt. & Recomm. (Docket Nos. 197 & 198).  Within the February 17, 2012 Memorandum Decision and Order, the undersigned granted Plaintiffs' April 21, 2011 motion to amend, stating in relevant part:

**MEMORANDUM DECISION AND ORDER - 8**

- "Since [dismissing Plaintiffs' breach of fiduciary duty claim against C & W], however, Plaintiffs claim that new information in the form of an insider account – namely, from Mr. Michael Miller – reveals a conspiracy between Credit Suisse and [C & W] to support a breach of fiduciary duty claim against not only Credit Suisse, but also [C & W]."

- "Finally, Plaintiffs' counsel represent as officers of the court that Mr. Miller has insider knowledge of [C & W's] alleged coordination with Credit Suisse that presents a new, different, factual backdrop to Plaintiff's current breach of fiduciary duty claim against [C & W]."

*See* 2/17/12 MDO, pp. 10 & 13 (Docket No. 197). Additionally, within the February 17, 2012 Report and Recommendation, the undersigned recommended that Plaintiffs' breach of fiduciary duty claim against C & W not be dismissed. *See* 2/17/12 Rpt. & Recomm., pp. 32-33 (Docket No. 198).

18.     On March 30, 2012, Judge Lodge adopted in part and rejected in part the undersigned's February 17, 2012 Report and Recommendation. *See* 3/30/12 Order (Docket No. 210). Of some note here, although Judge Lodge found that Plaintiffs' Third Amended Complaint alleged the existence of a conspiracy between Credit Suisse and C & W, he nonetheless dismissed with prejudice Plaintiffs' breach of fiduciary duty claims against both Credit Suisse and C & W. *See id*. at pp. 15-16 & 23.

19.     On April 27, 2012, C & W first received a copy of the signed, May 2011 Miller affidavit. *See* Ex. 1 to Morrow Decl. in Supp. of C & W's Mot. for Recons. (Docket No. 227, Att. 2). The copy was obtained from Mr. Miller's personal attorney, not from counsel for Plaintiffs. *See id*.

20.     Also on or around April 27, 2012, Credit Suisse and C & W answered Plaintiffs' Third Amended Complaint. *See* Credit Suisse and C & W Ans. to Third Am. Compl. (Docket Nos. 218, 219, 222 & 235).

**MEMORANDUM DECISION AND ORDER - 9**

21.     On May 11, 2012, C & W moved for reconsideration of Judge Lodge's March 30, 2012 Order.  *See* C & W's Mot. for Recons. (Docket No. 227).  In support of its motion to reconsider, C & W stated that "Plaintiffs' counsel for a full year have been in possession of a signed affidavit from supposed 'whistle blower' Michael Miller that is materially different from the 'unsigned declaration' Plaintiffs' counsel drafted and submitted to the Court on March 25, 2011."  *See* Mem. in Supp. of C & W's Mot. for Recons., p. 1 (Docket No. 227, Att. 1).  According to C & W, "had the Court known the truth about what [Mr.] Miller actually had signed, it would have granted C & W's motion to dismiss in its entirety . . . ."  *See id*. at p. 3.  Thus C & W sought reconsideration of that portion of Judge Lodge's Order regarding C & W's renewed motion to dismiss the Third Amended Complaint that allowed certain claims to proceed against it.  *See id*.

22.     On June 4, 2012, C & W filed a motion for sanctions, arguing that Plaintiffs should be sanctioned due to their (and/or their counsel's) "misconduct in failing to disclose for more than one year the existence of a signed affidavit from Michael Miller, while at the same time submitting to the Court and relying on a different, unsigned declaration."  *See* C & W's Mot. for Sanctions, p. 2 (Docket No. 246).

23.     On June 15, 2012, Credit Suisse also moved for reconsideration of Judge Lodge's March 30, 2012 Order.  *See* Credit Suisse's Mot. for Recons. (Docket No. 253).  In support of its motion to reconsider, Credit Suisse also highlighted Plaintiffs' counsel's reliance upon Mr. Miller's unsigned March 19, 2011 declaration up to that point in the litigation when, in fact, they were in possession of a later-in-time, signed affidavit from Mr. Miller that was substantively different from Mr. Miller's earlier declaration.  *See* Mem. in Supp. of Credit Suisse's Mot. for

**MEMORANDUM DECISION AND ORDER - 10**

Recons., pp. 1-2 (Docket No. 253, Att. 1) ("What Plaintiffs did not reveal to the Court, even while relying repeatedly on the supposed testimony of Mr. Miller in the [u]nsigned [declaration], was that Miller had actually *signed* an [a]ffidavit . . . – a modification of the [u]nsigned [declaration] drafted for him by Plaintiffs' counsel – in which he deleted key paragraphs, sentences, and phrases that supposedly supported Plaintiffs' claims, and substituted materially different language.") (emphasis in original).  In turn, Credit Suisse moved the Court to (1) reconsider its denial of Credit Suisse's renewed motion to dismiss Plaintiffs' negligence claim in light of the "Miller revelations," and (2) order Plaintiffs to show cause as to why they should not be sanctioned "for misleading the Court in violation of their duty of candor."  *See id*. at p. 3.

24.     On October 26, 2012, Judge Lodge granted Defendants' respective motions for reconsideration, reconsidered its March 30, 2012 Order, but then determined that the Court "correctly decided the matter in its prior order . . . which remains the decision of this Court on the motions decided therein."  *See* 10/26/12 Order, pp. 14-15 (Docket No. 297).  However, in reaching this conclusion, Judge Lodge neither "condone[d] nor ma[de] any ruling one way or another concerning the actions of counsel" regarding the stated bases for seeking reconsideration. *See id*. at p. 13.  In other words, the question of whether any sanctions are warranted in relation to Plaintiffs' counsel's handling of Mr. Miller's declaration/affidavit was referred to the undersigned for decision.

25.     On November 19, 2012, Plaintiffs moved for an award of attorneys' fees relating to unnecessarily having to respond to C & W's June 4, 2012 motion for sanctions and Credit Suisse's June 15, 2012 motion for order to show cause.  *See* Pls.' Mot. for Award of Att'ys Fees & Expenses (Docket No. 302).

**MEMORANDUM DECISION AND ORDER - 11**

26.     On December 5, 2012, the undersigned heard oral argument on (1) C & W's June 4, 2012 motion for sanctions, (2) Credit Suisse's June 15, 2012 motion for order to show cause, and (3) Plaintiffs' motion for award of attorneys' fees and expenses. *See* 12/5/12 Minute Entry (Docket No. 309).

27.     On December 6, 2012, Plaintiffs filed a motion for leave to file expedited five-page brief regarding the order to show cause hearing, arguing that "[t]he issue before the Court has serious consequences, particularly to the integrity and reputation of Plaintiffs' attorneys as well as the other considerations articulated in court," that "[n]o pre-hearing briefs were requested by either the Court or the parties and the issues are now focused for a meaningful brief," and that "[t]here were issues propounded at the hearing which deserve a meaning ful and thoughtful input from counsel." *See* Pls.' Mot. for Leave, pp. 1-2 (Docket No. 308).

28.     On December 6, 2012, the undersigned granted Plaintiffs' motion for leave, reasoning:

> The Court struggles with any assessment of the pending motions for sanctions that does not immediately raise significant issues for Plaintiffs requiring a thorough and careful response. However, it is possible that the seriousness of the issue raised by the motions for sanctions, and the sanctions requested by Defendants, were not apprehended by Plaintiffs' counsel to the appropriate degree. Given the implications of the pending motions for all of Plaintiffs' counsel, and for the claims made in the lawsuit, the Court will grant the Motion.

*See* 12/6/12 MDO, p. 2 (Docket No. 311).

29.     On December 10, 2012, Plaintiffs filed their post-hearing brief regarding the order to show cause hearing, arguing that sanctions should not be imposed. *See* Pls.' Post-Hearing Brief (Docket No. 315).

**MEMORANDUM DECISION AND ORDER - 12**

30.     On December 13, 2012, Defendants responded to Plaintiffs' post-hearing brief, arguing that sanctions should be imposed against Plaintiffs.  *See* Credit Suisse & C & W Resps. (Docket Nos. 321 & 322).

## II.  DISCUSSION

The motions decided in this Memorandum Decision and Order concern a nettlesome and troubling dispute between the parties regarding statements made by Michael Miller – a witness described by Plaintiffs' counsel as a "whistle blower" – and a decision made by Plaintiffs' counsel not to file Mr. Miller's signed May 2011 affidavit with the Court.  When that affidavit was signed by Mr. Miller, Plaintiffs' counsel had already presented, relied upon, and filed with the Court Mr. Miller's previous, unsigned, and arguably substantively different March 19, 2011 declaration.  Defendants contend that by not filing with the Court Mr. Miller's *signed* May 2011 affidavit (while consistently relying upon Mr. Miller's earlier, unsigned March 2011 declaration), Plaintiffs and their counsel breached duties required of them by Court rules, federal statutes, and ethical standards.

**A.     Imposing Sanctions: Applicable Standards**

1.     Federal Rule of Civil Procedure No. 11

In presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney certifies that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1) & (3).

**MEMORANDUM DECISION AND ORDER - 13**

In general, if the court determines that FRCP 11(b) has been violated, the court may impose an appropriate sanction. *See* Fed. R. Civ. P. 11(c)(1).[3] Sanctions under FRCP 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and may include "[(1)] nonmonetary directives;[4] [(2)] an order to pay a penalty into court; or [3] if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)( 4).

FRCP 11 does not enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in any given circumstance. Still, the

---

[3] However, FRCP 11 requires that a party filing a motion for sanctions must serve the motion on the opposing party 21 days before filing the motion with the court. *See* Fed. R. Civ. P. 11(c)(1) ("The motion [for sanctions] must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). This is FRCP 11's "safe harbor" provision. The Ninth Circuit has held that the procedural requirements of FRCP 11(c)(1) are mandatory and that the safe harbor provision must be strictly enforced. *See Holgate v. Baldwin*, 425 F.3d 6671, 677 (9th Cir. 2005). It is not clear whether FRCP 11's safe harbor provision applies (or, if it did, whether the parties complied with its procedural protocols) – C & W does not cite to FRCP 11 in support of its motion for sanctions and, while Credit Suisse references FRCP 11(*see* Credit Suisse's Mot. for Order to Show Cause, pp. 14-15 (Docket No. 253, Att. 1)), its motion is not for sanctions per se but, rather, a motion for order to show cause why Plaintiffs should not be sanctioned.

[4] A non-monetary sanction of dismissal "is an available sanction when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). "Before imposing the 'harsh sanction' of dismissal, however, the district court should consider the following factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *See id.*

**MEMORANDUM DECISION AND ORDER - 14**

Advisory Committee Notes to FRCP 11 provide that courts have "significant discretion" in such respects, and may consider "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants[.]" Fed. R. Civ. P. 11, Adv. Comm. Notes (1993).

      2.    <u>28 U.S.C. § 1927</u>

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The use of the word "may" – rather than "shall" or "must" – gives district courts the discretionary authority "to hold attorneys personally liable for excessive costs for unreasonably multiplying proceedings." *Gadda v. Ashcroft*, 377 F.3d 934, 943 n.4 (9th Cir. 2004). While the Ninth Circuit has "'been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose a sanction for attorneys' fees'" under 28 U.S.C. § 1927, or whether there must be a finding of subjective bad faith, what is clear from the case law is that "a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under [28 U.S.C.] § 1927 . . . ." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010)

**MEMORANDUM DECISION AND ORDER - 15**

(quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) and citing *In re*

*Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)).

       3.      <u>Idaho Rule of Professional Conduct 3.3</u>[5]

      "In addition to case law and applicable court rules, courts may consider codes of

professional conduct in determining whether an attorney's conduct falls below the standards of

the profession and is sanctionable.  *See Girardi*, 611 F.3d at 1035.  Idaho Rule of Professional

Conduct 3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or

law to a tribunal or fail to correct a false statement of material fact or law previously made to the

tribunal by the lawyer."  IRPC 3.3(a)(1); *but compare with* IRCP 3.3(a)(3) & cmt. 8 ("The

prohibition against offering false evidence only applies if the lawyer knows that the evidence is

false.  A lawyer's reasonable belief that evidence is false does not preclude its presentation to the

trier of fact.").  Consistent with this, a lawyer's failure to make a disclosure can be the equivalent

of an affirmative misrepresentation.  *See* IRCP 3.3, cmt. 3.  Moreover, given a "lawyer's

obligation as an officer of the court to prevent the trier of fact from being misled by false

evidence" (*see* IRCP 3.3, cmt. 5), when previously-offered materials turn out to be

false/misleading, a lawyer's "duty of candor to the tribunal" warrants "reasonable remedial

measures" (*see* IRCP 3.3, cmt. 10).

---

     [5]  Under the Local Civil Rules of the District of Idaho, "[a]ll members of the bar of the District Court . . . for the District of Idaho (hereafter the "Court") and all attorneys permitted to practice in this Court must familiarize themselves with and comply with the Idaho Rules of Professional Conduct of the Idaho State Bar and decisions of any court interpreting such rules. These provisions are adopted as the standards of professional conduct for this Court but must not be interpreted to be exhaustive of the standards of professional conduct."  Dist. Idaho Loc. Civ. R. 83.5.

**MEMORANDUM DECISION AND ORDER - 16**

### 4. Court's Inherent Powers

"District courts have the inherent power to sanction a lawyer for a 'full range of litigation abuses.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th cir. 2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)).  While a district court's authority to impose sanctions under its inherent powers is broad, it is not limitless.  "Before awarding sanctions under its inherent powers . . . the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).  A finding of bad faith may be appropriate when, among other things, a party engages in behavior that has the effect of "delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* at 649 (internal quotation marks omitted).

## B.   Analysis

There are, perhaps, some courts in the country where motions of this nature are an unremarkable occurrence, and where there is no particular noteworthiness attached to either the bringing of such motions, or to the defense of such motions, or perhaps even to the deciding of such motions.  That is not true in this federal district court, nor in any Idaho state court with which the undersigned has been associated.  The motions present matters of great seriousness, and the Court has given its full attention to the issues raised, as they implicate threats to the integrity of the adversarial process, and questions about the proper conduct of lawyers who serve as officers of the court in seeking a fair and just adjudication of their clients' disputes.

The Court is convinced, after considering the written and oral argument of counsel, that there has been a material failure on the part of Plaintiffs' counsel in their responsibilities to this

**MEMORANDUM DECISION AND ORDER - 17**

Court, as officers of this Court, in the circumstances underlying the pending motions.  The Court finds that Plaintiffs' counsel made dramatic, strident, and repeated written and oral representations to the Court regarding Mr. Miller's purported testimony, with the unmistakable intention that such representations be relied upon the Court as it considered dispositive motions and motions to amend, all motions which were of great significance concerning the claims which Plaintiffs might be permitted to further pursue against Defendants in this lawsuit.

In addition, the representations made by Plaintiffs' counsel were cloaked in the credence of sworn testimony.  Plaintiffs' counsel filed a prepared declaration in the name of Mr. Miller, but lacking his signature under oath only because of his alleged unwillingness on his part to sign the declaration for fear of retaliation from his former employer, Defendant C & W.  Indeed, *that* purported reason was emphasized by Plaintiffs' counsel as a basis for which the Court should attach even greater credibility to the testimonial details of Mr. Miller's unsigned declaration. According to Plaintiffs, this witness was a whistle blower, privy to the alleged misdeeds of both Defendants, who considered himself in danger of personal repercussions if he were to talk about what otherwise might remain unspoken.

There is no question but that Plaintiffs' counsel sought to color the record before the Court as such motions were considered and decided, with the particulars of Mr. Miller's testimony alleged already to have been obtained, and ready to be cemented into sworn testimony, but for the fear of retaliation.  The unsworn testimony of Mr. Miller was repeatedly referenced in the Plaintiffs' filings, and in oral argument to the Court.  Whether or not Plaintiff's characterization of Mr. Miller's testimony becomes the smoking gun Plaintiffs contend it to be, or something less than that, remains to be seen.  But once Plaintiffs' counsel chose to put such a

**MEMORANDUM DECISION AND ORDER - 18**

box of evidence in front of the Court, they also had an absolute responsibility to inform the Court and opposing counsel when the shape of that evidence box changed.  Having made explicit representations about the nature of "good as sworn" testimony to the Court, and having made explicit representations about such testimony not being made under oath because of Mr. Miller's alleged whistle blower fears, Plaintiffs' counsel had a responsibility to inform the Court and opposing counsel when Mr. Miller placed his testimony under oath.

The argument of Plaintiffs' counsel that the actual sworn testimony was not substantively different than the "would be sworn, but for" testimony is unavailing here.  The duties of Plaintiffs' counsel were to correct the misshapen record before the Court, having once made that record.  If Plaintiffs' counsel had never presented any unsigned and unsworn declaration to the Court as if it was as good as sworn upon, as if it carried the same evidentiary reliability as a sworn affidavit or signed declaration, and if Plaintiffs' counsel had not repeatedly and vociferously argued that such evidence should persuade the Court of the rightness of Plaintiffs' claims, then this issue could be easily dispensed.  Plaintiffs' counsel could have kept silent (in the limited circumstances at play here, and assuming that there were no discovery requests that otherwise might have required the production of such a statement), about the fact of the unsigned declaration, as well as the fact of the later signed documents.  But Plaintiffs' counsel made the unsigned declaration, and their  representations about the integrity and significance of such evidence, a key part of the record.  Once that was done, they also had the immediate and unmistakable responsibility to make the later-signed affidavit a part of the record, when they first became aware of its existence.

**MEMORANDUM DECISION AND ORDER - 19**

Plaintiffs' counsel also argues that they were justified in deciding not to file the sworn testimony with the Court, even though they previously had filed the unsworn testimony while emphasizing that the sworn testimony was unavailable because Mr. Miller feared retaliation. They argue that the sworn testimony is not substantively different than the unsworn testimony, a conclusion that is, of course, unilaterally drawn. Neither the Court nor opposing counsel were made aware of, or provided with a copy of the sworn testimony. Further, the representation that sworn testimony could not be obtained for fear of retaliation was no longer true at the moment Mr. Miller signed his affidavit. Whatever rationalizations may have justified that decision in the minds of Plaintiffs' counsel, the plain fact is that the decision was mistaken and wrong.

Similarly, the argument that Plaintiffs were prohibited from filing any affidavits because of the procedural posture of the case (dealing with pending motions to dismiss and a stay upon discovery while such motions – and motions to amend – were considered and decided) is also unavailing. Plaintiffs did not follow such a close line when the unsigned declaration was submitted to the Court in the context of a motion seeking relief from the discovery stay. The nature of the manner in which the unsigned declaration, and the affidavit of counsel submitted with it, and then the later written and oral argument based upon it, make clear that the Plaintiffs intended for the purported testimony of Mr. Miller to be part of what the Court would consider in deciding then pending motions, and later filed, motions. In fact, as this Memorandum Decision and Order describes at the outset and as also set forth in Defendants' motions, the Court *did* consider such evidence and argument in making certain of its rulings. Having once muddied that water, Plaintiffs' counsel cannot reasonably argue that the Court's order staying discovery and

**MEMORANDUM DECISION AND ORDER - 20**

the civil rules' prohibitions upon consideration of evidence from outside the pleadings on motions to dismiss constituted a clear barrier to filing Mr. Miller's signed affidavit.

Accordingly, the Court makes the following specific findings in regard to the failure of Plaintiffs' counsel to file the signed statement of Mr. Miller at the time it came into their possession:

1.       Such a failure is an abuse of the duties owed to the Court, and constituted or was tantamount to bad faith.  Such a failure delayed and hampered the litigation process by presenting a flawed and arguably false record before the Court, while at the same time asking the Court to focus upon the flawed portion of that same record as a basis for deciding critical motions in the case.  The Court properly can sanction such failures by Plaintiffs' counsel under its inherent powers.

2.       Plaintiffs' counsel had a duty under Idaho Rule of Professional Conduct 3.3(a)(1) not to knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."  Plaintiffs' counsel's failure to file the signed statement of Mr. Miller, once it was received and in the context of representations in writing and orally about the facts and circumstances of Mr. Miller's unsworn testimony, constituted the equivalent of an affirmative misrepresentation.  *See* IRCP 3.3, cmt. 3.  The signed "affidavit" was not the same document as the unsigned declaration.  The statement of fact that the witness, Mr. Miller, would not sign a statement under oath because of fear of retaliation was no longer true, even if true at the outset, at the moment he did sign the affidavit.  Further, Plaintiffs' counsel's failure to remedy such matters is a breach of a lawyer's

**MEMORANDUM DECISION AND ORDER - 21**

duty "duty of candor to the tribunal" which warrants "reasonable remedial measures." *See* IRCP 3.3, cmt. 10.

3.       Plaintiffs' counsel's failure to file the signed statement when it came into their possession had the inevitable, and intended, effect of unreasonably multiplying the proceedings in this case pertaining to briefing, argument, consideration and decision upon motions to dismiss, and motions to amend.  Whether or not Judge Lodge ultimately changed any of his decision upon objections (or reconsideration of his decision) to the undersigned's Report and Recommendation dated February 17, 2012 does not change this analysis or the finding made here.  The failure to file the signed affidavit necessarily meant that the nature of the briefing and the argument, and the court's consideration of the evidence and decision upon the same, was different than it would have been with the addition of such evidence to the record.  The Court acknowledges that Plaintiffs' counsel would have been free to argue, and no doubt would have argued, that the signed statement was of no different evidentiary importance than the unsigned affidavit.  But, defense counsel would also have the argument that the signed statement was substantively different, that the characterization of a whistle blower witness worried about retaliation was unfounded, and the Court would have had that full panoply of evidence and argument to consider.  When the signed statement came to light, a new round of motion practice ensued and even the very fact of this Memorandum Decision and Order is evidence that proceedings have been multiplied and additional resources of the parties and the court have been drawn upon.

4.       The Court finds that the failure of Plaintiffs' counsel to file the signed, sworn affidavit in the circumstances described in this Decision was done recklessly at a minimum, and

**MEMORANDUM DECISION AND ORDER - 22**

that such reckless conduct on the part of lawyers to this case, as officers of the court, justifies a finding that the attorneys are personally liable for excessive costs associated with such conduct. There is no question but that Plaintiffs' counsel were aware of the signed, sworn affidavit. Indeed, the record indicates that they were in repeated contact with Mr. Miller requesting him to make the sworn statement, so that it could be submitted to the Court.  Yet, after submitting an unsworn declaration, and representing that a sworn statement could not be obtained because of the witness's fear of retaliation, they failed to file the actual sworn affidavit when it came into their possession.  Such conduct is reckless at a minimum.  Therefore, the Court finds that an award of sanctions against Plaintiffs' counsel is also appropriate under 28 U.S.C. § 1297.

5.      The Court makes no finding as to whether sanctions are appropriate under FRCP 11.

6.      Having determined that an award of sanctions against Plaintiffs' counsel is justified under the inherent powers of the Court, Idaho Rule of Professional Conduct 3.3, and 28 U.S.C. § 1297, the Court orders as follows:

(A)      Plaintiffs' counsel may not use the testimonial evidence of Michael Miller in this case for any purpose, other than as obtained in deposition or courtroom testimony.  The Court has considered barring the use of Michael Miller's testimony in any form, but concludes that to do so would disproportionately affect the individual Plaintiffs for the failings of their counsel.  However, given the decisions and conduct of Plaintiffs' counsel in regard to Mr. Miller's prior testimonial evidence, the Court will require that any evidence to be obtained or otherwise used in this lawsuit may only be elicited in a deposition setting or courtroom testimony, where the Defendants will have the full adversarial process available to them.

**MEMORANDUM DECISION AND ORDER - 23**

(B)     With respect to monetary sanctions imposed upon Plaintiffs' counsel individually (*see infra*), the undersigned hereby identifies attorneys Huntley, Conant, Sabalos, and Flynn as being absolutely subject to this Memorandum Decision and Order.  To the extent any one of Plaintiffs' remaining counsel believes that he should not be subject to this Memorandum Decision and Order, he is to file a motion seeking relief from the same on or before April 12, 2013, detailing the good cause for said relief.  Defendants are permitted (but not required) to file a response on or before April 19, 2013.  Soon thereafter (in any event, before Plaintiffs are to respond to any request by Defendants' for recovery of fees and costs (*see infra*)), the Court intends to issue a subsequent order setting out those additional attorneys who are (and who are not, if any) subject to the sanctions set out in this Memorandum Decision and Order.

(C)     Subject to the terms of subparagraph 6(B), Plaintiffs' counsel, jointly and severally, shall pay a sum to each Defendant – Credit Suisse and C & W – to be determined upon consideration of appropriate evidence, to recompense said Defendants for the attorneys' fees and costs necessitated by the motions filed seeking sanctions as a result of the failure to file the sworn affidavit of Mr. Miller.[6]  If a Defendant seeks to recover such expenses, by April 19, 2013, it is to seek recovery of such costs in the same manner as if the Defendant were seeking to recover costs

---

[6] The Court considered a ruling that would allow for Defendants to seek recovery of any attorneys' fees and costs expended as a result of the fact of the failure to file the signed affidavit of Mr. Miller, in the context of additional or different briefing and motion practice that would not have been done but for the fact of the filing of the unsigned declaration and argument made upon the same.  Ultimately, the Court concluded that the difficult and time-consuming exercise of trying to extract such threads from the much more extensive weave of the briefing and argument that was submitted by Defendants would be extraordinarily difficult and not worth the price of admission for the parties to pursue or defend, or for the Court to decide.  Whether or not any party will have an independent right to seek recovery of such fees and costs at a future date will have to await the denouement of the lawsuit.

**MEMORANDUM DECISION AND ORDER - 24**

of suit, including attorney fees, as a matter of right under FRCP 54(d).  Any such request shall

carry sufficient detail and explanation so as to allow the Court to find, by a preponderance of the

evidence submitted to it, that the requested costs are directly connected to the motion for

sanctions, and to the follow-up work in response to this ruling.  If there is any doubt left by the

evidence in that regard, the Court will not award any costs represented by the doubtful evidence.

Plaintiffs shall have the right to respond and oppose the request for costs, if any is filed, in the

ordinary manner in response to an FRCP 54(d) motion.

   (D) Subject to the terms identified in subparagraph 6(B), Plaintiffs' counsel

are each individually sanctioned in the sum of $6,000.00.  The Court arrives at that sum by

considering the very serious nature of the decision not to file the sworn affidavit of Mr. Miller, or

to advise opposing counsel of the existence of that sworn affidavit, all as further previously

discussed in this Decision.  Such failure unnecessarily multiplied the proceedings in this lawsuit,

caused an unnecessary and unjustifiable use of the resources of the parties and the Court,

constituted a material misrepresentation of the evidentiary record, and violated an attorney's duty

of candor to the Court.  Any sanction for those serious professional failings must serve both as

sanction for the fact of the improper conduct and as a deterrent to the lawyer, and other lawyers,

who might consider taking such actions in the future.  As to the amount of the individual

sanction, the Court considers the following facts:

   (1) That each lawyer is established in his practice, and each lawyer

willingly came into the representation of the plaintiffs in this case (this is not a situation where a

lawyer has been appointed at the order of the Court to represent a particular party, nor are any of

the attorneys involved in this case on a *pro bono* basis);

**MEMORANDUM DECISION AND ORDER - 25**

(2)      That other than Mr. Huntley and Benjamin Schwartzman, each of Plaintiffs' counsel has come to the District of Idaho asking to be admitted to this Court on a *pro hac vice* basis, in order to be one of the many counsel representing Plaintiffs in this case, and by doing so, they have agreed to be governed by the same professional rules of conduct as apply to lawyers admitted to the practice of this Court;[7]

(3)      That Plaintiffs' counsel have represented to the Court in their pleadings and filings in this case, that Plaintiffs' claims carry millions of dollars of alleged damages, involving transactions occurring at high-end resort properties in multiple geographic locations, and with claims that conceivably could have been brought in courts other than the District of Idaho;

(4)      That in order for a sanction to have a deterrent effect, it should carry a significant enough economic impact upon the individual receiving the sanction so as to cause that individual, and others who may learn of the sanction, to make decisions in the future that are not likely to expose one to the possibility of receiving such a sanction;

(5)      That the Court considers a sanction which has the effect of depriving an attorney of a week's worth of earned fee income, as having a sufficient economic deterrent effect to have the intended impact upon an attorney's future decision-making about his responsibilities as a licensed professional and as an officer of the Court.

(6)      That, assuming an average billing rate of $300 an hour for the plaintiffs' attorneys, which the Court believes is a conservative estimate, a 40 hour work week will yield a gross earned income of $12,000.00.

---

[7] The Court considered, but ultimately decided against, revoking the *pro hac vice* status of those counsel who have been admitted to practice before this Court on that basis.

**MEMORANDUM DECISION AND ORDER - 26**

(7)     That, acknowledging that most attorneys do not earn a full billing rate for every hour in a 40 hour rate, and acknowledging that not every attorney among those in the list of Plaintiffs' counsel has the same number of years of experience or reputation in practice, which also can affect the gross income of an attorney;

(8)     That, after considering those factors described in paragraph 6(D)(7), the Court concludes that it is more appropriate to lessen the sanction as because it may have a disproportionate impact upon certain of plaintiffs' counsel in comparison to others, even though to do so may lessen the deterrent effect upon those counsel of greater incomes;

(9)     That, therefore, the Court will reduce the $12,000 amount by one-half, so as to make the sanction $6,000 for each of Plaintiffs' counsel.  In doing so, the Court recognizes that for some of Plaintiffs' counsel the amount may seem of small consequence; however, the Court also points out that for those counsel, they also have the deterrent consequence of knowing that any one of them could have stepped in to insist upon a different decision in these circumstances, that could have protected not only themselves, but also their co-counsel who might be of lesser means, from the risk of the sanctions that the Court imposes in this Order.  Further, to the extent that there are disproportionate impacts upon the relative economic resources of Plaintiffs' counsel, they have the opportunity to equalize such impacts in the context of satisfying their joint and several liabilities for any award of costs that the Court may make in favor of the Defendants, as part of the follow-up to this decision.

(10)     As to attorneys Huntley, Conant, Sabalos, and Flynn, such payments shall be made into the Registry of the Court on or before April 12, 2013.  If, pursuant to the subsequent order referenced in subparagraph 6(B), additional Plaintiffs' attorneys are also

**MEMORANDUM DECISION AND ORDER - 27**

determined to be the proper subjects of this Memorandum Decision and Order, those attorneys shall make their $6,000 payment to the Registry of the Court within 14 days of that subsequent Order.

## III.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that (1) Cushman & Wakefield's Motion for Sanctions (Docket No. 246) and (2) Credit Suisse's Motion for Order to Show Cause (Docket No. 253) are GRANTED.  The analysis contained within this Memorandum Decision and Order with respect to granting these motions, likewise operates as the support for denying Plaintiffs' Motion for Award of Attorneys' Fees Re: Motions by Defendants (Docket No. 302). Therefore, Plaintiffs' Motion for Award of Attorneys' Fees Re: Motions by Defendants (Docket No. 302) is DENIED.



DATED:  **March 29, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 28**