UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH; AMY KOENIG, DEAN FRESONKE, VERN JENNINGS, TERRI FROEHLICH, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas and Ginn Sur Mer,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive,<br><br>Defendants. | Case No.: 1:10 CV 001-EJL-REB<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

On August 16, 2013, United States Magistrate Ronald E. Bush issued a Report and Recommendation ("Report"), recommending that Plaintiffs' Motion to Certify Class be and Defendants' Motion to Exclude Expert Report and Testimony be denied. (Dkt. 409.) Any party may challenge the Magistrate Judge's proposed recommendation by filing written objections within fourteen days after being served with a copy of the Report. 28 U.S.C. §

**ORDER ON REPORT AND RECOMMENDATION- 1**

636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate. *Id.*; *see also* Fed. R. Civ. P. 72(b).

Plaintiffs filed objections to the Report arguing it erred in denying its Motion for Class Certification in several respects. (Dkt. 411, 412.) Alternatively Plaintiffs request that this Court grant a limited class certification as to the liability issues and reserve decision as to class certification for the damages issues. Defendants also filed objections to the Report arguing it should have: 1) found the Plaintiffs' claims lack the class certification requirements for typicality and commonality, 2) concluded that none of the Plaintiffs satisfy the adequacy requirement, and 3) rejected the Plaintiffs' the "fail-safe class definition." (Dkt. 413.) Both sides have filed responses to the others' objections. (Dkt. 415-417.) The Court has considered the parties' contentions and conducted a *de novo* review of the record and, upon that basis, finds as follows.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements

**ORDER ON REPORT AND RECOMMENDATION- 2**

of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Furthermore, to the extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation). "When no timely objection is filed, the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

In this case, both parties have filed objections and, therefore, the Court has conducted a *de novo* review of those portions of the Report. The Court has also reviewed the entire Report as well as the record in this matter for clear error on the face of the record and finds as follows.

**ORDER ON REPORT AND RECOMMENDATION- 3**

## DISCUSSION

### I. Plaintiffs' Objections

#### A. Superiority

The Report concluded that class resolution of this case is not superior to other methods for adjudication of the controversy. (Dkt. 409 at 30.) Plaintiff objects to this conclusion arguing the Report failed to recognize the time and resources of the Court and both parties that would be necessary to separately adjudicate the number of potential cases by the 2,284 class members. (Dkt. 411 at 13.) Plaintiffs also challenge the Report's statement that Plaintiffs admit they are seeking "$8 billion in actual damages for the approximately 3,000 Class members – on average, approximately $2,666,666 per Class member." (Dkt. 411 at 5.)

The statement concerning the approximated amount of damages was made in reference to the Report's discussion concerning Rule 23(b)(3)'s superiority requirement. (Dkt. 409 at 30.) There, the Report concluded that a class action in this case is not superior to other methods for adjudication given the sizeable amount of damages each class member may individually be seeking. Plaintiffs dispute the accuracy of the figure arguing the average loss is more likely $582,379.70. (Dkt. 411 at 6.) The Report accurately calculated the representations as to damages as made by the Plaintiffs in their Third Amended Complaint. (Dkt. 409 at 30) (citing Dkt. 131 at ¶¶ 48, 172.) Regardless of the precise damage figure, this Court does not find the approximated damages figure to have been the driving factor in denying class certification. The Report clearly goes on to state:

**ORDER ON REPORT AND RECOMMENDATION- 4**

> Furthermore, while Plaintiffs' claims share common threads, the resolution of which could reduce litigation costs and promote greater efficiency (see supra), they are nevertheless not without the need for individual causation determinations vital to the progression of the two Class-wide claims (see supra). In other words, because individual issues predominate, Plaintiffs' proposed class cannot be superior to other methods of adjudication absent a practical way for this Court to readily resolve the individual factual issues that bear on causation and damage. While no single forum (Idaho, Montana, Nevada, or the Bahamas) is obviously best (or worst, as the case may be) equipped to address these significant concerns, their management is made unsurmountably difficult by the complexity and multiplicity of the issues regardless. This also recommends against certifying the Class.

(Dkt. 409 at 31.) This Court has reviewed the superiority question *de novo* and agrees with the Report's analysis on this issue and will adopt the same. For the reasons stated in the Report, the Court denies the Plaintiffs' objection and agrees with the Report that class certification is not the superior method for adjudicating this case.

### B.     Disqualification of Three Class Representatives

In considering the adequacy of representation requirement of Rule 23(a)(4), the Report concluded that proposed class representatives Beau Blixseth, Amy Koenig, and Judy Land were not adequate representatives. (Dkt. 409 at 10-18.) Plaintiffs object to the disqualification of these three from representing their respective classes. Plaintiffs argue the possible defenses asserted by the Defendants against three of the proposed class representatives are non-existent and should not preclude class certification. (Dkt. 411 at 6.) Further, Plaintiffs point out that the three have been "extremely active in representing the interests" of the class and are otherwise appropriate to do so. (Dkt. 411 at 13.)

**ORDER ON REPORT AND RECOMMENDATION- 5**

The Report properly laid out, and Plaintiffs do not dispute, the law governing adequacy of representation of a class. (Dkt. 409 at 10-11.) The objection here challenges the Report's application of that law to these three representatives. This Court has reviewed the materials relating to this issue *de novo* and finds it is in agreement with the conclusions reached in the Report.

### 1. Beau Blixseth

As to Beau Blixseth, Plaintiffs contend that the reasons given for his disqualification are "suppositions and nothing more" flowing from his connections with his father and the Yellowstone Club. (Dkt. 411 at 18.) Plaintiffs argue Mr. Blixseth was deposed at length and there is no evidence that he was involved in the "arrangements for the procurement of the Credit Suisse loan to Yellowstone Club, no interface with anyone from Cushman or Credit Suisse, and had no knowledge of the Cushman appraisals. There is no evidence that he had any control over the development, ownership, and management of the Yellowstone Club MPC." (Dkt. 411 at 18-19.) Further, Plaintiffs assert that Mr. Blixseth was not part of the Yellowstone Club management team at the time of the loans, did not receive control of his interest in BFI until after the alleged fraud, and is simply a owner of two parcels of real estate who suffered the same type of losses as other putative class members.

The Report's disqualification of Mr. Blixseth is based on two grounds: 1) his connection with his father and 2) that he was too directly connected to the development, ownership, and management of the Yellowstone Club MPC. (Dkt. 409 at 12-13.) On the first ground, Plaintiffs argue Mr. Blixseth's father is not a defendant to this action and there is no

**ORDER ON REPORT AND RECOMMENDATION- 6**

reason that he should have to or would refuse to assign blame to a non-defendant. The Report quotes from Mr. Blixseth's deposition wherein he acknowledges that the lack of interest payments started the foreclosure process. (Dkt. 409 at 13.) Mr. Blixseth is not, as Plaintiffs contend, merely a property owner who lost money on two parcels at Yellowstone Club MPC. Mr. Blixseth was much more involved in and with a greater knowledge of Yellowstone Club MPC than other possible class members who had purchased property. *See e.g.* (Dkt. 286, Att. 9, Blixseth Dec. at ¶ 2.) This Court agrees with the Report that Mr. Blixseth's familial, financial, and business connections to Tim Blixseth and Yellowstone Club MPC make Mr. Blixseth unable to fairly and adequately protect the interests of the class.

### 2. Amy Koenig

Amy Koenig worked as the Vice President of Marketing at Tamarack which included creating "fact sheets" for salespeople to use in selling Tamarack properties and reviewing Tamarack press releases. (Dkt. 320, Ex. 24, Koening Depo. at 34, 71, 72.) Ms. Koening also owned shares in Tamarack resort and had access to more information than a regular purchaser of property. (Dkt. 320, Ex. 24, Koening Depo. at 97, 255, 253.) The Report determined Ms. Koenig is not an adequate representative of the Tamarack subclass due to her personal and professional relationships with Tamarack's development team. (Dkt. 409 at 15.) Plaintiffs counter that the developers are not defendants in this case and there is no evidence that Ms. Koenig has "tunnel vision" or unwillingness to acknowledge anything negative about the developer. (Dkt. 411 at 17.)

The Report correctly recognizes that the "mere fact that Ms. Koenig is a Tamarack insider is not enough to prevent her from serving as a Class representative." (Dkt. 409 at 14.)

**ORDER ON REPORT AND RECOMMENDATION- 7**

The Report then goes on to find that it is Ms. Koenig's relationship with Tamarack's development team that poses the risk that she may disregard any liability the developer may have regarding the claims in this case contrary to the best interests of the class. (Dkt. 409 at 15.) The Court agrees with this conclusion. Ms. Koenig admitted to having been involved with creating the materials used to sell and release information about Tamarack properties to the public. Further, through her job at Tamarack Ms. Koenig fostered a close relationship with the Tamarack developer. The Court finds these facts evidence a potential conflict of interest between Ms. Koenig and the class if her marketing work for Tamarack properties contributed to the other class members' injuries. Ms. Koenig may not fairly and adequately protect the interests of the Tamarack subclass given her relationship with the Tamarack developer. For these reasons, the Court adopts the Report's analysis and conclusion that Ms. Koenig is not an adequate representative of the class.

### 3. Judy Land

Judy Land worked in sales for the Tamarack resort's developer, made representations to prospective buyers, and sold Tamarack properties to other named Plaintiffs and putative members. (Dkt. 320, Ex. 25 at 13, 29.) The Report concluded Ms. Land's own involvement in property sales contributing to the claims involved in this action, and possibly her own liability, renders her an inadequate representative of the Tamarack subclass. (Dkt. 409 at 15.) Plaintiffs object to this conclusion arguing there is no evidence of any conflict of interest and the fact that she might have insider knowledge should not disqualify her as a class

**ORDER ON REPORT AND RECOMMENDATION- 8**

representative. (Dkt. 411 at 14.)

The fact that Ms. Land may be considered to have insider knowledge is not the basis for the Report's conclusion disqualifying her as a class representative. Instead, the Report determined that her involvement with the developer and prospective buyers renders her inadequate to represent the class. Having reviewed the materials relating to Ms. Land *de novo*, this Court agrees with the Report. Ms. Land's involvement in selling Tamarack properties and making representations concerning the properties to prospective buyers puts her at odds with the members of the Tamarack subclass in that she may be liable to some extent for the injuries suffered by the other class members. (Dkt. 320, Land Depo. at 12-13, 27-36) (Dkt. 131 at ¶ 33.) It is Plaintiffs' burden to establish the proposed class representatives will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). Plaintiffs have failed to carry this burden here. As such, this Court agrees with the Report that Ms. Land is not an adequate representative for the Tamarack subclass.

**C.     Lender Agreement**

Plaintiffs object to Footnote 9 of the Report which notes a possible issue with regard to the class representatives having prospectively assigned 23% of any award made to the

**ORDER ON REPORT AND RECOMMENDATION- 9**

class to Tim Blixseth. (Dkt. 411 at 7.) Though the Report noted this potential issue, its ruling on the Motion was not impacted by the fact of the fee arrangement. Because Plaintiffs' objection in this regard does not go to any issues actually decided in the Report, the Court need not rule on the same.

### D. Variations in the Contracts' Language

Plaintiffs object to the Report's conclusion that the variations in the wording of the contracts defeats class certification. (Dkt. 411 at 8.) Plaintiffs maintain that the "essence of the cause of action" is that "the contracts were for the purchase of a bundle of rights established in the marketing, established in the CC&Rs filed with the county recorders, and other promotional materials." (Dkt. 411 at 8.) These contracts, Plaintiffs assert, were for land purchases that everyone agrees had little value without the amenities as evidenced by the appraised values which included the amenities; i.e. "the amenities are part and parcel of the magnitude of the appraised value." (Dkt. 411 at 9.) This Court disagrees.

The Plaintiffs would have the Court disregard the fact that the contracts had many variations in their wording and, instead, conclude that "the true nature of all the contracts, regardless of their language, being for the purchase of amenities...." (Dkt. 411 at 9-10.) This reasoning ignores the facts as they are in the record. The variations in the contracts render the Plaintiffs to be so differently situated that no one class or subclass exists. There is no predominance among the Plaintiffs such that it can be said they are "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As detailed in the Report, the contracts for each MPC and each Plaintiff contain

**ORDER ON REPORT AND RECOMMENDATION- 10**

"individualized issues, central to the question of liability, that cannot be resolved using common proof." (Dkt. 409 at 21-24.) This Court, having reviewed the issue *de novo* agrees with the Report that predominance is lacking due to the individual contract issues that override the common questions of law and fact that may exist among the proposed class. (Dkt. 409 at 25.)

### E. Causation

The Report concluded that individual issues concerning causation defeat class-wide tortious interference with contract and negligence claims. (Dkt. 409 at 25-28.) Plaintiffs object to this conclusion arguing there are not such issues that defeat class certification on liability/causation. (Dkt. 411 at 10.) Plaintiffs maintain that the appraisals are the sole cause and the same cause as to the whole class in determining liability and any variations are matters which can be resolved in the proposed claims administration portion of the case. (Dkt. 411 at 11-12.) The Court disagrees with Plaintiff.

The Report properly recognized that the claims require a showing of causation as to the underlying fact of injury. (Dkt. 409 at 26.) It is not enough, as Plaintiffs would have us do, to simply bifurcate the matter into liability and damages phases and leave for later a determination as to damages. To prevail on their claims, and establish liability, the Plaintiffs must show causation between the Defendants' conduct and the Plaintiffs' injuries. Here, however, there is no consistency between the proposed class members as to the evidence they would need to establish causation. As a result, the Court finds, there is no predominance or sufficient cohesiveness that would warrant adjudication by representation. Again, the

**ORDER ON REPORT AND RECOMMENDATION- 11**

questions as to causation affecting individual members of the class vary widely such that no cohesive thread can be drawn showing a common proof of causation among the many members. As such, the Court agrees that predominance has not been shown here.

## II. Defendants' Objections

Although Defendants prevailed on the outcome of the Motion in the Report, they have filed objections to those portions of the Report which found in favor of the Plaintiffs. For the sake of completeness the Court has considered and addressed the Defendants' objections below. In doing so the Court finds, as did the Report, that Plaintiffs have established some of the requirements for class certification but they ultimately failed to prove all of the requirements and the Motion to Certify Class will be denied.

### A. Typicality

Defendants object to the Report's determination that the named Plaintiffs satisfy the requirements of typicality. Rule 23(a)(3) provides that the Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Defendants agree with the law relied upon in the Report but argue the Magistrate Judge erred in finding the representative claims are sufficiently typical to pass muster because the unique defenses of the representative parties will overwhelm the litigation at the cost of the absent class members. (Dkt. 413 at 4) (Dkt. 409 at 10.)

The Court has reviewed this issue *de novo* and agrees with the Report. "Typicality refers to the nature of the claim or defense of the class representative[s], and not to the

**ORDER ON REPORT AND RECOMMENDATION- 12**

specific facts from which it arose or the relief sought." (Dkt. 409 at 8) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted)). The claims here consistently allege the same conduct as having caused injury to the class and the standards applicable to the claims are substantially the same. *See Hanon*, 976 F.2d at 508. Although there are defenses that may be unique as to some of the named Plaintiffs, this Court agrees that the existence of such possible defenses particular to certain named Plaintiffs do not defeat typicality.

### B. Adequate Class Representatives

The Defendants object to the Report's conclusion that Plaintiffs L.J. Gibson, Mark Mushkin, Monique LaFleur, and Griffen Development, LLC, Charles Dominguez, and Vern Jennings are adequate class representatives. (Dkt. 413 at 4.) This Court has considered *de novo* the objections and the record herein and is in agreement with the Report that these parties could adequately represent the class, or subclass, had Plaintiffs established all of the necessary elements required for class certification. Because Plaintiffs ultimately did not do so, the Motion to Certify Class will be denied.

#### 1. L.J. Gibson

Defendants objection to Ms. Gibson restates its original argument that she is not an adequate class representative because she purchased the properties with her husband, James Sabalos, an attorney, who, until recently, represented the purported class. (Dkt. 413 at 5.) The Report considered and addressed this argument. This Court's own *de novo* review of the argument leads the Court to agree with the analysis and conclusion of the Report.

**ORDER ON REPORT AND RECOMMENDATION- 13**

Accordingly, the Court will adopt the Report in this regard.

### 2. Mark Mushkin

As with Ms. Gibson, the Defendants' objection to Mr. Mushkin restates the same arguments made in the original briefing on the class certification Motion. Defendants maintain that Mr. Mushkin's superior knowledge and experience distinguish him from the remaining class members and also subject him to defenses which preclude him from vigorously representing the class. (Dkt. 413 at 5-6.) The Report acknowledged the possibility that Mr. Mushkin would be subject to certain defenses by virtue of his professional backdrop, knowledge, and experiences at Lake Las Vegas but found that he still adequately represented the class. (Dkt. 409 at 13-14.) As the record currently stands, which the Court has reviewed *de novo*, the Court finds Mr. Mushkin adequately represents the class.

Mr. Mushkin may have a greater knowledge and experience of the Lake Las Vegas dealings than the class members. (Dkt. 320, Ex. 30, Mushkin Depo. at 14, 183.) That fact alone does not render him inadequate to represent the class and may very well prove him to be an asset in representing the class given his "superior" knowledge. This Court agrees with the Report and will adopt its analysis and conclusion that Mr. Mushkin adequately represents the class.

### 3. Monique LaFleur and Griffen Development, LLC

Ms. LaFleur and her development company, Griffen Development, LLC, are proposed as a representative for the Tamarack subclass. Ms. LaFleur purchased Tamarack properties as an investment through limited liability entities/vehicles rather than in her individual

**ORDER ON REPORT AND RECOMMENDATION- 14**

capacity. Griffen Development, LLC now owns several of Ms. LaFleur's Tamarack properties. (Dkt. 320, Ex. 28, LaFleur Depo. at 18-20, 30-32.) Defendants object arguing this purchasing arrangement "alienate[s], rather than align[s], Ms. LaFleur and Griffen Development's interests with the interests of the purported class." (Dkt. 413 at 6.)

The Report determined otherwise finding the distinctions between the purchasers are "inconsequential" to the ability of Ms. LaFleur and Griffen Development, LLC to adequately represent the class because all of the subclass members are purchasers of Tamarack property and were similarly injured when the promised amenities were not made available. (Dkt. 409 at 16.) The Report further found that Ms. LaFleur's deposition testimony was not inconsistent with the allegations in the Complaint. Having reviewed the record as it relates to these proposed class representatives, this Court agrees that Ms. LaFleur and Griffen Development, LLC's interests adequately align with those of the other members of the Tamarack subclass.

Although Ms. LaFleur and Griffen Development, LLC purchased the properties intending to resell them, their alleged interest in the properties were the same as other class members who may have been purchasing the properties to keep. As alleged in the Complaint, all of the purchasers relied upon the appraisals and the completion of the promised amenities when they purchased their property. (Dkt. 131 at ¶¶ 174, 176, 181-84.) When the amenities were not completed as promised, the claims allege that the class members' properties lost value. The Complaint goes on to allege that the failure to complete the promised amenities was due to the Defendants' fraudulent conduct. Ms. LaFleur's deposition testimony is consistent with these allegations that Defendants controlled the decisions leading to the resorts failures. (Dkt. 320, Ex. 28, LaFleur Depo. at 214-216) (Dkt. 131 at ¶¶ 15-17, 31-32.)

**ORDER ON REPORT AND RECOMMENDATION- 15**

Thus, even though Ms. LaFleur and Griffen Development, LLC may have purchased their properties through a different vehicle, their interests and alleged injuries in the properties were the same as those of the other class members. (Dkt. 131 at ¶¶ 31, 32.) As such, the Court agrees they are adequate representatives of the Tamarack subclass.

### 4. Charles Dominguez and Vern Jennings

Defendants object to the Report's finding that Mr. Dominguez and Mr. Jennings are adequate class representatives arguing their deposition testimony contradicts crucial allegations of the Complaint; maintaining the testimony shows their "disbelief with the Complaint's fundamental allegations." (Dkt. 413 at 6-7.) The Report concluded that the deposition testimony of these two individuals shows some unfamiliarity with the litigation in terms of what caused the foreclosures but that both suspect the Defendants' involvement to some extent. (Dkt. 409 at 17.) This Court has conducted a *de novo* review of the record as to these proposed class representatives and finds as follows.

Mr. Dominguez purchased land upon which he had a home built in Tamarack resort. (Dkt. 131 at ¶ 34.) He alleges the promised amenities were a motivating factor for his purchase of the property and that had he known of the "illicit nature of the Total Net value appraisal" he would not have invested in Tamarack resort. Mr. Dominguez lost the property in foreclosure. Mr. Jennings purchased property in Lake Las Vegas and claims to have subsequently suffered damages when the promised amenities were not provided. (Dkt. 131 at ¶ 129.) Mr. Dominguez's deposition does contain statements evidencing that he does not

**ORDER ON REPORT AND RECOMMENDATION- 16**

"blame" Credit Suisse for his loss on the Tamarack property and that he does not "know everything that was entailed with the deal between Tamarack and Credit Suisse or Cushman." (Dkt. 320, Ex. 22, Dominguez Depo. at 210-11, 220.) However, Mr. Dominguez goes on to state that, in general, he believed the developer and the project was "a winner" and the Defendants could be to blame for the resort's failure. (Dkt. 320, Ex. 22, Dominguez Depo. at 220-21.) Likewise, Mr. Jennings stated he did not know if Credit Suisse issued the loan expecting the developers would default but later agreed that he believed Credit Suisse and Cushman & Wakefield's conduct led to the bankruptcy at Lake Las Vegas. (Dkt. 320, Ex. 23, Jennings Depo. at 20, 188.) He went on to state:

> They collaborated to – with a appraisal of the village that was done in a manner that is unique to what would typically be done, overvalued the village and the assets, and then developed a loan basis on the overvalued assets, and that leveraged the village and resulted ultimately in a bankruptcy.

(Dkt. 320, Ex. 23, Jennings Depo. at 188.) These statements, the Court finds, show both Mr. Dominguez and Mr. Jennings are the very least suspicious of the Defendants' conduct as having contributed to the property losses they suffered in a manner that is consistent with the allegations in the Complaint. As such, the Court agrees with the Report that these two individuals could adequately represent their respective subclasses.

### C.  Commonality

The Report concluded that Plaintiffs had satisfied the commonality standard for Rule 23(a)(2). (Dkt. 409 at 5-7.) Defendants object arguing the Plaintiffs have not shown that the common questions are central to the validity of each one of the claims and actually drove the

**ORDER ON REPORT AND RECOMMENDATION- 17**

outcome of the litigation. (Dkt. 413 at 7) (citations and quotations omitted.) Specifically, Defendants argue the Report confuses the MPCs, who were deprived of the promised amenities, with the Plaintiffs who are the homeowners. The question as to whether each class member was ever promised and then later denied promised amenities, the Defendants assert, must be answered individually as to the particular property owner, not as a class.

> The Report couched the question as:
>
> relative to each MPC, class members were promised a specific set of amenities, but that Defendants' Loan to Own Scheme ultimately contributed to these MPCs' ruin and, as a result, led to the diminishment, retrenchment, and wholesale elimination of the contracted-for amenities. In other words, whether the MPCs were deprived of the promised amenities and whether such deprivations were a function of the alleged Loan to Own scheme represent a set of common questions whose answers are "apt to drive" a classwide resolution of Plaintiffs' claims.

(Dkt. 409 at 6.) This Court agrees that allegations as to the class in this case establish commonality.

> For commonality to be shown the Plaintiffs must show that
>
> Their claims...depend upon a common contention.... That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart*, 131 S.Ct. at 2551. Although the many different contracts and promises allegedly made to the class members defeats the existence of the class here as to the predominance requirement, there is a commonality to the allegations in the Complaint. The common question raised in the Plaintiffs' claims is whether the Defendants' conduct in the "Loan to Own Scheme" led to the failure to provide the promised amenities to the property owners

**ORDER ON REPORT AND RECOMMENDATION- 18**

and, ultimately, the demise of the MPCs and the resulting damages alleged by the class members.

The Defendants' commonality objection really goes to the predominance requirement which the Report and this Court have both determined is not satisfied here. The Court recognizes that it may appear inconsistent to find commonality has been shown and then later conclude in the same case that predominance has not been shown. Given the record here, however, the Court finds that to be the case. The standard for showing predominance under Rule 23(b)(3) is more "rigorous" and "far more demanding" than that required for commonality. (Dkt. 409 at 5, 19) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997) and citing cases.) The Court finds the Report correctly applied the standards for commonality and predominance in this case.

### D. Proposed Class Definition

Defendants' final objection argues the proposed class definition should fail because it is subjective, overly broad, and amounts to an impermissible "fail safe" class. (Dkt. 413 at 10.) The Report did not take up the Defendants' challenge to the Plaintiffs' proposed class definition as it is unnecessary to do so given the outcome of the other class certification requirements. (Dkt. 409 at 31, n. 14.) This Court agrees with the approach taken by the Report and adopts the same. The other shortcomings for class certification discussed herein obviate the need for the Court to consider this question.

**ORDER**

Having conducted a *de novo* review of the Report and Recommendation, this Court finds that Magistrate Judge Bush's Report and Recommendation is well founded in law and consistent with this Court's own view of the evidence in the record except as stated herein. Acting on the recommendation of Magistrate Judge Bush, and this Court being fully advised in the premises, **IT IS HEREBY ORDERED** that the Report and Recommendation entered on August 16, 2013 (Dkt. 409), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED**. NOW THEREFORE IT IS HEREBY ORDERED as follows:

1) Plaintiffs' Motion to Certify Class (Dkt. 286) is **DENIED**.

2) Defendants' Motion to Exclude (Dkt. 319) is **DENIED**.

3) Defendant's Motion for Judicial Notice (Dkt. 405) is **MOOT**.[1]

DATED: September 24, 2013

**Honorable Edward J. Lodge**
**U. S. District Judge**

---

[1] Defendant Cushman & Wakefield, Inc. filed a Request for Judicial Notice to advise the Court of further supplemental authority issued by the United States Supreme Court subsequent to the hearing held in this matter on April 19, 2013. (Dkt. 405.) The Court has considered the law applicable to the Motion to Certify Class in this matter and as cited herein. Accordingly, the Request for Judicial Notice is deemed moot.

**ORDER ON REPORT AND RECOMMENDATION- 20**