**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, VERN JENNINGS, MARK MUSHKIN, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, JUDY LAND, and CHARLES DOMINGUEZ, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas, and Ginn sur Mer,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive,<br><br>Defendants. | Case No.: CV 10-1-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION OF BENJAMIN SCHWARTZMAN AND WADE WOODARD FOR RELIEF FROM SANCTIONS ORDER OF MARCH 29, 2013 (DKT #352)**<br><br>**(Docket No. 355)** |

Now pending before the Court is the "Motion of Benjamin Schwartzman and Wade Woodard for Relief from Sanctions Order of March 29, 2013 (DKT #352)" ("Motion for Relief") (Docket No. 355). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

## I. BACKGROUND

1. On June 4, 2012, Defendant Cushman & Wakefield filed a motion for sanctions, arguing that Plaintiffs should be sanctioned due to their (and/or their counsel's) "misconduct in failing to disclose for more than one year the existence of a signed affidavit from Michael Miller,

while at the same time submitting to the Court and relying on a different, unsigned declaration." *See* C & W's Mot. for Sanctions, p. 2 (Docket No. 246).

2. In support of its June 15, 2012 motion for reconsideration (seeking reconsideration of Judge Edward J. Lodge's March 30, 2012 Order (Docket No. 210)), Defendant Credit Suisse highlighted Plaintiffs' counsel's reliance upon Mr. Miller's unsigned March 19, 2011 declaration up to that point in the litigation when, in fact, they were in possession of a later-in-time, signed affidavit from Mr. Miller that was substantively different from Mr. Miller's earlier declaration. *See* Mem. in Supp. of Credit Suisse's Mot. for Recons., pp. 1-2 (Docket No. 253, Att. 1). In turn, Credit Suisse moved the Court to (1) reconsider its denial of Credit Suisse's renewed motion to dismiss Plaintiffs' negligence claim in light of the "Miller revelations," and (2) order Plaintiffs to show cause as to why they should not be sanctioned "for misleading the Court in violation of their duty of candor." *See id*. at p. 3.

3. Plaintiffs opposed Cushman & Wakefield's motion for sanctions and Credit Suisse's motion for order to show cause. *See* Pls.' Opp. to C & W's Mot. for Sanctions; Pls.' Opp. to Credit Suisse's Mot. for Order to Show Cause (Docket Nos. 265 & 271).

4. On December 5, 2012, the undersigned heard oral argument on (1) Cushman & Wakefield's June 4, 2012 motion for sanctions, and (2) Credit Suisse's June 15, 2012 motion for order to show cause. *See* 12/5/12 Minute Entry (Docket No. 309).

5. On December 6, 2012, Plaintiffs filed a motion for leave to file expedited five-page brief regarding the order to show cause hearing, arguing that "[t]he issue before the Court has serious consequences, particularly to the integrity and reputation of Plaintiffs' attorneys as well as the other considerations articulated in court," that "[n]o pre-hearing briefs were requested

by either the Court or the parties and the issues are now focused for a meaningful brief," and that "[t]here were issues propounded at the hearing which deserve a meaningful and thoughtful input from counsel." *See* Pls.' Mot. for Leave, pp. 1-2 (Docket No. 308).

6. On December 6, 2012, the undersigned granted Plaintiffs' motion for leave, reasoning:

> The Court struggles with any assessment of the pending motions for sanctions that does not immediately raise significant issues for Plaintiffs requiring a thorough and careful response. However, it is possible that the seriousness of the issue raised by the motions for sanctions, and the sanctions requested by Defendants, were not apprehended by Plaintiffs' counsel to the appropriate degree. Given the implications of the pending motions for all of Plaintiffs' counsel, and for the claims made in the lawsuit, the Court will grant the Motion.

*See* 12/6/12 MDO, p. 2 (Docket No. 311).

7. On December 10, 2012, Plaintiffs filed their post-hearing brief, arguing that sanctions should not be imposed. *See* Pls.' Post-Hearing Brief (Docket No. 315).

8. On December 13, 2012, Defendants responded to Plaintiffs' post-hearing brief, arguing that sanctions should be imposed against Plaintiffs. *See* Credit Suisse & C & W Resps. (Docket Nos. 321 & 322).

9. On March 29, 2013, the undersigned issued a Memorandum Decision and Order, granting Cushman & Wakefield's motion for sanctions and Credit Suisse's motion for order to show cause. *See* 3/29/13 MDO (Docket No. 352). Therein, the undersigned sanctioned Plaintiffs and/or their counsel as follows: (1) Plaintiffs' counsel may not use the testimonial evidence of Mr. Miller in this case for any purpose, other than as obtained in deposition or courtroom testimony; (2) Plaintiffs' counsel are individually sanctioned in the amount of $6,000.00; and (3) Plaintiffs' counsel, jointly and severally, shall pay a sum to each Defendant –

Credit Suisse and Cushman & Wakefield – to be determined upon consideration of appropriate evidence, to recompense said Defendants for the attorneys' fees and costs necessitated by the motions filed seeking sanctions as a result of the failure to file the sworn affidavit of Mr. Miller. *See id*. at pp. 23-28.

10. Relevant here, regarding the above-referenced monetary sanctions, the undersigned's March 29, 2013 Memorandum Decision and Order specifically identified attorneys Robert Huntley, Christopher Conant, James Sabalos, and Michael Flynn as being "absolutely subject" to the Memorandum Decision and Order. With respect to Plaintiffs' other attorneys, the Court stated:

> To the extent any one of Plaintiffs' remaining counsel believes that he should not be subject to this Memorandum Decision and Order, he is to file a motion seeking relief from the same on or before April 12, 2013, detailing the good cause for said relief.

*See id*. at p. 24.

11. On April 7, 2013, Benjamin Schwartzman and Wade Woodard filed the at-issue Motion for Relief, arguing that: "(1) Messrs. Schwartzman and Woodard were neither involved in the instant case, nor counsel for Plaintiffs (or the putative Plaintiff class), at the time many of the primary events germane to the Court's sanctions analysis occurred; [and] (2) subsequent to their ingress in the instant litigation, Messrs. Schwartzman and Woodard at no time participated in, were informed about, or were responsible for handling, any of the actions adjudged incorrect by the Court's relevant order." *See* Mot. for Relief, p. 2 (Docket No. 355).[1]

---

[1] Although their exact purposes are unclear, Messrs. Sabalos and Huntley filed declarations "in response" to Messrs. Schwartzman's and Woodard's April 7, 2013 filing. *See* Sabalos & Huntley Decls. (Docket Nos. 383, 385 & 390). Later that day, Mr. Schwartzman filed a declaration "in reply to response declaration of Mr. Huntley." *See* Schwartzman Decl. (Docket No. 386). On April 23, 2013, Mr. Schwartzman filed a Motion to Withdraw from this action. *See* Mot. to Withdraw (Docket No. 388).

## II. DISCUSSION

As described above, the Court's prior decision permitted counsel other than Messrs. Huntley, Conant, Sabalos, and Flynn, to seek relief from the provisions of the decision as it related to them individually. Messrs. Schwartzman and Woodard have done so, as also described above, and the Court considers and decides their request for relief in this Memorandum Decision and Order.

Previously, the Court dealt with a record that was not as fully developed as to the connection of the individual counsel (other than Messrs. Huntley, Conant, Sabalos, and Flynn) to the conduct that had been called into question. To be sure, there was full opportunity for Messrs. Schwartzman and Woodard to enlarge the record prior to the issuance of that decision, and the more prudent course was for them to have done so. Nonetheless, the Court will consider the additional facts and arguments that they have asked the Court to consider.

Their argument rests upon two prongs:

First, that they came into the lawsuit *after* (a) Plaintiffs' counsel had interviewed and obtained the unsworn statements from Mr. Miller, and (b) Plaintiffs sought leave from the Court to depose Miller. Nor had they ever met or spoken with Mr. Miller or his attorney, ever communicated with Mr. Miller or his attorney, or had any particular awareness of Mr. Miller's potential testimony, or of the fact that Mr. Miller's unsigned declaration had been submitted to the Court, as that had occurred prior to their coming into the lawsuit.

Second, Mr. Schwartzman and Mr. Woodard contend their work in the case as being a divided labor that did not require that they be familiar with the details of Mr. Miller's connection to the case. Rather, they describe their work as primarily focused on class certification issues.

They were furnished with drafts of the pleadings which relied upon Mr. Miller's unsigned declaration (e.g., Docket Nos. 148, 152, and 153); however, they contend that their particular responsibility gave them no reason to review or scrutinize the references to Mr. Miller's testimony, as their role in drafting the amended pleadings and related filings was directed "solely to the assurance of their conformity with, and reflection of, an appropriate class certification strategy and approach." Therefore, they claim to have had no need to evaluate the source of the statements provided by Mr. Miller, were unaware that multiple versions of his statements existed, and had no direct involvement in the drafting of the portions of the filings that referenced his testimony, or in the argument drawing upon the same.

The Court has also considered the filings made by Plaintiffs' other counsel which are styled, in part, as a response to the filings made by Messrs. Schwartzman and Woodard. *See, e.g.*, Sabalos & Huntley Decls. (Docket Nos. 383, 385 & 390). There is no pertinent mention in Mr. Sabalos' declaration regarding the involvement of Messrs. Schwartzman and/or Woodard. Mr. Huntley's declaration repeats his belief that there is no basis whatsoever for any sanction against any of Plaintiffs' counsel, and he goes on to characterize the eight individual Plaintiffs' counsel as a collective "'[p]artnership,' jointly and severally liable for the acts or omissions of each other." *See* Huntley Decl., p. 1 (Docket No. 385). In relevant part, as to Messrs. Schwartzman and Woodard, Mr. Huntley says:

- On May 4, 2011, he sent an email attaching the "first signed Declaration by Miller to ALL Class Counsel," including Messrs. Schwartzman and Woodard, which said among other things: "I had a nice chat with Miller a few moments ago and then he put his affidavit on the fax machine and I attach a copy . . . . His amendments are relatively minor and he assured me he will have "a lot more to say" once he is under a subpoena . . . . I await the final approved documents from John and Mike and further orders."

- “At no time from May 4, 2011 did any of the eight (8) class counsel suggest that the first signed Declaration or the later signed affidavit should be or needed to be filed or served.”

- “In September 2011 Ben Schwartzman and Robert Huntley became ‘Co-Lead Counsel,’ and remain such to this day.”

- During the argument on the motions to dismiss the Third Amended Complaint, “both Co-lead counsel Schwartzman and Huntley were present and presenting segments of the argument.”

- “Every major pleading in this case was signed by all class counsel. Except in rare circumstances when time would not permit all pleadings were circulated to Class Counsel for editing, input, or objections.”

*Id.*

Mr. Huntley’s declaration prompted the filing of a second declaration from Mr. Schwartzman. *See* Schwartzman Decl. (Docket No. 386.) There, Mr. Schwartzman says he has made repeated searches of his email and has never found a copy of the particular May 4, 2011 email to which Mr. Huntley refers; says he did receive a May 9, 2011 email from Mr. Huntley appending a PDF copy of a Miller affidavit, but with a message saying only “See attached affidavit of Miller”; and avers again that he “had no responsibility for, or knowledge of, Mr. Miller’s testimony in this matter” and that the “entirety of my case activity was directed at wholly disparate topics.” *See id.* at pp. 2-3.

Although Mr. Huntley’s declaration disclaims any intention to “shift responsibility from Declarant to others, or to in any way apportion responsibility,” it is inescapably designed to place Mr. Schwartzman and the Flood brothers within the circle, so to speak, of those who had knowledge and who could have chosen to speak up or act differently regarding Mr. Miller’s unsigned declaration when compared to his signed affidavit (which was never filed with the Court), but did not do so.

Nonetheless, on these particular facts, the Court is persuaded that Messrs. Schwartzman and Woodard are properly excluded from the sanctions otherwise imposed by the Court's March 29, 2013 Memorandum Decision and Order. In concluding in that Order that such sanctions were properly justified in this case, the Court focused upon three elements: (1) the fact of Mr. Miller's unsigned, unsworn March 19, 2011 declaration, presented and thereby represented to the Court as tantamount to testimony under oath, prevented from being made under oath only because of the declarant's fear of retribution or retaliation from Defendants; (2) the receipt by Plaintiffs' counsel of a statement signed under oath by Mr. Miller at a later date (Mr. Miller's May 4, 2011 affidavit), but which was not filed with the Court despite the fact that it differed from the March 19, 2011 unsigned declaration which had been filed; and (3) the subsequent repeated reference to and heavy reliance upon the testimony contained in Mr. Miller's March 19, 2011 unsigned declaration in the Third Amended Complaint, and in Plaintiffs' attempt to renew a claim for breach of fiduciary duty, in both written filings and in oral argument, despite the fact that it differed from the signed May 4, 2011 affidavit and despite the fact that Plaintiffs' counsel was in possession of the May 4, 2011 affidavit. In turn, the Court concluded that the conduct of Plaintiffs' counsel in connection with those three subjects fell short of those lawyers' responsibilities to the Court and to their profession, such that sanctions should be imposed by way of redress for their conduct, pursuant to authority granted to this Court under 28 U.S.C. § 1297, Idaho Rule of Professional Conduct 3.3,[2] and under the inherent powers of the Court.

---

[2] As made applicable to attorneys practicing in the U.S. District Court for the District of Idaho, pursuant to District of Idaho Local Civil Rule 83.5.

Such a decision involved an assessment of each attorney's culpability for the improper conduct; however, some of the record applicable to that assessment was of a collective nature as to certain of Plaintiffs' counsel, which prompted the Court to allow them an opportunity to argue to the Court that they should not be subject to the sanctions. Importantly, the Court did not premise its prior sanctions order upon FRCP 11, and expressly stated that the Court was making no findings on whether or not the complained of conduct ran afoul of that Rule. *See* 3/29/13 MDO, p. 23 (Docket No. 352). Accordingly, whether or not Messrs. Schwartzman or Woodard signed the filing which placed Mr. Miller's unsigned March 19, 2011 declaration into the record is not at issue here.[3] Rather, the central issue is their individual connection, if any, to the decision *not* to place Mr. Miller's subsequently sworn and signed affidavit in the record, while still relying upon and emphasizing Mr. Miller's previous, unsigned declaration in the ongoing motion practice. In that regard, the Court examines the individual conduct of Messrs. Schwartzman and Woodard to determine whether they have abused duties owed to the Court in a manner that constituted or was tantamount to bad faith, and by doing so multiplied the proceedings unreasonably and vexatiously. After such an examination, the Court concludes that neither Mr. Schwartzman nor Mr. Woodard was sufficiently linked to the filing of the unsigned, unsworn Miller Declaration, or the use of the same in subsequent pleadings and argument to be

[3] Mr. Huntley is mistaken in the representation contained in his declaration that Messrs. Schwartzman and Woodard signed the document that put the March 19, 2011 unsigned Miller affidavit into the record as neither Mr. Schwartzman nor Mr. Woodard had appeared as counsel at that time. In addition, Mr. Huntley's declaration has the qualifier that "every major pleading" was signed by all class counsel, but he gives no definition to his use of that term. He goes on to say that "[e]xcept in rare circumstances when time would not permit, all pleadings were circulated to all Class Counsel for editing, input, or objections," but again gives no context to that statement sufficient for the Court to discern how exactly that statement might apply to any of the other counsel, and as to what particular documents.

able to say that either or both of them abused duties owed to the Court in such a way as to run afoul of 28 U.S.C. § 1927. They simply were not sufficiently in the mix as to such matters as to have their actions, or inactions, tainted by the particular collective details.

What remains then, is to examine that same individual conduct of both Messrs. Schwartzman and Woodard to determine whether such conduct was proscribed by Idaho Rule of Professional Conduct 3.3. As described at length in this Court's prior ruling, the substantive essence of the missteps taken by Plaintiffs' counsel is found in the following facts:

- Mr. Miller was described as a critical, "whistle-blower" witness;
- Plaintiffs placed unsworn testimonial evidence of Mr. Miller to the Court in a form that counsel vouched for as if it were tantamount to sworn testimony, and that such evidence would have been presented as having been made under oath but for Mr. Miller's fear of retaliation from the Defendants;
- Plaintiffs argued to the Court that Mr. Miller's unsworn testimony was vitally important to the Court's consideration of critical issues involving remodeled pleadings and dispositive motions;
- Nearly all the while of these events, Plaintiffs were in possession of an actual sworn testimonial statement of Mr. Miller that was neither disclosed to nor filed with the Court; and
- The sworn statement of Mr. Miller, which was not filed with the Court, was not identical to the unsworn declaration of Mr. Miller which was filed with the Court.

IRCP 3.3(a)(1) requires that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." For the reasons described in the Court's prior ruling, the decision to file, then rely upon and argue from Mr. Miller's declaration, while not filing Mr. Miller's signed affidavit, violates the prohibition against making a false statement of fact or law to a tribunal, or failing to correct a false statement of material fact or law previously made.

Plaintiffs' other counsel strenuously contend that there was no "false statement of material fact" in Mr. Miller's earlier, March 2011 declaration, as they argue that the later, May 2011 affidavit was substantively the same. Although Messrs. Schwartzman and Woodard do not emphasize such an argument in their briefing, the argument is not well-made regardless of who is making it. There are material differences between the unsigned declaration, which was filed, and the signed affidavit, which was not. The differences are material, as evidenced by the fact that portions of the unsigned declaration that were not contained in the later, signed, affidavit became particular points of emphasis made by Plaintiffs' counsel in hearings upon Plaintiffs' Motion to Amend and the Defendants' Motions to Dismiss. Such points of emphasis were still being presented and argued to the Court *as if* they were statements in the March affidavit that *would have been* made under oath by Mr. Miller *but for* his worry that he would be subjected to retaliation from the Defendants.

Without belaboring here the particular details of the same, it is inescapable that in the context described here, certain information contained in the unsworn March 2011 declaration that was not contained in the sworn May 2011 affidavit was false at the very least in its packaging – it was information that was presented to the Court as if it was sworn testimony and yet at a later date, when the witness did sign a sworn affidavit, the sworn affidavit was *not* the same document as the earlier unsworn declaration. That distinction was not made known to the Court or opposing counsel. The fact of the signed affidavit was not made known to the Court or opposing counsel. The signed affidavit was not filed with the Court. Such a failure, as discussed and ruled upon in the Court's prior decision, amounted to a lack of candor to the tribunal at a minimum, and an affirmative misrepresentation at worst.

The Court has considered the arguments raised by Messrs. Schwartzman and Woodard against the standards required of them under IRCP 3.3, and concludes for the same reasons described above, that their conduct does not rise to the level of sanctionable conduct under that Rule. That ruling is, however, limited to the particular facts of this case as they relate to Mr. Schwartzman and Mr. Woodard, and this ruling should not suggest in any way a court-made relaxation of the duties imposed by IRCP 3.3.

## III. ORDER

For the reasons described in this decision, the Court rules that Messrs. Schwartzman and Woodard are *not* subject to the sanctions otherwise ordered by the Court's March 19, 2013 Memorandum Decision and Order. The "Motion of Benjamin Schwartzman and Wade Woodard for Relief from Sanctions Order of March 29, 2013 (DKT #352)" (Docket No. 355) is GRANTED.

DATED: **March 20, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge