UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, VERN JENNINGS, MARK MUSHKIN, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, JUDY LAND, and CHARLES DOMINGUEZ, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas, and Ginn sur Mer,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive,<br><br>Defendants. | Case No.: CV 10-1-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION OF CHRIS FLOOD AND JOHN FLOOD FOR RELIEF FROM SANCTIONS ORDER OF MARCH 29, 2013 (DKT #352)**<br><br>**(Docket No. 364)** |

Now pending before the Court is the "Motion of Chris Flood and John Flood for Relief from Sanctions Order of March 29, 2013 (DKT #352)" ("Motion for Relief") (Docket No. 364). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

## I. BACKGROUND

1. On June 4, 2012, Defendant Cushman & Wakefield filed a motion for sanctions, arguing that Plaintiffs should be sanctioned due to their (and/or their counsel's) "misconduct in failing to disclose for more than one year the existence of a signed affidavit from Michael Miller,

**MEMORANDUM DECISION AND ORDER - 1**

while at the same time submitting to the Court and relying on a different, unsigned declaration." *See* C & W's Mot. for Sanctions, p. 2 (Docket No. 246).

2. In support of its June 15, 2012 motion for reconsideration (seeking reconsideration of Judge Edward J. Lodge's March 30, 2012 Order (Docket No. 210)), Defendant Credit Suisse highlighted Plaintiffs' counsel's reliance upon Mr. Miller's unsigned March 19, 2011 declaration up to that point in the litigation when, in fact, they were in possession of a later-in-time, signed affidavit from Mr. Miller that was substantively different from Mr. Miller's earlier declaration. *See* Mem. in Supp. of Credit Suisse's Mot. for Recons., pp. 1-2 (Docket No. 253, Att. 1). In turn, Credit Suisse moved the Court to (1) reconsider its denial of Credit Suisse's renewed motion to dismiss Plaintiffs' negligence claim in light of the "Miller revelations," and (2) order Plaintiffs to show cause as to why they should not be sanctioned "for misleading the Court in violation of their duty of candor." *See id*. at p. 3.

3. Plaintiffs opposed Cushman & Wakefield's motion for sanctions and Credit Suisse's motion for order to show cause. *See* Pls.' Opp. to C & W's Mot. for Sanctions; and Pls.' Opp. to Credit Suisse's Mot. for Order to Show Cause (Docket Nos. 265 & 271).

4. On December 5, 2012, the undersigned heard oral argument on (1) Cushman & Wakefield's June 4, 2012 motion for sanctions, and (2) Credit Suisse's June 15, 2012 motion for order to show cause. *See* 12/5/12 Minute Entry (Docket No. 309).

5. On December 6, 2012, Plaintiffs filed a motion for leave to file expedited five-page brief regarding the order to show cause hearing, arguing that "[t]he issue before the Court has serious consequences, particularly to the integrity and reputation of Plaintiffs' attorneys as well as the other considerations articulated in court," that "[n]o pre-hearing briefs were requested

**MEMORANDUM DECISION AND ORDER - 2**

by either the Court or the parties and the issues are now focused for a meaningful brief," and that "[t]here were issues propounded at the hearing which deserve a meaningful and thoughtful input from counsel." *See* Pls.' Mot. for Leave, pp. 1-2 (Docket No. 308).

6. On December 6, 2012, the undersigned granted Plaintiffs' motion for leave, reasoning:

> The Court struggles with any assessment of the pending motions for sanctions that does not immediately raise significant issues for Plaintiffs requiring a thorough and careful response. However, it is possible that the seriousness of the issue raised by the motions for sanctions, and the sanctions requested by Defendants, were not apprehended by Plaintiffs' counsel to the appropriate degree. Given the implications of the pending motions for all of Plaintiffs' counsel, and for the claims made in the lawsuit, the Court will grant the Motion.

*See* 12/6/12 MDO, p. 2 (Docket No. 311).

7. On December 10, 2012, Plaintiffs filed their post-hearing brief, arguing that sanctions should not be imposed. *See* Pls.' Post-Hearing Brief (Docket No. 315).

8. On December 13, 2012, Defendants responded to Plaintiffs' post-hearing brief, arguing that sanctions should be imposed against Plaintiffs. *See* Credit Suisse & C & W Resps. (Docket Nos. 321 & 322).

9. On March 29, 2013, the undersigned issued a Memorandum Decision and Order, granting Cushman & Wakefield's motion for sanctions and Credit Suisse's motion for order to show cause. *See* 3/29/13 MDO (Docket No. 352). Therein, the undersigned sanctioned Plaintiffs and/or their counsel as follows: (1) Plaintiffs' counsel may not use the testimonial evidence of Michael Miller in this case for any purpose, other than as obtained in deposition or courtroom testimony; (2) Plaintiffs' counsel are individually sanctioned in the amount of $6,000.00; and (3) Plaintiffs' counsel, jointly and severally, shall pay a sum to each Defendant –

**MEMORANDUM DECISION AND ORDER - 3**

Credit Suisse and Cushman & Wakefield – to be determined upon consideration of appropriate evidence, to recompense said Defendants for the attorneys' fees and costs necessitated by the motions filed seeking sanctions as a result of the failure to file the sworn affidavit of Mr. Miller. *See id*. at pp. 23-28.

11. 10. Relevant here, regarding the above-referenced monetary sanctions, the undersigned's March 29, 2013 Memorandum Decision and Order specifically identified attorneys Huntley, Conant, Sabalos, and Flynn as being "absolutely subject" to the Memorandum Decision and Order. With respect to Plaintiffs' other attorneys, the Court stated:

> To the extent any one of Plaintiffs' remaining counsel believes that he should not be subject to this Memorandum Decision and Order, he is to file a motion seeking relief from the same on or before April 12, 2013, detailing the good cause for said relief.

*See id*. at p. 24).

11. On April 12, 2013, Plaintiffs' attorneys Chris Flood and John Flood filed the at-issue Motion for Relief, arguing that: "(1) Chris Flood and John Flood objected to, and recommended against, the interactions with the witness Mike Miller that led to the submission of the unsigned declaration; (2) they did not originate any of the court filings that referenced Miller's purported testimony or his status as a "whistle blower" that feared retaliation; (3) they did not make a false statement of fact or fail to correct what they believed to be a false statement of fact; and (4) their efforts related to the Mike Miller unsigned/signed declaration situation were focused, primarily, on attempting to assist this Court and the class by taking Miller's deposition to determine what knowledge he had, if any, of Cushman & Wakefield's employees' actions relevant to the allegations in the Plaintiffs' complaint, and secondarily, statements made by the

**MEMORANDUM DECISION AND ORDER - 4**

witness to co-counsel, and reasons for the discrepancy between the unsigned and signed declarations." *See* Mot. for Relief, p. 2 (Docket No. 364).[1]

## II. DISCUSSION

As one would expect in these circumstances, the Floods seek to avoid the sanctions otherwise imposed by the Court's March 29, 2013 Memorandum Decision and Order ("Sanctions Order") by distancing themselves from specific conduct referenced in that Order. In their Motion for Relief and supporting memorandum, as highlighted in part above, they inform the Court that they had advised, and would have chosen, a different approach to dealing with the so-called "whistle-blower" witness, Michael Miller. They state that, although John Flood was involved in drafting or editing some of the documents filed with the Court, neither he nor Chris Flood contributed any part of the mention or emphasis upon Mr. Miller's purported testimony, and neither of them played any part in drafting Mr. Miller's original, unsigned declaration, nor in making the decision to file the same with the Court as an exhibit to co-counsel Mr. Huntley's affidavit. The Floods describe their roles as lawyers requested to be the Plaintiffs' "trial counsel," in a self-described "minority position," and say that were not expected to play much of a role in the pretrial course of the lawsuit. Further, they point to other lawyers as the real decision makers, including referring to Mr. Flynn as "lead counsel." They claim that when they first became aware of differences between the "unsigned" March 19, 2011 Miller declaration (which had been filed with the Court), and the later signed May 4, 2011 Miller affidavit (which was not submitted to the Court), they "immediately contacted lead counsel Mr. Flynn and

---

[1] Messrs. Sabalos and Huntley filed declarations "in response" to the Floods' April 7, 2013 filing. *See* Sabalos & Huntley Decls. (Docket Nos. 383, 385 & 390).

**MEMORANDUM DECISION AND ORDER - 5**

ensured that he was aware of the differences." They further aver to the fact of having conversations with Mr. Miller's personal attorney, Robert Turner, who asked them not to contact Mr. Miller until he had time to conduct his own investigation into the events involving Mr. Miller. Later, Mr. Turner said that Mr. Miller would only testify by deposition, and when Mr. Miller's deposition was taken, Chris Flood learned that Mr. Miller had never given Mr. Turner a copy of the affidavit that Miller had previously signed. Chris Flood says that upon learning that fact, he gave Mr. Turner a copy of the affidavit (but not opposing counsel), and Mr. Turner said he would give a copy to the other attorneys attending the deposition (which included attorneys for Credit Suisse and Cushman & Wakefield).

The Floods disavow any direct connection to the filing of the "Opposition to Emergency Motion to Strike," which made copious reference to Mr. Miller's unsigned declaration, and that, although John Flood did editing work on and prepared legal argument contained in the Third Amended Complaint, none of the fundamental factual recitations in that document was written by either of the Floods. More generally, the Floods contend that they never described Mr. Miller as a whistle-blower; never presented, relied upon, or argued the facts in Mr. Miller's unsigned declaration; and were not asked to and did not "pre-hear" any such arguments.

From such self-described limited knowledge of the fact of Mr. Miller's unsigned (but filed) March 19, 2011 declaration, and self-described disavowal of involvement in the use of the same in subsequent written and oral argument, the Floods ask to be exempted from the Court's Sanctions Order. Notably, the Floods do not contend that they were unaware that the content of Mr. Miller's unsigned declaration, which was filed with the Court, differed from the content of Mr. Miller's subsequently-signed affidavit, which was not so filed. However, they represent that

they had no knowledge of the unsigned declaration at the time it was prepared, and say that it was prepared and submitted to the Court without their knowledge. The Floods state that when they became aware of the fact that the signed affidavit contained discrepancies between it and the earlier unsigned declaration, they made certain that the differences were known by "lead counsel," and they were assured by co-counsel who were in contact with Mr. Miller that he would sign the original declaration. The Floods also say that they were assured that Mr. Miller would affirm the omitted portions of the original declaration in a sworn deposition.

The Court has also considered the filings made by Plaintiffs' other counsel which are styled, in part, as a response to the filings made by Messrs. Schwartzman, Chris Flood and John Flood. *See, e.g.*, Sabalos & Huntley Decls. (Docket Nos. 383, 385 & 390). Mr. Huntley's declaration repeats his belief that there is no basis whatsoever for any sanction against any of Plaintiffs' counsel, and goes on to characterize the eight individual Plaintiffs' counsel as a collective "'[p]artnership,' jointly and severally liable for the acts or omissions of each other." *See* Huntley Decl., p. 1 (Docket No. 385). In relevant part, as to Mr. Flood, Mr. Huntley's declaration contains the following:

- On May 4, 2011, he sent an email attaching the "first signed Declaration by Miller to ALL Class Counsel," including Mr. Flood, which said among other things: "I had a nice chat with Miller a few moments ago and then he put his affidavit on the fax machine and I attach a copy . . . . His amendments are relatively minor and he assured me he will have "a lot more to say" once he is under a subpoena . . . . I await the final approved documents from John and Mike and further orders."

- "At no time from May 4, 2011 did any of the eight (8) class counsel suggest that the first signed Declaration or the later signed affidavit should be or needed to be filed or served."

- "On Friday, March 18, 2011, the day before Mr. Miller appeared in Denver to present his testimony to Mr. Conant and Mr. Huntley, John

**MEMORANDUM DECISION AND ORDER - 7**

> Flood wrote to Huntley and Conant that 'any affidavit at this state must be (1) brief; (2) 100% factual; and (3) if it has any tone at all, one of regret is much, much better than any other. Putting him on pedestal is shortsighted and projects insecurity. Simple, straightforward and no agenda is hard to cross examine and is (in my opinion) more believable to a judge.'"

- "On May 16, 2011, John Flood, evidencing his further involvement with Mr. Miller, wrote the following email to class counsel: 'I spoke with Miller this morning. Chris and I are going to be meeting with him soon. Thank you, John Flood'"

- "In the August 2011 time frame, there were negotiations with Assistant United States Attorney, Katherine Ho in Florida, to make arrangements for Mr. Miller to provide evidence in an investigation involving Credit Suisse and at that time Mr. Miller was represented by attorney Robert G. Turner who has directed Mr. Miller not to allow his signed declaration to become published due to the sensitivity of the negotiations and proceedings in Florida."

- "On Monday, April 22, 2011, Michael Flynn advised Chris Flood that he should cooperate with getting Miller's information to Assistant U.S. Attorney Katherine Ho and on the same date Chris Flood emailed the following message to Katherine Ho: 'Mr. Miller's attorney is Robert G. Turner at 713-526-9675. I was told that his email address is [omitted]. If you need further information, don't hesitate to call.'"

- "When the Motions to Dismiss the Third Amended Complaint were argued, both Co-lead counsel Schwartzman and Huntley were present and presenting segments of the arguments. Present also were John & Chris Flood, Mike Flynn, James Sabalos, and Christopher Conant. Philip Stillman was not present."

*See id.* at pp. 2-4.

Mr. Sabalos, in his own declaration, had these things to say, in pertinent part:

- "On August 10, 2011, Chris Flood sent me (and other lawyers for the Plaintiffs) an email in response to a prior call to him regarding the status of Mr. Miller and the criminal proceedings we had just learned about in the Middle District of Florida . . . . In summary, Mr. Flood expressed the fact that Mr. Turner had spoken with Mr. [Miller] and would speak with him again, but that until Turner gains assurances from the Government that Mr. Miller is not a target or has received immunity, Miller would not

**MEMORANDUM DECISION AND ORDER - 8**

- sign or say anything and that we should exercise great care, now in connection with Miller, because he is a valuable witness that we will need and do not want to push him away from cooperating with us and *'we do not want to ignore his concerns.'* " (Emphasis in original.)

- "On that same day, I advised Mr. Chris Flood that I recalled Mr. Turner, that I had previously requested Mr. Haney and others have no further contact with Mr. Miller in light of his concerns, that the lawyers for the Plaintiffs '...*speak with one voice* in dealing with the Government (Mike Flynn with the Florida AUSA and/or you and John [Flood] with respect to Miller and Miller's counsel')." (Emphasis in original.)

- "On Monday, August 22, 2011, Assistant United States Attorney...Katherine Ho, sent an email to Mike Flynn copied to Chris Flood regarding the 'Subject: RE: Miller and Credit Suisse/Cushman & Wakefield'. Attached ...is her email in quotes: 'Mike and Chris - I have just spoken with Kris McLean. My office will be handling the potential *proffer* by Mr. Miller. Chris, if you would forward Miller's counsel contact information, I would appreciate it. Thanks-Kathy.' In that follow-up email, Mr. Flynn responded to her request by providing Mr. Miller's unsigned affidavit." (Emphasis in original.)

- "On September 23, 2011, in response to a question I had regarding the status of Mr. Miller, Mr. Flood advised me that he had spoken to Mr. Turner and he thought things might be going well, but that we must approach Mr. Miller with kid gloves because of fears or threats that he could be a target and that we needed to back away from the federal investigation underway by Ms. Ho (and presumably others in law enforcement) and just let the story of what happened come from him and others."

- "Up through the end of the year and into the very date and our hearing in early January of 2012, I was in full agreement that any activity in the case with respect to Mr. Miller be coordinated by and through Mr. Flynn with the Government and Mr. Chris Flood with Mr. Miller's counsel to ensure we respected the rights of a witness to not one federal proceeding, *but two federal proceedings.* That is, no longer were we dealing in 2011 and 2012 with Mr. Miller and his counsel's requests that we not use a signed document or any material, as I understood it, unless and until we got some kind of clearance with his counsel. We were now dealing with a witness who the Government was possibly interested in meeting to determine from a proffer whether immunity would be required or whether he could cooperate because he would not be deemed a target." (Emphasis in original.)

*See* Sabalos Decl., pp. 8-11 (Docket No. 383)

**MEMORANDUM DECISION AND ORDER - 9**

The upshot of these statements (from Messrs. Huntley and Sabalos) is to describe a more extensive involvement of the Floods in the events and decisions involving Mr. Miller's role in this case than the Floods would describe on their own. Although Mr. Huntley's declaration disclaims any intention to "shift responsibility from Declarant to others, or to in any way apportion responsibility," it appears inescapably designed to place the Flood brothers within the circle, so to speak, of those who had knowledge and who could have chosen to speak up or act differently regarding Mr. Miller's signed affidavit (which was never filed with the Court) but didn't – instead, submitting to the Court and relying on a different, unsigned declaration from Mr. Miller.

There are nuances in all of that, to be sure, and the Floods take great pains to distinguish their particular involvement in the circumstances leading to this juncture from the actions (or inactions) of their co-counsel. For example, the Floods state repeatedly that they were in a "minority" position (both as to their expected role in the litigation and as to their share of any income that might come from such representation). They emphasize that they "ensured that the fact of the discrepancies between the two declarations were known *by those in control* on the Plaintiffs' team...." *See* Mem. in Supp. of Mot. For Relief, p. 9 (Docket No. 364, Att. 1) (Emphasis added). In the conclusion section of their memorandum arguing for relief from the sanctions, the Floods summarize their involvement in this manner:

> Chris and John Flood have adduced persuasive evidence establishing that: (1) they objected to, and recommended against, the interactions with the witness Mike Miller that led to the submission of the unsigned declaration; (2) they did not originate any of the court filings that referenced Miller's purported testimony or his status as a "whistle blower" that feared retaliation; (3) they did not make a false statement of fact or fail to correct what they believed to be a false statement of fact; and, (4) their efforts related to the Mike Miller unsigned/signed declaration situation were focused, primarily, on attempting to assist this Court

**MEMORANDUM DECISION AND ORDER - 10**

> and the class by taking Miller's deposition to determine what knowledge he had, if any . . . .

*Id.*, pp. 12-13.

As noted earlier, the Floods admit to their knowledge of the "discrepancies" between Mr. Miller's unsigned March 19, 2011 declaration, and his signed, but unfiled, May 4, 2011 affidavit, and the fact that neither of them brought the fact of the *signed*, and *different* May 4, 2011 affidavit to the attention of the Court. In their declarations, each of the Floods say that although they "had the ability and opportunity to inform the Court and my clients' opponents of the signed declaration prior to when [they] did" neither of them "recall either of us making a conscious decision to not do so" and they believe that "an earlier revelation would have required our making an independent filing, akin to this declaration and the motion and memorandum it accompanies." *See* J. Flood Decl., pp. 4-5 (Docket No. 364, Att. 3). They enlarge upon this subject in their memorandum, and argue that:

> [u]nder such circumstances, including their minority position amongst a group of counsel, Rule 3.3 did not required them to "go rogue" and unilaterally reveal the sworn declaration before they did so in 2012, when the witness' lawyer asked for a copy of the signed statement. Therefore, the Floods never made a false statement of fact and to the extent that they became aware of a signed declaration that was different from an unsigned declaration, they notified the counsel who had made representations to the Court and believed the witness would testify under oath to the facts in the unsigned declaration.

*See* Mem. in Supp. of Mot. For Relief, p. 8 (Docket No. 364, Att. 1). The Floods also state that they "have not been paid any fees [and] and are out-of-pocket several thousands of dollars . . . ." *Id.* at p. 13. They represent that they have "donated hundreds of hours of free legal work to a putative class." *See* Flood Decls., p. 5 (Docket No. 364, Atts. 2 & 3).

In the prior decision holding that such sanctions were properly justified in this case, the Court focused upon three essential elements: (1) the fact of Mr. Miller's unsigned, unsworn

**MEMORANDUM DECISION AND ORDER - 11**

March 19, 2011 declaration, presented and thereby represented to the Court as tantamount to testimony under oath, prevented from being made under oath only because of the declarant's fear of retribution or retaliation from Defendants; (2) the receipt by Plaintiffs' counsel of a statement signed under oath by Mr. Miller at a later date (Mr. Miller's May 4, 2011 affidavit), but which was not filed with the Court despite the fact that it was not identical to the March 19, 2011 unsigned declaration which had been filed; and (3) the subsequent repeated reference to and heavy reliance upon the testimony contained in Mr. Miller's March 19, 2011 unsigned declaration in the Third Amended Complaint, and in Plaintiffs' attempt to renew a claim for breach of fiduciary duty, in both written filings and in oral argument, despite the fact that it differed from the signed May 4, 2011 affidavit and despite the fact that Plaintiffs' counsel was in possession of the May 4, 2011 affidavit. In turn, the Court concluded that the conduct of Plaintiffs' counsel in connection with those three subjects ran afoul of those lawyers' responsibilities to the Court and to their profession, such that sanctions should be imposed by way of redress for their conduct, pursuant to authority granted to this Court under 28 U.S.C. § 1297, Idaho Rule of Professional Conduct 3.3,[2] and under the inherent powers of the Court.

Such a decision involved an assessment of each attorney's culpability for the improper conduct; however, some of the record applicable to that assessment was of a collective nature as to certain of Plaintiffs' counsel, which prompted the Court to allow them an opportunity to argue to the Court that they should not be subject to the sanctions. Importantly, the Court did not premise its prior sanctions order upon FRCP 11, and expressly stated that the Court was making

---

[2] As made applicable to attorneys practicing in the U.S. District Court for the District of Idaho, pursuant to District of Idaho Local Civil Rule 83.5.

**MEMORANDUM DECISION AND ORDER - 12**

no findings on whether or not the complained of conduct ran afoul of that Rule. *See* 3/29/13 MDO, p. 23 (Docket No. 352). Accordingly, whether or not Messrs. Flood signed the filing which placed Mr. Miller's unsigned March 19, 2011 declaration into the record is not at issue here. Rather, the central issue is their individual connection, if any, to the decision *not* to place Mr. Miller's subsequently sworn and signed affidavit in the record, while still relying upon and emphasizing Mr. Miller's previous, unsigned declaration in the ongoing motion practice. In that regard, the Court examines the individual conduct of Messrs. Flood to determine whether they have abused duties owed to the Court that constituted or was tantamount to bad faith, and by doing so multiplied the proceedings unreasonably and vexatiously.

This ultimate question is not easily decided; indeed, the very fact that the original decision issued by this Court included the Floods in those who are subject to the findings that there had been violations of the duties owed by Plaintiffs' counsel to the Court and to their profession is illustrative. In other words, had it been evident from the record previously before the Court that the Floods were not culpable for their involvement in the circumstances at issue, the Floods would have been excluded from the impact of that decision.

The Court also finds that certain of the Floods' arguments for being so excluded are simply misplaced, given the underlying basis for the Court's prior decision on this subject. It matters not that the Floods are unpaid for any legal services that they have performed, or that they are out-of-pocket for any expenses they have incurred. Those details are a matter of contract between them and their clients, and the other Plaintiffs' counsel. The Floods may perceive such facts to be important details of equity, given the nature of the Court's prior ruling, but the subject before the Court is not that of balancing a financial ledger. Rather, the Court is

charged with considering issues of professional standards in the conduct of a lawyer, and adherence to the same. Similarly, the Floods are mistaken in their argument (raised by other Plaintiffs' counsel as well) that they were not required to "go rogue" by unilaterally disclosing to the Court the existence of the signed May 4, 2011 affidavit, which contained discrepancies between its language and that of the unsigned March 19, 2011 declaration, which had been filed, and from which arguments were made orally and in writing. Their professional duties under the Idaho Rules of Professional Responsibility, to which they submitted themselves by choosing to become involved in this lawsuit, and their professional responsibilities as officers of this Court are duties that inhere in each lawyer individually. The rationale offered by the Floods – that they were not required to "go rogue" on these facts – would place a misplaced loyalty to their co-counsel ahead of their responsibilities and duties as officers of the court. Additionally, there were options available to them apart from their choice to sit silent, including the option of seeking to withdraw from the case.

On these facts, the Court is satisfied and concludes that the individual decisions of the Floods in *not* bringing the fact of the signed, but not filed, May 4, 2011 affidavit of Mr. Miller to the attention of the Court when they knew that the affidavit contained discrepancies between its content and the content of the unsigned, but filed, March 19, 2011 declaration, violate the duties owed to the Court under 28 U.S.C. § 1927, for the reason that their decision not to inform the Court on their own, when their co-counsel did not do so, is still conduct which had the effect of recklessly or intentionally misleading the Court. *See*, *In re Girardi*, 611 F. 3d 1027, 1061 (9th Cir. 2010). Further, the fact that they did not take that action is a violation of Idaho Rule of Professional Conduct 3.3(a)(1), which requires that a lawyer shall not knowingly "make a false

statement of fact or law to a tribunal or *fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer*." (Emphasis supplied.) As described in the Court's prior decision:

> Consistent with this, a lawyer's failure to make a disclosure can be the equivalent of an affirmative misrepresentation. *See* IRPC 3.3, cmt. 3. Moreover, given a "lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence" (*see* IRPC 3.3, cmt. 5), when previously-offered materials turn out to be false/misleading, a lawyer's "duty of candor to the tribunal" warrants "reasonable remedial measures" (*see* IRPC 3.3, cmt. 10).

*See* 3/29/13 MDO, p. 16 (Docket No. 352).

Having decided that the each of the Flood's individual conduct in these circumstances falls short of those measures, what remains is for the Court to reexamine whether the conduct also "constituted or was tantamount to bad faith," so as to justify sanctions as an appropriate consequence of such shortcomings. "Before awarding sanctions under its inherent powers . . .the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc., v. Batarse*, 115 F. 3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). With the additional information placed in the record by the Floods' Motion for Relief from Sanctions Order, and the Memorandum and Declarations in support thereof (which the Court has considered fully and thoughtfully), the Court now rules that the individual conduct of the Floods, although falling short of their responsibilities under 28 U.S.C. § 1927 and IRPC.3.3, did *not* constitute or was tantamount to bad faith.

The Court bases its decision in that regard on two primary grounds. First, the Court is satisfied from the materials placed into the record by the Floods, and from the collective information gleaned from elsewhere in the myriad of briefing and declarations filed by Plaintiffs'

**MEMORANDUM DECISION AND ORDER - 15**

various counsel on this subject, that the Floods had been asked to take on a discrete role in the lawsuit, and that their recommended course of action in these particular circumstances, in the event of disagreement between the counsel, was neither anticipated to be the controlling voice, nor was it treated by other counsel as the controlling voice. Had it been, there would have been no interview of Mr. Miller in Denver, Colorado in the absence of Mr. Miller being represented by his own counsel, and the nature in which Mr. Miller's unsworn March 19, 2011 declaration was used in subsequent briefing and argument likely would have been different. Second, the affirmative and inherently misleading nature of the use of the testimony contained in Miller's unsworn declaration was not the direct product of the work of either of the Floods. They were not aware of the fact of the filing of the unsworn declaration until after it had occurred, and they were not consulted about it. They did not author any portion of the briefing that emphasized such testimony, nor did they draw attention and emphasize such testimony during hearings before the Court. Even though Chris Flood was the attorney involved in the taking of Mr. Miller's deposition, he testified in his declaration that when he became aware for the first time that Mr. Miller's personal attorney, Mr. Turner, did not have a copy of Mr. Miller's May 4, 2011 affidavit before the deposition, he gave Mr. Turner a copy of the affidavit and did so with the understanding that Mr. Turner would be providing a copy to Defendants' counsel at the time of the deposition.

In sum, there are ameliorating facts which lessen, in the Court's view, the relative culpability of the Floods in connection with the particular details of the actions and inactions which led this Court to make the decision it did in its prior Memorandum Decision and Order on the sanctions issues. That is not to say that the Court finds that Floods' conduct was proper. To

the contrary, as described above, the conduct fell short of what was expected of them. However, in the context of the particular individual conduct of John Flood and Chris Flood, the Court concludes that although the Floods' conduct veered close to such a dividing line, it did not reach the point of constituting or being tantamount to bad faith.

### III. ORDER

For the reasons described in this decision, the Court rules that John Flood and Chris Flood are *not* subject to the sanctions otherwise described and imposed by the Court's March 29, 2013 Memorandum Decision and Order. The "Motion of Chris Flood and John Flood for Relief from Sanctions Order of March 29, 2013 (DKT #352)" (Docket No. 364) is GRANTED.

DATED: **March 20, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge