UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, VERN JENNINGS, MARK MUSHKIN, MONIQUE LEFLEUR, and GRIFFEN DEVELOPMENT, LLC, JUDY LAND, and CHARLES DOMINGUEZ, each individually, and on behalf of PROPOSED Plaintiff CLASS Members of Tamarack Resort, Yellowstone Club, Lake Las Vegas, and Ginn sur Mer,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation and DOES 1 through 100 inclusive,<br><br>Defendants. | Case No.: CV 10-1-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION OF PHILIP STILLMAN ON HIS OWN BEHALF FOR RELIEF FROM MAGISTRATE'S MEMORANDUM DECISION AND ORDER IMPOSING SANCTIONS FILED ON MARCH 29, 2013**<br><br>**(Docket No. 368)** |

Now pending before the Court is the "Motion of Philip Stillman On His Own Behalf for Relief From Magistrate's Memorandum Decision and Order Imposing Sanctions Filed on March 29, 2013" ("Motion for Relief") (Docket No. 368). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

## I. BACKGROUND

1.  On June 4, 2012, Defendant Cushman & Wakefield filed a motion for sanctions, arguing that Plaintiffs should be sanctioned due to their (and/or their counsel's) "misconduct in

**MEMORANDUM DECISION AND ORDER - 1**

failing to disclose for more than one year the existence of a signed affidavit from Michael Miller, while at the same time submitting to the Court and relying on a different, unsigned declaration." *See* C & W's Mot. for Sanctions, p. 2 (Docket No. 246).

2. In support of its June 15, 2012 motion for reconsideration (seeking reconsideration of Judge Edward J. Lodge's March 30, 2012 Order (Docket No. 210)), Defendant Credit Suisse highlighted Plaintiffs' counsel's reliance upon Mr. Miller's unsigned March 19, 2011 declaration up to that point in the litigation when, in fact, they were in possession of a later-in-time, signed affidavit from Mr. Miller that was substantively different from Mr. Miller's earlier declaration. *See* Mem. in Supp. of Credit Suisse's Mot. for Recons., pp. 1-2 (Docket No. 253, Att. 1). In turn, Credit Suisse moved the Court to (1) reconsider its denial of Credit Suisse's renewed motion to dismiss Plaintiffs' negligence claim in light of the "Miller revelations," and (2) order Plaintiffs to show cause as to why they should not be sanctioned "for misleading the Court in violation of their duty of candor." *See id*. at p. 3.

3. Plaintiffs opposed both Cushman & Wakefield's motion for sanctions and Credit Suisse's motion for order to show cause. *See* Pls.' Opp. to C & W's Mot. for Sanctions; and Pls.' Opp. to Credit Suisse's Mot. for Order to Show Cause (Docket Nos. 265 & 271).

4. On December 5, 2012, the undersigned heard oral argument on (1) Cushman & Wakefield's June 4, 2012 motion for sanctions, and (2) Credit Suisse's June 15, 2012 motion for order to show cause. *See* 12/5/12 Minute Entry (Docket No. 309).

5. On December 6, 2012, Plaintiffs filed a motion for leave to file expedited five-page brief regarding the order to show cause hearing, arguing that "[t]he issue before the Court has serious consequences, particularly to the integrity and reputation of Plaintiffs' attorneys as

well as the other considerations articulated in court," that "[n]o pre-hearing briefs were requested by either the Court or the parties and the issues are now focused for a meaningful brief," and that "[t]here were issues propounded at the hearing which deserve a meaningful and thoughtful input from counsel." *See* Pls.' Mot. for Leave, pp. 1-2 (Docket No. 308).

6. On December 6, 2012, the undersigned granted Plaintiffs' motion for leave, reasoning:

> The Court struggles with any assessment of the pending motions for sanctions that does not immediately raise significant issues for Plaintiffs requiring a thorough and careful response. However, it is possible that the seriousness of the issue raised by the motions for sanctions, and the sanctions requested by Defendants, were not apprehended by Plaintiffs' counsel to the appropriate degree. Given the implications of the pending motions for all of Plaintiffs' counsel, and for the claims made in the lawsuit, the Court will grant the Motion.

*See* 12/6/12 MDO, p. 2 (Docket No. 311).

7. On December 10, 2012, Plaintiffs filed their post-hearing brief, arguing that sanctions should not be imposed. *See* Pls.' Post-Hearing Brief (Docket No. 315).

8. On December 13, 2012, Defendants responded to Plaintiffs' post-hearing brief, arguing that sanctions should be imposed against Plaintiffs. *See* Credit Suisse & C & W Resps. (Docket Nos. 321 & 322).

9. On March 29, 2013, the undersigned issued a Memorandum Decision and Order, granting Cushman & Wakefield's motion for sanctions and Credit Suisse's motion for order to show cause. *See* 3/29/13 MDO (Docket No. 352). The Court ordered that: (1) Plaintiffs' counsel may not use the testimonial evidence of Michael Miller in this case for any purpose, other than as obtained in deposition or courtroom testimony; (2) Plaintiffs' counsel are individually sanctioned in the amount of $6,000.00; and (3) Plaintiffs' counsel, jointly and

severally, shall pay a sum to each Defendant – Credit Suisse and Cushman & Wakefield – to be determined upon consideration of appropriate evidence, to compensate said Defendants for the attorneys' fees and costs necessitated by the motions filed seeking sanctions as a result of the failure to file the sworn affidavit of Mr. Miller.  *See id.* at pp. 23-28.

10. Relevant here, regarding the above-referenced monetary sanctions, the undersigned's March 29, 2013 Memorandum Decision and Order specifically identified Mr. Huntley, Mr. Conant, Mr. Sabalos, and Mr. Flynn as being "absolutely subject" to the Memorandum Decision and Order.  With respect to Plaintiffs' other attorneys, the Court stated:

> To the extent any one of Plaintiffs' remaining counsel believes that he should not be subject to this Memorandum Decision and Order, he is to file a motion seeking relief from the same on or before April 12, 2013, detailing the good cause for said relief.

*See id.* at p. 24).

11. On April 12, 2013, Plaintiffs' attorney Philip Stillman filed the at-issue Motion for Relief, arguing that: "(1) Mr. Stillman did not originate any of the court filings that referenced Miller's purported testimony or his status as a "whistle blower" that feared retaliation; (2) Mr. Stillman did not make a false statement of fact or fail to correct what he believed to be a false statement of fact to this Court, and has not appeared before this Court at any hearing or submitted any sworn testimony; (3) Mr. Stillman had no involvement in the evidentiary issues in this case, and only assisted in legal research, writing, and editing of various motions and oppositions relating to the Complaints filed in this action; and (4) such facts warrant a finding by this Court that good cause exists to exempt Philip Stillman from the Sanctions Order of March 29, 2013, and to grant him full relief therefrom."  *See* Mot. for Relief, p. 1 (Docket No. 368).

## II.  DISCUSSION

Mr. Stillman seeks to distance himself from the conduct focused upon by the Court in issuing its Sanctions Order.  As a threshold matter, however, he contends that he has no burden to raise any specific conduct identifiable to him which might support a sanctions order against him.  He suggests that he "should not be required to show 'good cause' for *not* being sanctioned until a sufficient quantum of proof is shown from the existing record regarding his own actions that he *should* be sanctioned."  *Id.*, pp. 7-9.

Mr. Stillman is entirely mistaken, as the Court fully laid out the reasoning for sanctioning Mr. Stillman and the other plaintiffs' counsel based on the record that then was before the Court at the time of the March 29, 2013 Memorandum Decision and Order.  Both before, during, and after the hearing upon the motions decided in that Order, the issues regarding potential sanctions were unmistakably identified, the implications could not have been more plain, and the stakes were inescapably obvious.  The Court made its ruling on the record that it had before it, which implicated each of the Plaintiffs' counsel, including Mr. Stillman.  Mr. Stillman's choice to not answer the allegations in the manner he attempts to do at this time was a choice of his own, and by doing so, he left the risk that his conduct and decisions would be colored by the conduct and decisions of all Plaintiffs' counsel.  Further, he left open the risk that his participation in the prosecution of the case, and his involvement in the drafting of and the joining in the pleadings and other matters put before the Court, would be marks of individually culpable conduct, and a proper basis for the Court to issue its ruling.  To adopt Mr. Stillman's argument for suggesting that he has no responsibility to defend himself would be to say that in any case involving a party represented by more than one lawyer would mean that, as a general matter, no lawyer could be

culpable for violations of professional standards if no particular lawyer could be identified for certain as the one who took some particular action. To adopt that argument would be to encourage lawyers to avoid the consequences of professional misconduct by ducking behind the otherwise irrelevant circumstance of having multiple lawyers represent the same client or clients. Such a position is nonsensical. Even his co-counsel Mr. Huntley would acknowledge that fact, and argued to the Court as much in a filing directed at arguing that none of the Plaintiffs' lawyers should be able to distance themselves from shared responsibility for the handling of the case, even though Mr. Huntley disputed that any improper decisions had been made along the way.

It is correct that Mr. Stillman's culpability, as determined in the Court's March 29, 2013 Memorandum Decision and Order, was not premised upon his obligations under Rule 11 of the Federal Rules of Criminal Procedure. However, the fact that he both signed the motions and memoranda implicated in these circumstances (involving the unsigned March 19, 2011 declaration of Mr. Miller) connects him directly to the conduct that led to the order for sanctions. He acknowledges as well that he was involved in the drafting of the documents in question. There is no question but that his conduct is properly in the mix of that which the Court had already found to be sanctionable. The only remaining question for Mr. Stillman, as was the case with Messrs. Schwartzman, Woodard, Chris Flood, and John Flood, is whether his particular role in what transpired is somehow less culpable than that of Messrs. Huntley, Conant, Sabalos, and Flynn so as to justify a ruling from this Court that he did not breach duties owed to the Court and to his profession or that, even if he did breach such duties, the magnitude of his culpability did not reach a level that would warrant a sanction.

**MEMORANDUM DECISION AND ORDER - 6**

In that context, the burden is properly on Mr. Stillman to explain and supplement the record in a way that distinguishes his individual conduct and decisions from that conduct and those decisions that are otherwise attributable to all of the Plaintiffs' counsel. Mr. Stillman seeks to do so by suggesting that he had no direct connection to the two Miller documents (the unsigned declaration and the later, signed, affidavit), that he only vaguely remembers reviewing the unsigned declaration of Mr. Miller, and only vaguely remembers receiving a copy of May 4, 2011 signed affidavit of Mr. Miller. In pertinent part, Mr. Stillman says that he:

> [W]as working on several other matters at the time and can attest with certainty that he did not evaluate or analyze any dissimilarities between the signed and unsigned versions. In fact, Mr. Stillman was specifically informed that Miller intended to adopt the unsigned witness statement in his deposition. As Mr. Stillman recalls, the only difference that he was informed of was that Miller had wanted to take out a statement by another employee about going to jail, even though Mr. Stillman was informed that Miller would testify to that statement in his deposition. Additionally, those who were involved in the issue of Miller's statement represented that Miller's testimony was consistent with that of Mr. Haney and Mr. Mason. The substance and specifics of Mr. Miller's testimony (other than the unsigned witness statement, which was important to the TAC) was therefore simply not an issue that Mr. Stillman had any need to investigate at that time since there were numerous other tasks to address and it was therefore of no concern to him. Accordingly, Mr. Stillman was unaware that two different versions of the Miller's account may have existed.

Mot. for Relief, p. 5 (Docket No. 368).

In sum, although Mr. Stillman has been involved in this case since its outset (unlike Messrs. Schwartzman, Woodard, and Flood) and accordingly, must surely have understood the underlying theory of liability and the alleged facts supporting the same since that time, he contends that as to the filing of the unsigned Miller declaration, and the decision not to file the later, differing Miller affidavit, he (a) did not realize that there were two different versions; (b) did not pay any attention to whether there were two different versions; (c) did not have any reason to pay any attention to whether there were two different versions; and (d) did not do any

**MEMORANDUM DECISION AND ORDER - 7**

work in the case behind the scenes or in the courtroom that had any particular need for or reference to such information.

The record, however, persuades the Court to the contrary, as Mr. Stillman's connection to the sanctionable conduct is not so attenuated as he contends. Mr. Stillman was individually involved in drafting the proposed Third Amended Complaint, and the briefing filed with the Court in support of the Motion to Amend seeking to allow the filing of that amended complaint. He says in his Motion and declaration in support of that Motion that the "unsigned [Miller] witness statement . . . was important to the TAC." *Id.* He says that he was "only informed about" one difference between the unsigned declaration and the signed affidavit of Miller – the reference to one of the other employees saying he was concerned about going to jail. Yet, he contradicts himself at the end of the paragraph, when he says that he "was unaware that two different versions" may have existed. *Id.* Further, Mr. Stillman admits that he was involved in drafting the Third Amended Complaint:

> I, along with other counsel, assisted in the preparation of the Third Amended Complaint. As the Court notes, several of the allegations in the Third Amended Complaint were based on information provided by Mr. Miller to Mr. Conant and Mr. Huntley as set forth in the unsigned witness statement. That testimony appeared clearly important to the Plaintiffs' claims and although the witness statement was unsigned, I was specifically told that when deposed, Mr. Miller would testify to everything included in the witness statement "and more."

Stillman Decl., p. 2 (Docket No. 368, Att. 2). He then goes on to say (in apparent explanation as to why he was uninformed about Mr. Miller's testimony other than the unsigned witness statement) that:

> First, I largely prepared the Opposition to the Emergency Motion to Strike. It was a purely procedural issue and Miller's testimony, whether in a signed or unsigned affidavit or even as an allegation in the TAC, was irrelevant to the issue. Second the Oppositions to the Motions to Dismiss were obviously based on the allegations in the

**MEMORANDUM DECISION AND ORDER - 8**

> TAC, not on Mr. Miller's signed or unsigned affidavits. The only issues in connection with such a motion are legal ones, as this Court knows, not whether those allegations can be proven. I relied on the TAC in examining the motions to dismiss and believed then (which belief was vindicated by Miller's deposition) that all of the allegations had a good faith basis consistent with Rule 11. Unlike the recollection of some of my colleagues, I recall being furnished with copies or drafts of both pleadings prior to their submission to the Court, but as stated herein, had no need to review the statements attributable to Mr. Miller. I therefore never undertook to evaluate the source of statements provided by Mr. Miller, and remained unaware that Mr. Miller had contradicted any of his prior statements on which the TAC was based.

*Id.*, pp. 3-4.

Although his declaration is sometimes ambiguous, it does appear that Mr. Stillman admits to having received "copies or drafts" of both Mr. Miller's unsigned, unsworn, March 19, 2011 declaration, and Mr. Miller's signed, but not filed, May 4, 2011 affidavit. As to any connection between the Third Amended Complaint and the Miller declaration and affidavit, Mr. Stillman avers that "the [Plaintiffs'] Oppositions to the Motions to Dismiss were obviously based on the allegations in the TAC, not on Mr. Miller's signed or unsigned affidavits." *Id.* Such a statement, however, is disingenous. The allegations contained in the TAC that are relevant to these issues were drawn, in material part, upon Mr. Miller's unsigned, March 19, 2011 declaration. Additionally, Mr. Stillman makes no mention of the repeated emphasis upon the unsigned Miller declaration in the written materials submitted to the Court, and in the oral argument, and the frequent characterization of Mr. Miller as a "whistleblower" who was afraid to submit a sworn statement because of fear of retaliation. Mr. Stillman says in his declaration that he participated in drafting the Third Amended Complaint ("I specifically recall reviewing the unsigned witness statement in connection with the preparation of the Third Amended Complaint . . . ." (*Id.* at p. 2)), which was filed on April 12, 2013. The Third Amended Complaint included, among other references to Mr. Miller's testimony, the statement that Dean Paauw, one

**MEMORANDUM DECISION AND ORDER - 9**

of Mr. Miller's colleagues, had commented to Mr. Miller that "[we're] not in jail yet and still continuing to write these appraisals," and this footnote:

> The Court's ruling on the Report and Recommendation dismissed this Count against C&W with prejudice. The Complaint was drafted prior to discovery and filed on January 3, 2010. Within the last six weeks the C&W employee Michael Miller came forward with evidence of the complicity of C&W and Credit Suisse in designing and promulgating the illicit appraisals and the fact that both C&W and Credit Suisse executives were informed by him and others that the appraisals were violative of FIRREA, USPAP and standard appraisal methodologies.

Proposed Third Am. Compl., p. 82, fn.5 (Docket No. 131.) Notably, the statement about "not in jail yet" was not found in Mr. Miller's signed, May 4, 2011 affidavit. Additionally, the nature of the allegations about purported illegal appraisals in the signed affidavit was substantively different from the unsigned March 19, 2011 declaration, as well.

Similarly, in the Plaintiffs' Memorandum in Opposition to Cushman & Wakefield's Second Motion to Dismiss, repeated references are made to the allegations contained in the Third Amended Complaint, drawn heavily from Mr. Miller's unsigned March 19, 2011 declaration. The document, which Mr. Stillman helped prepare, is replete with references to Michael Miller:

- "The statements in this paragraph are backed up in explicit detail by the Cushman whistleblower Mike Miller set forth at TAC paragraphs 60 thru 70."

- "In light of the admissions (confessions) of a brave former Cushman whistleblower, Michael Miller...."

- "Although the Court earlier dismissed Plaintiffs' claim against Cushman for breach of fiduciary duty with prejudice, new evidence, including Mike Miller's testimony, makes it clear that Cushman must be held accountable under the claim."[1]

---

[1] At the time that this document was filed with the Court on May 31, 2011, the only sworn testimony of Mr. Miller was contained in Mr. Miller's May 4, 2011 affidavit, which was never filed with the Court. Instead, only the unsigned, unsworn, March 19, 2011 declaration was in the record.

**MEMORANDUM DECISION AND ORDER - 10**

- "The false and misleading representations with respect to each loan had its intended impact on Gibson and every other Plaintiff, to their detriment. (See...Miller at TAC, paragraph 73, stating *"these were all lies"* to the suggestion by Credit Suisse that the appraisals would not have an unusual adverse effect on the build out of those communities)."

- "Plaintiffs specifically pled that an inquisitive and suspicious Cushman employee, Michael Miller, who was not involved in preparing the appraisals, was assured by Credit Suisse executives that the appraisals were not being used to 'mislead or over-leverage', and that the 'appraisals would not have an unusual adverse effect on the build-out' of the MPCs. (TAC Para 73)."

*See* Opp. to Mot. to Dismiss, pp. 8, 10, 21, & 24 (Docket No. 153) (Emphasis in original).

Mr. Stillman says that he "largely prepared" the Plaintiffs' written opposition to C&W's "Emergency Motion to Strike Plaintiffs' Motion for Partial Summary Judgment" (the "Emergency Motion"). This briefing was filed on May 25, 2011, *after* Plaintiffs' counsel had received Mr. Miller's signed, May 4, 2011, affidavit.[2] Mr. Stillman disclaims any role in deciding how Mr. Miller's unsworn statement (and Mr. Miller's role in general) would be emphasized, but the following paragraphs from the Emergency Motion he authored suggest strongly to the contrary:

> Given that Cushman clearly must know the requirements of Rule 56, it is more likely that Cushman chose this improper procedural mechanism in order to forestall having to respond to the motion at all, and hopefully keeping certain evidence buried. For example, during the Montana Bankruptcy proceedings in *In re Yellowstone Mountain Club*, Credit Suisse and Cushman were well aware of the complaints, concerns and objections to the lending appraisal scheme raised by Michael Miller, a senior appraiser with Cushman & Wakefield. Miller raised his concerns and objections regarding the "Total Net Value" appraisal method to his superiors in New York, including senior executive John Busi. Miller also raised the same objection directly

---

[2] As discussed in the Court's March 29, 2013 Memorandum Decision and Order, various of Plaintiffs' counsel were in repeated contact with Mr. Miller after his unsigned March 19, 2011 declaration had been filed with the Court, urging him to "sign" the declaration so that they would have a sworn version of his testimony.

**MEMORANDUM DECISION AND ORDER - 11**

> with several members of the Credit Suisse team in Los Angeles who participated in the creation of the scheme described in the TAC. *See* TAC, ¶¶ 57-59.
>
> In addition to Miller's own testimony, there were numerous emails to and from the participants at Credit Suisse and Cushman & Wakefield. Some emails even referred to the likelihood that the appraisals appeared to violate FIRREA and USPAP at the state levels. These very emails and relevant documents that identified Michael Miller, the person who directly links Credit Suisse and Cushman & Wakefield to both the planning and implementation of the scheme, *were never produced* in that Montana proceeding. The integrity of those proceedings and the due administration of justice in that case was obstructed. TAC, ¶ 92.
>
> The current motions before this court are therefore not merely procedurally improper, but a concerted effort to prevent any court from learning what else Miller will tell this Court (and there is more), and a determined effort to make sure no court ever concludes that the defendants violated the laws of the United States ("FIRREA") and the laws of the states of Idaho, Montana, Nevada and Florida ("USPAP"), which they did. In connection with the illegal lending and appraisal scheme in Idaho and at Yellowstone, Cushman & Wakefield's appraiser, Dean Paaus, told Miller: ". . . not in jail yet and still continuing to write these appraisals..." TAC, ¶ 70. The frivolous motions by Cushman & Wakefield joined by Credit Suisse are little more than a delay tactic in their effort to avoid the inevitable justice they are facing for the damage they have caused so many innocent home and property owners in Idaho and around the nation. . . . .
>
> [I]f, after Cushman submits a procedurally proper motion [seeking a stay to allow an opportunity to take discovery to oppose the Plaintiffs' motion for partial summary judgment] supported by affidavits, the Court grants Defendants a stay for such purposes, Plaintiffs request leave to depose the Cushman whistle blower, Michael Miller and Dean Paauw, and require production of the relevant emails that were deliberately concealed pursuant to lawful discovery requests in the Montana Bankruptcy proceedings in *In re Yellowstone Mountain Club, et al*.

Pls.' Opp. to "Emergency" Mot. to Strike, pp. 7-9. (Docket No. 148) (Emphasis in original).

In this document, Mr. Stillman incorporates material differences between Mr. Miller's unsigned declaration, and his signed affidavit. He admits to being aware of differences between the two documents, albeit in a singular fashion: "As I recall, the only difference that I was informed of was that Miller had wanted to take out a statement by another employee about going to jail, even though I was informed that Miller would testify to that statement in his deposition."

**MEMORANDUM DECISION AND ORDER - 12**

Stillman Decl., p. 3 (Docket No. 368, Att. 2). The Emergency Motion emphasizes that Mr. Miller was a "Cushman whistle blower." And, most troubling in the context of Mr. Stillman's argument that he bears no responsibility for failing to present the Court with Miller's signed May 11, 2011 affidavit or any of the other actions that led to the imposition of sanctions, he accuses the Defendants of not being forthcoming with evidence with the use of strident rhetoric and with references to alleged facts that are not in the record. The Emergency Motion says that Cushman was hoping to "keep certain evidence buried." The Emergency Motion accuses that "emails and relevant documents that identified Michael Miller, the person who directly links Credit Suisse and Cushman & Wakefield to both the planning and implementation of the scheme, *were never produced* in that Montana proceeding. The integrity of those proceedings and the due administration of justice in that case was obstructed." (Emphasis in original.) Mr. Stillman further contends on behalf of the Plaintiffs in the Emergency Motion that Defendants were engaged in "a concerted effort to prevent any court from learning what else Miller will tell this Court (and there is more), and a determined effort to make sure no court ever concludes that the defendants violated the laws of the United States ("FIRREA") and the laws of the states of Idaho, Montana, Nevada and Florida ("USPAP"), which they did."

      The other arguments offered by Mr. Stillman intended to minimize any culpability for the conduct which led to the Court's March 29, 2013 Memorandum Decision and Order are simply repeated from the same arguments that were made generally before the Court issued that order, such as his argument that he was assured that Mr. Miller would affirm everything that was contained in the unsigned March 19, 2011 declaration ("and more") when his deposition was taken. Those arguments were not persuasive to the Court previously, and they are no more so

**MEMORANDUM DECISION AND ORDER - 13**

now in the context of Mr. Stillman's individual motion for relief from the prior order. If anything, the further examination of the record occasioned by consideration of Mr. Stillman's motion serves to reinforce the heavy emphasis placed by Plaintiffs' counsel upon the unsigned Miller declaration (as set out above), and further reinforces the serious mistake in judgment made by Plaintiffs' counsel in not filing and making known to the Court the fact of the later, and different, signed Miller affidavit (and to opposing counsel, *before* Mr. Miller's deposition), while the Court was considering its decision upon pending substantive motions.

Mr. Stillman's involvement in these factual circumstances is unlike that of Messrs. Schwartzman and Woodard, who were not in the case and otherwise not in the "mix" in such a way as to directly implicate them in the decisions to emphasize the unsigned, March 19, 2011 Miller declaration and not disclose the substantively different May 4, 2011 Miller affidavit. Mr. Stillman's involvement is also unlike that of the brothers Flood, whose involvement fell short of their responsibilities to the Court and their profession but whose conduct overall was not so egregious as to warrant an award of sanctions. Mr. Stillman has been in this case since its inception and has – from all appearances – been heavily involved in the drafting of pleadings and motion papers. Further, he must clearly understand from the tenor of Plaintiffs' own written accusations thrown the way of Defendants' counsel (set out *supra*) about documents not being produced, and the integrity of the judicial proceedings being compromised as a result, that his responsibilities in that regard ought to be at the very least the same as what he contends should be expected of opposing counsel.

///

///

**MEMORANDUM DECISION AND ORDER - 14**

## III.  ORDER

In sum, Mr. Stillman's arguments that he has no personal responsibility for the conduct described in this Court's March 29, 2013 Memorandum Decision and Order (Docket No. 352) are not persuasive.  Accordingly, his Motion for Relief (Docket No. 368) is DENIED.

DATED:  **March 20, 2014**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge