**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, VERN JENNINGS, MARK MUSHKIN, MONIQUE LEFLEUR, GRIFFEN DEVELOPMENT, LLC, JUDY LAND, CHARLES DOMINGUEZ, ET AL,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE AG, CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation,<br><br>Defendants. | Case No.: CV 10-1-JLQ<br><br>**MEMORANDUM DECISION AND ORDER RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE (Docket No. 574)** |

Now pending before the Court is *Plaintiffs' Motion for Order to Show Cause Requiring Counsel for Credit Suisse and Cushman & Wakefield That They Show Cause, if Any They Have, Why Sanctions Should Not Be Entered for Material Misrepresentations Made to the Court in Oral Argument on October 29, 2014*[1] ("Motion for Sanctions") (Docket No. 574).[2] Having

---

[1] There was no October 19, 2014 oral argument; it is assumed that Plaintiffs intend to mean the April 29, 2014 hearing.

[2] After Plaintiffs originally filed their Motion for Sanctions, a sub-set of Plaintiffs (represented by attorneys James Sabalos and William Smith) withdrew as movants. *See* Notice of Withdrawal of Mot. for Sanctions (Docket No. 580). Therefore, any reference to "Plaintiffs" within this Memorandum Decision and Order refers only to the moving Plaintiffs.

carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Plaintiffs seek sanctions pursuant to 28 U.S.C. § 1927 "for intentional and serious misrepresentations made to Magistrate Judge Bush in open court on April 19, 2014[3] in violation of Idaho Rule of Professional Conduct 3.3(a)(1) by Thomas R. Guy and David J. Lender and the breach of other counsels' affirmative duty to correct those misrepresentations pursuant to Rule 3.3(a)(3)." Mem. in Supp. of Mot. for Sanctions, p. 2 (Docket No. 575, Att. 1).

During the April 29 hearing, counsel presented oral argument on several motions, including Plaintiffs' Renewed Motion for Partial Summary Judgment, which challenged the appraisals issued for each of the four master-planned communities ("MPCs") at the heart of this case. Specifically, Plaintiffs argued that the appraisals were misleading and illegal because they only estimated the net cash flow each MPC would generate over its lifetime, without discounting those revenues to present value and, therefore, without opining as to the MPCs' actual market value – all in violation of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA) and the Uniform Standards of Professional Appraisal Practice ("USPAP"). Therefore, through their Renewed Motion for Partial Summary Judgment, Plaintiffs asked this Court to rule that FIRREA legally applied to the loan transactions involved here.

David Lender, counsel for Credit Suisse, argued during that hearing that FIRREA had no application to these loans. While in the process of doing so (at least insofar as he was arguing

[3] It is assumed that Plaintiffs' Motion relates to the April 29, 2014 hearing – there was no hearing on April 19, 2014.

that none of the Defendant entities was a federally regulated institution), Mr. Lender was asked about whether other courts had considered such an issue under comparable circumstances:

> LENDER: . . . . So all of the entities that they've sued as defendants are not federally regulated entities subject to FIRREA and none of them are insured depository institutions.
>
> COURT: Mr. Lender, you're working on lots of these matters for Credit Suisse I understand; is that right?
>
> LENDER: I work – yes, several matters for Credit Suisse.
>
> COURT: And are you aware – have there been any decisions from any other courts addressing this issue of whether any of these Credit Suisse entities are federally regulated institutions under FIRREA?
>
> LENDER: I don't think so. I think this – I don't think so. I don't believe so, Your Honor.
>
> COURT: Have there been administrative rulings on that issue?
>
> LENDER: I don't believe so, Your Honor. In fact, as Your Honor –
>
> COURT: Is it at issue in any other courts that you're aware of?
>
> LENDER: No, no, Your Honor. Either[4] is the issue of FIRREA at issue at any of the lawsuits.[5] The ones that I'm involved with, it is – although there's been a lawsuit[6] brought by Blixseth against us which most of the claims have been dismissed. There's one claim remaining on motion for reconsideration. *The other claims I'm working on, there's no question – the other lawsuits we have were brought by one of the*

---

[4] The undersigned has listened to the audio file of this portion of the April 29, 2014 oral argument and could not clearly hear the word(s) used here. Credit Suisse contends that the word used is "So," rather than "Either." *See* Credit Suisse Resp. to Mot. for Sanctions, p. 9, n.3 (Docket No. 585). However, any difference in this respect is not material to the Court's resolution of Plaintiffs' Motion for Sanctions.

[5] At this point in the exchange, the inflection in Mr. Lender's voice indicates he was posing a question as a preface before proceeding with his answer. In the Court's mind, the more accurate punctuation mark here is a question mark, not a period.

[6] Mr. Lender appears to say "other than the," rather than "although there's been a" here. Again, whichever version he may have said matters not for the Court's resolution of Plaintiffs' Motion for Sanctions.

> *entities in the syndicate and they understood wholeheartedly this was not a FIRREA compliant appraisal.*
>
> *So, the issue of FIRREA is not front and center* and no one has – as Your Honor knows, under FIRREA, the way you bring a challenge to that is to bring an administrative proceeding in front of one of the federal regulations and no one's ever done it. They haven't done it. No one's ever done it.

COURT: So your understanding is that this particular issue in this case – in the factual context of this case is a matter of first impression?

LENDER: At least for the matters that I'm working on. There are many other Credit Suisse cases that have spawned out of these loans but the ones that I'm working on –

COURT: What about the ones that you're aware of, that you know of?

LENDER: No. Mr. Guy says he's not aware of any either.

COURT: Go ahead.

LENDER: So, as I said, none of the defendants named in the Complaint are federally insured depository institutions and, as I said, none of the syndicate is either. We put that in as well in our evidence and it's not challenged by the Plaintiffs. They're not challenging that at all.

> And so it's based on these facts that we state FIRREA does not apply to the loans and what I wanted to do, Your Honor, is walk through the statute because at the end of the day, it's the scope of the statute that defines whether FIRREA applies or not.

4/29/15 Tr. 35:22-37:25 (Docket No. 492) (emphasis added).

Ultimately, the Court recommended in the report to the district judge that, as a matter of law, the record could not support a conclusion that FIRREA applied and/or was breached somehow:

> For the most part, Plaintiffs' Requested Rulings[7] require this Court to find as a matter of law that FIRREA applied to the four MPC appraisals. Such a conclusion,

---

[7] As part of their Renewed Motion for Partial Summary Judgment, Plaintiffs asked the Court to make nine distinct (but related, in part) rulings as a matter of law – the "Requested Rulings." *See* Mot. by Pls. for Partial Summ. J., pp. 2-3 (Docket No. 140).

> however, depends on many things, including a finding that these appraisals involve (a) financial institutions, and that they were made (b) in connection with federally related transactions – as those terms are defined by FIRREA. However, the record spread out beneath Plaintiffs' Renewed Motion for Partial Summary Judgment – reflected largely in the parties' respective contentions . . . – reveals questions of fact precluding a finding that Credit Suisse (including its related entities is a financial institution and/or that the appraisals involved here involve federally related transactions. . . . .
>
> The parties' arguments and counter-arguments on the fundamental issue concerning the extent (if any) of federal regulation surrounding the MPCs' financing are like "ships passing in the night." It may be that the involved parties and the transactions themselves ultimately implicate FIRREA; however, the current record does not make such a finding indisputably clear to warrant this Court saying so as a matter of law. Without an affirmative finding that FIRREA applied to the four MPC appraisals, Requested Ruling No. 1[8] is impossible. It is therefore recommended that Plaintiffs' Renewed Motion for Partial Summary Judgment be denied in this respect.

7/31/14 Rpt. and Recomm., pp. 17-18 & 21 (Docket No. 510).[9]

United States District Judge Edward J. Lodge adopted the undersigned's Report and Recommendation, agreeing that "[t]here are material questions of fact in dispute on the issue of

---

[8] FIRREA's enforcement provision provides:

> [I]t shall be a violation . . . for a financial institution to seek, obtain, or give money or any other thing of value in exchange for the performance of an appraisal by a person who the institution knows is not a State certified or licensed appraiser in connection with a federally related transaction.

12 U.S.C. § 3349(a). A "federally related transaction" is "any real estate-related financial transaction which (A) a federal financial institutions regulatory agency or the Resolution Trust Corporation engages in, contracts for, or regulates; and (B) requires the services of an appraiser." 12 U.S.C. § 3350(4). Hence, Plaintiffs' Requested Ruling No. 1 asked the Court to find that "[e]ach of the loan transactions at issue was a real estate-related financial transaction which (A) a federal financial institutions regulatory agency regulated; and (B) required the services of an appraiser." Mot. by Pls. for Partial Summ. J., p. 2 (Docket No. 140).

[9] In between these two paragraphs, the Court outlined the parties' positions as to FIRREA's (in)application in tabular format. *See* 7/31/14 Rpt. and Recomm., pp. 18-21 (Docket No. 510).

whether FIRREA applies in this case that preclude summary judgment as to many of the Plaintiffs' requested rulings." 9/19/14 Order on Rpt. and Recomm., p. 9 (Docket No. 524). Plaintiffs' Motion for Sanctions does not seek to revisit the Court's FIRREA-related findings per se; rather, it is critical of Mr. Lender's above-cited exchange with the Court. To that end, Plaintiffs claim that "Mr. Lender made two misrepresentations . . . that were either knowingly and intentionally false, or so seriously misleading so as to be false." Mem. in Supp. of Mot. for Sanctions, p. 4 (Docket No. 575, Att. 1). Plaintiffs' characterizations of these alleged misrepresentations are:

- FIRREA was "front and center" at issue in a case against Credit Suisse in which Mr. Lender was counsel for Credit Suisse at the very time Mr. Lender denied that fact to this Court; and

- The "entities" in the loan syndicate that invested in the Credit Suisse loans did not know "wholeheartedly" that the appraisal was non-compliant with FIRREA."

*Id*. at pp. 4-6 & 10 (internally-quoted terms drawn from Mr. Lender's statements to Court (*see supra*)). According to Plaintiffs, proceedings in a Texas state court lawsuit – *Claymore Holdings, LLC v. Credit Suisse AG et al.* – expose Mr. Lender's comments to be "knowing misrepresentations to this Court," such that *both* Credit Suisse *and* Cushman & Wakefield[10] are

---

[10] Plaintiffs contend that Cushman & Wakefield's attorneys are equally culpable because of a failure to correct Mr. Lender's allegedly false representations to the Court. *See* Mem. in Supp. of Mot. for Sanctions, pp. 14-15 (Docket No. 575, Att. 1) ("Cushman & Wakefield was not a named defendant in *Claymore Holdings*. However, Cushman is featured prominently in the Amended Petition as the original firm using the Total Net Value appraisal method, and as the former employer of William Acton, who ultimately foisted new appraisals on the *Claymore Holdings* plaintiff. It is hard to believe that Cushman's counsel in this case was unaware of the allegations in *Claymore Holdings*. . . . .").

liable for sanctions.[11] *See generally id*. at pp. 4-18. With *Claymore Holdings* operating as the fuel for their Motion, Plaintiffs thus frame the sanctions fire as:

> Credit Suisse's attorney, David Lender (and T. Ray Guy), who are counsel in both this case and in *Claymore Holdings*, made two serious and discrete misrepresentations to Judge Bush at a critical stage in the case, when the Court had a right to expect a truthful response. The reason for that misrepresentation appears clear – Lender wanted to hide the *Claymore [Holdings]* action from the Court and counsel, since the discovery and expert testimony in that case would directly assist Plaintiffs and, in addition, persuade the Court that the Plaintiffs' claims lack merit because, as Mr. Lender falsely represented, no one else has taken issue with Credit Suisse's loans to these resorts and associated lending practices pursuant to FIRREA and USPAP.

*Id*. at p. 15.

## II. DISCUSSION

### A. Imposing Sanctions: Applicable Standards

As the supporting authority for their Motion for Sanctions, Plaintiffs appear to be relying upon the Court's "inherent powers," 28 U.S.C. § 1927, and Rule 3.3 of the Idaho Rules of Professional Conduct, stating:

> This Memorandum is in support of Plaintiffs' Motion for Sanctions against all counsel for Defendants under this Court's "inherent powers" and pursuant to 28

---

[11] Plaintiffs seek the following sanctions: (1) establishing as fact that the appraisals used for the MPCs do not comply with FIRREA or USPAP; (2) allowing all the expert testimony and reports submitted by the plaintiffs in the *Claymore Holdings* to be admitted in this case against Defendants; (3) requiring Defendants to produce unsealed and unredacted trial transcripts, exhibits, deposition transcripts/exhibits, and all motions and pleadings in *Claymore Holdings* to Plaintiffs at Defendants' expense; (4) allowing Plaintiffs to admit as evidence at trial in this case, any evidence, testimony, exhibits, and discovery that exist in *Claymore Holdings* as may be relevant without objection by Defendants; (5) awarding Plaintiffs' counsel their attorneys' fees and costs for bringing their Motion for Sanctions; (6) making an express finding that all defense counsel violated Idaho Rule of Professional Conduct 3.3(a) and impose on each of defense counsel a fine payable to the Court in an amount the Court determines to be appropriate, "but in no event less than the $6,000 per-attorney-fine [already] imposed by [the Court] on Plaintiffs' counsel for their purported violation of Rule 3.3(a)"; (7) denying Defendants "the entirety of the $109,000 in attorneys' fees they are seeking from Plaintiffs' attorneys" pursuant to the Court's Orders; and (8) ordering such other relief as this Court deems appropriate. *See* Mem. in Supp. of Mot. for Sanctions, pp. 18-19 (Docket No. 575, Att. 1).

> U.S.C. § 1927, for intentional and serious misrepresentations made to Magistrate Bush in open court on April [2]9, 2014 in violation of Idaho Rule of Professional Conduct 3.3(a)(1) by Thomas R. Guy and David J. Lender and the breach of other counsels' affirmative duty to correct those misrepresentations pursuant to Rule 3.3(a)(3).

*Id*. at p. 2. Plaintiffs argue that Messrs. Lender and Guy made uncorrected misrepresentations to the Court, subjecting them to sanctions under these standards. *See id*. & pp. 15-18.

1. Court's "Inherent Powers"

"District courts have the inherent power to sanction a lawyer for a 'full range of litigation abuses.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). While a district court's authority to impose sanctions under its inherent powers is broad, it is not limitless. "Before awarding sanctions under its inherent powers . . . the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). A finding of bad faith may be appropriate when, among other things, a party engages in behavior that has the effect of "delaying or disrupting the litigation or hampering enforcement of a court order." *Id*. at 649 (internal quotation marks omitted).

2. 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonable and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The use of the word "may" – rather than "shall" or "must" – gives district courts the discretionary authority "to hold attorneys personally liable for excessive costs for unreasonably

multiplying proceedings." *Gadda v.Ashcroft*, 277 F.3d 934, 943 n.4 (9th Cir. 2004). While the Ninth Circuit has "been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose a sanction for attorneys' fees" under 28 U.S.C. § 1927, or whether there must be a finding of subjective bad faith, what is clear from the case law is that "a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under [28 U.S.C.] § 1927 . . . ." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) and citing *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)).

3. Rule 3.3 of the Idaho Rules of Professional Conduct[12]

"In addition to case law and applicable court rules, courts may consider codes of professional conduct in determining whether an attorney's conduct falls below the standards of the profession and is sanctionable. *See Girardi*, 611 F.3d at 1035. Idaho Rule of Professional Conduct 3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." IRPC 3.3(a)(1); *but compare with* IRCP 3.3(a)(3) & cmt. 8 ("The

---

[12] Under the Local Civil Rules of the District of Idaho:

> All members of the bar of the District Court . . . for the District of Idaho (hereafter the "Court") and all attorneys permitted to practice in this Court must familiarize themselves with and comply with the Idaho Rules of Professional Conduct and the Idaho State Bar and decisions of any court interpreting such rules. These provisions are adopted as the standards of professional conduct for this Court but must not be interpreted to be exhaustive of the standards of professional conduct. No attorney permitted to practice before this Court will engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein.

Dist. Idaho Loc. Civ. R. 83.5.

prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact."). Consistent with this, a lawyer's failure to make a disclosure can be the equivalent of an affirmative misrepresentation. *See* IRCP 3.3, cmt. 3. Moreover, given a "lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence" (*see* IRCP 3.3, cmt. 5), when previously-offered materials turn out to be false/misleading, a lawyer's "duty of candor to the tribunal" warrants "reasonable remedial measure" (*see* IRCP 3.3, cmt. 10).

**B. The Actions of the Credit Suisse Attorneys Do Not Rise to the Level of Misrepresentations to the Court**

Plaintiffs go to great lengths discussing the details of *Claymore Holdings*, drawing comparisons with its factual and legal issues to the facts and claims in this case. *See* Mem. in Supp. of Mot. for Sanctions, pp. 4-14 (Docket No. 575, Att. 1). Defendants adamantly reject such comparisons. *See* Credit Suisse Resp. to Mot. for Sanctions, pp. 4-8 (Docket No. 585); Cushman & Wakefield Resp. to Mot. for Sanctions, pp. 7-8, 14-16 (Docket No. 586). Regardless, the parallels between *Claymore Holdings* and the instant dispute, if any,[13] are not immediately relevant to the discrete issues presented in Plaintiffs' Motion for Sanctions if

[13] This Memorandum Decision and Order takes no position on this issue or, relatedly, of Plaintiffs' ability to someday utilize *Claymore Holdings* against Defendants in its case-in-chief. *See supra* (discussing requested *Claymore Holdings*-related sanctions in context of Plaintiffs' Motion for Sanctions); *cf* 2/5/15 Order Granting Mot. to Take Jud. Not., p. 8 (Docket No. 583) (United States District Judge Justin L. Quackenbush ruling: "The court takes judicial notice of the jury verdict in *Claymore*, without incorporating any of the findings of fact or matters of truth asserted therein."); 4/13/15 Order Granting Pls.' Mot. for Leave to Am. Compl. to Add Punitive Damages, p. 5 (Docket No. 617) (Judge Quackenbush ruling: ". . . *Claymore Holdings* is not binding on this court, nor does it directly align with the issues present in this case. However, the court finds it relevant in determining whether, at this stage, the Fourth Amended Complaint may be amended to add punitive damages.").

Messrs. Lender and Guy made no misrepresentations to the Court in the first place. If that is the starting point, the *Claymore Holdings* case has no substantive impact upon this Court's decision on the pending motion.

Further, some of the difficulty in sorting through the issues raised by the Motion for Sanctions stems from the natural post-hoc dissection of the Court's questions. Had the Court already been aware of the fact of certain claims and/or issues raised in other cases, the undersigned might have been more precise with the inquiries and follow-up questions presented. But counsel's responsibility was to answer the questions that were posed, not questions that might have been posed. There is, to be sure, a duty of candor to the Court; however, the Court is not persuaded that this duty was creased by the nature of Mr. Lender's responses to the FIRREA questions at issue here, for the reasons described below. On this discrete record, the Court concludes that no misrepresentations were made.

1. <u>Mr. Lender's Reference to FIRREA Not Being "Front and Center" in Other Lawsuits Related to Whether Any of the Credit Suisse-Related Entities Are Federally Regulated Institutions Under FIRREA</u>

"FIRREA applies (by attempting to assert greater regulatory control over) federally insured deposits and federal insured/regulated depository institutions." 7/31/14 Rpt. and Recomm., p. 15 (Docket No. 510) (citing, *inter alia*, FIRREA, Pub.L. No. 101-73, §§ 101(9 & 10), 103 Stat. 183 (1989) (discussing FIRREA's purpose as, in part, "strengthen[ing] the enforcement powers of Federal regulators of *depository institutions*" and "strengthen[ing] the civil sanctions of criminal penalties for defrauding or otherwise damaging *depository institutions* and their depositors") (emphasis added); *Bolden v. KB Home*, 618 F. Supp. 2d 1196, 1204 (C.D. Cal. 2008) ("The legislative history [of FIRREA] further indicates an interest in addressing

fraudulent appraisals by *federal financial institutions*.") (emphasis added); *Wertz v. Washington Mut. Bank*, 2008 WL 1882843, *1 (E.D. Cal. 2008) ("[Office of Thrift Supervision] also regulates the preparation and use of real estate appraisals by *federally regulated financial institutions* pursuant to [FIRREA].") (emphasis added); *Fidelity Nat. Info. Solutions, Inc. v. Sinclair*, 2004 WL 764834, *1 & *7 (E.D. Pa. 2004) ("[FIRREA] put in place protections to shore up the financial integrity of *federally insured financial institutions*. . . . . The plain language of the statute and the legislative history point to a singular purpose for FIRREA, which is not to regulate the entire real estate appraisal process, but instead to protect *federal financial institutions* from the dangers associated with fraudulent or poorly executed appraisals. Given this focus, it is unreasonable to read FIRREA as making any indication, express or otherwise, that the statute was intended to control real estate transactions beyond those involving *federal financial institutions*.") (emphasis added)).

Along these lines, during the April 29 hearing, Mr. Lender argued that none of the Credit Suisse entities named as a defendant in this action was a federally insured depository institutions, subject to FIRREA:

> The third thing and this perhaps maybe is perhaps even more important is that *none of the defendants, none are federally insured depository institutions*. Undisputed. We put that evidence in and it's undisputed by their side. This is the Chitty declaration. Cayman headquartered in the Cayman Islands, obviously subject to the Cayman Islands monetary authority. *Not federally regulated*. Credit Suisse AG, the second defendant, is a Swiss banking company regulated by the Swiss Financial Market Supervision Authority. *Again, not the federal regulation*.
>
> Third, Credit Suisse Securities USA, LLC, is not even a bank. It's actually a broker dealer. *It's regulated by the FCC but it's not regulated by the entities which are subject to FIRREA* which we'll get to in a minute.
>
> And then the last defendant they've identified, Credit Suisse First Boston, LLC, that's the company that's now the broker dealer and they say that in their Fourth

> Amended Complaint. *So all of the entities that they've sued as defendants are not federally regulated entities subject to FIRRA and none of them are insured depository institutions.*

4/29/15 Tr. 35:5-24 (Docket No. 492) (emphasis added). In that context, the undersigned then asked Mr. Lender, who works and has worked on "lots of these matters for Credit Suisse," if there are "any decisions from any other courts addressing this issue *of whether any of these Credit Suisse entities are federally regulated institution[s] under FIRREA*." *Id*. at 35:25-36:7 (emphasis added).[14] To be clear, it was *this* specific underlying framing of the "issue" by the Court that Mr. Lender's subsequent comments (the genesis of Plaintiffs' Motion for Sanctions) must be measured.

Viewed with such context in mind, the Court is satisfied that Mr. Lender's later in the moment reference to "the issue of FIRREA" not being "front and center" pertained to whether the Credit Suisse defendants were insured depository institutions or whether any administrative ruling or other court had found them to be federally regulated institutions under FIRREA. *Id*. at

---

[14] Similar questions were also previously asked to Plaintiffs' counsel. *See, e.g.*, 4/29/15 Tr. 21:6-18 (Docket No. 492) ("What specifically is the federally regulated institution or institutions that you contend was part of these transactions? . . . . [Are] you making that assumption and drawing upon your experts' characterizations of that or is there other evidence in the record? Defendant Credit Suisse obviously argues that its entities are not federally regulated institutions"). The undersigned ultimately distilled the issue during the hearing, stating:

> Well, I think we're ships passing in the night on this issue. As I understand the statute, it's as if you come to the door and if you are a federally regulated institution, then that door opens and once you're inside that door, then these requirements attach and everything you do in regard to the transaction needs to be compliant with FIRREA and then USPAP by extension. But that if you don't come in the door, then there isn't a transaction that's subject to FIRREA and by extension is not subject to USPAP.

*Id*. at 22:10-18; *see also id*. at 23:20-22 ("So which of those entities are you telling me that as a matter of law I need to find is a federally regulated institution that implicates FIRREA and on what basis?").

36:25-37:1; *see also id*. at 37:5-7 (Court, in follow-up question, asking: "So your understanding is that *this particular issue* in this case – in the factual context of this case is a matter of first impression?") (emphasis added). It was not made to suggest – as Plaintiffs contend in their Motion for Sanctions[15] – that he was altogether unaware of another case involving FIRREA in any context or, even, another case in which an appraisal's compliance with FIRREA was litigated. This is confirmed when, at the conclusion of his back-and-forth with the Court, Mr. Lender sums up the issue as follows:

> So as I said, none of the defendants named in the Complaint are federally insured depository institutions and, as I said, none of the syndicate is either. We put that in as well in our evidence and it's not challenged by the plaintiffs. They're not challenging it at all.
>
> And so it's based on these facts that we state FIRREA does not apply to the loans and what I wanted to do, Your Honor, is walk through the statute because at the end of the day, it's the scope of the statute that defines whether FIRREA applies or not.

*Id*. at 37:16-25.[16]

---

[15] For example, in their reply briefing in support of their Motion for Sanctions, Plaintiffs assert that "the inescapable fact is that when the Court was conducting its colloquy with Mr. Lender, it sought to determine whether Mr. Lender was involved in other cases that might have a bearing on *Gibson*." Reply in Supp. of Mot. for Sanctions, p. 7 (Docket No. 608). The record, however, does not support such a conclusion.

[16] Plaintiffs (at least at one point) arguably shared this same understanding when, in an August 11, 2014 "Motion for Judicial Notice . . . Concerning 'Federally Regulated Institution,'" Plaintiffs argued:

> The purpose of this Motion is to bring to the Court's attention two **subsequent** filings bearing on whether Credit Suisse is a Federally regulated banking institution subject to FIRREA . . . . *These two documents are relevant to the colloquy between Judge Bush and Credit Suisse attorney David Lender (and concurred in by Credit Suisse attorney Ray Guy) during the April 29th hearing on Plaintiffs' Motion for Partial Summary Judgment, regarding whether any of the Credit Suisse entities are "Federally regulated institutions" under FIRREA, at Transcript of Hearing, pp. 35-37.*

Mot. for Jud. Not., pp. 2-3 (Docket No. 512) (bold in original, italics added). Plaintiffs then proceeded to quote the same portions of the April 29, 2014 transcript that are now the subject of

Understanding the nature of Mr. Lender's statements in this way provides a much more benign characterization of their bases – indeed, strongly to suggest that they were not misrepresentations at all. As such, as a threshold matter, *Claymore Holdings* (married, as it is, to Plaintiffs' Motion for Sanctions) did not speak to whether Credit Suisse is a federally regulated institution. Plaintiffs appear to concede as much (or cannot say one way or the other), based upon arguments/statements they made elsewhere in the record. For example:

- In support of a December 22, 2014 "Motion/Request for Judicial Notice" (requesting that the Court take judicial notice of *Claymore Holdings*), Plaintiffs argue: "Although one issue involved in the instant case (*not involved* in *Claymore*) was whether any of the Defendant institutions or their correspondents were federally regulated banks receiving federally guaranteed deposits . . . . there are a number of other issues which are substantially the same in both cases . . . ." Reply in Supp. of Mot. for Jud. Not., p. 3 (Docket No. 577) (emphasis added).

- In a January 26, 2015 letter to David Lender regarding the merits of Plaintiffs' Motion for Sanctions, Plaintiffs' counsel states: "Without

---

their Motion for Sanctions. *See id*. at pp. 2-3; *see also generally* Reply Mem. in Supp. of Pls.' Request for Jud. Not. (Docket No. 496) (separate request for judicial notice, but nonetheless highlighting fact that Mr. Lender "replied in the negative" to Court's *specific* question).

Moreover, in adopting the Report and Recommendation as to Plaintiffs' Renewed Motion for Partial Summary Judgment (while also denying the above-referenced Motion for Judicial Notice), even Judge Lodge had this same understanding:

> Oral argument on the Motion for Partial Summary Judgment in this case was held by the Magistrate Judge on April 29, 2014 . . . . *At the oral argument, as noted in Plaintiffs' Motion, the Magistrate Judge inquired of counsel for Credit Suisse as to whether there had been any other rulings by other bodies as to whether Credit Suisse operated Federally regulated institutions under FIRREA. Counsel for Credit Suisse responded that there were no such rulings.*

9/19/14 Order, p. 5 (Docket no. 524) (emphasis added, internal citations omitted).

The point of all this, as Cushman & Wakefield's counsel stated during oral argument on Plaintiffs' Motion for Sanctions, is that Plaintiffs could be viewed as saying that Defendants should be sanctioned for understanding the April 29, 2014 colloquy between the Court and Mr. Lender the exact same way as Plaintiffs' counsel themselves once described it. This logic does not follow.

> reviewing [*Claymore Holdings'*] trial transcripts to determine exactly what evidence was presented at trial, it is difficult to factually determine whether evidence on the issue of whether Credit Suisse was a 'federally regulated institution' was presented to the jury . . . ." 1/26/15 Ltr. from Huntley to Lender, p. 2, attached as Ex. D to Guy Decl. (Docket No. 585, Att. 1).

In short, the Court asked Mr. Lender questions intending to frame a lynchpin issue, *i.e.*, whether any other court (or administrative agency) had been asked to consider Credit Suisse's status as a federally regulated institution under FIRREA. Mr. Lender appears to have answered those questions truthfully and accurately; at the very least, the existence of *Claymore Holdings* does not operate to compel a contrary conclusion. Plaintiffs' Motion for Sanctions is denied in this respect.

2. <u>Mr. Lender's Statement Concerning "Other Lawsuits" Where "Entities in the Syndicate . . . Understood Wholeheartedly This Was Not a FIRREA Compliant Appraisal" Is Not Sanctionable</u>

Part and parcel with his response to the question about other courts' consideration of whether the Credit Suisse entities are federally regulated institutions under FIRREA (*see supra*), Mr. Lender mentioned a "lawsuit" in which "the entities in the syndicate . . . understood wholeheartedly this was not a FIRREA compliant appraisal." 4/29/15 Tr. 36:16-24 (Docket No. 492). The "lawsuit" he referenced is *Claymore Holdings*. *See* 1/21/15 Ltr. from Lender to Huntley, p. 4, attached as Ex. C to Guy Decl. (Docket No. 585, Att. 1) ("That reference was in fact to the *Claymore* action."). Plaintiffs submit that his statement was demonstrably untrue, and that Mr. Lender knew (or should have known) that it was not true when he made it, and that Defendants should be sanctioned as a result. *See* Mem. in Supp. of Mot. for Sanctions, pp. 5-13 (Docket No. 575, Att. 1). Defendants disagree. *See* Credit Suisse Resp. to Mot. for Sanctions, pp. 4-8, 10-12 (Docket No. 585); Cushman & Wakefield Resp. to Mot. for Sanctions, pp. 7-8,

14-16 (Docket No. 586). A closer look at *Claymore Holdings* reveals, once again, that the parties' arguments are like ships passing in the night.

*Claymore Holdings* involved different appraisals at different times. The earlier-in-time (2004-2006) appraisals, issued by Cushman & Wakefield, were of the now notorious total net value appraisal method relating to the Lake Las Vegas MPC. These appraisals *did not* comply with FIRREA. The later-in-time (2007) appraisal was requested by Highland Capital Management L.P. ("Highland") and *did* (or at least purportedly did) comply with FIRREA. Highland, an investment funds manager whose funds invested in the 2007 refinancing of the Lake Las Vegas loan,[17] conditioned its investment on a FIRREA-compliant appraisal; in turn, CBRE (not Cushman & Wakefield[18]) issued the requested appraisal (not a total net value appraisal), provided it to Credit Suisse, and certified it to be FIRREA-compliant. At the end of the day, the plaintiff in *Claymore Holdings* alleged that this later-in-time (2007) refinancing-related appraisal was, in fact, not FIRREA-compliant. *See, e.g., Claymore Holdings* Am. Pet., pp. 1, 4-6, 9, 34, 37-38, 44, 46, & 51 at ¶¶ 1, 7, 9, 17, 84, 95, 111, 115, & 131 (Docket No. 574, Att. 4) (framing lawsuit as "aris[ing] out of a 2007 loan refinancing transaction . . . of a residential and resort master-planned community in Nevada . . . ." before highlighting in detail how the 2007 "Fraudulent Appraisal" "massively overvalued Lake Las Vegas" and "did not comply with FIRREA" contrary to certifications/representations made by CBRE and Credit Suisse).

---

[17] These funds later assigned their claims to Claymore Holdings LLC ("Claymore"), the plaintiff in *Claymore Holdings*. *See Claymore Holdings* Am. Pet., p. 6, ¶ 11 (Docket No. 574, Att. 4).

[18] However, CBRE's William Acton had apparently worked with Cushman & Wakefield during the earlier-in-time appraisals. *See Claymore Holdings* Am. Pet., pp. 3-4 at ¶¶ 5-6 (Docket No. 574, Att. 4) (describing Acton as Credit Suisse's "familiar 'friend of the project'").

With this backdrop, Defendants argue that Mr. Lender was absolutely truthful when he said "the syndicate . . . under[standing] wholeheartedly this was not a FIRREA compliant appraisal" because he was referring to *Claymore Holdings'* earlier-in-time (2004-2006) total net value appraisals from Cushman & Wakefield – *not* the later-in-time (2007) refinancing-related appraisal from CBRE. *See* Credit Suisse Resp. to Mot. for Sanctions, pp. 10-11 (Docket No. 585); Cushman & Wakefield Resp. to Mot. for Sanctions, pp. 14-15 (Docket No. 586). And, in *Claymore Holdings*, the investment funds manager, Highland, knew that these earlier-in-time (2004-2006) total net value appraisals did not comply with FIRREA, prompting it to condition its investment in the 2007 refinancing of the Lake Las Vegas loan upon a different appraisal that complied with FIRREA. *See Claymore Holdings* Am. Pet., pp. 22-23, at ¶¶ 53-55 (Docket No. 574, Att. 4); *see also* Morgan Dep., 109:5-24, attached as Ex. B to Guy Decl. (Docket No. 585, Att. 1) (Highland senior portfolio manager testifying that Highland wanted FIRREA-compliant appraisal notwithstanding Cushman & Wakefield's earlier-in-time (2004-2006) total net value appraisals "[b]ecause there is a new loan being made here and I want to make sure in connection with that loan that I'm obtaining the best possible appraisal for my investors."). Considered this way, Mr. Lender's statement was, again, not a misrepresentation at all: "the other lawsuits we have [*Claymore Holdings*] were brought by one of the entities in the syndicate [Claymore] and they [Claymore/Highland] understood wholeheartedly this [the earlier-in-time (2004) total net value appraisals] was not a FIRREA compliant appraisal." *Compare with* 4/29/15 Tr. 36:21-24 (Docket No. 492).

When examining the April 29, 2015 transcript as a whole, and considering the additional information submitted on that subject in relation to *Claymore Holdings*, the Court is persuaded

that the record can logically support Defendants' interpretation of Mr. Lender's statements. Said another way, the Court is not persuaded that there is anything akin to the conduct that Plaintiffs must show to prevail on their Motion for Sanctions. That some argument can be made that Mr. Lender's use of the word "this" related to the later-in-time (2007) refinancing-related appraisal and not the earlier-in-time (2004-2006) total net value appraisals is not enough, especially when considering that the opposite argument can (and has been) made. Nor is it enough to argue that Mr. Lender's statement doesn't paint a comprehensive picture of all of the facts and issues presented in *Claymore Holdings*. While Plaintiffs may believe that Mr. Lender has an obligation to remove any possible ambiguity from statements made to the Court, there is not enough in this record to crystallize into an act of bad faith, recklessness, or a vexatious multiplication of the proceedings. The possibility of such can be argued, as Plaintiffs have done, but the Court is simply not persuaded on this record.[19] Plaintiffs' Motion for Sanctions is also denied in this respect.[20]

---

[19] Credit Suisse and Cushman & Wakefield have expressed their separate intentions to pursue sanctions against Plaintiffs for their Motion for Sanctions. *See* Credit Suisse Resp. to Mot. for Sanctions, pp. 19-20 (Docket No. 685); 1/21/15 Ltr. from Lender to Huntley, p. 5, attached as Ex. C to Guy Decl. (Docket No. 585, Att. 1); 1/22/15 Ltr. from Morrow to Pls.' Counsel, p. 2, attached as Ex. 1 to Huntley Decl. (Docket No. 608, Att. 1); 1/28/15 Ltr. from Lender to Huntley, pp. 3-4, attached as Ex. E to Guy Decl. (Docket No. 585, Att. 1); 1/28/15 Ltr. from Morrow to Pls.' Counsel, pp. 1-2, attached as Ex. 1 to Huntley Decl. (Docket No. 608, Att. 1). Credit Suisse and Cushman & Wakefield are free to do so, but the Court advises here that perhaps cooler heads should prevail.

[20] Nearly five months after filing their Motion for Sanctions, Plaintiffs filed a Motion for Leave to File Supplemental Brief and Documents to the Motion for Sanctions ("Motion to Supplement") (Docket No. 658). Therein, Plaintiffs claim that the attached *Allenby* Petition "would have been useful and germane to the issues before the Court both at the time of the April 29th 20[14] hearing and relevant to the motions later ruled upon by Judge Quackenbush, including exemplary damages." Mot. to Supp. Brief, p. 2 (Docket No. 658). Except, Plaintiffs' Motion for Sanctions was the product of the April 29, 2014 hearing – the hearing itself dealt with Plaintiffs' Renewed Motion for Partial Summary Judgment. *See supra*. Because Plaintiffs' Motion for Sanctions deals exclusively with two alleged misrepresentations made by Credit Suisse's counsel as part of its opposition to Plaintiffs' Renewed Motion for Partial Summary

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion for Sanctions (Docket No. 574) is DENIED.

2. Plaintiffs' Motion to Supplement (Docket No. 658) is DENIED.




DATED: **September 2, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

Judgment (and not on the merits of Plaintiffs' Renewed Motion for Partial Summary Judgment itself), Plaintiffs' Motion to Supplement is misplaced. Said another way, while the Motion to Supplement may relate to arguments particular to Plaintiffs' Renewed Motion for Partial Summary Judgment, it does not obviously illuminate the *different* arguments presented within Plaintiffs' Motion for Sanctions. Hence, Plaintiffs' Motion to Supplement is denied.