UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, BEAU BLIXSETH, AMY KOENIG, VERN JENNINGS, MARK MUSHKIN, MONIQUE LEFLEUR, GRIFFEN DEVELOPMENT, LLC, JUDY LAND, CHARLES DOMINGUEZ, ET AL,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE AG, a Swiss corporation; CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company, CREDIT SUISSE FIRST BOSTON, a Delaware limited liability corporation; CREDIT SUISSE AG, CAYMAN ISLAND BRANCH, an entity of unknown type; CUSHMAN & WAKEFIELD, INC., a Delaware corporation,<br><br>Defendants. | Case No.: CV 10-1-JLQ<br><br>MEMORANDUM DECISION AND ORDER RE:<br><br>CREDIT SUISSE'S MOTION FOR ATTORNEYS' FEES<br>(Docket No. 551)<br><br>CUSHMAN & WAKEFIELD'S MOTION FOR COSTS AND ATTORNEY FEES IN ACCORDANCE WITH SANCTIONS ORDER<br>(Docket No. 552) |

Now pending before the Court are (1) Credit Suisse's Motion for Attorneys' Fees (Docket No. 551), and (2) Cushman & Wakefield's Motion for Costs and Attorney Fees in Accordance with Sanctions Order (Docket No. 552). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

I. **BACKGROUND**

Defendants' currently-pending motions relate back to the undersigned's March 29, 2013 Memorandum Decision and Order (" 2013 Order"), in which the Court considered the Defendants' then-pending Motion for Sanctions and Motion for Order to Show Cause. *See*

MEMORANDUM DECISION AND ORDER - 1

3/29/13 MDO (Docket No. 352). The 2013 Order framed the issue presented at that time as follows:

> The motions decided in this Memorandum Decision and Order concern a nettlesome and troubling dispute between the parties regarding statements made by Michael Miller – a witness described by Plaintiffs' counsel as a "whistle blower" – and a decision made by Plaintiffs' counsel not to file Mr. Miller's signed May 2011 affidavit with the Court. When that affidavit was signed by Mr. Miller, Plaintiffs' counsel had already presented, relied upon, and filed with the Court Mr. Miller's previous, unsigned, and arguably substantively different March 19, 2011 declaration. Defendants contend that by not filing with the Court Mr. Miller's *signed* May 2011 affidavit (while consistently relying upon Mr. Miller's earlier, unsigned March 2011 declaration), Plaintiffs and their counsel breached duties required of them by Court rules, federal statutes, and ethical standards.

*Id*. at p. 13 (emphasis in original).

Ultimately, the undersigned was "convinced, after considering the written and oral arguments of counsel, that there ha[d] been a material failure on the part of Plaintiffs' counsel in their responsibilities to this Court, as officers of this Court, in the circumstances under the pending motions. *Id*. at pp. 17-18. Specifically, the 2013 Order found that, because Plaintiffs' counsel had repeatedly relied upon and made representations on the record regarding Mr. Miller's unsigned declaration, they had a duty to inform the Court and opposing counsel when Mr. Miller subsequently provided a signed affidavit that was arguably materially different. *See id*. at pp. 18-23. Because Plaintiffs' counsel failed to file the signed statement of Mr. Miller at the time it came into their possession, they were sanctioned. *See id*. at pp. 23-28.

The sanctions were severalfold: (1) Plaintiffs' counsel will not be permitted to use Mr. Miller's testimonial evidence in this case for any purpose, other than as obtained in deposition or courtroom testimony; (2) certain Plaintiffs' counsel were sanctioned $6,000.00 apiece; and (3) certain Plaintiffs' counsel were responsible for reimbursing Defendants "for the attorneys' fees

**MEMORANDUM DECISION AND ORDER - 2**

and costs necessitated by the motions filed seeking sanctions as a result of the failure to file the sworn affidavit of Mr. Miller." *See id*.

Relevant here, the following procedural events then took place:

- On April 8, 2013, Plaintiffs moved to stay the 2013 Order's application until the Court could consider and resolve their forthcoming objections. *See* Pls.' Mot. for Stay of Sanctions (Docket No. 358).

- On April 12, 2013, Plaintiffs opposed/objected to the 2013 Order. *See* Pls.' Opp. to Sanctions Order (Docket No. 367).

- On April 22, 2013, the undersigned granted Plaintiffs' Motion for Stay of Sanctions, staying those deadlines relating to the imposition of sanctions outlined within the 2013 Order. *See* 4/22/13 Order (Docket No. 384).

- On April 24, 2013, Plaintiffs requested reconsideration of the 2013 Order. *See* Mot. for Recon. (Docket No. 392).

- On August 15, 2013, the undersigned denied Plaintiffs' reconsideration request. *See* 8/15/13 Order (Docket No. 408).

- On October 17, 2014, U.S. District Judge Edward J. Lodge denied Plaintiffs' objections and affirmed the 2013 Order. *See* 10/17/14 Order (Docket No. 531). Further, Judge Lodge lifted the April 22, 2013 stay, ordering Defendants to file their respective motions for costs and attorneys' fees in accordance with the 2013 Order (*see supra*) on or before December 1, 2014. *See id*.

- Also on October 17, 2014, this case was reassigned to the Honorable Justin L. Quackenbush, Senior United States District Judge for the Eastern District of Washington, for all further proceedings. *See* Order of Reassignment (Docket No. 532).

**MEMORANDUM DECISION AND ORDER - 3**

- • On October 30, 2014, Plaintiffs moved to stay Judge Lodge's October 17, 2014 Order. *See* Pls.' Mot. for Order Staying Order, p. 2 (Docket No. 535) ("Plaintiffs' Counsel request that the above mentioned Orders[1] be STAYED pending resolution by the Ninth Circuit Court of Appeals of their forthcoming Petition for Writ of Mandamus and/or appeal, whichever occurs later.").

- • On October 31, 2014, Judge Quackenbush referred Plaintiffs' October 30, 2014 Motion to Stay to Judge Lodge. *See* 10/31/14 Order Referring Mot. to Stay (Docket No. 537).

- • On or around November 6, 2014, Plaintiffs appealed the 2013 Order as well as Judge Lodge's October 17, 2014 Order affirming the 2013 Order to the United States Court of Appeals for the Ninth Circuit. *See* Pet. for Writ of Mandamus (Docket No. 538); Not. of Appeal (Docket No. 540).[2]

- • Consistent with Judge Lodge's directive within his October 17, 2014 Order, on December 1, 2014, Defendants filed the at-issue motions, seeking reimbursement of $109,244.22 in attorneys' fees ($45,885.27 for Credit Suisse and $63,358.95 for Cushman & Wakefield). *See* Credit Suisse's Mot. for Attys' Fees (Docket No. 551); Cushman & Wakefield's Mot. for Attys' Fees (Docket No. 552).

---

[1] Plaintiffs sought to stay Judge Lodge's October 17, 2015 Order which, according to Plaintiffs, "affirmed and incorporated therein by reference the Magistrate's Order of March 29, 2013." Pls.' Mot. for Order Staying Order, p. 1 (Docket No. 535). Therefore, Plaintiffs' efforts to stay this action at this point relates not only to Judge Lodge's October 17, 2014 Order, but also the undersigned's March 29, 2013 Memorandum Decision and Order.

[2] The exact specifics of Plaintiffs' appeal or appeals are unclear from the record. The Ninth Circuit appears to have issued two separate appeal notices with different case numbers. *See, e.g.*, 11/06/14 Not. (Docket No. 539) (identifying Case No. as 14-73423 and stating that "[a] petition for writ of mandamus and/or prohibition has been received . . . ."); 11/10/14 Not. (Docket No. 541) (identifying Case No. as 14-35952 and stating that "[a] copy of your notice of appeal/petition has been received . . . .").

**MEMORANDUM DECISION AND ORDER - 4**

- • On December 3, 2014, the Ninth Circuit dismissed Plaintiffs' "appeal" because "the orders challenged in the appeal are not final or appealable." 12/3/14 Order (Docket No. 553) (relating to Case No. 14-35952).

- • On December 17, 2014, Plaintiffs filed a Petition for Rehearing *En Banc* as to Case No. 14-35952. *See* Pet. for Rehearing *En Banc*, attached as Appx. 2 to Pls.' Attorney Rpt. (Docket No. 572, Att. 2).

- • On December 22, 2015, Judge Quackenbush referred the at-issue motions to Judge Lodge. *See* 12/22/15 Order (Docket No. 562).

- • On January 7, 2015, Judge Lodge stayed the action for a second time, ordering, in part, that the at-issue motions (and the remaining briefing deadlines relating to thereto) be stayed "pending the Ninth Circuit's ruling on the appeal filed in this case." *See* 1/7/15 MDO, p. 4 (Docket No. 567).

- • On January 13, 2015, the Ninth Circuit denied Plaintiffs' "petition" because "Petitioners have not demonstrated that this case warrants the intervention of this court by means of the extraordinary remedy of mandamus." 1/13/15 Order (Docket No. 568) (relating to Case No. 14-73423).

- • On January 16, 2015, Plaintiffs' counsel updated the Court as to its December 17, 2014 Petition for Rehearing *En Banc* (as to Case No. 14-35952), further advising the Court that:

    > [S]hould their Petition for *en banc* Hearing be denied as to their Notice of Appeal, they are considering moving this Court for a Rule 54(b) Certificate and for permission to file an Interlocutory Appeal, without stay of this case, because such an appeal can certainly be prosecuted contemporaneously with continued processing of the above-captioned case. If Rule 54(b) certification were denied, Plaintiffs would respectfully request that the Sanctions Order be stayed until there is a final judgment in the case.

Pls.' Attys' Rpt. (Docket No. 572).

**MEMORANDUM DECISION AND ORDER - 5**

- On February 18, 2015, the Ninth Circuit construed Plaintiffs' Petition for Rehearing *En Banc* as a motion for reconsideration of its December 3, 2014 order dismissing the appeal for lack of jurisdiction. *See* 2/18/15 Order (Docket No. 587). Construed thusly, the Ninth Circuit denied Plaintiffs' "motion" and indicated that "no further filings will be entertained in this closed case." *Id.*

- On February 24, 2015, Plaintiffs moved the Court to either (1) extend the January 7, 2015 stay until the case-in-chief is completed, or, alternatively, (2) "[e]nter a Rule 54(b) Certificate of Final Judgment re liability for sanctions and permit an Interlocutory Appeal thereon (without any delay or stay of the proceedings on the case-in-chief)." Pls.' Mot. for Alt. Relief (Docket No. 595).

- On April 10, 2015, Judge Lodge denied Plaintiffs' request (1) to the extend the stay, and (2) for Rule 54(b) certification. *See* 4/10/15 Order (Docket No. 616). In doing so, Judge Lodge effectively lifted the stay, ordered Plaintiffs to comply with the 2013 Order (to the extent applicable at that point), and referred the at-issue motions to the undersigned. *See id.*

- On April 15, 2015, the undersigned outlined the remaining briefing schedule for the at-issue motions. *See* 4/15/15 Order (Docket No. 620).

- On June 3, 2015, Plaintiffs responded to the at-issue motions. *See* Pls.' Resps. to Defs.' Mots. for Attys' Fees (Docket Nos. 645-648).

- On July 2, 2015, Defendants submitted their replies in support of the at-issue motions. *See* Credit Suisse's Reply in Supp. of Mot. for Attys' Fees (Docket No. 660); Cushman & Wakefield's Reply in Supp. of Mot. for Attys' Fees (Docket No. 661).

**MEMORANDUM DECISION AND ORDER - 6**

## II. DISCUSSION

To be clear, as one of the three avenues of relief sought by Defendants, and expressly outlined in the 2013 Order (and affirmed by Judge Lodge's October 17, 2014 Order), Defendants are to be reimbursed for the costs and attorneys' fees in bringing their successful motions – in Credit Suisse's case, its Motion for Order to Show Cause (Docket No. 253); and, in Cushman & Wakefield's case, its Motion for Sanctions (Docket No. 246). To the extent Plaintiffs oppose these efforts based on any substantive argument that such relief should not have been ordered in the first place, that argument is rejected. *See, e.g*. Pls.' Resp. to Credit Suisse's Mot. for Attys' Fees, pp. 1-7, 11-12 (Docket No. 645); Pls.' Resp. to Cushman & Wakefield's Mot. for Attys' Fees, pp. 1-6, 10-11 (Docket No. 646). By virtue of the already extensive briefing on that issue, followed by appeals to the Ninth Circuit, that ship has already sailed.

Still, the Court must consider the appropriateness of Defendants' attorneys' fees requests. On this point, the 2013 Order reads:

> Any such request shall carry sufficient detail and explanation so as to allow the Court to find, by a preponderance of the evidence submitted to it, that the requested costs are directly connected to the motion for sanctions, and the follow-up work in response to this ruling. If there is any doubt left by the evidence in that regard, the Court will not award any costs represented by the doubtful evidence.

3/29/13 MDO, p. 25 (Docket No. 352). Plaintiffs protest the making of any award, contending that: (1) attorneys' fees are not recoverable for the preparation of a motion for sanctions and the defense of a sanctions order; (2) Defendants' hourly rates are "grossly excessive"; and (3) the hours expended on Defendants' motions for sanctions are unreasonable. *See* Pls.' Resp. to Credit Suisse's Mot. for Attys' Fees, pp. 7-20 (Docket No. 645); Pls.' Resp. to Cushman & Wakefield's Mot. for Attys' Fees, pp. 6-20 (Docket No. 646).

**MEMORANDUM DECISION AND ORDER - 7**

A.     **Attorneys' Fees Relating to Defendants' Motions Are Recoverable**

Citing 28 U.S.C. § 1927's reference to the recovery of "excess costs, expenses, and attorneys' fees reasonably incurred" by an attorney's actionable conduct, Plaintiffs argue that the "motions for sanctions by four law firms on the same issue is neither an excess cost caused by the failure to disclose *to the Court* that there was a signed declaration in addition to Miller's unsigned one nor are such attorneys' fees includable in an award of sanctions." Pls.' Resp. to Credit Suisse's Mot. for Attys' Fees, p. 9 (Docket No. 645); Pls.' Resp. to Cushman & Wakefield's Mot. for Attys' Fees, p. 7 (Docket No. 646). The undersigned disagrees.

First, Plaintiffs ignore the 2013 Order's explicit recitation of how Plaintiffs' counsel's conduct unreasonably multiplied the proceedings:

> Plaintiffs' counsel's failure to file the signed statement when it came into their possession had the inevitable, and intended, effect of unreasonably multiplying the proceedings in this case pertaining to briefing, argument, consideration and decision upon motions to dismiss, and motions to amend. Whether or not Judge Lodge ultimately changed any of his decision upon objections (or reconsideration of his decision) to the undersigned's Report and Recommendation dated February 17, 2012 does not change this analysis or the finding made here. *The failure to file the signed affidavit necessarily meant that the nature of the briefing and the argument, and the court's consideration of the evidence and decision upon the same, was different than it would have been with the addition of such evidence to the record.* The Court acknowledges that Plaintiffs' counsel would have been free to argue, and no doubt would have argued, that the signed statement was of no different evidentiary importance than the unsigned affidavit. But, defense counsel would also have the argument that the signed statement was substantively different, that the characterization of a whistle blower witness worried about retaliation was unfounded, and the Court would have had that full panoply of evidence and argument to consider. *When the signed statement came to light, a new round of motion practice ensued and even the very fact of this Memorandum Decision and Order is evidence that proceedings have been multiplied and additional resources of the parties and the court have been drawn upon.*

3/29/13 MDO, p. 22 (Docket No. 352) (emphasis added). Indeed, it was such conduct that generated Defendants' motions for sanctions and, eventually, the Court's multiple orders

**MEMORANDUM DECISION AND ORDER - 8**

awarding and upholding a corresponding sanctions award. The relief awarded required, in no uncertain terms, Defendants' reimbursement of "attorneys' fees and costs necessitated by the motions filed seeking sanctions as a result of the failure to file the sworn affidavit of Mr. Miller." *Id*. at p. 24. Therefore, the attorneys' fees going into Defendants' motions for sanctions are "excess costs" *caused* by Plaintiffs' sanctioned conduct and are recoverable.[3]

Second, courts within the Ninth Circuit have awarded attorneys' fees associated with prosecuting a successful motion for sanctions. *See, e.g.*, *In re Girardi*, 611 F.3d 1027, 1067 n.53 (9th Cir. 2010) (Special Master, Ninth Circuit Judge Atsushi Wallace, believing "better view" to be recovery of attorneys' fees incurred in sanctions proceedings); *Montoya v. Orange Cnty.*, 2013 WL 6705992, *15 (C.D. Cal. 2013) ("The Court finds that Plaintiff is entitled to an award of attorneys' fees in the amount of $8,000 which Plaintiff incurred in the preparation and filing of this Motion [for Sanctions]."); *In re SPECS*, 2012 WL 5372583, *2 (N.D. Cal. 2012) ("For July 2012, the fees requested relate entirely to Defendants' sanctions motion as well as work regarding Plaintiffs' ongoing document production deficiencies. The court finds that none of the hours sought in July 2012 are unnecessary, duplicative, or excessive, and awards the entire requested amount of $22,175.44."); *Garcia v. Bana*, 2012 WL 2119157, *9 (N.D. Cal. 2012)

---

[3] Plaintiffs also claim that Defendants' respective oppositions to Plaintiffs' subsequent challenges to the 2013 Order (be it a reconsideration of, or an objection to) are similarly not "excess costs" resulting from the decision not to file Mr. Miller's signed May 2011 affidavit. *See* Pls.' Resp. to Credit Suisse's Mot. for Attys' Fees, p. 10 (Docket No. 645) ("Thus, even though no fees can be awarded for *bringing* the motions for sanctions, defending the award of sanctions was *not 'excess* costs, expenses, and attorneys' fees reasonably incurred *because of* the failure to disclose the existence of the signed Miller Declaration to the *Court*.") (emphasis in original); Pls.' Resp. to Cushman & Wakefield's Mot. for Attys' Fees, pp. 8-9 (Docket No. 646) (same). To the contrary, these fees are also the consequence of Plaintiffs' sanctioned conduct and are recoverable. *See* 3/29/13 MDO, p. 25 (Docket No. 352) (implying recovery of costs "directly connected to the motion for sanctions, *and to the follow-up work in response to this ruling*.") (emphasis added).

**MEMORANDUM DECISION AND ORDER - 9**

(sanctions award included "reasonable amount of time for the preparation of this particular motion for sanctions"); *In re NCAA Student-Athlete name & Likeness Licensing Litig.*, 2012 WL 5372477, *7 (N.D. Cal. 2012) ("Accordingly, the Court is inclined to impose monetary sanctions upon Terrell under Rule 37, 28 U.S.C. § 1927, and the Court's inherent powers, requiring payment to CLC of all attorneys' fees and costs that it incurred in filing the instant motion [for sanctions] . . . ."); *Parker v. Upsher-Smith Labs., Inc.*, 2009 WL 418596, *9 (D. Nev. 2009) ("Pursuant to the court's inherent power, 28 U.S.C. § 1927, and LR IA 4-1, plaintiff's counsel shall pay all defendant[s] all attorney's fees and costs incurred in connection with the motion for sanctions . . . .").

In other words, the 2013 Order is not unique in allowing for the recovery of those attorneys' fees associated with bringing an underlying motion for sanctions. With all this in mind, there is no basis to outright preclude Defendants' recovery of attorneys' fees related to their motions. Recovery of such fees was expressly contemplated by the 2013 Order's terms and is permitted within the Ninth Circuit. Plaintiffs' objections are without merit in this respect.

## B.     Defendants Are Not Entitled to *All* of Their Requested Attorneys' Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The product of this computation – the 'lodestar figure' – is a 'presumptively reasonable' fee . . . ." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The Court may adjust the loadstar figure upward or downward based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 10**

1975), that are not subsumed in the loadstar calculation.[4]  Here, Plaintiffs take issue with both of the lodestar factors, claiming that Defendants' attorneys' hourly rates are "grossly excessive" as are the total hours worked on Defendants' motions for sanctions.  *See* Pls.' Resp. to Credit Suisse's Mot. for Attys' Fees, pp. 12-20 (Docket No. 645); Pls.' Resp. to Cushman & Wakefield's Mot. for Attys' Fees, pp. 11-20 (Docket No. 646).  The Court agrees.

     1.     <u>Reasonable Hourly Rate</u>

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).  "[N]ormally the relevant legal community for determining the prevailing market rates for attorneys' fees is the community in which the forum is situated." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  "[R]ates outside the forum may be used if local counsel was unavailable, either because they were unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The hourly rates cited within Defendants' Motions for Attorneys Fees reflect an considerable arc – from $841.50 (for a Paul Hastings partner) to $225.25 (for a Weil Gotshal paralegal).  *See* Credit Suisse's Mem. in Supp. of Mot. for Attys' Fees, pp. 5-6 (Docket No. 551, Att. 1); Cushman & Wakefield's Mem. in Supp. of Mot. for Attys' Fees, pp. 5-6 (Docket No.

---

    [4] *Kerr* lists the following factors as: (1) the time and labor required; (2) the complexity of the case; (3)the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Kerr*, 526 F.2d at 70.

**MEMORANDUM DECISION AND ORDER - 11**

552, Att. 1). Lost in the middle are the hourly rates for each Defendant's local counsel – $335.00 for Credit Suisse's James Martin and Tyler Anderson, and $395.00/$405.00[5] for Cushman & Wakefield's Richard Boardman. *See id.*[6]

This case is complex, with enormous financial stakes here and with potential ripples through other jurisdictions. However, there was nothing particularly thorny, esoteric or cutting-edge about the actual subject of Defendants' Motions for Attorneys' Fees – that is, the complained of conduct, and the question of whether that conduct ran afoul of expected standards. That is to say, whatever expertise or urban marketplace may justify the particular hourly rates charged by Defendants' outside counsel, there was nothing in such expertise or other community's marketplace that was needed for work upon Defendants' motions for sanctions. Therefore, the undersigned must assign an hourly rate consistent with *this* forum, recognizing that the motions for sanctions could have been (and, indeed, were, for a considerable part) largely handled by Defendants' local counsel.

Accordingly, the reasonable attorney rate under the circumstances present here is determined to be the average of Credit Suisse's local counsel's hourly rate ($335.00) and Cushman & Wakefield's local counsel's hourly rate ($395.00)[7] – $365.00. This hourly rate will be applied to the number of attorney[8] hours reasonably expended in connection with Defendants'

---

[5] According to Cushman & Wakefield, the discrepancy in Attorney Boardman's rates is due to different rates billed in 2012 and 2013. *See* Cushman & Wakefield's Mem. in Supp. of Mot. for Atty's Fees, p. 6 (Docket No. 552, Att. 1).

[6] The undersigned's "conservative estimate" of a $300/hour billing rate in the 2013 Order appears to be just that. *See* 3/29/13 MDO, p. 26 (Docket No. 352).

[7] As to Attorney Boardman, the undersigned adopts the lower 2012 hourly rate given that the majority of Mr. Boardman's billed time was incurred for these purposes in 2012.

[8] This applies to all attorneys *except* Moffatt Thomas attorneys James Martin and Tyler Anderson, and Paul Hastings attorney Kimberly Singer whose hourly rates are already lower – $335.00 and $361.25 respectively. Additionally, a flat $150.00 hourly rate will be applied to the hours billed by paralegals Nancy Cade at Weil Gotshal and Manel Wijemanne at Paul Hastings.

**MEMORANDUM DECISION AND ORDER - 12**

motions for sanctions (*see infra*) to arrive at the lodestar figure representing the reasonable attorneys' fees recoverable via Defendants' Motions for Attorneys Fees.

    2.    <u>Hours Reasonably Expended</u>

Courts have discretion in determining the number of hours reasonably expended on a particular case. *See, e.g.*, *Hensley*, 461 U.S. at 437. The fee applicant bears the burden of "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence supporting the hours work." *Id*. "Those hours may be reduced by the court where the documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley*, 461 U.S. at 433-34).

The overall breakdown of Defendants Credit Suisse's and Cushman & Wakefield's billed/requested hours is contained in the following two tables:

CREDIT SUISSE

| Law Firm | Legal Professional and Hours Billed | Total Hours Billed |
|---|---|---|
| Moffatt Thomas (Local Counsel) | James Martin (46.8)<br>Tyler Anderson (11) | 57.8 |
| Weil Gotshal | John O'Connor (14.6)<br>David Sillers (11.6)<br>Olivia Miller (7.6)<br>Matthew Leung (21.7)<br>Nancy Cade (1.0) | 56.5 |
| | **TOTAL:** | **114.3**[9] |

---

[9] This increase in hours from the calculation provided in Credit Suisse's briefing reflects an additional six hours billed for Matthew Leung – time spent preparing for Credit Suisse's Motion for Attorneys' Fees. *See* Credit Suisse's Mot. for Attys' Fees, pp. 6-7 (Docket No. 551, Att. 1).

**MEMORANDUM DECISION AND ORDER - 13**

CUSHMAN & WAKEFIELD

| Law Firm | Legal Professional & Hours Billed | Total Hours Billed |
|---|---|---|
| Perkins Coie (Local Counsel) | Richard Boardman (28.8) | 28.8 |
| Paul Hastings | Donald Morrow (9.9)<br>Barry Sher (7.4)<br>Ryan Fawaz (59.1)<br>Kimberly Singer (9.8)<br>Manel Wijemanne (4.8) | 91.0 |
| | **TOTAL:** | **119.8** |

Relative to these hours, the Court has carefully reviewed the Defendants' billing statements submitted in justification of the requested award of attorneys' fees pursuant to the Court's 2013 Order. *See* Ex. A to Guy Decl. (Docket No. 551, Att. 3); Ex. A to Martin Aff. (Docket No. 551, Att. 5); Ex. A to Morrow Decl. (Docket No. 552, Att. 3); Ex. 1 to Boardman Decl. (Docket No. 552, Att. 5). Additionally, the Court has consulted the helpful templates provided by Plaintiffs, chronologically incorporating into two separate charts, each Defendant's respective law firms' billed time. *See* Stillman Decl. (Docket No. 647); Ferrigno Decl. (Docket No. 648). After doing so, the undersigned is convinced that Defendants' attorneys undertook legitimate legal work and performed it earnestly and in good faith. However, owing to the clear similarities between Credit Suisse's Motion for Order to Show Cause and Cushman & Wakefield's Motion for Sanctions, that work occasionally overlapped to render the *total* number of hours billed (234.1) excessive/unreasonable under the circumstances.

In its "Prayer for Relief," Credit Suisse's Motion for Order to Show Cause asked this Court "to issue an order for the Plaintiffs to show cause as to why they should not be sanctioned for misleading the Court in violation of their duty of candor" and, relatedly, "to order Robert

**MEMORANDUM DECISION AND ORDER - 14**

Huntley to explain under oath his recollection of the facts underlying the Miller affidavits."

Credit Suisse's Mem. in Supp. of Mot. for Order to Show Cause, p. 19 (Docket No. 253, Att. 1).

Similarly, Cushman & Wakefield's Motion for Sanctions concluded by saying:

> Plaintiffs' failure to bring to the Court's attention their receipt of the signed Miller affidavit constitutes fraud on this Court. Plaintiffs' continued misrepresentations as to what Miller said or meant by his statements at the March 2011 meeting only perpetuated and magnified this fraud. This deception by Plaintiffs' counsel cannot stand. They have deliberately misled the Court about the state of the record for the last year. Sanctions should be imposed pursuant to the Court's inherent powers, and the remainder of the TAC should be dismissed in its entirety as to C&W with prejudice (if not already dismissed pursuant to C&W's motion for reconsideration). The Court also should impose monetary sanctions against Plaintiffs' counsel.

Mem. in Supp. of Mot. for Sanctions, p. 20 (Docket No. 246, Att. 1). These motions essentially asked for the same thing – for Plaintiffs to be sanctioned – and the Court considered them in unison in its subsequent 2013 Order. Therefore, it should be no surprise that Defendants' attorneys – each pulling in the same direction with respect to their interconnected motions for sanctions (each premised upon the exact same reasons) – would not only be performing analogous legal work, but doing that work in concert with one another.[10] There is nothing wrong

---

[10] For example, the attorneys for each side would frequently consult with one another regarding their motions for sanctions. *See, e.g.*, 11/8/12 Martin Entry, attached as Ex. A to Martin Aff. (Docket No. 551, Att. 5) ("Receive and review order setting hearing on C&W's motion for sanctions and CS's motion for order to show cause and analyze issues regarding same"); *id*. at 11/9/12 ("Follow up with best strategy for handling of hearing on motion for sanctions and motion for order to show cause with Cushman's counsel . . . "); *id*. at 11/14/12 Martin Entry ("Analyze issues with Cushman's local counsel on handling of sanctions motions"); *id*. at 11/29/12 Martin Entry ("E-mail exchanges and conferences with defense counsel on strategy for hearing next week"); *id*. at 12/3/12 Martin Entry ("Conference with all defense counsel to discuss strategy for this week's hearing"); *id*. at 12/4/12 Martin Entry ("Prepare for hearing tomorrow on sanctions motions and motion for order to show cause . . . and e-mail and conferences with Cushman's counsel"); *id*. at 12/6/12 Martin Entry ("Receive and review and e-mail exchanges with other defense counsel plaintiff's motion for leave to file expedited five page brief"); *id*. at 12/7/12 Martin Entry ("E-mail exchange with co-counsel and Cushman's counsel regarding today's filings"); *id*. at 3/29/13 Martin Entry ("Receive, review, and e-mail exchanges with Court staff, Cushman's counsel and co-counsel . . . "); *id*. at 4/1/13 Martin Entry ("E-mail exchange with Cushman's counsel regarding sanction order"); *id*. at

**MEMORANDUM DECISION AND ORDER - 15**

with such an approach in general; to be sure, the Court understands the parties' interest in preserving their own rights and putting their own "gloss" on the issues before the Court, even if those interests are shared. But, at the end of the day, Defendants' conduct as to their motions for sanctions (and with their *overall* defense of this action thus far) marched in lock-step (and shared conversation) with each other. Such a "belt and suspenders" approach may be justified to meet the client's request, or it may be justified out of an abundance of caution and exhaustive

---

4/8/13 Martin Entry ("Receive, review and e-mail exchanges with Cushman's counsel . . . "); *id*. at 4/9/13 Martin Entry ("E-mail exchanges and conferences with defense counsel regarding best approach to motion to Stay sanction . . . "); *id*. at 4/15/13 Martin Entry ("Analyze issues with Cushman's counsel and R. Guy on whether to file response to motion to stay and what to file if Cushman does file objection"); *id*. at 4/17/13 Martin Entry ("Analyze issues and e-mail exchanges regarding Cushman attorney's calls to Miller and latest development on that front"); *id*. at 4/17/13 Martin Entry ("Analyze issues and e-mail exchanges with defense counsel regarding latest communications on Miller affidavit chronology . . . "); *id*. at 4/22/13 Martin Entry ("Receive, review and analyze issues and e-mail exchanges with defense counsel regarding the three attorney affidavits filed this afternoon by plaintiffs' counsel . . . "); *id*. at 4/23/13 Martin Entry ("Receive, review and e-mail exchanges with defense counsel regarding today's various filings by plaintiff's counsel . . . "); *id*. at 4/23/13 Martin Entry ("Receive, review and e-mail exchange with R. Guy and R. Boardman regarding order issued by Court granting stay motion"); *id*. at 4/25/13 Martin Entry ("E-mail exchanges with defense counsel on strategy for responding to motion for reconsideration . . . "); *id*. at 4/30/13 Martin Entry ("Extended conference with R. Boardman regarding best strategy to deal with plaintiffs' 'motion for reconsideration' . . . "); *see also* 6/27/12 Boardman Entry, attached as Ex. 1 to Boardman Decl. (Docket No. 552, Att. 5) ("Emails and conferences with co-counsel and co-defendant's counsel regarding [opposition to motion for sanctions]"); *id*. at 11/9/12 Boardman Entry ("E-mails with co-defendant's counsel regarding arguments on sanctions motion . . . "); *id*. at 12/3/12 Boardman Entry ("conference call with defense counsel regarding arguments on motion; emails with co-defendant's counsel regarding presentation of arguments, visual aids and related issues"); *id*. at 12/4/12 Boardman Entry ("emails and conference with co-defendant's counsel regarding [sanctions motion and show cause motion]"); *id*. at 12/5/12 Boardman Entry ("emails with co-counsel and co-defendant's counsel regarding hearing"); *id*. at 12/14/12 Boardman Entry ("Emails and conference with co-defendant's counsel regarding sanctions motion hearing and supplemental briefing"); *id*. at 3/29/13 Boardman Entry ("emails with co-counsel and co-defendant's counsel regarding [Court's Order on Motion for Sanctions]"); *id*. at 4/1/13 Boardman Entry ("conference with co-defendant's counsel regarding sanctions Order"); *id*. at 4/24/13 Boardman Entry ("emails with co-counsel and co-defendant's counsel regarding response to [2013 Order]"); *id*. at 4/26/13 Boardman Entry ("emails with co-counsel regarding revisions to draft memorandum; receive and review co-defendant's memorandum in response").

**MEMORANDUM DECISION AND ORDER - 16**

advocacy.  Or, it may be more than was necessary and in that setting, as in any similar setting, the Court is not required to impose the full weight of such an effort upon the party against whom a fee award is made.

In the exercise of its discretion, the Court declines to turn the fee award here into a figurative wrecking ball.  In choosing that course, the Court notes that it is difficult to parse out the overlapping instances of "reviewing," "analyzing," "discussing," and/or "conferencing" from Defendants' billing statements.  Fortunately, "trial courts need not, and indeed should not" moonlight as a "green-eyeshade accountant" to make sense of things to resolve fee petitions. *Latta v.* Otter, 2014 WL 7245631, *10 (D. Idaho 2014) (quoting *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfections." *Id*.  Accordingly, the Court will impose a 30% reduction to Defendants' counsels' requested hours to achieve a reasonable number of expended hours, multiplied by the above-referenced reasonable hourly rate.

The following charts summarize the Court's calculations of the lodestar figures for Defendants Credit Suisse and Cushman & Wakefield, recoverable here as Defendants' reasonable attorneys: fees:

## CREDIT SUISSE

| Law Firm | Legal Professional | Billing Rate | Hours Reasonably Expended | Lodestar |
|---|---|---|---|---|
| Moffatt Thomas | James Martin Tyler Anderson | $335.00 $335.00 | 32.8 (46.8 x .70) 7.7 (11 x .70) | $10,988.00 $2,579.50 |
| Weil Gotshal | John O'Connor David Sillers Olivia Miller Matthew Leung Nancy Cade | $365.00 $365.00 $365.00 $365.00 $150.00 | 10.2 (14.6 x .70) 8.1 (11.6 x .70) 5.3 (7.6 x .70) 15.2 (21.7 x .70) .7 (1.0 x .70) | $3,723.00 $2,956.50 $1,934.50 $5,548.00 $105.00 |
|  |  |  |  |  |
|  |  |  | **TOTAL** | **$27,834.50** |

**MEMORANDUM DECISION AND ORDER - 17**

CUSHMAN & WAKEFIELD

| Law Firm | Legal Professional | Billing Rate | Hours Reasonably Expended | Lodestar |
|---|---|---|---|---|
| Perkins Coie | Richard Boardman | $365.00 | 20.2 (28.8 x .70) | $7,373.00 |
| Paul Hastings | Donald Morrow<br>Barry Sher<br>Ryan Fawaz<br>Kimberly Singer<br>Manel Wijemanne | $365.00<br>$365.00<br>$365.00<br>$361.25<br>$150.00 | 6.9 (9.9 x .70)<br>5.2 (7.4 x .70)<br>41.4 (59.1 x .70)<br>6.9 (9.8 x .70)<br>3.4 (4.8 x .70) | $2,518.50<br>$1,898.00<br>$15,111.00<br>$2,493.00<br>$510.00 |
| | | | | |
| | | | **TOTAL** | **$29,903.50** |

### III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Credit Suisse's Motion for Attorneys' Fees (Docket No. 551) is GRANTED. The previously-identified Plaintiffs' counsel, jointly and severally, shall pay $27,834.50 to Credit Suisse.

2.  Cushman & Wakefield's Motion for Costs and Attorney Fees in Accordance with Sanctions Order (Docket No. 552) is GRANTED. The previously-identified Plaintiffs' counsel, jointly and severally, shall pay $29,903.50 to Cushman & Wakefield

DATED:  **September 8, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**