UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| L.J. GIBSON, et al.,<br><br>  Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE AG, a Swiss corporation, et al.,<br><br>  Defendants, | Case No.: 1:10-cv-00001-JLQ<br><br>**ORDER ON REMAND**<br><br>**and**<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION TO (1) DISBURSE FINES FROM REGISTRY OF THE COURT; (2) DISCHARGE SANCTIONS ORDER; AND (3) VACATE SANCTIONS ORDERS**<br><br>**(Docket No. 866)** |

The Court issues the following Order on Remand in response to the Ninth Circuit's April 26, 2018 Memorandum Opinion. *See Gibson v. Credit Suisse Group Sec. (USA) LLC*, 733 Fed. Appx. 342 (9th Cir. 2018). Also pending is the Motion of Robert Huntley, James Sabalos, Michael J. Flynn, Christopher J. Conant, and Philip H. Stillman (present and former counsel of record for Plaintiffs, collectively referred to as "Movants") to "(1) Disburse Fines from Registry of the Court; (2) Discharge Sanctions Order; and (3) Vacate Sanctions Orders" (the "Motion"). *See* Mot. (Dkt. 866). Having carefully considered the record, heard oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

I. **RELEVANT BACKGROUND**

1.   On March 29, 2013, the undersigned issued a Memorandum Decision and Order (the "Sanctions Order"), (1) granting Defendant Cushman & Wakefield's Motion for Sanctions, (2) granting Defendant Credit Suisse's Motion for Order to Show Cause, and (3) denying Plaintiffs' Motion for Award of Attorneys' Fees Re: Motions by Defendants. *See* 3/29/13 MDO (Dkt. 352). The Sanctions Order addressed the circumstances surrounding certain of Plaintiffs'

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 1**

counsel's (Movants) conduct and representations relating to Michael L. Miller's declaration, affidavit, and deposition testimony. *See generally id*. Ultimately, this Court was "convinced, after considering the written and oral arguments of counsel, that there has been a material failure on the part of Plaintiffs' counsel in their responsibilities to this Court, as officers of this Court, in the circumstances underlying the pending motions." *See id*. at pp. 17-18. The Court found that, because Plaintiffs' counsel repeatedly relied upon and made representations on the record regarding a declaration attributed to Mr. Miller but unsigned by him, they had a duty to inform the Court and opposing counsel when an affidavit that Mr. Miller subsequently did sign was materially different. *See id*. at pp. 18-23. Specifically, the undersigned concluded:

> Such a failure is an abuse of the duties owed to the Court and constituted or was tantamount to bad faith. Such a failure delayed and hampered the litigation process by presenting a flawed and arguably false record before the Court, while at the same time asking the court to focus upon the flawed portion of that same record as a basis for deciding critical motions in the case. The Court properly can sanction such failures by Plaintiffs' counsel under its inherent powers.
>
> Plaintiffs' counsel had a duty under Idaho Rule of Professional Conduct 3.3(a)(1) not to knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Plaintiffs' counsel's failure to file the signed statement of Mr. Miller, once it was received and in the context of representations in writing and orally about the facts and circumstances of Mr. Miller's unsworn testimony, constituted the equivalent of an affirmative misrepresentation. The signed "affidavit" was not the same document as the unsigned declaration. The statement of fact that the witness, Mr. Miller, would not sign a statement under oath because of fear of retaliation was no longer true, even if true at the outset, at the moment he did sign the affidavit. Further, Plaintiffs' counsel's failure to remedy such matters is a breach of a lawyer's "duty of candor to the tribunal" which warrants "reasonable remedial measures."
>
> Plaintiffs' counsel's failure to file the signed statement when it came into their possession had the inevitable, and intended, effect of unreasonably multiplying the proceedings in this case pertaining to briefing, argument, consideration and decision upon motions to dismiss, and motions to amend. Whether or not Judge Lodge ultimately changed any of his decision upon objections (or reconsideration of his decision) to the undersigned's Report and Recommendation dated February 17, 2012 does not change this analysis or the finding made here. The failure to file the signed affidavit necessarily meant that the nature of the briefing and the

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 2**

> argument, and the court's consideration of the evidence and decision upon the same, was different than it would have been with the addition of such evidence to the record. The Court acknowledges that Plaintiffs' counsel would have been free to argue, and no doubt would have argued, that the signed statement was of no different evidentiary importance than the unsigned affidavit. But, defense counsel would also have the argument that the signed statement was substantively different, that the characterization of a whistleblower witness worried about retaliation was unfounded, and the Court would have had that full panoply of evidence and argument to consider. When the signed statement came to light, a new round of motion practice ensued and even the very fact of the Memorandum Decision and Order is evidence that proceedings have been multiplied and additional resources of the parties and the court have been drawn upon.
>
> The Court finds that the failure of Plaintiffs' counsel to file the signed, sworn affidavit in the circumstances described in this Decision was done recklessly at a minimum, and that such reckless conduct on the part of lawyers to this case, as officers of the court, justifies a finding that the attorneys are personally liable for excessive costs associated with such conduct. There is no question but that Plaintiffs' counsel was aware of the signed, sworn affidavit. Indeed, the record indicates that they were in repeated contact with Mr. Miller requesting him to make the sworn statement, so that it could be submitted to the Court. Yet, after submitting an unsworn declaration, and representing that a sworn statement could not be obtained because of the witness's fear of retaliation, they failed to file the actual sworn affidavit when it came into their possession. Such conduct is reckless at a minimum. Therefore, the Court finds that an award of sanctions against Plaintiffs' counsel is also appropriate under 28 U.S.C. § 1927.

*Id.* at pp. 21-23 (internal citations omitted).

2. Having determined that an award of sanctions against Plaintiffs' counsel was justified under (1) the Court's inherent powers, (2) Idaho Rule of Professional Conduct 3.3, and (3) 28 U.S.C. § 1927, the undersigned ordered that Plaintiffs were precluded from using testimonial evidence of Mr. Miller for any purpose unless such evidence was obtained in deposition or courtroom testimony. *See id.* at pp. 23-24. Relevant here, the Court also imposed monetary sanctions upon certain of Plaintiffs' counsel (Movants) as follows:

> Plaintiffs' counsel, jointly and severally, shall pay a sum to each Defendant – Credit Suisse and [Cushman & Wakefield] – to be determined upon consideration of appropriate evidence, to recompense said Defendant for the attorneys' fees and costs necessitated by the motions filed seeking sanctions as a result of the failure to file the sworn affidavit of Mr. Miller.

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 3**

. . . .

> Plaintiffs' counsel is each individually sanctioned in the sum of $6,000.00. The Court arrives at that sum by considering the very serious nature of the decision not to file the sworn affidavit of Mr. Miller, or to advise opposing counsel of the existence of that sworn affidavit, all as further previously discussed in this Decision. Such failure unnecessarily multiplied the proceedings in this lawsuit, caused an unnecessary and unjustifiable use of the resources of the parties and the Court, constituted a material misrepresentation of the evidentiary record, and violated an attorney's duty of candor to the Court. Any sanction for those serious professional failings must serve both as a sanction for the fact of the improper conduct and as a deterrent to the lawyer, and other lawyers, who might consider taking such actions in the future.

*Id*. at pp. 24-25.

3. On April 8, 2013, in anticipation of objecting to the Sanctions Order, Plaintiffs moved to stay the briefing and payment protocols outlined therein. *See* Mot. to Stay (Dkt. 358). Plaintiffs formally objected to the Sanctions Order on April 12, 2013. *See* Opp. to Sanctions Order (Dkt. 367). On April 22, 2013, the Court stayed the deadlines referenced within the Sanctions Order, pending resolution of Plaintiffs' objections. *See* 4/22/13 Order (Dkt. 384).

4. On April 24, 2013, Plaintiffs moved to reconsider the Sanctions Order. *See* Mot. to Recon. (Dkt. 392). On August 15, 2013, the undersigned denied Plaintiffs' request for reconsideration. *See* 8/15/13 Order (Dkt. 408).

5. On October 17, 2014, U.S. District Judge Edward J. Lodge affirmed the Sanctions Order (and likewise denied Plaintiffs' objections to the same). *See* 10/17/14 Order (Dkt. 531). In doing so, Judge Lodge agreed that Plaintiffs' counsel's conduct was sanctionable in the above-referenced respects under (1) Idaho Rule of Professional Conduct 3.3, (2) 28 U.S.C. § 1927, and (3) the Court's inherent powers. *Id*. at pp. 7-23. Additionally, Judge Lodge lifted the stay. *See id*. at p. 23.

6. On November 7, 2014, Plaintiffs' counsel appealed the March 29, 2013 Sanctions Order, as well as Judge Lodge's October 17, 2014 Order affirming the Sanctions Order. *See* Not.

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 4**

of Appeal (Dkt. 540). On December 3, 2014, the U.S. Court of Appeals for the Ninth Circuit dismissed Plaintiffs' appeal for lack of jurisdiction. *See* Order (Dkt. 553).

7.  On September 8, 2015, the undersigned granted Credit Suisse's and Cushman & Wakefield's motions for costs and attorneys' fees, ordering that "[t]he previously-identified Plaintiffs' counsel, jointly and severally, shall pay $27,834.50 to Credit Suisse . . . [and] $29,903.50 to Cushman & Wakefield." 9/8/15 MDO, p. 18 (Dkt. 674). The sanction represented by the reimbursement of attorneys' fees to Credit Suisse and Cushman & Wakefield thus totaled $57,738.00. *See id*.

8.  On October 28, 2015, Plaintiffs moved to reconsider Judge Lodge's October 17, 2014 Order affirming the Sanctions Order. *See* Mot. to Recon. (Dkt. 706). On February 2, 2016, Judge Lodge denied Plaintiffs' request for reconsideration. *See* 2/2/16 Order (Dkt. 777).

9.  On July 27, 2016, U.S. District Judge Justin L. Quackenbush[1] granted Defendants' Motions for Summary Judgment. *See* 7/27/16 MDO (Dkt. 815). On August 2, 2016, the Court issued a Judgement in Defendants' favor, dismissing Plaintiffs' Fifth Amended Complaint and the claims therein with prejudice. *See* 8/2/16 J. (Dkt. 816).

10. On August 17, 2016 and August 23, 2016,[2] Plaintiffs' counsel appealed (1) the undersigned's March 29, 2013 Sanctions Order, (2) Judge Lodge's October 17, 2014 Order affirming the Sanctions Order, (3) the undersigned's September 8, 2015 Order granting Defendants' motions for costs and attorneys' fees, and (4) Judge Lodge's February 2, 2016

---

[1] On October 17, 2014, this action was reassigned to Judge Quackenbush for all further proceedings. *See* Order of Reassignment (Dkt. 532). Additionally, the March 10, 2010 Order of Referral for all pretrial matters to the undersigned was vacated. *See id*.

[2] By this time, the relationship between Plaintiffs' counsel changed, with attorneys Conant, Flynn, and Stillman identifying themselves as "former counsel for Plaintiffs." *Compare* Not. of Appeal (Dkt. 822), *with* Not. of Appeal (Dkt. 819); *see also* Not. of Partial Sub. (Dkt. 798). Hence, the two separate (but fundamentally identical) Notices of Appeal.

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 5**

denial of Plaintiffs' efforts to reconsider his October 17, 2014 Order affirming the Sanctions Order. *See* Not. of Appeal (Dkt. 819 & 822).[3]

11. On April 26, 2018, the Ninth Circuit upheld the ruling that Plaintiffs' counsel acted in bad faith and affirmed the Court's award of attorneys' fees. *See* Mem., pp. 2-7 (Dkt. 859). However, only as to the Court's imposition of sanctions in the amount of $6,000 per attorney, the Ninth Circuit vacated and remanded, stating (and instructing) as follows:

> Next Plaintiffs' counsel argue that the $6,000 fines were improper because they were punitive, and Plaintiffs' counsel were entitled to additional due process protections before the imposition of such a penalty. The process due to Plaintiffs' counsel depends on the nature of the fine. If the fine is payable to the court and intended to compensate the court for costs arising from the sanctionable behavior, it is civil in nature and the sanctioned party is entitled only to notice and an opportunity to be heard. By contrast, a non-compensatory fine is criminal in nature and when a district court imposes such a fine, the court "must provide the same due process protections that would be available in a criminal contempt proceeding." Among those due process protections is that guilt must be proven beyond a reasonable doubt. If, however, a court imposes a small fine commensurate with a petty offense, due process does not require a full jury trial.
>
> Plaintiffs' counsel was given notice and an opportunity to be heard. Hence, they received sufficient due process as to any portion of the fines that was compensatory. Here, the district court concluded that the $6,000 fines were "designed in part to account for the cost of judicial resources unnecessarily expended as a result of Plaintiffs' counsel's actions." However, the district court did not express a view regarding what part of those fines was necessary to compensate the court. We therefore vacate the sanctions order as to the $6,000 fines and remand so the district court may determine if any portion of the fines is non-compensatory. If any portion of the fines is non-compensatory, then that portion would be criminal in nature and would be subject to the additional due process protection of proof beyond a reasonable doubt. The district court appears to have applied only a "clear and convincing" standard.
>
> For the preceding reasons, we affirm the award of attorneys' fees. We vacate and remand with regard to the $6,000 fines. The district court should assess whether any part of the fines is non-compensatory, and if so, Plaintiffs' counsel should be

---

[3] On August 23, 2016 and August 29, 2016, attorneys Huntley and Sabalos also appealed Judge Quackenbush's August 2, 2016 Judgment. *See* Not. of Appeal (Dkt. 823 & 825). Though not pertinent to the instant Decision, on April 26, 2018, the Ninth Circuit affirmed Judge Quackenbush's grant of summary judgment. *See* Mem. (Dkt. 858).

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 6**

>   afforded the due process protections appropriate for a petty criminal offense, including proof beyond a reasonable doubt.

*Id*. at pp. 5-6 (internal citations omitted); *see also* Mandate (Dkt. 864) ("The judgment of this Court [(Ninth Circuit)], entered April 26, 2018, takes effect this date [(June 14, 2018)] . . . .").

      12.     On July 9, 2018, Judge Quackenbush referred the "assessment of fines" to the undersigned, reasoning that his assignment to the action followed the Sanctions Order. *See* Order, p. 2 (Dkt. 865) ("The assessment of fines occurred before the undersigned was assigned this case.  In overruling Plaintiffs' objections to Magistrate Judge Bush's Order, District Court Judge Lodge stated the purpose of the sanctions paid to the Court are designed in part to account for the cost of judicial resources unnecessarily expended as a result of Plaintiffs' counsel's actions.  Rather than attempting to determine the purpose behind fines this court did not set, the reasonable course of action is to refer this issue to Magistrate Judge Bush, who is best positioned to assess the nature of the fines he imposed.") (quotation marks and citation omitted).

      13.     On July 17, 2018, Movants filed the pending Motion to "propose a conclusion to the entirety of the sanctions matter in an effort to avoid yet more additional protracted litigation and concomitant expense of proceedings before the Magistrate, this Court and potentially the Ninth Circuit to finally bring this unfortunate chapter of this case to a conclusion." Mot., p. 3 (Dkt. 866).  Movants claim that, "because the Ninth Circuit vacated the Sanctions Order regarding the fine, Movants are entitled to have those funds released." *Id*.  They specifically move the Court for an order:

    (a)    Directing the Clerk of the Court to disburse the $30,000.00 in fines that the sanctioned counsel has cumulatively paid into the Registry of the Court to the non-moving parties as partial payment of the monetary sanctions – specifically, $15,000.00 of those funds to Defendant Credit Suisse and the other $15,000.00 to Defendant Cushman & Wakefield;

    (b)    Vacating all proceedings pursuant to the Ninth Circuit mandate contingent upon Movant's waiver of any right to further appeal; and

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 7**

  (c)  Vacating all further sanctions proceedings and prior sanctions orders, expressly contingent upon Movants' payment of the remaining $27,738.00 to the Defendants.

*Id.* In summary, Movants seek to avoid further proceedings by having the Court (1) vacate that portion of the Sanctions Order which imposed sanctions totaling $30,000.00 ($6,000.00 per attorney); (2) release and redirect those funds (already paid by Movants and currently held by the Clerk of the Court) as partial payment toward the award of attorneys' fees owing to Defendants pursuant to the Sanctions Order; and (3) issue a *vacatur* of all existing sanctions orders conditioned upon the satisfaction of the payment of $57,738.00 (the total attorneys' fee award) to Defendants.[4]

  14.  The Court held a hearing on November 14, 2018 at which time all Movants appeared telephonically. *See* 11/14/18 Minute Entry (Dkt. 883).

## II. DISCUSSION

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R.*, 370 U.S. 626, 630-31 (1962)). The

---

[4] Defendants take no position on the remanded issue (the $6,000.00 per attorney sanction). *See* Jnt. Resp. to Mot., p. 3 (Dkt. 867) ("Defendants are not in a position to determine the costs incurred by the Court, and consider that issue to be within the Court's sole prerogative to decide."). However, Defendants point out that (1) if some or all of the $30,000.00 sanction is determined to be compensable, those monies are not available to satisfy the attorneys' fee award, and (2) there is no basis to vacate all sanctions orders upon Movants' payment of the total attorneys' fee award. *See id.*

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 8**

inherent power of the federal courts includes the power to "control admission to its bar and to discipline attorneys who appear before it," but the Supreme Court cautioned "this power 'ought to be exercised with great caution.'"  *Chambers*, 501 U.S. at 43 (quoting *Ex parte Burr*, 22 U.S. (9 Wheat) 529, 531 (1824)).  Because of the potency of inherent powers, a court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction.  *See Chambers*, 501 U.S. at 44-45.  Furthermore, in invoking its inherent power, a court "must comply with the mandates of due process." *Id*. at 50.  Thus, before a district court may impose sanctions, the individual must receive notice that sanctions against him are being considered and an opportunity to be heard.  *See id*. at 56-57.

Here, the Ninth Circuit agreed with this Court that sanctions against Movants were appropriate.  *See* Mem., p. 4 (Dkt. 859) ("We cannot say that the district court abused its discretion or committed legal error in concluding that Plaintiffs' counsel acted in bad faith, and hence could be sanctioned under the court's inherent powers and § 1927.").  Moreover, the Ninth Circuit confirmed that the Court provided Movants with notice and an opportunity to be heard before the Court sanctioned Movants as described in the Sanctions Order.  *See id*. at p. 6 ("Plaintiffs' counsel was given notice and an opportunity to be heard.").  Therefore, the Ninth Circuit noted that Movants "received sufficient due process as to any portion of the fines that was compensatory." *Id*.

There is no question that the sanction reflected by the reimbursement of Defendants' attorneys' fees is compensatory and thus proper.  *See id*. at pp. 5-6.  However, as to the $6,000.00 per attorney sanction, the Circuit panel directed this Court to identify whether it also was compensatory, in part or in whole, and similarly appropriate in the above-described setting. *See id*. at p. 6 ("However, the district court did not express a view regarding what part of those fines was necessary to compensate the court.  We therefore vacate the sanctions order as to the

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 9**

$6,000 fines and remand so the district court may determine if any portion of the fines is non-compensatory. If any portion of the fines is non-compensatory, then that portion would be criminal in nature and would be subject to the additional due process protection of proof beyond a reasonable doubt."). In response to that directive on remand and based upon the reasons described to follow, this Court rules that the separate, non-attorneys' fees sanctions were also compensatory in nature and appropriate under the Court's inherent powers.

"If the fine is payable to the court and intended to compensate the court for costs arising from the sanctionable behavior, it is civil in nature and the sanctioned party is entitled only to notice and an opportunity to be heard." *Id*. at p. 5 (citing *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110-12 (9th Cir. 2005)). To be clear, the at-issue sanctions squarely related and corresponded to the impact that Movants' sanctioned conduct had on the Court. The Court has consistently stated as much throughout these proceedings:

- "Such a failure *delayed and hampered the litigation process* by presenting a flawed and arguably false record before the Court, while at the same time *asking the Court to focus upon the flawed portion of that same record as a basis for deciding critical motions in the case*." 3/29/13 MDO, p. 21 (Dkt. 352) (emphasis added).

- "Plaintiffs' counsel's failure to file the signed statement when it came into their possession *had the inevitable, and intended, effect of unreasonably multiplying the proceedings in this case pertaining to briefing, argument, consideration and decision upon motions to dismiss, and motions to amend*." *Id*. at p. 22 (emphasis added).

- "The failure to file the signed affidavit *necessarily meant that the nature of the briefing and the argument, and the Court's consideration of the evidence and decision upon the same, was different than it would have been with the addition of such evidence to the record*." *Id*. (emphasis added).

- "When the signed statement came to light, a new round of motion practice ensued and even the very fact of this Memorandum Decision and Order is evidence that *proceedings have been multiplied and additional resources of the parties and the court have been drawn upon*." *Id*. (emphasis added).

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 10**

- "Such failure unnecessarily multiplied the proceedings in this lawsuit, caused an unnecessary and unjustifiable use of the resources of the parties and the Court, constituted a material misrepresentation of the evidentiary record, and violated an attorney's duty of candor to the Court." *Id*. at p. 25 (emphasis added).

- "The character, purpose, and nature for the imposition of sanctions ordered in this case was . . . *to compensate the Defendants and the Court for the unnecessary expenditure of resources caused as a result of Plaintiffs' counsel's conduct*." 10/17/14 Order, p. 19 (Dkt. 531) (emphasis added).

- "Moreover, the purpose of the sanctions paid to the Court *are designed in part to account for the cost of judicial resources unnecessarily expended as a result of Plaintiffs' counsel's actions*." *Id*. at p. 21 (emphasis added).

It is true that these "costs" to the Court are not capable of precise calculation in a strict accounting sense as in *Lasar* [5] (this situation, of course, developed in the course of heatedly contested motion practice, not a trial). But that does not mean that sanctions (separate from an award of attorneys' fees) are not possible under a court's inherent authority. To be sure, "*an inherent-power sanction may be payable to the court, and it may take account of the court's inconvenience and the waste of judicial resources*" caused by a party. *Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 889-90 (10th Cir. 2012) (emphasis added and citing *Chambers*, 501 U.S. at 44-45 (a "primary aspect" of district court's discretion in exercising inherent powers "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process")); *see also Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995) ("[E]ven if it were error for the district court to base its sanction under § 1927 on the time it spent on the discovery dispute, the sanction can be upheld under the court's inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings.") (citing *Chambers*, 501 U.S. at 50 (recognizing inherent power of courts to

---

[5] In *Lasar*, the monetary sanctions (payable to the district court) were clearly compensatory in that they reimbursed the district court for the quantifiable jury costs incurred as a result of a mistrial. *See Lasar*, 399 F.3d at 1111-12, 1118.

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 11**

sanction conduct abusive of judicial process and rejecting arguments that statutory sanctioning powers displace this inherent power)); *Ali v. Mukasey*, 277 Fed. Appx. 741, 742 (9th Cir. 2008) (imposition of $1,000.00 monetary sanction payable to court for violation of local rule (overlength brief) required only notice and opportunity to be heard).[6]  That is the situation presented here, because in being less than candid and forthcoming regarding the purported statement of a witness heavily relied upon by Movants (and described as a "whistleblower" with evidence critical to the case), Movants unnecessarily and improperly misdirected the work of the Court, inconvenienced the Court, hampered the Court in the performance of its duties, and wasted the limited time and resources of the Court (*see supra*).[7]  Such circumstances inevitably and inescapably constitute compensable "costs" in the same way that Defendants' attorneys' fees were awarded and which the $6,000.00 per attorney sanction directly addresses.[8]  "[A] court's

---

[6] Although the Ninth Circuit has held that district courts should not award sanctions payable to the court "to compensate the judicial branch for being badly used by counsel," it did so only in the context of an attorney's negligence. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1475-76, 1480 ("We think it inappropriate for the court system to claim 'compensation' for being 'ill-used.'  The court system is not a private party that needs to be reimbursed for its inconvenience.  Consequently, *absent grossly negligent, reckless, or willful conduct*, monetary penalties such as jury costs or judicial sanctions cannot be fairly levied against counsel for a violation of the local rules.") (emphasis added).  Except here, the Court sanctioned Movants' bad faith conduct.  *See supra*.  Therefore, *Zambrano* does not apply.  *See Lasar*, 399 F.3d at 111, n.6 ("Here, the compensatory sanctions ordered payable to the district court were based on Sutter's bad faith violation of the in limine alcohol-related order.  Thus, *Zambrano* does not foreclose the result we reach today.").

[7] In deliberately misleading the Court about the true state of the record, the Court's previous work on dispositive motions and motions to amend (to include the consideration of the corresponding briefing and oral arguments) were compromised, leading to Defendants' motions for reconsideration (with additional rounds of briefing and oral argument).  Ultimately, Defendants filed motions seeking sanctions because of the failure to file Mr. Miller's sworn affidavit, leading to still more briefing, oral argument, post-hearing briefing, and, finally, the Sanctions Order.

[8] In 1997 dollars, the estimated per hour per judge cost of operating federal courts amounted to $1,750.00.  *See Specialized Plating, Inc. v. Fed. Envtl. Servs., Inc.*, 975 F. Supp. 397, 398-401 (D. Mass. 1997) ("The judicial system of dispute resolution is not cost free and

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 12**

decision to assess costs has 'never . . . been considered [a] criminal' sanction." *Lasar*, 399 F.3d at 1111 (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994)); *see also In re Engle Cases*, 283 F. Supp. 3d 1174, 1207 (M.D. Fla. 2017) ("Because the sanctions imposed here are directly tied to the consumption of scarce public resources, the sanction is compensatory, which places it in the category of civil sanctions.") (citing *Bagwell*, 512 U.S. at 829 (contempt fine "is considered civil and remedial if it . . . 'compensate[s] the complainant for losses sustained.'") (quoting *United States v. Mine Workers*, 330 U.S. 258, 303-04 (1947))).

Also under their inherent powers, courts have separately imposed monetary sanctions not to compensate an injured party (or court) per se, but rather to vindicate their authority or deter future misconduct. *See Miller v. City of Los Angeles*, 661 F.3d 1024 (9th Cir. 2011). The Court made these points when sanctioning Movants as well:

- "Any sanction for those serious professional failings must serve both as a sanction for the fact of the improper conduct and as a deterrent to the lawyer,

---

those who abuse it through misconduct impose direct costs on the law abiding taxpayers who support it."); *but see Shire LLC v. Abhai, LLC*, 298 F. Supp. 3d 303, 336-37 (D. Mass. 2018) ("A conservative yet measurable estimate of the per judge and support staff work day cost to the American tax payers in FY 2017 is $5,000 per day."). These are unquestionably inexact measures, but they nonetheless offer a template for accounting for the Court's time (and commensurate cost) in addressing Movants' sanctionable conduct. *See Resolution Trust*, 73 F.3d at 267 ("We noted that while the cost of the court's inconvenience is [not] a precise measure to be routinely awarded in each and every case of unwarranted delay . . . ., we do not think that cognizance of the costs imposed upon the judicial system are irrelevant in determining the seriousness and extent of the sanction appropriate in particular cases.") (internal quotation marks and citation omitted); *see also, e.g.*, *Fox v. Vice*, 563 U.S. 826, 838 (2011) (in attorneys' fees context: "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation. We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.") (internal quotation marks and citations omitted).

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 13**

and other lawyers, who might consider taking such actions in the future." 3/29/13 MDO, p. 25 (Dkt. 352).

- "That Plaintiffs' counsel have represented to the Court in their pleadings and filings in this case, that Plaintiffs' claims carry millions of dollars of alleged damages, involving transactions occurring at high-end resort properties in multiple geographic locations, and with claims that conceivably could have been brought in courts other than the District of Idaho; [and] [t]hat in order for a sanction to have a deterrent effect, it should carry a significant enough economic impact upon the individual receiving the sanction so as to cause that individual, and others who may learn of the sanction, to make decisions in the future that are not likely to expose one to the possibility of receiving such a sanction[.]" *Id*. at p. 26 (emphasis added).

- "That, therefore, the Court will reduce the $12,000 amount by one-half, so as to make the sanction $6,000 for each of Plaintiffs' counsel. In doing so, the Court recognizes that for some of Plaintiffs' counsel the amount may seem of small consequence; however, the Court also points out that for those counsel, they also have the deterrent consequence of knowing that any one of them could have stepped in to insist upon a different decision in these circumstances, that could have protected not only themselves, but also their co-counsel who might be of lesser means, from the risk of the sanctions that the Court imposes in this Order." *Id*. at p. 27.

- "The character, purpose, and nature for the imposition of sanctions ordered in this case was both to punish those individuals who violated their professional duties to the court and to deter these attorneys as well as other lawyers from such actions in the future but also to compensate the Defendants and the Court for the unnecessary expenditure of resources caused as a result of Plaintiffs' counsel's conduct." 10/17/14 Order, p. 19 (Dkt. 531).

- "In this case, the Court finds the $6,000 amount is indicative of the nature and purpose for the sanction as being not so great so as to seriously punish but sufficient to both deter future conduct and also compensate for the Court's unnecessary expenditure of resources." *Id*. at pp. 20-21, n.6.

Though some non-compensatory sanctions can be considered criminal in nature (to which greater due process protections apply), only "serious" criminal sanctions warrant procedures extending beyond notice and an opportunity to be heard. *See, e.g.*, *Lasar*, 399 F.3d at 1112 ("So long as the court did not impose serious criminal penalties, due process did not require the district court to conduct a full-blown trial.") (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1138 (9th Cir. 2001) (explaining that contempt which occurs in court's

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 14**

presence can be punished at later time after providing notice and opportunity to be heard and that full criminal jury trial is only required if serious criminal penalties are imposed)); *see also In re Dyer*, 322 F.3d 1178, 1194 (9th Cir. 2003) (interpreting *Hanshaw* as holding that "due process requires that an individual accused of criminal contempt receive several procedural protections, including a jury trial, before 'serious criminal penalties' can be imposed.").

As to whether there is a bright line of what constitutes a "serious" sanction, the case law is relatively sparse. The Ninth Circuit has noted that "the Supreme Court has implied that '$5,000.00, at least in 1989 dollars, is the cutoff for a serious fine warranting a jury trial.'" *Lasar*, 399 F.3d at 1112, n.7 (quoting *Hanshaw*, 244 F.3d at 1139, n.10 (citing *Blanton v. City of N. Las Vegas*, 489 U.S. 538, 544 (1989))); *see also Miller*, 661 F.3d at 1024 ("... $63,687.50 is an extraordinary amount for such non-compensatory sanctions. We've held that non-compensatory sanctions of that magnitude are akin to criminal contempt and may be imposed only by following the procedures applicable to criminal cases, including appointment of an independent prosecutor, proof beyond a reasonable doubt and a jury trial.").

Therefore, even if one were to assume the $6,000.00 per attorney sanction is not compensatory, it would nonetheless not be so "serious" as to constitute a criminal penalty.[9] *See* 10/17/14 Order, p. 20 (Dkt. 531) (in affirming Sanctions Order, Judge Lodge concluding: "Having reviewed the record, this Court finds the amount of the sanctions imposed in this case are not so 'serious' or severe so as to entitle Plaintiffs' counsel to full due process protections of

---

[9] This naturally assumes that the $5,000.00 "cutoff" for a "serious" sanction as articulated in *Hanshaw* is not static, but has instead increased with inflation during the 14 years since 1989 (the Sanctions Order was issued on March 29, 2013). To be sure, the Court takes judicial notice of the Bureau of Labor Statistics' inflation-adjustment calculator, measuring the 2013-value of $5,000.00 in 1989 as approximately $9,516.48. *See In re Engle Cases*, 283 F. Supp. 3d at 1254, n.71 ("The Court takes judicial notice of the Bureau of Labor Statistics' inflation-adjustment calculator, a widely-accepted instrument for measuring the present-value of a dollar figure.").

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 15**

a criminal jury trial. The amount of the sanctions required to be paid to the Court, $6,000.00, while not insignificant, is not of such a magnitude that it is considered a serious criminal penalty.") (internal citations omitted). Consequently, the enhanced due process protections are not warranted; notice and an opportunity to be heard are sufficient.

### III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Movants are individually sanctioned in the amount of $6,000.00. Said amounts represent compensable costs to the Court as articulated herein. Separately, said amounts do not represent a "serious" sanction to which due process protections beyond notice and an opportunity to be heard apply.

IT IS ADDITIONALLY HEREBY ORDERD that Movants' Motion to (1) Disburse Fines from Registry of the Court; (2) Discharge Sanctions Order; and (3) Vacate Sanctions Orders (Docket No. 866) is DENIED.

DATED: March 14, 2019

_____
Ronald E. Bush
Chief U.S. Magistrate Judge

**ORDER ON REMAND AND MEMORANDUM DECISION AND ORDER - 16**